**Hon. John C. Coughenour**

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

BERNADEAN RITTMANN, FREDDIE CARROLL, JULIA WEHMEYER, and RAEF LAWSON, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

AMAZON.COM, INC. and AMAZON LOGISTICS, INC.,

      Defendants.

Case No. 2:16-cv-01554-JCC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL THE CLAIMS OF PLAINTIFF RAEF LAWSON TO ARBITRATION AND TO EXCLUDE PUTATIVE ABSENT CLASS MEMBERS WHO AGREED TO ARBITRATE THEIR CLAIMS**

**ORAL ARGUMENT REQUESTED**

NOTE DATE: JANUARY 20, 2017

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT .................................................................................... 3

    A.   Plaintiffs Have Adequately Pled Their Overtime and Minimum Wage Claims .......................................................................................... 3

    B.   Plaintiffs Have Adequately Pled Their California Labor Code Claims ............. 6

    C.   The Court Should Not Dismiss or Stay the FLSA and California Causes of Action Pursuant to the First-to File Rule......................................... 7

    D.   Amazon's Argument That the Putative Class Should Be Limited Because of Its Arbitration Agreement Is Premature, and In Any Case, The Agreement Is Not Enforceable Against Plaintiff Lawson or Putative Class Members ................................................................. 11

        a.   Defendants' Arbitration Agreement Violates the NLRA and Is Therefore Unenforceable ...................................................... 13

        b.   In Addition, Amazon Drivers Are Exempt from the Federal Arbitration Act Because They Are Transportation Workers Engaged in Interstate Commerce ...................................... 19

    E.   The Court Should Not Limit Plaintiffs' Recovery Under the Seattle Minimum Wage Ordinance to Violations Occurring After April 1, 2016 ......... 24

III.  CONCLUSION.................................................................................... 24

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

**I. INTRODUCTION**

Defendants Amazon.com, Inc. and Amazon Logistics, Inc. (collectively "Amazon") have moved to dismiss the complaint, have asked the Court to enforce its arbitration clause against one plaintiff, and have prematurely asked the Court to exclude putative class members from this case who did not opt out of arbitration agreements. For the reasons set forth below, this request should be denied in full.

Plaintiffs first take issue, though, with Amazon's opening comments that the plaintiff delivery drivers in this case are no different from numerous other drivers who are subcontracted to deliver its packages, such as FedEx drivers (who were previously found by the Ninth Circuit to be misclassified as independent contractors as a matter of law[1]), UPS drivers (who are classified as employees), and drivers for the United States Postal Service (also classified as employees).  Contrary to Amazon's characterization that "no one suggests that the[se] drivers delivering through [FedEx, UPS, and USPS] are Amazon employees," Dkt. 36 at 1, there has actually been substantial litigation on this very point; however, here, the situation is even clearer because the plaintiff drivers contract and work ***directly*** for Amazon.[2]  Amazon argues that drivers cannot possibly be employees because they "decide whether to work, when and where they want to work" and the like, Dkt. 36 at 1; however, this assertion is belied by the complaint, as

---

[1]    See Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981 (9th Cir. 2014).

[2]    In other cases, Amazon drivers who contracted through intermediary entities have sought rulings that they are employed by Amazon.  See, e.g., Truong et al. vs. Amazon.com et al., BC598993 (Los Angeles County Sup. Ct.); Bradley et al. v. Silverstar Ltd. et al., Civ. A. No. 1:16-cv-10259 (N.D. Ill). Indeed, this is the subject of the case of Morales v. Amazon.com LLC, Case No. 16-cv-06462-THE (N.D. Cal.), filed *one week* before this case, based on which Amazon seeks to have claims in this case stayed or dismissed under the "first-to-file" rule.  For reasons discussed infra at Section C, the Court should ***not*** exercise its discretion to do so, as this case was filed by drivers who have contracted directly with Amazon, was filed a mere one week after Morales, and was filed by Plaintiffs' counsel who have been recognized as one of the leading pioneering firms to represent workers in this type of litigation, and thus should not have to stand aside based on this other filing.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1   well as evidence already submitted in this case, explaining that Amazon drivers are

2   scheduled for shifts and face consequences for failing to show up or complete them,

3   see Dkt. 20-2 ("Wehmeyer Decl.") at ¶¶ 5-6, 11; Dkt. 20-3 through 20-10; Dkt. 33 at ¶20.

4   In any event, drivers challenging their classification as independent contractors by "ride-

5   sharing" companies Uber and Lyft, who truly can decide when and for how long to work

6   (as they can literally log on and off from work at will, and can work for just minutes at a

7   time instead of for scheduled blocks) have succeeded in defeating those companies'

8   bids for summary judgment. See O'Connor v. Uber Technologies, Inc., 82 F. Supp. 3d

9   1133 (N.D. Cal. 2015); Cotter v. Lyft, Inc., 60 F. Supp. 3d 1067 (N.D. Cal. 2015).

10          Here, at the early pleading stage, Plaintiffs have clearly made plausible

11   allegations to support their claim that they have been misclassified by Amazon as

12   independent contractors and have suffered wage violations as a result.  Amazon's

13   attempt to escape liability for its systemic misclassification of these workers by invoking

14   its arbitration agreements and citing to the existence of another lawsuit (on behalf of an

15   entirely distinct group of delivery drivers) are unavailing.  For all the reasons set forth

16   further below, the Court should reject Amazon's bid to dismiss this case – particularly

17   before any notice has been issued to putative class members regarding the existence of

18   these claims[3] – and should deny Amazon's Motion to Dismiss.

19

20

21   [3]      As explained in Plaintiffs' Opposition to Defendant's Motion for Relief from Deadlines (Dkt. 41),
22   the Court should issue notice pursuant to § 216(b) of the FLSA before considering whether to enforce
     arbitration agreements.  That way, Amazon drivers whose rights may be affected by this case will be
23   apprised of the case and receive notice allowing them to opt-in to join it and thus be able to attempt to
     vindicate their rights, regardless of whether that would be in court or arbitration.  By deferring such notice
24   (and asking the Court to enforce its arbitration agreement), Amazon simply wants to keep its drivers in the
     dark about the legal issues raised in this case and thereby prevent them from pursuing these claims in
     any forum.

Pltfs.' Opp'n to Defs.' Motion to Dismiss - 2

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1   **II. ARGUMENT**

2      **A. Plaintiffs Have Adequately Pled Their Overtime and Minimum Wage Claims**

3          Contrary to Amazon's characterization, the Ninth Circuit "does not require that a

4   '***particular instance***' [of overtime or minimum wage violations] be pled" in order to state

5   a valid claim, see Varsam v. Laboratory Corp. of America, 2015 WL 4624111, *3 (S.D.

6   Cal. Aug. 3, 2015) (emphasis added), nor does it require that each Plaintiff detail "(1)

7   how many uncompensated hours he supposedly worked and in which weeks he worked

8   those hours; (2) his hourly rate of pay and the weeks in which he did not receive

9   minimum wage; (3) how much time beyond his 'scheduled shifts' he worked and in

10  which workweek; or (4) the cost of the business expenses he incurred." Dkt. 36 at 9-10.

11  Indeed, as the Ninth Circuit itself acknowledged in Landers v. Quality Commc'ns, Inc.,

12  771 F.3d 638, 641-42 (9th Cir. 2014), "no circuit court has interpreted Rule 8 as

13  requiring [plaintiffs] to plead in detail the number of hours worked, their wages, or the

14  amount of overtime owed to state a claim for unpaid minimum wages or overtime

15  wages." See also Boon v. Canon Bus. Sols., Inc., 592 F. App'x 631, 632 (9th Cir. 2015)

16  (rejecting the notion that "a complaint must contain an estimate of how much

17  uncompensated time was [worked], how often, and at what rate to survive a motion to

18  dismiss.") (internal citation omitted).

19          The obvious reason for this fact is that Plaintiffs cannot be expected to allege

20  such claims with "mathematical precision," when "most (if not all) of the detailed

21  information concerning a plaintiff-employee's compensation and schedule is in the

22  control of the defendants." Landers, 771 F.3d at 645-46; see also Rodriguez v. F & B

23  Solutions LLC, 2014 WL 2069649 (E.D. Va. Apr. 29, 2014) ("The Court notes that a

24  record of the precise number of hours worked is normally in the possession of the

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1  employer and as such, can often be obtained through discovery"); <u>Davenport v.</u>

2  <u>Wendy's Co.</u>, 2014 WL 3735611, *5 (E.D. Cal. July 28, 2014) ("[A] number of courts

3  have previously held, …[that] it cannot be the case that a plaintiff must plead specific

4  instances of unpaid overtime before being allowed to proceed to discovery to access

5  the employer's records.'"); <u>Pruell v. Caritas Christi</u>, 678 F.3d 10, 15 (1st Cir. 2012)

6  (noting that "precisely how [plaintiffs] pay was computed and based upon what specific

7  number of hours for particular time periods may depend on records they do not have.").

8  Here, where Amazon does not provide Plaintiffs with **any** record regarding the number

9  of hours worked or the computation of their pay, instead paying them in lump sum

10  payments without any explanation of how those figures are derived, it is patently

11  unreasonable to expect Plaintiffs to include detailed examples of dates and amounts

12  owed for overtime and minimum wage damages, and, more importantly, it is **not**

13  required by the law of the Ninth Circuit.

14      The cases Amazon cites do not hold otherwise.  For example, in <u>Wright v. N. Am.</u>

15  <u>Terrazo</u>, 2013 WL 441517, at *3 (W.D. Wash. Feb. 5, 2013), the plaintiff made the bare

16  assertion that the defendant "unreasonably denied [him] overtime pay" and nothing

17  more.  The <u>Wright</u> court held that he "must plead more than [a] naked assertion devoid

18  of factual content" such as facts supporting that "(1) the Union was Mr. Wright's

19  employer; (2) Mr. Wright worked more than forty hours in a week; and (3) Mr. Wright did

20  not receive compensation for his employment in excess of the forty hours." <u>Id.</u>; <u>Landers</u>,

21  771 F.3d at 644–45 ("[A] plaintiff asserting a claim to overtime payments must allege

22  that she worked more than forty hours in a given workweek without being compensated

23  for the overtime hours worked during that workweek").  Here, Plaintiff Carroll has plainly

24  done exactly that by alleging facts showing that he was Amazon's employee, and by

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    alleging that he received an hourly rate for working scheduled shifts and "regularly

2    worked in excess of forty hours per week for Amazon from the period January through

3    June of 2016 but was not been paid one-and-a-half times his regular rate for any

4    overtime hours." First Am. Compl. ("FAC"), Dkt. 33 at ¶¶, 25, 27.  These allegations

5    clearly meet the requirements set forth in <u>Wright</u> and <u>Landers</u> to plead that he "worked

6    more than forty hours in a week" and "did not receive compensation for his employment

7    in excess of the forty hours", and indeed, they go further by providing Amazon with a

8    specific timeframe during which the overtime work occurred on a regular basis. <u>Id.</u>[4]

9         Thus, Plaintiffs' complaint "contains enough substantive content to elevate the

10   [wage] claims above the mere possibility of defendants' liability," <u>Manning v. Boston</u>

11   <u>Med. Ctr. Corp.</u>, 725 F.3d 34, 45 (1st Cir. 2013).  To the extent that Amazon desires

12   more detailed information, it is in the best position to access those records.  <u>See</u> <u>also</u>

13   <u>Varsam</u>, 120 F. Supp. 3d at 1178 (claims were plausibly stated where plaintiffs alleged

14   that "members of the putative class worked more than forty hours a week and that when

15   employees 'worked off-the-clock that should have been compensated at an overtime

16   rate' . . ." because the allegations "provide Defendant with sufficient notice to defend

17   itself effectively"); <u>Sec'y of Labor v. Labbe,</u> 319 F. App'x 761, 763-64 (11th Cir. 2008)

18   (holding that "[w]hile the[] allegations [in the complaint] are not overly detailed, we find

19   that a claim for relief for failure to pay minimum wage, [or] to provide overtime

20   compensation . . . does not require more").

21

22   [4]    The same is true of Plaintiffs' minimum wage allegations; Plaintiffs have put Amazon on notice regarding their theory of liability – that delivery drivers' pay for the hours they spent working shifts, when taking into account the amounts they had to pay in necessary business expenses, and including

23   uncompensated time worked past the end of a shift, left them with less than minimum wage.  These allegations are sufficient to state a plausible claim and survive a motion to dismiss. <u>See</u> <u>Arriaga v. Florida</u>

24   <u>Pac. Farms, L.L.C.</u>, 305 F.3d 1228, 1236 (11th Cir. 2002) (employer committed minimum wage violation when expenses workers had to bear to perform their jobs brought their net wages below minimum wage).

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    Indeed, numerous courts across the country have upheld overtime and minimum

2    wage claims based on similar allegations,[5] and the Court should do the same here.

3    **B. Plaintiffs Have Adequately Pled Their California Labor Code Claims**

4    Likewise, contrary to Amazon's contention, the allegations in the complaint

5    regarding violations of Cal. Labor Code § 226(a) (failure to provide itemized wage

6    statements) and § 2802 (failure to reimburse for necessary business expenses) are

7    more than plausible.

8    To state a claim for relief under Cal. Labor Code § 226(a), a plaintiff must allege

9    "(1) a violation of the statute; (2) the violation was knowing and intentional; and (3) an

10   injury resulted from the violation." Achal v. Gate Gourmet, Inc., 114 F. Supp. 3d 781,

11   810 (N.D. Cal. 2015).  A plaintiff is injured "if his employer fails to provide accurate and

12   complete information as required by any one or more of items under sections 226(a)(1)

13   to (9) and the employee cannot 'promptly and easily determine' from the wage

14   statement alone …: '(i) … any information required to be provided pursuant to … [§

15   226(a)](2) to (4), (6), and (9).'" Id. at 811.

16   Under this framework, Plaintiff Lawson has more than plausibly alleged a

17   violation of the statute.  In the First Amended Complaint, Plaintiffs allege that all

18   "Amazon delivery drivers … are simply provided with weekly totals that reflect how

19   much money they were paid that week without showing how many hours they actually

20   worked performing deliveries or how compensation was calculated." Dkt. 33, ¶ 23.

21   From this allegation, the Court, on a motion to dismiss, can infer that (1) the pay

22   statements, on their face, do not include the number of hours worked by a driver or their

23
24   [5]    See, e.g., Martinez v. Regency Janitorial Servs. Inc., 2011 WL 4374458, *4 (E.D. Wis. Sept. 19, 2011) (collecting cases); Mitial v. Dr. Pepper Snapple Grp., 2012 WL 2524272, *3 (S.D. Fla. June 29, 2012); Rodriguez, 2014 WL 2069649, *3.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1  rate of pay (which are required by Section 226(a)(2) and (9), respectively), and (2) that,

2  without that information, it is impossible for Amazon drivers in California to "promptly

3  and easily" determine that information from the wage statement alone.  Accordingly, the

4  First Amended Complaint states a claim under Cal. Labor Code § 226(a).

5        With respect to Cal. Labor Code § 2802, a plaintiff must "identif[y] the particular

6  expenses that were not reimbursed and affirmatively allege[] that the expenses were

7  part of the plaintiff's job duties." Tan v. GrubHub, Inc., 171 F. Supp. 3d 998, 1005 (N.D.

8  Cal. 2016).  Section 2802 does not impose, as Amazon implicitly asserts, any

9  requirement that a plaintiff identify the amount of the expenses; all that matters is that

10  the expenses were incurred and were necessary to the performance of the job.  Id. at

11  1005 (holding that allegation that drivers "were required to bear expenses related to

12  'their vehicles, gas, parking, phone data, and other expenses'" stated a claim for relief).

13  Here, Plaintiffs have alleged that "Amazon requires [all] its drivers," including Lawson,

14  "to pay for many of the expenses necessary to perform their job, including expenses for

15  their vehicles, gas, phone and data plan." Dkt. 33 (FAC) at ¶ 22.  This single sentence,

16  which Amazon inexplicably fails to discuss in its motion, is sufficient to state a claim for

17  relief under Section 2802.  Accordingly, the Court should deny Defendants' motion to

18  dismiss the California Labor Code claims.

19  **C. The Court Should Not Dismiss or Stay the FLSA and California Causes of**

20     **Action Pursuant to the First-to File Rule**

21        Amazon erroneously argues that Plaintiffs' FLSA and California causes of action

22  should be stayed or dismissed pursuant to the first-to-file rule because such claims

23  were first brought in another case, Morales v. Amazon.com LLC, Case No. 16-cv-

24  06462-THE (N.D. Cal.), which was filed in California state court just ***one week*** before

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

the filing of this action (and later removed to federal court) and which concerns an

entirely distinct group of drivers.  The first-to-file rule—which is discretionary, and

applies only where the parties and issues in the first-filed lawsuit are substantially

similar to the parties and issues in the second-filed lawsuit, <u>Alltrade, Inc. v. Uniweld

Products, Inc.</u>, 946 F.2d 622, 625 (9th Cir.1991)—has no application here where this

action and <u>Morales</u> are actually different cases against Amazon, concerning different

types of drivers.

    The plaintiffs in this action contracted ***directly*** with Amazon to perform delivery

services and contend that such drivers are misclassified as independent contractors,

while the <u>Morales</u> plaintiff performed services for Amazon through an intermediary

company and would thus face different legal issues from the plaintiffs here (such as

needing to prove that Amazon is his joint employer, along with the company with whom

he directly contracted).[6]  Also, since he contracted through an intermediary entity, the

<u>Morales</u> plaintiff would have been subject to different policies and practices from the

---

[6]     While the nationwide FLSA class and California subclass in <u>Morales</u>, as pled, may initially appear
to encompass the nationwide class and California subclass in the instant case, this is not the case.
Morales seeks to represent an FLSA Class consisting of "[a]ll persons employed as 'delivery drivers'
and/or with similar job titles or duties at Amazon warehouse locations who worked in the United States in
the past three years" and a California class consisting of "[a]ll persons employed as 'delivery drivers'
and/or with similar job titles or duties at Amazon warehouse locations in California." <u>See</u> Dkt. 38-2
("<u>Morales</u> Am. Compl.") at ¶ 23.  Plaintiffs in this action all seek to represent a nationwide FLSA collective
action consisting of "all … drivers … who have *contracted directly with Amazon* to provide delivery
services in the United States," while Plaintiff Lawson seeks to represent a California class consisting of
"all delivery drivers who have *contracted directly with Amazon* to provide delivery services in California."
Dkt. 33, ¶¶ 28, 39 (emphasis added).
    The mere fact that <u>Morales</u> may have been overbroadly pled to appear to also encompass drivers
who contracted directly for Amazon (although it is not entirely clear that it has) is not a basis to stay or
dismiss this case, which was properly pled.  Moreover, when determining whether there is similarity of
parties between two putative class actions, some courts in this Circuit have noted that it makes sense to
compare the identity of *the named plaintiffs*, as opposed to comparing the putative classes (particularly
given that the putative class may have been overbroadly alleged in one case). <u>See</u>, <u>e.g.</u>, <u>Farrar v.
Catalinanrestaurant Grp., Inc.</u>, 2016 WL 2610110, at *1 (S.D. Cal. May 6, 2016); <u>Lac Anh Le v.
PricewaterhouseCoopers LLP</u>, 2008 WL 618938, at *1 (N.D. Cal. Mar. 4, 2008).

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    drivers who contracted directly with Amazon, whom Plaintiffs here seek to represent.[7]  It

2    is thus apparent from Morales' Complaint and Amended Complaint that his work on

3    behalf of Amazon differed substantially from the Plaintiffs' work in this case, and

4    Morales is therefore highly unlikely to satisfy Rule 23's requirements for class

5    certification on behalf of a class of drivers that includes Plaintiffs in this action or the

6    nationwide and California classes he (may) seek to represent (i.e. drivers who

7    contracted directly with Amazon).  Thus, because the putative classes in this action and

8    in Morales do not actually overlap, there is no similarity of plaintiffs and the first-to-file

9    rule should not be applied to dismiss or stay this action.

10           Moreover, the first-to-file rule is discretionary, and there is no reason for the

11   Court to take the extraordinary action of dismissing or staying this case here, where

12   Plaintiffs, who filed this case a mere one week after Morales was filed in state court,

13   have already moved for notice to be issued pursuant to § 216(b) and are thus vigorously

14   moving forward with this litigation on behalf of Amazon drivers.[8]

15   _____

16   [7]      Unlike Plaintiffs in this case, Morales contracted with a separate entity, which in turn contracted to
     provide delivery services to Amazon. See Gruber Decl., Ex. A ("Morales Compl."), Dkt. 38-1, at ¶ 10 ("On
17   or about May 2016, Plaintiff was contracted through Action Messenger to provide services as delivery
     driver [sic] to Amazon.").  It is clear from the complaint that, through this separate entity, Morales would
18   have been subject to different policies from the plaintiffs in this case, including that: (1) Amazon or Peach,
     Inc. provided Morales with a delivery truck, Morales Am. Compl. at ¶ 13, whereas Plaintiffs and other
     drivers who contracted directly with Amazon must provide their own vehicles; and (2) Amazon or Peach,
19   Inc., compensated Morales at a "flat day rate," id. at ¶ 16, which is different from the hourly rate paid to
     Plaintiffs and putative class members in this case who contracted directly with Amazon.

20   [8]      The plaintiff in Morales has not moved for notice to be issued under § 216(b), and there is no
     reason for the putative class to have to wait because another worker (one week earlier) filed a case in
21   another forum, who may or may not seek this relief, and is not seeking it as promptly as the plaintiffs are
     here (if he even could seek it for this class, given that he drove for Amazon through an intermediary).
22   Indeed, the Court should be quite skeptical of Amazon's attempt to dismiss or put on hold this case, in
     favor of the Morales case.  Amazon is certainly aware of the experience and reputation of Plaintiffs'
     counsel in this case and would prefer to defend these claims against a plaintiff represented by counsel
23   without the same experience.  When duplicative class cases are filed and courts must choose which
     counsel to appoint as class counsel, courts look to Fed. R. Civ. P. 23(g), which requires determination of
24   which counsel is best suited to effectively prosecute the action on behalf of the class.  See Fed. R. Civ. P.
     23(g)(l)(A) (enumerate the following factors for a court to consider: "(i) the work counsel has done in

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1   In addition, significantly, the Morales case is **not** pursuing claims for

2   reimbursement of expenses under California Labor Code § 2802, which is included in

3   this case and is a significant element of the California claims asserted here.  Thus, even

4   if the Court were to find that that the other nationwide and California claims meet the

5   prerequisites of the first-to-file rule (which it should not, as discussed above), the Court

6   should at the very least allow the Section 2802 claim to proceed here. See, e.g., Taylor

7   v. AlliedBarton Sec. Servs. LP., 2014 WL 1329415, at *8 (E.D. Cal. Apr. 1, 2014)

8   (staying certain claims, pursuant to first-to-file rule, but permitting plaintiff to proceed

9   with causes of action that were not part of the first-filed suit).

10      In any event, the Court should exercise its discretion not to dismiss or stay the

11   nationwide and California claims in this case.  "The most basic aspect of the first-to-file

12   rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined

13   and experienced judges, must be left to the lower courts.'" Alltrade, Inc., 946 F.2d at

14   628 (quoting Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co., 342 U.S. 180, 183–84

15   (1952)).  Accordingly, when applying the rule, the Court always retains the discretion to

16   decline to stay or dismiss an action. Id.  Here, the Court should exercise that discretion

17

---

18   identifying or investigating potential claims in the action; (ii) counsel's experience in handling class
    actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge
    of the applicable law; and (iv) the resources that counsel will commit to representing the class"); see also
19   Kamakahi v. Am. Soc'y for Reproductive Med., 2012 WL 892163, *2 (N.D. Cal. Mar. 14, 2012); Levitte v.
    Google, Inc., 2009 WL 482252, *2 (N.D. Cal. Feb. 25, 2009). Under Rule 23(g)(2), Plaintiffs' counsel here
20   is considerably more experienced in this area of law than Morales' counsel, and would therefore be "best
    able to represent the interests of the class."  See, e.g., O'Connor v. Uber Techs., Inc., No. C-13-3826 EMC,
    2015 WL 5138097, at *1 (N.D. Cal. Sept. 1, 2015) (certifying class of Uber drivers throughout California and
21   appointing Plaintiffs' counsel as class counsel); Cotter v. Lyft, 13-CV-04065, (N.D. Cal. June 4, 2015)
    (Dkt. 133) (federal judge noted that it was "not even a close question" that Ms. Liss-Riordan was "more
22   qualified to represent" a class of on-demand drivers than counsel who had filed a similar case in state
    court); Independent Contractor Misclassification, Lichten & Liss-Riordan, P.C.,
23   http://llrlaw.com/independent-contractor/, last visited January 11, 2017 (listing dozens of articles about
    Plaintiffs' counsel's substantial reputation and experience in this area and suits on behalf of misclassified
    independent contractors).

24

---

PLTFS.' OPP'N TO DEFS.' MOTION TO DISMISS - 10

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    to refrain from acting on the first-to-file rule both because of the likelihood that the

2    classes do not, in fact, overlap, and because Plaintiffs in this action have promptly and

3    vigorously moved forward to pursue their claims in this case.   Plaintiffs have already

4    moved to send notice to putative class members pursuant to § 216(b) of the FLSA and

5    Amazon has already moved to dismiss some of Plaintiffs' claims and to determine

6    whether its arbitration clause is enforceable. See Dkts. 20, 36.  Thus, many of the

7    important substantive issues in this case are already in the process of being briefed.  In

8    contrast, there has been no substantive action taken in Morales, and Amazon does not

9    even have to respond to Morales' Amended Complaint until February 13, 2017. See

10   Morales docket (attached here as **Exhibit A);** Morales, Stipulation and Order, Dkt. 17

11   (N.D. Cal. Jan 3, 2017) (**Exhibit B**).  As a result, the Court should decline Amazon's

12   request for a stay or dismissal of this action, which would not only prejudice Plaintiffs

13   and putative class members but unnecessarily delay the resolution of their claims.[9]

14   **D.  Amazon's Argument That the Putative Class Should Be Limited Because of**

15   **Its Arbitration Agreement Is Premature, and In Any Case, The Agreement Is**

16   **Not Enforceable Against Plaintiff Lawson or Putative Class Members**

17

18   [9]    Even if the Court were inclined to consider granting Amazon some relief under the first-to-file rule
      (which it should not, for the reasons set forth above), the remedy should not be dismissal or a stay, but

19   instead a transfer of this action, or portions thereof, to the court presiding over the Morales case in the
      Northern District of California.  In Amazon's motion, it conveniently omits that one remedy under the first-

20   to-file rule is to transfer the later-filed case to the courtroom of the first-filed case. See Alltrade, 946 F.2d
      at 623 (discussing "[t]he well-established 'first to file rule,' which allows a district court to **transfer**, stay, or

21   dismiss an action when a similar complaint has already been filed in another federal court" (emphasis
      added)).  Given the prejudice that would result from staying or dismissing this action when it is all but

22   certain that the classes in this case and in Morales do not actually overlap, transferring this case would at
      least protect and preserve the rights of the putative class here.  See, e.g., Fossum v. Nw. Mut. Life Ins.

22   Co., 2010 WL 11054415, at *2 (N.D. Cal. Sept. 16, 2010) (holding that "transferring this action … for
      coordination or consolidation with [the first-filed case] will avoid the possibility of inconsistent rulings

23   regarding the independent contractor vs. employee question); Persepolis Enter. v. United Parcel Serv.,
      Inc., 2007 WL 2669901, at *2 (N.D. Cal. Sept. 7, 2007).  However, as discussed above, even a transfer is

24   not necessary.  Indeed, **this court** obtained jurisdiction before the federal court in the Northern District of
      California, since the Morales case was filed in state court and only recently removed to federal court.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1

2

3

Amazon has moved to narrow or dismiss Plaintiffs' class claims on the ground

that some drivers (including named plaintiff Lawson) are bound by agreements that

require them to individually arbitrate their claims against Amazon.  Preliminarily, as

4

5

Plaintiffs explained in their Opposition to Amazon's Motion for Relief from Deadlines

(Dkt. 41), the Court should reject Amazon's hasty attempt to deploy its arbitration

6

7

agreement as premature because "consideration of the validity of arbitration

agreements is inappropriate" at the first stage of collective action certification, and

8

9

"issues of fact surrounding arbitration agreements are properly resolved at the second

stage of the [FLSA's] two-step inquiry." Romero v. La Revise Assocs., L.L.C., 968 F.

10

11

Supp. 2d 639, 647 (S.D.N.Y. 2013).  Likewise, numerous courts have granted

conditional certification under § 216(b), as well as certified classes under Rule 23 that

12

13

included both workers who were and were not bound by arbitration agreements, finding

that consideration of arbitration agreements should be deferred until after class

14

15

certification and should *not* prevent certification.[10]  As these courts recognized, "the

sensible course . . . is to decide whether to certify the class without considering the

16

17

possibility of arbitration, bring the [putative class] into the case, see what their position is

on arbitration, and *then* decide who must arbitrate." In re Evanston Nw. Corp. Antitrust

18

19

Litig., 2013 WL 6490152, *5 (N.D. Ill. Dec. 10, 2013) (emphasis added).

20

21

22

23

24

[10]     See, e.g., Davis v. Four Seasons Hotel Ltd., 2011 WL 4590393, *4 (D. Haw. Sept. 30, 2011)
("[t]he possibility that Four Seasons may be able to compel unnamed members of the putative class to
arbitrate in the future does not preclude class certification."); Bittinger v. Tecumseh Products Co., 123
F.3d 877, 884 (6th Cir. 1997); Herrera v. LCS Fin. Servs. Corp., 274 F.R.D. 666, 681 (N.D. Cal. 2011);;
Bond v. Fleet Bank (RI), N.A., 2002 WL 31500393, *7 (D.R.I. Oct. 10, 2002) ("[T]hat some members may
be subject to a valid arbitration agreement does not preclude this court from certifying a class"); Midland
Funding, LLC v. Brent, 2010 WL 4628593, at *4 (N.D. Ohio Nov. 4, 2010); Bird Hotel Corp. v. Super 8
Motels, Inc., 246 F.R.D. 603, 606 (D.S.D. 2007); Coleman v. Gen. Motors Acceptance Corp., 220 F.R.D.
64, 88, 90-91 (M.D. Tenn. 2004); Bond v. Fleet Bank (RI), N.A., 2002 WL 31500393, at *7 (D.R.I. Oct. 10,
2002); Collins v. Int'l Dairy Queen, Inc., 168 F.R.D. 668, 678 (M.D. Ga.1996); Finnan v. L.F. Rothschild &
Co., 726 F. Supp. 460, 465 (S.D.N.Y. 1989).

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    In any case, the Court should reject Amazon's argument on the merits (including

2   with respect to Plaintiff Lawson) because its arbitration clause is unenforceable for two

3   reasons: (1) the class action waiver in the agreement violates the National Labor

4   Relations Act ("NLRA"), 29 U.S.C. §§ 157 & 158, and is thus unenforceable, see Morris

5   v. v. Ernst & Young, LLP, 834 F.3d 975 (9th Cir. 2016); and (2) Amazon delivery drivers

6   fall within an exemption to the Federal Arbitration Act ("FAA") for transportation workers

7   engaged in interstate commerce, 9 U.S.C. § 1.[11]

8       **a. Defendants' Arbitration Agreement Violates the NLRA and Is**
        **Therefore Unenforceable**
9
10    Amazon's arbitration agreement, which contains a class action waiver, violates

11  the Sections 7 and 8 of the NLRA, as decided by the Ninth Circuit in Morris v. v. Ernst &

12  Young, LLP, 834 F.3d 975 (9th Cir. 2016), and is thus unenforceable.  In Morris, the

13  Ninth Circuit joined the Seventh Circuit in adopting the National Labor Relations Board's

14  ("NLRB") conclusion that "an agreement that precludes [employees] from filing joint,

15  class, or collective claims addressing their wages, hours, or other working conditions

16  against the employer in any forum, arbitral or judicial" violates the NLRA. Id. at 980

17  (quoting D.R. Horton, 357 NLRB No. 184 (2012) ("Horton I"), enf. denied 737 F.3d 344

18  (5th Cir. 2013) ("Horton II")); see Lewis v. Epic Sys. Corp., 823 F.3d 1147 (7th Cir.

19  2016).[12]  Here, the class action waiver in Amazon's Terms of Service violates the NLRA

20

21  [11]    In addition, as Plaintiffs have indicated, they intend to include a claim under the California Private
Attorney General Act ("PAGA"), Cal. Lab. Code § 2699 et seq., which is a representative claim on behalf
22  of the state and cannot be barred by a class action waiver in an arbitration agreement.  See Iskanian v.
CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 383 (2014).  Lawson filed his prerequisite letter with the
state of California on November 21, 2016, and intends to amend the complaint to add this claim once the
23  requisite 65-day waiting period has run.  Under Iskanian, the court will not be able to compel arbitration of
Lawson's PAGA claims.

24  [12]    Today, the U.S. Supreme Court granted certiorari in Morris and Lewis, given the split in the
circuits on this issue. See No. 16-300; No.16-307; and No. 16-285.

LICHTEN & LISS-RIORDAN, P.C.
                                                         729 Boylston Street, Suite 2000
                                                  Boston, Massachusetts 02116 ~ (617) 994-5800

1    because it repeatedly states that drivers are prohibited from bringing any form of joint,

2    class, collective, or representative action against Amazon in any forum.[13] Accordingly,

3    the class action waiver renders the arbitration agreement unenforceable because it runs

4    afoul of the NLRA.[14]

5         However, recognizing that <u>Morris</u> is binding on this Court, Amazon argues that its

6    agreement is nevertheless enforceable because: (1) Amazon drivers are classified as

7    independent contractors, and only employees are protected by the NLRA, and (2) an

8    opt-out provision in Amazon's arbitration agreement rescues it from illegality under the

9    NLRA.  Amazon is wrong on both counts, as discussed below.[15]

10

---

11   13      <u>See</u> Dkt. 37-2 at § 11(b) ("To the extent permitted by law, the parties agree that any dispute
     resolution proceedings will be conducted only on an individual basis and not on a class or collective

12   basis."); <u>id.</u> at § 11(c) ("To the extent permitted by law, the parties further agree that no dispute resolution
     proceedings will be conducted on a representative basis."); <u>id.</u> at § 11(d) ("To the extent permitted by law,
     the parties waive any right to participate in or receive any relief from any non-individual proceeding

13   referenced above.").

14   14      Another federal court recently held that a concerted action waiver also violates the FLSA, a
     conclusion that is also not preempted by the FAA. In <u>Gaffers v. Kelly Servs., Inc.</u>, No. 16-10128, 2016 WL

15   4445428, at *9 (E.D. Mich. Aug. 24, 2016), the court held that the right under the FLSA for employees to
     bring a collective action on behalf of themselves and others similarly situated, pursuant to 29 U.S.C.
     §216(b), was not waivable because it was central to the entire enforcement scheme of the FLSA. The

16   court found that "rights under the FLSA … cannot be waived, since allowing employees to waive those
     rights (and thereby permitting employers to induce employees to do so), would give employers who
     manage to secure such waivers a substantial economic advantage over their competitors, and that

17   outcome is the exact result that the FLSA's uniform wage regulations were enacted to prevent." <u>Gaffers</u>,
     2016 WL 4445428, at *9 (citing <u>Killion v. KeHE Distributors, LLC</u>, 761 F.3d 574, 592 (6th Cir. 2014)). This

18   is an additional ground upon which the Court can and should find the arbitration clause containing a class
     action waiver unenforceable in this case.

19   15      The Court should reject Amazon's argument that this Court lacks jurisdiction to find that the class
     action waiver here violates the NLRA and is unenforceable. Dkt. 36 at 21.  Amazon appears to be

20   erroneously invoking the preemption doctrine established in <u>San Diego Bldg. Trades Council, Millmen's
     Union, Local 2020 v. Garmon</u>, 359 U.S. 236, 246 (1959), which holds that "neither state nor federal courts
     possess jurisdiction over claims based on activity that is 'arguably' subject to §§ 7 or 8 of the NLRA."

21   <u>Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6</u>, 493 U.S. 67, 74 (1989)(citing <u>Garmon</u>).
     But <u>Garmon</u> preemption is not nearly as broad as Amazon insinuates, as it only applies where the

22   plaintiff's claims "hinge on whether an unfair labor practice … occurred."  <u>Tamburello v. Comm-Tract
     Corp.</u>, 67 F.3d 973, 978 (1st Cir. 1995).  Accordingly, where, as here, an unfair employment practice "is
     being offered as a defense to the enforcement of a contract, and not as an affirmative claim on which the

23   plaintiff seeks relief, the Court retains jurisdiction."  <u>Grant v. Convergys Corp.</u>, 2013 WL 781898, at *2
     (E.D. Mo. Mar. 1, 2013) (collecting cases); <u>see also</u> <u>Kaiser Steel Corp. v. Mullins</u>, 455 U.S. 72, 86 (1982)

24   (holding that "[w]hile only the Board may provide affirmative remedies for unfair labor practices, a court

---

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1

2

### i. The NLRA Applies Here Because Plaintiffs Have Alleged and Have Made a Colorable Showing that They Are Amazon's Employees

3

4

5

6

7

8

9

10

11

Amazon claims that the drivers are not protected by the NLRA because they are independent contractors and not employees.  In making this argument, Amazon asks this Court to decide up front the ultimate issue in this case *against* the drivers, i.e. assume that they are properly classified as independent contractors and force them to individually arbitrate their claims.  The Court cannot force them to arbitrate this question on an individual basis, and thus deprive them of their rights under the NLRA, simply on the ground that they have not yet obtained a determination that they are in fact employees.  Such reasoning would deprive the drivers of making this challenge to their classification on a classwide basis, which itself would violate the NLRA and Morris.

12

13

14

15

16

17

18

19

For purposes of determining the applicability of the NLRA, the Court can and should presume (as other courts have) that Plaintiffs are employees. See, e.g., Curtis v. Contract Mgmt. Servs., 2016 WL 5477568, at *7 (D. Me. Sept. 29, 2016) ("I assume for the sake of this motion that the employer/employee relationship exists"); Bekele v. Lyft, Inc., 2016 WL 4203412, at *21 (D. Mass. Aug. 9, 2016) (assuming, in case alleging misclassification of workers as independent contractors and for purposes of deciding whether class action waiver violates NLRA, that workers were employees covered by NLRA).[16]

20

21

22

23

24

may not enforce a contract provision which violates" the NLRA).  Of course, many courts, including the Ninth Circuit in Morris and the Seventh Circuit in Lewis, 823 F.3d 1147, have held that class action waivers violate the NLRA without deferring to the jurisdiction of or requiring the plaintiffs to bring a charge before the NLRB.  This Court should thus reject Amazon's strained attempt to use a wrongly-decided district court opinion from Pennsylvania to circumvent the Ninth Circuit's binding decision in Morris.

[16]    Similarly, even though the NLRB only has jurisdiction over employees, see 29 U.S.C. §152(3), the Board routinely decides cases in which workers challenge their classification as independent contractors and contend that they should have been classified as employees. See, e.g., FedEx Home

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    Alternatively, if the Court believes this issue needs to be decided up front, the

2  Court could make a preliminary determination of employee status.  The Court could

3  make this determination either through a preliminary hearing, or simply rely upon the

4  allegations in the First Amended Complaint and the evidence submitted by the drivers in

5  their materials in support of their § 216(b) motion, to conclude that Plaintiffs have made

6  a colorable showing that they are Amazon's employees. <u>See</u> Dkts. 20-0 to 20-10, 33

7  (incorporated here by reference).[17]

8

9    Delivery, 361 NLRB 55 (Sept. 30, 2014) (holding FedEx drivers who were classified as independent
   contractors were employees under the NLRA). In order to do so, the Board must **assume** they are
   employees in order to exercise its jurisdiction, or else it would not have jurisdiction to hear their claims.
10  The Court should do likewise.

11  [17]    Indeed, the current record shows that, pursuant to Amazon's contract with drivers, Amazon
   exercises substantial control over its delivery drivers.  Amazon requires that drivers deliver packages on
12  time, ensure customers actually receive deliveries, return undeliverable packages to Amazon, be
   respectful and professional to customers and Amazon staff, and "follow all delivery instructions" Amazon
13  directs to drivers. <u>See</u> Dkt. 37-2, at p. 9.  Drivers' failure to meet any of these policies can result in
   termination. <u>Id.</u> at 3.  Drivers must also set their weekly availability online and then either sign up for
   shifts, or are assigned shifts, in two or four-hour increments. <u>See</u> Ex. 1 Dkt. 20-2 ("Wehmeyer Decl.") at ¶
14  5; <u>id.</u>, Dkt. 20-3 ("Rittman Decl.") at ¶ 5. The drivers report to Amazon's warehouse where Amazon
   assigns them a route and provides them with a number of packages, which they must then scan and
15  deliver. Dkt. 20-2 ("Wehmeyer Decl.") at ¶ 6.  Amazon constantly monitors the drivers' performance,
   including whether drivers have worked their assigned shifts, how quickly they make their deliveries, and
16  the drivers' customer service.  For example, Amazon tracks drivers' "reliability rating", which is a
   measure of how many two-hour delivery shifts a driver has completed out of the last twenty (20) for which
   he or she was scheduled. <u>Id.</u> at ¶ 11; 216(b); Dkt. 20-6 ("Evanoff Decl.") at ¶ 10.  Amazon also tracks
17  drivers' "successful delivery rating", which is a percentage of the orders a driver delivered on time in their
   last 100 orders. Dkt. 20-2 ("Wehmeyer Decl.") at ¶ 11.  If drivers' performance does not meet Amazon's
18  standards, they may receive warnings and can be subject to termination. <u>Id.</u> at ¶¶ 11-12; Dkt. 20-3 at ¶
   11; Dkt. 20-4 ("Carroll Decl.") at ¶ 12; D,t. 20-5 ("Pearce Decl.") at ¶ 12; Dkt. 20-6 ("Evanoff Decl.") at ¶¶
   11-12; Dkt. 20-7 ("Kogan Decl.") at ¶¶ 9-11; <u>see also</u> Ex. 8, Ex. 9.  This high level of multi-faceted control
19  supports a finding that Amazon employs the drivers.
      In determining whether workers are employees under the NLRA, the NLRB considers the factors
20  enumerated in the Restatement (Second) of Agency § 220. <u>Roadway Package Sys., Inc.</u>, 326 NLRB 842,
   849-850 (1998) (which are similar to the factors considered by California courts under the <u>Borello</u> test
21  (see <u>S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations</u>, 48 Cal. 3d 341, 769 P.2d 399 (1989) as well
   as the factors considered under the FLSA (see 29 U.S.C. § 201 <i>et. seq</i>).  These factors all uniformly point
22  toward a finding of employee status here.  For example, rather than being engaged in a distinct
   occupation, drivers further Amazon's package delivery business.  As discussed above, Amazon closely
   supervises Drivers' deliveries of Amazon packages.  There is essentially no skill required to become a
23  delivery driver; drivers can perform deliveries using public transportation, meaning they do not even need
   to know how to drive a car or ride a bike. <u>See</u> Dkt. 37-2 at p. 9 (listing requirements).  Although drivers
   provide their own modes of transportation, Amazon provides an app and the infrastructure which is
   essential for the endeavor.  Amazon and drivers' working relationship is indefinite in duration. <u>Id.</u> at 3;
24  <u>Alexander</u>, 765 F.3d at 996 (contracts of indefinite length indicate employment).  Payment is by the hour,

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

### ii.  The Ability of Drivers to Opt-Out of Amazon's Arbitration Clause Does Not Save Rescue It from Illegality

Amazon also argues, relying on <u>Johnmohammadi v. Bloomingdale's, Inc.</u>, 755 F.3d 1072 (9th Cir. 2014), that because its arbitration agreement had an opt-out provision, the class action waiver does not violate the NLRA. Dkt. 36 at 22.[18]  However, Amazon is wrong, as the NLRB has now explicitly held that the existence of an "opt-out" clause does not rescue an arbitration clause containing a class action waiver from illegality under the NLRA, and contrary to Amazon's contentions, this issue remains an open question in this Circuit.

After the Ninth Circuit issued <u>Bloomingdale's</u>, the NLRB held in <u>On Assignment Staffing Servs., Inc.</u>, 2015 WL 5113231 (Aug. 27, 2015), that Section 7 rights are non-waivable, even by "voluntary" contract, and that an opt-out provision like Amazon's burdens those rights by requiring workers to take affirmative steps to preserve their ability to engage in concerted activity and by requiring workers to reveal their desire to opt-out to their employer.  As the Ninth Circuit made clear in <u>Morris</u>, "[t]he Board's reasonable interpretations of the NLRA command deference" under the <u>Chevron</u> framework. <u>Morris</u>, 2016 WL 4433080, at *3.  Pursuant to <u>Chevron</u>, "if a statute is ambiguous, and if the implementing agency's construction is reasonable," then a court <u>must</u> "accept the agency's construction of the statute, even if the agency's reading

---

not per delivery.  There is essentially no opportunity for profit and/or loss.  And finally, Amazon is a business, as contrasted with a household hiring a plumber to fix the toilet. The contract between Amazon and drivers does state that drivers are independent contractors. Dkt. 37-2 at pp. 1-2.  However, the Ninth Circuit has made clear that the label the parties place on a working relationship is not dispositive where, as here, the economic realities indicate that the worker is an employee.  <u>Real</u>, 603 F.2d at 755.

[18]      In <u>Bloomingdale's</u>, the Ninth Circuit said that an arbitration agreement that had an opt-out provision would not violate the NLRA.  However, in that case (which predated <u>Morris</u>), the Ninth Circuit did not actually reach the question of whether a class waiver in an arbitration agreement violates the NLRA in the first place.  Thus, it was premature for the court to address there what effect an opt-out provision would have on NLRA rights, before the Ninth Circuit had even decided whether to adopt the NLRB's conclusion in <u>D.R. Horton</u>, and the conclusion itself is thus arguably dicta.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1  differs from what the court believes is the best statutory interpretation." <u>Cuomo v.</u>

2  <u>Clearing House Ass'n, L.L.C.</u>, 557 U.S. 519, 538 (2009).

3      Here, the NLRB's decision in <u>On Assignment Staffing</u> constitutes an intervening

4  agency interpretation of a statute entitled to <u>Chevron</u> deference, which displaces the

5  Ninth Circuit's prior holding in <u>Bloomindale's</u>, 755 F.3d 1072.  In <u>Bloomingdale's</u>, the

6  Court was not asked to defer to the NLRB's interpretation because, at the time, *there*

7  *was no Board opinion on this question to defer to* on this issue; however, now, in light of

8  <u>On Assignment</u>, <u>Chevron</u> deference requires the Court to hold that opt-out provisions do

9  *not* rescue arbitration agreements containing class action waivers from illegality.[19]

10      Amazon also relies on footnotes in <u>Mohamed v. Uber Technologies, Inc.</u>, 836

11  F.3d 1102, 1112 n.6 (9th Cir. 2016), and <u>Morris</u>, 834 F.3d at 982 n.4, to support its

---

[19]  The Board's decision in <u>On Assignment</u> is eminently reasonable because it flows from two fundamental principles regarding employees' rights under Section 7 of the NLRA. First, Section 7 not only proscribes employer conduct that forecloses employees' ability to exercise their Section 7 rights, <u>see</u> <u>Morris</u>, 2016 WL 4433080, at *11, but also prohibits conduct that <u>burdens</u> employees' Section 7 rights. <u>See</u> 29 U.S.C. § 158(a)(1) ("It shall be an unfair labor practice for an employer to *interfere with, restrain*, or coerce employees in the exercise of the rights guaranteed in Section 7 of the NLRA (emphasis added)); <u>On Assignment</u>, 2015 WL 5113231, at *7-8 (finding concerted action waiver with opt-out provision in arbitration agreement still violated the NLRA because of "the fact that employees must take any steps to preserve their Section 7 rights <u>burdens</u> the exercise of those rights" (emphasis added)). Second, because employees' rights under Section 7 are "substantive," those rights "cannot be waived in an arbitration agreement." <u>Morris</u>, 2016 WL 4433080, at *7; <u>id.</u> (holding that "the rights established in § 7 of the NLRA—including the right of employees to pursue legal claims together—are substantive"). Viewed within the context of these principles, <u>On Assignment</u> is reasonable; when employers seek to enforce concerted action waivers, they "interfere" with and "burden" employees' un-waivable right to collectively litigate against their employer.

    The only three courts to address <u>On Assignment</u> have *all* held that the Board's interpretation of the NLRA is reasonable and entitled to deference.  <u>See</u> <u>In re: Fresh & Easy, LLC</u>, 2016 WL 5922292, at *10-12 (Bankr. D. Del. Oct. 11, 2016) (adopting <u>On Assignment</u> and holding that "the fact that the Plaintiff was given an opportunity to opt out of the Arbitration Agreement does not alter the Court's determination that the Class Waiver is unenforceable" under the NLRA); <u>Curtis v. Contract Mgmt. Servs.</u>, 2016 WL 5477568, at *6 (D. Me. Sept. 29, 2016) (finding "the NLRB's interpretation of the NLRA[in <u>On Assignment</u>] on th[e] issue [of whether an opt-out provision can save a concerted action waiver in an employment contract] to be not only 'permissible' but 'eminently reasonable'"); <u>Tigges v. AM Pizza, Inc.</u>, 2016 WL 4076829, at *16 (D. Mass. July 29, 2016) (holding that "the NLRB's interpretation of Section 7 [in <u>On Assignment</u>] … is a reasonable one, in light of the statute's text and purpose").  And the Seventh Circuit, without directly addressing <u>On Assignment</u>, independently held in <u>Lewis v. Epic Sys. Corp.</u>, 823 F.3d 1147, 1155 (7th Cir. 2016), that "an arbitration agreement limiting Section 7 rights [i]s a <u>per se</u> violation of the NLRA and [can]not be legalized by showing the contract was entered into without coercion" (internal citation omitted).

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

argument that an opt-out provision can save a concerted action waiver from violating the NLRA.  However, the Ninth Circuit, in denying *en banc* review in <u>Mohamed</u>, recently specifically modified the decision to **delete** this dicta from footnote 6.  <u>See</u> <u>Mohamed v. Uber Technologies, Inc.</u>, 2016 WL 7470557, at *1 (9th Cir. Dec. 21, 2016).  And the footnote in the <u>Morris</u> opinion suggesting that an opt-out provision could save an arbitration agreement from illegality, 834 F.3d at 982 n.4, was clearly dicta, as that case did not even involve an agreement containing an opt-out provision.[20]  Thus, the question of whether an opt-out provision rescues an arbitration agreement with a class action waiver from illegality under the NLRA is an open question in the Ninth Circuit, and for the reasons discussed above, the Court should hold that Amazon's arbitration clause is unenforceable, even though it has an opt-out clause.[21]

### b. In Addition, Amazon Drivers Are Exempt from the Federal Arbitration Act Because They Are Transportation Workers Engaged in Interstate Commerce

Amazon's request that the Court compel Plaintiff Lawson to arbitration, and narrow the putative class to drivers who opted out of arbitration, must also be denied on the ground that its drivers are exempt from arbitration altogether because they qualify for the "transportation worker" exemption to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1.  Section 1 of the FAA exempts from the Act's coverage all "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.  To qualify for the Section 1 exemption,

---

[20]    The only authority relied upon for this proposition in <u>Morris</u> is <u>Bloomingdale's</u>, which as Plaintiffs explain above, is no longer good law.

[21]    The question of whether an opt-out provision rescues an arbitration agreement containing a class waiver from illegality is now pending before the Ninth Circuit in <u>O'Connor v. Uber Technologies, Inc.</u>, No. 15-17420 (9th Cir.), where the NLRB has submitted an amicus in support of the plaintiffs' argument that it does not, <u>see</u> <u>id.</u>, Dkt. 65 (<u>see</u> NLRB amicus brief attached here as **Exhibit C**).

1   an individual must work for a business pursuant to (1) a "contract of employment," (2)

2   be a "transportation worker," and (3) be "engaged in interstate commerce."  See Harden

3   v. Roadway Package Sys., Inc., 249 F.3d 1137, 1140 (9th Cir. 2001) (citing Circuit City

4   Stores, Inc. v. Adams, 532 U.S. 105, 118 (2001)).  Amazon drivers meet all three

5   criteria and are therefore exempt from the FAA.

6       First, Amazon drivers are "transportation workers," because they are workers

7   whose primary duty is to physically transport goods on behalf of a company that

8   transports goods.  See, e.g., Int'l Broth. of Teamsters Local Union No. 50 v. Kienstra

9   Precast, LLC, 702 F.3d 954, 957 (7th Cir. 2012) (holding truck drivers who delivered

10  goods are transportation workers); Lenz v. Yellow Transp., Inc., 431 F.3d 348, 351 (8th

11  Cir. 2005) (stating that individuals who drive delivery trucks for a company in the

12  transportation industry are "indisputably … transportation worker[s]"); Hill v. Rent-A-Ctr.,

13  Inc., 398 F.3d 1286, 1289 (11th Cir. 2005) ("The emphasis, therefore, was on a class of

14  workers in the transportation industry, rather than on workers who incidentally

15  transported goods ….").[22]  Here, the sole purpose of the drivers' work for Amazon is to

16  transport goods.  Although Amazon, as a company, serves multiple functions, one of its

17  primary functions is the transportation of goods.  The creation of Amazon Logistics, Inc.,

18  a wholly-owned subsidiary of Amazon, Inc. whose only purpose is to transport the

19  goods sold by Amazon, underscores Amazon's position as a transportation company.

20  Accordingly, Amazon delivery drivers are transportation workers.

21  [22]     See also Zamora, 2008 WL 2369769, at *6 ("In order to be considered a transportation worker, an
    employee must actually be employed in the transportation industry, that is, an industry directly involved in
22  the movement of goods."); Tran v. Texan Lincoln Mercury, Inc., 2007 WL 2471616, at *5 (S.D. Tex. Aug.
    29, 2007) ("[A] transportation worker is someone who works in the transportation industry-an industry
23  whose mission it is to move goods."); Veliz v. Cintas Corp., 2004 WL 2452851, at *6-7 (N.D. Cal. Apr. 5,
    2004), modified on reconsideration, 2005 WL 1048699 (N.D. Cal. May 4, 2005) ("Plaintiffs who are
    personally responsible for transporting goods, no matter what industry they are in, are 'transportation
24  workers' under the FAA exemption.").

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    Second, Amazon drivers are clearly engaged in interstate commerce because

2    they transport goods in the flow of interstate commerce.  See Circuit City, 532 U.S. at

3    121 (noting that the phrase "engaged in interstate commerce" "means engaged in the

4    flow of interstate commerce" and "denotes only persons or activities within the flow of

5    interstate commerce") (quotation marks and citations omitted).  Indeed, it is difficult to

6    imagine goods more in the flow of interstate commerce than goods delivered to

7    customers across the country from Amazon, a behemoth in the international retail

8    market that sends and delivers goods throughout the country to people's homes and

9    businesses.[23]  When drivers transport the goods sold by Amazon on the last leg of their

10   interstate journeys from manufacturers to customers, the drivers are undoubtedly

11   "engaged in interstate commerce."

12   Finally, the Amazon drivers qualify for the Section 1 exemption from the FAA

13   because they work for Amazon pursuant to "contracts of employment."  Courts have

14   held this exemption applies regardless of whether the contract classifies the workers as

15   "independent contractors" (i.e. holding "contracts of employment" to include

16   _____

17   [23]     Amazon may attempt to argue that the drivers cannot qualify for the Section 1 exemption
     because they themselves do not cross state lines.  However, as explained by the Third Circuit, "had
18   Congress intended [the Section 1 exemption] to cover only those workers who physically transported
     goods across state lines, it would have phrased the FAA's language accordingly." Palcko v. Airborne
19   Express, Inc., 372 F.3d 588, 593–94 (3d Cir. 2004).  Workers who remain within the boundaries of state
     are "engaged in interstate commerce" so long as they transport goods "'in the flow of interstate
     commerce.'" Christie v. Loomis Armored US, Inc., 2011 WL 6152979, at *3 (D. Colo. Dec. 9, 2011)
     (quoting Siller v. L & F Distributors, Ltd., 109 F.3d 765 (5th Cir.1997)); see also Circuit City Stores, Inc. v.
20   Adams, 532 U.S. 105, 121 (2001) (noting that the phrase "engaged in interstate commerce" "means
     engaged in the flow of interstate commerce" and "denotes only persons or activities within the flow of
21   interstate commerce") (quotation marks and citations omitted).  In line with this principle, a supervisor at
     an international package delivery company who supervised last-mile delivery drivers but did not transport
22   any packages herself, Palcko, 372 F.3d at 594, and a delivery driver who never crossed state lines but
     delivered currency, a good "undisputedly in the stream of interstate commerce," Christie v. Loomis
     Armored US, Inc., 2011 WL 6152979, at *3 (D. Colo. Dec. 9, 2011), have both been found to be "engaged
23   in interstate commerce." See also Bacashihua v. U.S. Postal Serv., 859 F.2d 402, 405 (6th Cir. 1988)
     (postal worker who did not cross state lines engaged in interstate commerce because postal workers are
24   "responsible for dozens, if not hundreds, of items of mail moving in interstate commerce on a daily
     basis.") (internal quotation marks omitted)).

PLTFS.' OPP'N TO DEFS.' MOTION TO DISMISS - 21

1  independent contractor contracts).  See, e.g., Owner-Operator Indep. Couriers Ass'n v.

2  C.R. England, Inc., 325 F. Supp. 2d 1252, 1258 (D. Utah 2004) (presuming that

3  independent-contractor truck drivers perform work pursuant to contracts of

4  employment).  This approach is fully consistent with the understanding of the phrase

5  "contracts of employment" at the time Congress passed the FAA, which, in 1925, meant

6  a contract to perform work, not a contract between an employer and employee.[24]  Thus,

7

---

[24]    In 1925, independent contractors were consistently characterized as "employed."  See, e.g.,
Jackman v. Rosenbaum Co., 260 U.S. 22, 30 (1922) ("[T]he party employed was an independent
contractor."); Arthur v. Texas & P. Ry. Co., 204 U.S. 505, 516-17 (1907) (referring to "an independent
contractor" as "employed … to do work upon the freight"); Woodward Iron Co. v. Limbaugh, 276 F. 1, 2
(5th Cir. 1921) (referring to "[t]he work which Waters was employed to do as an independent contractor.");
James Griffith & Sons Co. v. Brooks, 197 F. 723, 725 (6th Cir. 1912) ("[T]he company… employed him as
an independent contractor."); The Indrani, 101 F. 596, 598 (4th Cir. 1900) ("If an independent contractor
is employed to do a lawful act, and in the course of the work does some casual act of negligence, the
common employer is not answerable." (internal quotation marks omitted)).
        Those who hired independent contractors were described as "employers."  See, e.g., John L.
Roper Lumber Co. v. Hewitt, 287 F. 120, 121 (4th Cir. 1923) ("[W]hen a person contracts with another to
do work … not subject to the employer's control or direction, except as to the results to be obtained, the
employer is not answerable to a third person for injuries resulting from the negligence of the contractor.");
Pierson v. Chicago, R.I. & P. Ry. Co., 170 F. 271, 274 (8th Cir. 1909) ("An independent contractor is one
who renders service in the course of an occupation representing the will of his employer only as to the
result of his work and not as to the means by which it is accomplished."); Toledo Brewing & Malting Co. v.
Bosch, 101 F. 530, 531 (6th Cir. 1900) ("[T]his right was denied upon the ground that the acts complained
of as negligent were those of an independent contractor, for which the defendant, as employer, was not
responsible.").
        Moreover, at the time, the work of an independent contractor was called "employment."  See,
e.g., Thomas M. Cooley, A Treatise on the Law of Torts 1098 (3rd.ed. 1906).  In fact, many courts defined
independent contractors as workers "exercising employment."  See, e.g., Prest-O-Lite Co. v. Skeel, 182
Ind. 593 (1914); Alexander v. R. A. Sherman's Sons Co., 86 Conn. 292, 297 (1912); Harmon v. Ferguson
Contracting Co., 159 N.C. 22 (1912); Karl v. Juniata Cty., 206 Pa. 633 (1903); see also General
Discussion of the Nature of the Relationship of Employer and Independent Contractor, 19 A.L.R. 226,
227-232, 243 (1922) (citing numerous cases).  Numerous courts throughout the country specifically used
the phrase "contract of employment" to refer to employers' contracts with independent contractors.  See,
e.g., Tankersley v. Webster, 116 Okla. 208 (1925) ("[T]he contract of employment . . . conclusively shows
that Casey was an independent contractor."); Lindsay v. McCaslin, 123 Me. 197 (1923) ("When the
contract of employment has been reduced to writing, the question whether the person employed was an
independent contractor or merely a servant is determined by the court as a matter of law."); Waldron v.
Garland Pocahontas Coal Co., 89 W. Va. 426 (1921) ("Whether a person performing work for another is
an independent contractor depends upon a consideration of the contract of employment …."); U.S. Fid. &
Guar. Co. of Baltimore, Md., v. Lowry, 231 S.W. 818, 822 (Tex. Civ. App. 1921) (explaining that whether a
person is an independent contractor or employee depends upon whether the "contract of employment"
gives the employer the right "to control the manner and continuance of the particular service and the final
result"); Luckie v. Diamond Coal Co., 41 Cal. App. 468, 477 (1919) (explaining that a person working
under a "written contract of employment" could be either "an independent contractor or [a] servant,"
depending on how the work was actually performed); Hamill v. Territilli, 195 Ill. App. 174, 176 (Ill. App. Ct.
1915) ("Appellant strongly contends that under the contract of employment Territilli and Scully were

---

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

for purposes of determining whether Amazon drivers can be subject to arbitration under

the FAA, the Court need not even delve at this juncture into the question of whether the

drivers are employees or independent contractors.  Instead, the Court can either

assume that the drivers work pursuant to "contracts of employment", or as with the

question of whether the drivers are protected by the NLRA, the Court could rely on the

record already developed in this case, or hold a hearing, to make a preliminary

determination that the Amazon drivers are employees and thus exempt from the FAA

under Section 1.  See Doe v. Swift Transp. Co., 2017 WL 67521, at *1 (D. Ariz. Jan. 6,

2017) (making preliminary finding on this issue).

Because Amazon drivers satisfy all requirements of the "transportation worker"

exemption from the FAA, the Court must deny Amazon's motion to enforce its

arbitration clause.[25]

---

independent contractors for whose negligence it was not responsible, while appellee urges the
contrary.").

Finally, as the Supreme Court explained in Circuit City, the Section 1 exemption emanated from
Congress' concerns regarding "transportation workers and their necessary role in the free flow of goods."
532 U.S. at 121.  Given that purpose, Congress would have undermined the purpose of the exemption by
distinguishing between transportation workers who were independent contractors and employees.  A
truck driver, package deliverer, railroad conductor, or sailor is just as necessary to "the free flow of
goods"—and just as able to interrupt that "free flow of goods" by striking—if he is an independent
contractor as he is if he meets a specialized definition of "employee" used for some other purpose.

[25]     Amazon may argue that, even if the drivers are exempt from the FAA, the Court can compel
arbitration under state law.  The Court should reject such an argument for two reasons.  First, the Terms
of Service includes a choice of law provision that states that the contract shall be interpreted according to
Washington law, with the exception of Section 11, the arbitration clause, "which is governed by the
Federal Arbitration Act."  Terms of Service at 6.  The choice of law provision thus makes clear that
arbitration can only be compelled pursuant to the FAA.  Second, even if Washington law or California law
(the state of residence for Plaintiff Lawson) applied (which they do not), Amazon could not compel
arbitration pursuant to state law.  The Washington Uniform Arbitration Act exempts from its ambit disputes
between employers and employees.  See Wash. Rev. Code Ann. § 7.04A.030(4) ("This chapter does not
apply to any arbitration agreement between employers and employees ….").  Amazon's citation to Palcko,
372 F.3d 588, for the proposition that an employee of a transportation company can be compelled to
arbitration under Washington law, Dkt. 36. at 17 n.10, is simply wrong; Palcko was decided in 2004, but
Washington did not adopt its current statute regarding arbitration, including the exemption for employment
disputes, until 2006.  See 2005 Wash. Legis. Serv. Ch. 433 § 3 (S.H.B. 1054).  Moreover, under
California law (if the FAA were held not to apply), arbitration agreements containing class action waivers
are illegal as contrary to public policy, see Gentry v. Superior Court, 42 Cal. 4th 443, 466 (2007).

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

**E.  The Court Should Not Limit Plaintiffs' Recovery Under the Seattle Minimum Wage Ordinance to Violations Occurring After April 1, 2016**

Finally, Amazon contends that because individuals could not file suit in court to enforce the Seattle Minimum Wage Ordinance until April 1, 2016, Plaintiffs should be barred from recovering for violations of the Ordinance prior to that date. Seattle Mun. Code § 14.19.110(A).  Amazon is mistaken, however, that the Ordinance's limit on when an individual could first sue for a violation of the Ordinance narrowed the period of time for which an aggrieved individual can *recover* for violations of the Ordinance.  In fact, the Ordinance, which became effective April 1, 2015, explicitly provides that a prevailing employee "may be awarded reasonable attorney fees and costs and such legal or equitable relief as may be appropriate ***to remedy the violation*** including, without limitation, the payment of any unpaid wages plus interest due to the person …." Id. (emphasis added).  A violation of the Act could begin accruing as early as April 1, 2015, when the Ordinance went into effect; thus, by giving workers the right "to remedy the violation," the Ordinance grants workers like the Plaintiffs the ability to recover for violations of the Ordinance going back as early as April 1, 2015.

**III. CONCLUSION**

For the foregoing reasons, the Court should deny Amazon's motion.[26]

---

[26]  Plaintiffs do not contest that they may not seek injunctive relief pursuant to the FLSA or the WMWA and therefore are willing to stipulate to the dismissal of this aspect of their claims only.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    Dated:  January 13, 2017                Respectfully submitted,

2                                            BERNADEAN RITTMANN, FREDDIE
                                             CARROLL, JULIA WEHMEYER, and RAEF
3                                            LAWSON, individually and on behalf of all
                                             others similarly situated,
4
                                             By their attorneys,
5
                                             ____/s/ Shannon Liss-Riordan_____
6                                            Shannon Liss-Riordan, *pro hac vice*
                                             Harold Lichten, *pro hac vice*
7                                            Adelaide Pagano, *pro hac vice*
                                             Lichten & Liss-Riordan, P.C.
8                                            729 Boylston Street, Suite 2000
                                             Boston, MA 02116
9                                            Tel: (617) 994-5800
                                             sliss@llrlaw.com; hlichten@llrlaw.com;
10                                           apagano@llrlaw.com

11                                           Michael C. Subit, WSBA #29189
                                             Frank Freed Subit & Thomas LLP
12                                           705 Second Avenue, Suite 1200
                                             Seattle, WA 98104-1798
13                                           Tel: (206) 682-6711
                                             msubit@frankfreed.com

14

15

16

17

18

19

20

21

22

23

24

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Suzanne Thomas
K&L Gates
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
Suzanne.thomas@klgates.com

Richard G. Rosenblatt
James Walsh Jr.
Morgan Lewis Bockius
502 Carnegie Center
Princeton, NJ 08540
rrosenblatt@morganlewis.com
james.walsh@morganlewis.com

Meredith Riccio
Allison N. Powers
Morgan Lewis Bockius
77 W. Wacker Drive 5th Floor
Chicago, IL 60601
Allison.powers@morganlewis.com
Meredith.riccio@morganlewis.com

and I hereby certify that there are no parties receiving this notice via US Mail.

DATED this 13th day of January, 2017.

_/s/ Shannon Liss-Riordan_
Shannon Liss-Riordan, Esq.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800