1   **HON. JOHN C. COUGHENOUR**

2

3

4

5

6

7   **UNITED STATES DISTRICT COURT**
    **WESTERN DISTRICT OF WASHINGTON**

8

9

10  BERNADEAN RITTMANN, FREDDIE
    CARROLL, JULIA WEHMEYER, and RAEF

11  LAWSON individually and on behalf of all
    others similarly situated,

12                                                  Case No. 2:16-cv-01554-JCC

13            Plaintiffs,                           DEFENDANTS' OPPOSITION TO
                                                    PLAINTIFFS' MOTION FOR NOTICE
14      v.                                          TO BE ISSUED TO SIMILARLY
                                                    SITUATED EMPLOYEES PURSUANT
15  AMAZON.COM, INC., and AMAZON                    TO 29 U.S.C. § 216(b)
    LOGISTICS, INC.,
16                                                  NOTE ON MOTION CALENDAR:
              Defendants.                           January 20, 2017
17

18

19                                                  **ORAL ARGUMENT REQUESTED**

20

21

22

23

24

25  OPPOSITION TO NOTICE MOTION
    NO. 2:16-CV-01554-JCC
26

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## TABLE OF CONTENTS

I       INTRODUCTION ......................................................................................... 1

II.      SUMMARY OF RELEVANT FACTS ......................................................... 1

    A.      The Amazon Flex Program ............................................................... 1

    B.      Amazon Flex Independent Contractor Terms of Service ..................... 3

III.     ARGUMENT ................................................................................................ 3

    A.      The Analysis Required For FLSA Section 216(b) Certification Is Far More Extensive Than The "Rubber Stamp" Urged By Plaintiffs .................................. 3

    B.      Plaintiffs Are Not "Similarly Situated" To Absent DPs ......................................... 6

        1.      The Applicable Economic Realities Test Focuses On A Workers' Economic Dependence Upon The Entity For Which Workers Provide Services; That Analysis Presents Substantial Individualized Questions Not Suitable For Collective Action Treatment In The Present Circumstances .................................. 6

        2.      Plaintiffs' Vague Cookie-Cutter Declarations Reflect Circumstances Substantially Different From Those To Which Other DPs Attest .................................................................. 8

        3.      Plaintiffs Are Not Similarly Situated To The Vast Majority Of Delivery Partners Who Must Arbitrate Their Claims ........................... 15

    C.      Even If the Court Allows Notice, the Court Should Order the Parties to Meet and Confer Regarding the Contents and Means of Distributing the Notice .................................................. 17

IV.      CONCLUSION ............................................................................................ 18

OPPOSITION TO NOTICE MOTION
NO. 2:16-CV-01554-JCC                                    i

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Adami v. Cardo Windows, Inc.*,
5
    299 F.R.D. 68 (D.N.J. 2014) ...................................................................16

6

*Amendola v. Bristol-Myers Squibb Co.*,
    558 F. Supp. 2d 459 (S.D.N.Y. 2008) ......................................................5
7

8

*Andel v. Patterson-UTI Drilling Co., LLC*,
    280 F.R.D. 287 (S.D. Tex. 2012) ..............................................................7

9

*Bamgbose v. Delta-T Group, Inc.*,
10
    684 F. Supp. 2d 660 (E.D. Pa. 2010) .......................................................7

11

*Barnes v. Abandonment Consulting Servs., L.L.C.*,
    No. 4:12-CV-01399, 2013 WL 3884198 (S.D. Tex. July 26, 2013) ........8
12

13

*Benson v. W. Coast Constr.*,
    No. C06-1630RSM, 2007 WL 445456 (W.D. Wash. Feb. 6, 2007).........4

14

*Bernard v. Household Int'l, Inc.*,
15
    231 F. Supp. 2d 433 (E.D. Va. 2002) ......................................................9

16

*Briggs v. United States*,
    54 Fed. Cl. 205 (Fed. Cl. 2002) ..............................................................15

17

*Christianson v. NewPark Drilling Fluids, LLC*,
18
    No. CIV.A. H-14-3235, 2015 WL 1268259 (S.D. Tex. Mar. 19, 2015) ...............................7

19

*Colson v. Avnet, Inc.*,
20
    687 F. Supp. 2d 914 (D. Ariz. 2010) ...................................................4, 5

21

*Daskam v. Allstate Corp.*,
    No. C11-0131RSL, 2012 WL 4420069 (W.D. Wash. Sept. 24, 2012)....6
22

23

*Daughtery v. Encana Oil & Gas (USA), Inc.*,
    838 F. Supp. 2d 1137 (D. Colo. 2011).....................................................16

24

*Davis III v. Westgate Planet Hollywood Las Vegas, LLC.*,
25
    No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735 (D. Nev. Jan. 12, 2009) ...............................5

26

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

*Delano v. Mastec, Inc.*,
    8:10-cv-320-T-27MAP, 2011 WL 2173864 (M.D. Fla. June 2, 2011) ...................................16

*Demauro v. Limo, Inc.*,
    No. 8:10-cv-413-T-33AEP, 2011 WL 9191 (M.D. Fla. Jan. 3, 2011).....................................7

*Douglas v. Xerox Bus. Servs. LLC*,
    No. C12-1798-JCC, 2014 WL 3396112 (W.D. Wash. July 10, 2014) ....................................4

*Epic Systems Corp. v. Lewis*
    (No. 16-285)............................................................................................................................15

*Ernst & Young LLP v. Morris*
    (No. 16-300)............................................................................................................................15

*Fischer v. Kmart Corp.*,
    Case *No. 13-4116*, 2014 WL 3817368 (D. N.J. August 4, 2014) ...........................................16

*Hanley v. Hand N'Heart, LLC*,
    No. 06-71, 2007 WL 201088 (E.D. Va. Jan. 22, 2007) .........................................................9

*Hoffman-LaRoche, Inc. v. Sperling*,
    493 U.S. 165 (1989)..........................................................................................................4, 15

*Holmes v. Quest Diagnostics, Inc.*,
    No. 9:11-cv-80567, Dkt. #102 at p. 7 (S.D. Fla. June 14, 2012) ...........................................4

*Hughes v. Twp. of Franklin*,
    No. 13-3761, 2014 WL 1428609 (D.N.J. Apr. 14, 2014) .....................................................18

*Litty v. Merrill Lynch & Co.*,
    No. CV 14-0425 PA..............................................................................................................5

*Moba v. Total Transp. Servs. Inc.*,
    16 F. Supp. 3d 1257, 1263–64 (W.D. Wash. 2014).............................................................6

*Morales v. Amazon.com LLC, et al*,
    Case No. 3:16-cv-06462-THE (N.D. Cal.) ......................................................................2, 4

*Morangelli v. Chemed Corp.*,
    No. 10 Civ. 0876 (BMC), 2010 U.S. Dist. LEXIS 146149 (E.D.N.Y. Jun. 15,
    2010) .....................................................................................................................................16

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J. 08540
+1.609.919.6600

*Morden v. T-Mobile USA, Inc.*,
   No. 05-2112, 2006 WL 2620320 (W.D. Wash. Sept. 12, 2006).................................18

*NLRB v. Murphy Oil USA, Inc.*
   (No. 16-307).......................................................................................................15

*Parker v. Rowland Express, Inc.*,
   492 F. Supp. 2d 1159 (D. Minn. 2007).....................................................................9

*Pennington v. Integrity Communs., LLC*,
   No. 1:12-cv-5, 2013 WL 357516 (E.D. Mo. Jan. 29, 2013).........................................9

*Pfaahler v. Consultants for Architects, Inc.*,
   No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000)..........................................7

*Rudd v. T.L. Cannon Corp.*,
   2011 WL 831446 (S.D.N.Y. Jan. 4, 2011) ................................................................6

*Schiller v. Rite of Passage, Inc.*,
   Case No. 2:13-cv-0576-HR, 2014 WL 644565 (D. Ariz. Feb. 19, 2014)......................18

*Slavinski v. Columbia Ass'n*,
   *No.* CCB-08-890, 2011 WL 2119231 (D. Md. May 27, 2011)......................................9

*Stelmachers v. Maxim Healthcare Servs., Inc.*,
   No. 1:13-cv-01062 (N.D. Ga.), Dkt. #45 ..................................................................18

*Thornton v. Mainline Commc'ns, LLC*,
   No. 4:12CV479 .......................................................................................................8

*West v. Border Foods, Inc.*,
   No. 05-2525, 2006 WL 1892527 (D. Minn. July 10, 2006) .......................................15

*Woods, et al. v. Vector Mktng. Corp.*,
   No. C-14-0264 EMC, 2015 WL 1195893 (N.D. Cal. Mar. 16, 2015)..........................16

*Wynn v. Nat'l Broad. Co.*,
   234 F. Supp. 2d 1067 (C.D. Cal. 2002) .....................................................................5

STATUTES

9 U.S.C. § 4..............................................................................................................17

9 U.S.C. § 9..............................................................................................................17

OPPOSITION TO NOTICE MOTION
NO. 2:16-CV-01554-JCC                                     iv
                                                             MORGAN, LEWIS & BOCKIUS LLP
                                                                      502 Carnegie Center
                                                                      Princeton, N.J. 08540
                                                                        +1.609.919.6600

29 U.S.C. § 251(a)(1), (4), (7) ........................................................................................4

FLSA ..........................................................................................3, 4, 5, 6, 10, 15, 18

OPPOSITION TO NOTICE MOTION
NO. 2:16-CV-01554-JCC                          v

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## I.      INTRODUCTION

In their race to file their Notice Motion (Dkt. #20), Plaintiffs chose to rely on one-sided allegations (and a few scant and conclusory declarations).  In so doing, Plaintiffs provide **no** evidence pertaining to Delivery Partners (DPs) operating out of the vast majority of the **87** Amazon Flex facilities around the country.  A more balanced and fulsome record demonstrates Plaintiffs are not similarly situated to the tens of thousands of DPs they seek to represent.

While Defendants have had no opportunity to depose Plaintiffs or their few declarants, Defendants submit declarations from DPs who have delivered from nine stations, including some of the facilities serviced by Plaintiffs and their declarants. [1] Each of these DPs attests to circumstances extremely dissimilar from those recounted in Plaintiffs' threadbare declarations. While Plaintiffs paint a picture of constraints and control, their peers evidence all the hallmarks of independent contractor status.  In any event, they could not differ more.

Plaintiffs' Motion presumes this Court is a rubber stamp.  But certification and notice is no *fait accompli*.  There now is a record to scrutinize carefully.  Even under the standards for conditional "notice" certification, Plaintiffs have failed to prove that they are – or that anyone could be – similarly-situated enough to represent the far-flung, nationwide class of tens of thousands of DPs they seek to represent.  The Court should deny notice.

## II.      SUMMARY OF RELEVANT FACTS

### A.    The Amazon Flex Program

Amazon offers various products through Amazon websites and mobile applications.  Dkt. #37 at p. 2, ¶ 3. Large third-party delivery providers (*e.g.*, UPS) historically have delivered

---

[1] References to Defendants' Declarations in support of its Opposition are cited herein as "[Last Name] Decl. ¶ __."

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

products for Amazon.  *Id.* at ¶ 4. Amazon recently has supplemented those vendors with smaller

delivery service providers ("DSPs") (*e.g.*, Peach, Inc., a co-defendant in *Morales v. Amazon.com*

*LLC, et al*, Case No. 3:16-cv-06462-THE (N.D. Cal.) ("*Morales*"), which is the first-filed action

addressed in Amazon's pending Motion to Dismiss, Dkt. #36 at pp. 10-11, 14-15, and, now, DPs

crowdsourced  through  a  smartphone-application-based  program  known  as  Amazon  Flex.  *Id.*

DPs servicing Amazon Flex use personal vehicles or bicycles (or public transportation) to make

deliveries.  *Id.* at p. 9, ¶ 21. DPs decide when to provide services, subject to delivery volume.  *Id.*

at ¶ 22.  DPs can accept or reject any opportunity offered by Amazon.  Lumba Decl. 1/13/17 ¶ 5.

DPs can and do service other gig economy businesses. Dkt. #37 at p. 9 ¶ 23.[2]

Amazon  Flex  opened  on  a  "pilot"  basis  on  July  6,  2015  and  on  a  regular  basis  on

September 29, 2015. Dkt. #37, p. 10 at ¶ 28.  As of January 2017, Amazon Flex operates from 87

Amazon locations in 36 cities in 24 states.  Lumba Decl. 1/13/17 ¶ 4.  Amazon Flex DPs work

with one of two business segments of Amazon: Amazon Logistics ("AMZL" or "Logistics") or

Prime Now.   Through AMZL, Amazon Flex DPs deliver orders contained in Amazon brown

boxes or envelopes picked up from AMZL delivery stations.  *Id.* at ¶ 7. Through Prime Now,

DPs  deliver  traditional  Amazon.com  household  items  in  paper  bags,  can  deliver  restaurant

orders,  third-party  grocery  or  other  merchandise  orders,  and  orders  from  Amazon  Fresh,

depending on location.  *Id.* at ¶ 8. A customer can opt to have a Prime Now order delivered

within as little as one hour from the time an order is placed.  *Id.*  DPs currently are responsible

---

[2] *See, e.g.*, Tiemann Decl. ¶ 12 (drives for Lyft); Craft Decl. ¶ 9 (Uber); Prevette Decl. ¶ 2 (UberEats and Favor); Huynh Decl., Dkt. #43 at p. 2, ¶ 4 (Uber, Lyft, and Doordash); Dkt. #36 at p. 11 n.2 (Plaintiff Lawson has driven for and filed claims against Uber, GrubHub, Jolt Delivery, and Postmates).

OPPOSITION TO NOTICE MOTION
NO. 2:16-CV-01554-JCC                          2

for only a subset of "last-mile" deliveries – *i.e.*, the last leg of a delivery to the customer.  The rest remains with other third-party delivery providers (*e.g.*, UPS) with which Amazon has traditionally contracted and other DSPs. *Id.* at ¶ 9.

### B.       Amazon Flex Independent Contractor Terms of Service

The vast majority of DPs to whom Plaintiffs seek to send notice cannot join this case because they accepted individual arbitration agreements. Dkt. #36 at pp. 11-14, 19-30. Specifically, all DPs have agreed to the Amazon Flex Independent Contractor Terms of Service ("TOS"), which contain an arbitration provision.  *Id.* at pp. 3-6.  As explained in Defendants' Motions to Dismiss and for Relief from Deadlines (Dkt. #s 36, 39, & 42), all of the many thousands of DPs who currently participate (and many who no longer participate) in the Amazon Flex Program could have opted-out of the arbitration provision.  Only 164 DPs did so, however, as of January 2017.  Lumba Decl. 1/13/17 ¶15. The right to opt out is clear and easily exercised, as evidenced by the fact that Plaintiffs Rittmann, Carroll, and Wehmeyer opted-out and are free to pursue their claims in court (as can the other 161 DPs who opted out of arbitration).  Plaintiff Lawson and the thousands of other DPs who accepted arbitration agreements cannot proceed in this court.

### III.      ARGUMENT

### A.       The Analysis Required For FLSA Section 216(b) Certification Is Far More Extensive Than The "Rubber Stamp" Urged By Plaintiffs.

Almost 70 years ago, in the wake of a Supreme Court misinterpretation of legislative intent behind the FLSA and an ensuing opportunistic explosion of FLSA litigation (not unlike what the federal courts face today), Congress, under the title of "Representative Actions

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

Banned," amended 29 U.S.C. § 216(b).  That amendment limited FLSA actions to individuals who affirmatively opt-in because, Congress declared, "[T]he courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged."  29 U.S.C. § 251(a)(1), (4), (7); *see also Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (recounting legislative history).  Adherence to these concerns requires careful scrutiny before authorizing Plaintiffs' counsel to use this Court's imprimatur to solicit claims, especially before this Court even has determined that they have stated a cognizable claim or if this is the appropriate Court to hear this action – as opposed to the *Morales* court in California.  *See, e.g.*, *Holmes v. Quest Diagnostics, Inc.*, No. 9:11-cv-80567, Dkt. #102 at p. 7 (S.D. Fla. June 14, 2012) (noting that "**if the Plaintiffs could obtain conditional certification (and increase the likelihood of extracting a settlement) against a national company merely by submitting a handful of boilerplate declarations, that would 'present a ready opportunity for abuse.**'") (emphasis added) (attached as Exh. A to Walsh Declaration 1/13/17). Cognizant of legislative history, the *Sperling* Court admonished that "courts must be scrupulous to respect judicial neutrality."  493 U.S. at 174.

Plaintiffs must prove that they are "similarly situated" to those to whom they seek to send notice.  29 U.S.C. § 216(b);[3] *Douglas v. Xerox Bus. Servs. LLC*, No. C12-1798-JCC, 2014 WL 3396112, at *2 (W.D. Wash. July 10, 2014) (citations omitted).  This is no mere formality.  *See,*

---

[3] Section 216(b) does not define "similarly situated," and neither the Supreme Court nor the Ninth Circuit has construed the term. *Benson v. W. Coast Constr.*, No. C06-1630RSM, 2007 WL 445456, at *1-2 (W.D. Wash. Feb. 6, 2007) (acknowledging that the Ninth Circuit has not defined "similarly situated," and denying conditional certification where plaintiff "produced only a self-serving declaration, rife with hearsay, in an attempt to demonstrate that other employees also worked overtime for which they were not paid properly.").

OPPOSITION TO NOTICE MOTION
NO. 2:16-CV-01554-JCC                                    4

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

*e.g., Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 929-30 (D. Ariz. 2010) ("Although the burden . . . is light, there are limits, and the district court cannot function as a rubber stamp for any and all claims that come its way under this statute."); *Litty v. Merrill Lynch & Co.,* No. CV 14-0425 PA PJWX, 2014 WL 5904907, at *8 (C.D. Cal. Aug. 4, 2014) ("At this first stage, conditional certification is by no means automatic ...").  Notice is <u>not</u> warranted "[w]here a plaintiff fails to carry this burden or where a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial." *Amendola v. Bristol-Myers Squibb Co.,* 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008).

Plaintiffs must provide "**detailed** allegations supported by [affidavits] . . . [and] those affidavits must constitute admissible evidence" demonstrating that Plaintiffs are similarly situated to the tens of thousands to whom they seek to send notice.  *See, e.g., Colson*, 687 F. Supp. 2d at 928 (emphasis added); *Litty,* 2014 WL 5904907, at *10 (denying certification and stating: "Several courts have found that merely alleging that a class of employees was wrongly designated "exempt" does not constitute a showing of an unlawful, institution-wide policy.").  In addition, Plaintiffs' "affidavits [must] successfully engage defendants' affidavits to the contrary." *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002).  Courts then examine whether the quantity and quality of evidence establishes "a reasonable basis for [a] claim of classwide FLSA violations." *Colson*, 687 F. Supp. 2d at 927-28.  Plaintiffs fail to provide the requisite "detail" to justify notice.

The Court also should exercise great caution in deciding whether to attempt to manage the cases of DPs strewn across states.  *See, e.g., Davis III v. Westgate Planet Hollywood Las*

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J. 08540
+1.609.919.6600

*Vegas, LLC.,* No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735 (D. Nev. Jan. 12, 2009) (rejecting plaintiffs' argument that because Nevada, Florida, and Tennessee account for approximately 69% of the sales force, individuals in other locations were subject to the same policy or practice, and thus denying notice nationwide); *Rudd v. T.L. Cannon Corp.*, 2011 WL 831446, at *6 (S.D.N.Y. Jan. 4, 2011) (courts must be "mindful of the potential burdens associated with defending an FLSA claim involving a large and broadly defined collective group of plaintiffs" and avoid "the potential for overreaching [which] would result in loss of the efficiencies") (internal citations and quotations omitted).

**B.    Plaintiffs Are Not "Similarly Situated" To Absent DPs.**

*1.    The Applicable Economic Realities Test Focuses On A Workers' Economic Dependence Upon The Entity For Which Workers Provide Services; That Analysis Presents Substantial Individualized Questions Not Suitable For Collective Action Treatment In The Present Circumstances.*

To prove employment status, each DP must prove economic dependence on Amazon. *Moba v. Total Transp. Servs. Inc.*, 16 F. Supp. 3d 1257, 1263–64 (W.D. Wash. 2014). This multi-factored inquiry considers, *inter alia*: 1) the degree of control over the manner in which the work is performed; 2) the alleged employee's opportunity for profit or loss; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business. *Id.* The existence and degree of each element of the economic realities test are issues of fact. *Daskam v. Allstate Corp.*, No. C11-0131RSL, 2012 WL 4420069, at *2 (W.D.

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J. 08540
+1.609.919.6600

Wash. Sept. 24, 2012). Whether one is an employee under the FLSA depends on all the circumstances. *Moba*, 16 F. Supp. 3d at 1263–64.

Yet, Plaintiffs argue that courts "have routinely granted notice to workers who fall under the same job category and have been uniformly classified as independent contractors." Dkt. #20 at pp. 4-5. In the context of the fact-specific economic realities analysis, one can always find cases that superficially support their arguments. That hardly renders certification "routine." In fact, many cases more closely aligned with the circumstances here have rejected certification of independent contractor issues. *See, e.g., Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000) (no certification; "individual determination as to the nature of each potential claimant's employment relationship with [defendant]" was required); *Demauro v. Limo, Inc.*, No. 8:10-cv-413-T-33AEP, 2011 WL 9191, at *3 (M.D. Fla. Jan. 3, 2011) (no certification; holding "whether an individual is an independent contractor or an employee is not appropriate for determination on a class-wide basis"); *Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 668-69 (E.D. Pa. 2010) ("[t]he Court cannot only look to [the defendant's] uniform classification of the workers. . . . Instead, it must determine whether the proof to demonstrate that the workers are 'employees' or 'independent contractors' can be applied to the class as a whole"); *Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287, 290 (S.D. Tex. 2012) (no certification, emphasizing that "even among the four named Plaintiffs, the number of days and hours worked, "pattern of days on and off" and "length of time each Plaintiff worked for Defendant," and "each Plaintiff's relative investments and ability to control his opportunities for profit and loss . . . varied significantly."); *Christianson v.*

OPPOSITION TO NOTICE MOTION
NO. 2:16-CV-01554-JCC

7

*NewPark Drilling Fluids, LLC*, No. CIV.A. H-14-3235, 2015 WL 1268259, at *3-5 (S.D. Tex. Mar. 19, 2015) (no certification as question of contractor status required individualized analysis, finding evidence on economic reality factors varying significantly among putative class members as to the degree of control, amount, extent, and schedule of work performed, exercise of ability to work for other companies, use of own equipment, and degree of skill acquired), *reconsideration denied*, No. CIV.A. H-14-3235, 2015 WL 1505834 (S.D. Tex. Apr. 1, 2015); *Barnes v. Abandonment Consulting Servs., L.L.C.*, No. 4:12-CV-01399, 2013 WL 3884198, at *5 (S.D. Tex. July 26, 2013) (no certification where plaintiff provided scant evidence about whether he and others to whom he sought to send notice were independent contractors), *report and recommendation adopted sub nom. Barnes v. Abandonment Consulting Servs., LLC*, No. 12-CV-1399, 2013 WL 12101069 (S.D. Tex. Aug. 12, 2013); *Thornton v. Mainline Commc'ns, LLC*, No. 4:12CV479 SNLJ, 2015 WL 3938652, at *2 (E.D. Mo. June 26, 2015) (no certification where Plaintiffs' affidavits "only generally allege[d] that they witnessed other technicians being subject to the same Mainline policies and control and being classified as independent contractors"  "is insufficient to show that other technicians worked in excess of forty hours per week and were not paid overtime.").

2.      *Plaintiffs' Vague Cookie-Cutter Declarations Reflect Circumstances Substantially Different From Those To Which Other DPs Attest.*

Plaintiffs' template, conclusory declarations are nearly identical except for their signature blocks.  They each state how they make deliveries, and express– with reference to no facts – that they "believe" they have been paid below the minimum wage. *See, e.g.,* Dkt. #20-2 (Wehmeyer Decl.) at pp. 3-4 ¶¶ 6, 10; Dkt. #20-3 (Rittmann Decl.) at pp. 3-4, ¶¶  6, 10;  Dkt. #20-4 (Carroll

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

Decl.) at pp. 3-4 ¶¶ 6, 10; Dkt. #20-5 (Pearce Decl.) at pp. 3-4, ¶¶ 6, 10; Dkt. #20-6 at p. 3, ¶ 6. Of course, anyone who makes deliveries for Amazon will be superficially similar in the sense that they deliver packages to Amazon customers.  UPS drivers meet that standard – and Plaintiffs do not claim such drivers are similarly-situated with DPs.  In short, Plaintiffs have "checked the box" for submitting declarations, but shed little light on the issues in this case.  Plaintiffs are required to, but have not, demonstrated common issues related to *independent contractor classification* sufficient to grant Plaintiffs' Motion.  *See, e.g., Pennington v. Integrity Communs., LLC*, No. 1:12-cv-5, 2013 WL 357516, at *2 (E.D. Mo. Jan. 29, 2013) (no certification in the independent contractor context for lack of sufficient evidence); *Parker v. Rowland Express, Inc*., 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007) (no certification where "[t]he only evidence Plaintiffs have proffered about the opt-in class is contained in their Affidavits, in which they state that they are 'informed and believe. . . many other independent contractor driver/couriers worked in excess of forty (40) hours per week and did not receive overtime compensation'.")

Moreover, Plaintiffs cannot claim personal knowledge of the work of other DPs, especially at facilities with which they have no contact.  Indeed, as reflected in DP declarations submitted by Defendants (*see infra at* pp. 10-14), Plaintiffs do not come close to speaking on behalf of the nationwide putative class they seek to represent.  *Slavinski v. Columbia Ass'n, No*. CCB-08-890, 2011 WL 2119231, at *2 (D. Md. May 27, 2011) (class allegations of misclassification are "not sufficient to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists").  Plaintiffs have failed to prove they are "similarly situated" to the diverse population of thousands of DPs they seek to represent.  *See, e.g.*, *Hanley*

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

1   *v. Hand N'Heart, LLC,* No. 06-71, 2007 WL 201088, *13-14 (E.D. Va. Jan. 22, 2007)

2   (certification denied, rejecting affidavits containing conclusory allegations); *Bernard v.*

3   *Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) ("The information provided by

4   plaintiffs, both in the pleadings and in supporting declarations and exhibits, is insufficient to

5   support allegations that defendant has a company-wide policy resulting in potential FLSA

6   violations.").

7

8       Against this legal backdrop, the evidence here proves that there is far too much variation

9   for FLSA Section 216(b) certification or notice to be granted.  Set forth below is a summary of

10  some of those variations:

11      1.      As explained *supra* at Section II.A, Amazon Flex DPs contract to deliver for one

12  of two differing business segments of Amazon: AMZL or Prime Now.  DPs delivering with

13  AMZL pick up parcels from an AMZL delivery station.  Some DPs, on the other hand, may not

14  even set foot in an Amazon facility if they service Prime Now and pick up items from local

15  restaurants, grocery stores, or other third party sellers for deliveries to customers.[4]

16

17      2.      Although Plaintiffs contend that they worked either two- or four-hour routes (Dkt.

18  #20 at p. 2), delivery blocks may run as short as one hour for Prime Now deliveries and may

19  exceed four hours for AMZL depending upon the number and location of the deliveries. Lumba

20  Decl. 1/13/17 ¶ 12.[5]

21

22

23  _____
    [4] *See* Meade Decl. ¶ 8; *see also* Dkt. #20-7 (Kogan Decl.) at p. 3, ¶ 6.
24  [5] *See also*, *e.g.*, Prevette Decl., ¶ 5 (differentiating between Prime Now and AMZL blocks); Johnson Decl. ¶ 8
    (noting delivery blocks taken between one and three hours).
25

26  OPPOSITION TO NOTICE MOTION
    NO. 2:16-CV-01554-JCC                          10

3.      While named Plaintiffs contend Amazon controlled their work (Dkt. #20 at pp. 3, 8), other DPs attest that they completely control how many and which blocks they accept.[6]

4.      Also, the frequency and duration during which DPs drive for Amazon Flex varies widely.  For example, for the period from approximately February 4, 2016 through November 2, 2016, Plaintiff Carroll delivered packages on approximately 111 days, Plaintiff Rittmann on 67 days, Declarant Gilliard on 24 days, and Declarant Huynh on 233 days.  Lumba Decl. 1/ 13/17 ¶ 13.  Plaintiff Lawson did not even start delivering until November 21, 2016.  *Id.* at ¶ 14.  *Only* Plaintiff Carroll even alleges that he provided delivery services for over 40 hours in a week. Dkt. #20-4 at p. 4, ¶ 11. Indeed, Opt-In Pearce contends she delivered for "forty hours *or less*." Dkt. #20-5 at p. 4, ¶ 11 (emphasis added).

Much variation is due to DPs choosing the blocks they wish to deliver.  As an example, Declarant Pablo Ovando has a farming business and prefers to drive at night after "family time and other life obligations" (Ovando Decl. ¶¶ 6, 8), while Declarant Phi Huynh wakes up at 6:30 a.m. to "look for available blocks to pick up" and "will try to pick up blocks throughout the day." Huynh Decl., Dkt. #43 at p. 3, ¶ 13.[7]  In short, while Plaintiffs may self-servingly attest to their perceptions that Amazon assigned shifts, Dkt. #20 at p. 2, other DPs do not share that experience.

---

[6] *See, e.g.,* Ovando Decl. ¶¶ 5, 6; Huynh Decl., Dkt. #43 ¶ 13; Holstein Decl. ¶¶ 6, 10, 13, 16, 20; Gilliard Decl. ¶¶6, 10; Craft Decl.¶ 10-12.

[7] *See also* Meade Decl. ¶¶ 5-6 (fits Amazon Flex deliveries around full-time job and family obligations); Holstein Decl.¶ ¶ 17, 20 (describing change from delivering 30-35 hours in one period to 20 hours, and stopping all delivery operations for six weeks starting in Nov. 2016); Prevette Decl. ¶¶ 4-6 (describing differences between Prime Now and other Amazon deliveries, including sometimes completing two-hour blocks in only one hour); Tiemann Decl. ¶¶ 4-5 (schedules 4-5 blocks per week around dropping off and picking up child from school, and describing being paid for one block although there no deliveries were required).

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

5.      Plaintiffs and their declarants all profess their "belief" that they may have worked weeks when they did not receive the federal minimum wage.  *See, e.g.,* Dkt. #20-3 at p. 4, ¶ 10; Dkt. #20-4 at p. 4, ¶ 10; Dkt. #20-5  at p. 4, ¶ 10.   Even if they so believe (a dubious or ill-informed proposition), their testimony is not representative.   Amazon pays Service Fees per block which vary depending on circumstances, including geography and whether "surge" pricing is in effect because of weather or special events increasing demand.  Lumba Decl. 1/13/17 ¶ 10. Amazon generally pays Service Fees per block that roughly equate to a rate of between $18 and $25 per hour, multiplied accordingly by anticipated duration of block (*e.g.*, a "two-hour" block would receive at least $36).  *Id.* at ¶ 11.  As the federal minimum wage is $7.25 per hour – or roughly $10.75 per hour lower than the lowest Service Fee paid – even if Plaintiffs' claims of having been paid sub-minimum wage were not fantastical, they hardly would be representative of tens of thousands of DPs who never fell below the minimum wage.

6.      DPs' experiences delivering with Amazon Flex vary widely as well.  In stark contrast to an employment relationship, DPs choose when, where, and how they perform their services, which allows further opportunities to tailor their businesses to maximize profit and minimize loss.  While named Plaintiffs suggest that they are subject to great control by Amazon (Dkt. #20 at p. 3), other DPs have profoundly different experiences.  Indeed, other DPs attest that they rarely have interaction of note with anyone from Amazon[8] and that Amazon does not

---

[8] Ovando Decl. ¶ 8 ("If I have to communicate with Amazon from the road, I contact Amazon Support personnel at a centralized number. I don't deal with Amazon personnel at the Chesapeake location."); Craft Decl. ¶¶ 12-13 (explaining "interactions with Amazon employees at the warehouse are limited," and describing first day delivering as "sink or swim"); Holstein Decl. ¶ 16 ("When making deliveries, I do not have any contact with the warehouse.");

OPPOSITION TO NOTICE MOTION
NO. 2:16-CV-01554-JCC                                  12

control how they make deliveries,[9] and leaving DPs to maximize their profit by choosing to complete deliveries in the most efficient manner of their own choosing.  DPs choose how to organize packages to optimize both space and efficiency in deliveries dependent on personal preferences.[10]  While Amazon offers suggestions, DPs are free to choose the route as they deem fit.[11]  Declarant Ovando has traded routes with other DPs to take a route closer to home that was better for both DPs involved. Ovando Decl. ¶12; *see also* Johnson Decl. ¶ 9.  In these many respects, DPs control how long they take to deliver packages, and can spend the remainder of the block – for which they are paid in full – however they choose.  Alternatively, if they complete their deliveries early, they may be able to pick up additional blocks, thereby maximizing their revenue.  In short, even  if one were to accept Plaintiffs' implausible claim that Amazon compels them to follow strict routes "assigned" by Amazon, the record fails to support the contention that any uniform policy or practice exists.

7.     Plaintiffs portray a world in which they have no control over their work, are assigned routes and "shifts," and have no control over their profits and losses.  Other DPs, by contrast, attest to creating their own efficiencies, running their own businesses, and investing in

---

Meade Decl. ¶ 9 (explaining "I have very little interaction with Amazon employees at the site. I'm really not instructed or directed by Amazon employees."); Huynh Decl., Dkt. #43, pp. 3-4, ¶ 13.

[9] Ovando Decl. ¶¶ 6, 7 ("I control all of my decisions with Amazon Flex"); Meade Decl.¶ 9 ("Once I'm out on the street and actively doing deliveries, everything is up to me."); Huynh Decl., Dkt. #43, pp. 3-4, ¶ 13 (Amazon doesn't tell him how or when to do deliveries); Prevette Decl. ¶ 10 ("I have never been called, emailed or texted by Amazon employees at the warehouse while on the road making deliveries.");.

[10] Ovando Decl. ¶ 10 (organizes by number of packages per stop); Tiemann Decl. ¶ 8 (organizes by neighborhood and addresses therein); Gilliard Decl. ¶ 8 ("I load my car in the way that makes sense to me, and I can deliver in whatever order I want."); Meade Decl. ¶ 10 (organizes "based on what best meets my needs.").

[11] *See, e.g.*, Ovando Decl. ¶11 (ignoring suggestions and taking route to have last stop closest to home rather than warehouse); Johnson Decl. ¶ 6; Huynh Decl., Dkt. #43, pp. 2-3, ¶ 15  (adjusting route to make last stop closest to home on some routes).

OPPOSITION TO NOTICE MOTION
NO. 2:16-CV-01554-JCC                          13

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

their own equipment and materials.  DPs can choose larger vehicles that carry more parcels or vary the length of blocks.  For example, Declarant Holstein has used an SUV and a pick-up truck, but prefers the former because of better gas mileage.  Holstein Decl. ¶ 12; *see also* Craft Decl. ¶ 5) (delivers with a Kia Optima).  Other DPs drive hybrid or other economical vehicles to save money on gas, thus increasing their profits.  Huynh Decl., Dkt. #43, at p. 3, ¶ 14.  In some regions, DPs may even use bicycles to deliver orders.  *See* Dkt. #37 at p. 9, ¶ 21.

    8.    Yet another differentiator among DPs is the degree to which they apply their varying degrees of skill and experience to running a successful delivery business.  For example, the most successful DPs master the logistics of packing their vehicle efficiently to maximize the speed with which they can retrieve parcels for delivery.  Similarly, they establish for themselves what they believe to be the best route to complete deliveries as quickly and efficiently as possible.  *See supra,* pp. 12-13, n. 9-11.  Others invest in carts, bags, or other equipment to help expedite deliveries.[12]  And, as Plaintiffs note, DPs invest in their own Android smartphone.  Dkt. #20 at p. 2.  Finally, DPs attest that they are running their own businesses.[13] To the extent Plaintiffs do not have these experiences yet, they are not similarly-situated to those they seek to represent.  No notice should issue.

[12] *See, e.g.,* Huynh Decl., Dkt.#43, p. 5, ¶ 15 (uses a laundry bag and cart to deliver multiple packages at once); Craft Decl. ¶¶ 18-20 (uses a dolly and cell phone holder); Holstein Decl. ¶ 13 (foldable cart); Prevette Decl. ¶ 12 (navigation application).

[13] *See,* Huynh Decl., Dkt. #43, pp. 3-4 ¶¶ 9, 14, 15; *id.* ¶ 14 ("I am my own business when I drive and deliver for Amazon Flex."); Prevette Decl. ¶¶ 8-9, 11 ("I take a lot of pride in my work. I am always trying to find ways to complete my deliveries faster and better. I chart my own routes after picking up blocks, use a variety of mapping apps to improve my efficiency, and constantly looks ways to improve my business while making the customers happy," including using her own insulated bags, which ensures a better customer experience and higher tips); Ovando Decl. ¶ 7 ("… I control my own business, and I make more money because I work for myself . . . . I also have the chance to interact with a lot of people from all walks of life. I have my own farming business, so it helps that I am able to interact with and meet new people through Amazon Flex to help that business as well.")

OPPOSITION TO NOTICE MOTION
NO. 2:16-CV-01554-JCC                    14

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

3.      *Plaintiffs Are Not Similarly Situated To The Vast Majority Of Delivery Partners Who Must Arbitrate Their Claims.*

Even if Plaintiffs could demonstrate that they are similarly-situated to all other DPs – and they cannot – the Court still must determine whether to authorize notice where the vast majority of DPs accepted arbitration agreements.  The touchstone under Section 216(b) is efficiency.  *See, e.g., Hoffman-La Roche*, 493 U.S. at 170.[14]  "Neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts which generally suggest that a collective action is improper."  *West v. Border Foods, Inc.*, No. 05-2525, 2006 WL 1892527, at *7 (D. Minn. July 10, 2006).  *See also Briggs v. United States,* 54 Fed. Cl. 205, 207 (Fed. Cl. 2002) (in FLSA overtime case, certification and notice were denied because of the "issuance of such notice when certification will not be granted would be a futile act").

Plaintiffs' argument that the "proper course" to first conditionally certify a class and issue notice only to litigate enforceability for each respective opt-in plaintiff later (*see* Dkt. #20 at p. 10, n.8) makes no sense under the circumstances of this case and would ultimately serve only to waste the Parties' and the Court's resources.  First, the parties already have fully briefed the issue of enforceability of the arbitration provisions in this case.  Second, as explained in more detail in Defendants' briefing in support of their Motion for Relief from Deadlines (Dkt. #39 at p. 7; Dkt. #42 at pp. 5-7), a slight delay in disposition of this notice motion runs no risk that any absent class member's statute of limitations will run.   Third, there are no issues of procedural

---

[14] Issuing notice is improper and premature for the reasons discussed in this Opposition, particularly in view of the fact that the United States Supreme Court today granted *certiorari*, and consolidated cases from three Courts of Appeals, on an issue presented here – namely, that an individual who agrees to arbitration cannot participate in a collective action under the FLSA. *See Epic Systems Corp. v. Lewis* (No. 16-285), *Ernst & Young LLP v. Morris* (No. 16-300), and *NLRB v. Murphy Oil USA, Inc.* (No. 16-307).

OPPOSITION TO NOTICE MOTION
NO. 2:16-CV-01554-JCC                                   15

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

unconsciability that can be adjudicated only after an absent class member opts-in. Rather, Plaintiffs are attacking the arbitration provision here solely on substantive unconscionability grounds that can be decided before notice goes out.

Under similar circumstances, other courts have refused to grant notice to persons who have accepted arbitration agreements. *Morangelli v. Chemed Corp.,* No. 10 Civ. 0876 (BMC), 2010 U.S. Dist. LEXIS 146149, at *13-14 (E.D.N.Y. Jun. 15, 2010) ("It would be a disservice to judicial efficiency to certify all [putative class members], when those with arbitration agreements are subject to additional, prolonging motion practice which will likely disqualify them from the case."); *Fischer v. Kmart Corp*., Case No. 13-4116*,* 2014 WL 3817368, at *6, 8 (D. N.J. August 4, 2014) ("Opt-In Plaintiffs [who] consented to an arbitration agreement and a collective action waiver . . . are both prevented from joining this collective action. . . and are also not similarly situated to members who can arbitrate in a collective action."); *Delano v. Mastec, Inc.,* 8:10-cv-320-T-27MAP, 2011 WL 2173864, at *6 (M.D. Fla. June 2, 2011) (no notice where only three potential opt-ins not subject to mandatory arbitration after months of discovery and potential opt-ins subject to arbitration not similarly situated to Plaintiffs).

Even if the Court allows notice to some DPs, those who are subject to arbitration should be excluded. *Woods, et al. v. Vector Mktng. Corp.,* No. C-14-0264 EMC, 2015 WL 1195893 (N.D. Cal. Mar. 16, 2015) (individuals subject to arbitration excluded); *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 81, (D.N.J. 2014) (excluding individuals "who signed mandatory arbitration and/or class action waiver agreements from collective action definition" finding "Plaintiffs have not made a sufficient factual showing that helpers are similarly situated.");

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

*Daughtery v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1137, 1130, 1133 (D. Colo. 2011) (upon finding arbitration provisions in Independent Contractor Agreements enforceable, limited notice to individuals who did not sign agreements containing an arbitration provision).[15]

### C.  Even If the Court Allows Notice, the Court Should Order the Parties to Meet and Confer Regarding the Contents and Means of Distributing the Notice.

Notice should not issue.  In the event the Court disagrees, however, Plaintiffs should be directed to confer with Amazon to develop an appropriate notice – something they have not done.  Should the Court direct notice, and if the parties cannot reach agreement, Defendants request that the parties be permitted to make further submission to the Court to address whatever issues remain open for resolution following the parties' efforts to meet and confer.  Set forth below are certain objections Defendants have to Plaintiffs' proposed notice.  *See* Dkt. #20-1.

•      No Appearance of Judicial Endorsement.  The notice should contain a prominent statement on the first page that the Court takes no position on the merits of Plaintiffs' claims, that sending of the notice does not that mean DPs have a right to overtime or minimum wage, and that one possible outcome is that the Court may decertify the action in the future.

•      Creates Impression of Entitlement to Overtime/One-Sided View of Litigation. The notice should not give the impression that Plaintiffs are entitled to overtime, much less liquidated damages, which are the ultimate issues to be decided in this lawsuit.  In addition, any

---

[15] Indeed, issuing notice to a party subject to an enforceable arbitration agreement raises important issues about the Court's jurisdiction.  The FAA carves out limited jurisdiction for a court under which "[a] party aggrieved by the alleged failure, neglect, or refusal . . . to arbitrate" may seek "an order directing that such arbitration proceed in the manner provided for in such [arbitration] agreement" in the "district court which, *save for such agreement, would have jurisdiction* under title 28 . . ."  9 U.S.C. § 4 (emphasis added); *see also* 9 U.S.C. § 9 (granting limited jurisdiction to confirm, vacate, modify, or correct an arbitration award).

OPPOSITION TO NOTICE MOTION
NO. 2:16-CV-01554-JCC                                17

Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

notice should clearly state Amazon's position that DPs are properly classified as independent contractors and therefore are properly and legally not paid overtime.

- **States that Amazon Agrees That Plaintiffs Who Did Not Opt-Out of Arbitration Can Sue in Court.** This statement is directly contrary to Amazon's position. *See* Dkt #36.

- **The Ninety-Day Proposed Notice Period is Unnecessarily Long.** *See, e.g.*, *Hughes v. Twp. of Franklin*, No. 13-3761, 2014 WL 1428609, at *4 (D.N.J. Apr. 14, 2014) (45 days). At maximum, any opt-in period in this action should not exceed sixty days. *See, e.g.*, *Morden v. T-Mobile USA, Inc.*, No. 05-2112, 2006 WL 2620320, at *4 (W.D. Wash. Sept. 12, 2006).

- **FLSA Notices Routinely Alert Potential Opt-ins That They May Have to Participate in Discovery and Testify.**

- **Notice Should Advise Regarding Potential for Fees and Costs.** *See, e.g., Schiller v. Rite of Passage, Inc.*, Case No. 2:13-cv-0576-HR, 2014 WL 644565, at *6 (D. Ariz. Feb. 19, 2014) (". . . the court agrees with defendant that potential class members should be made aware of the possibility of having to pay defendant's attorney's fees if plaintiffs do not prevail)."

- **Plaintiffs Are Not Entitled to DPs' Phone Numbers and E-mail Addresses.** *See, e.g.*, *Stelmachers v. Maxim Healthcare Servs., Inc.*, No. 1:13-cv-01062 (N.D. Ga.), Dkt. #45 p. 10 (Aug. 5, 2013) (attached as Exh. B to Walsh Decl. 1/13/17).

## IV.   CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion and decline to issue notice to the putative class.

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

1    Dated: January 13, 2017.

2                                                    Respectfully Submitted,

3

4                                          By: __/s/ Suzanne J. Thomas_____

5                                               Suzanne J. Thomas, WSBA #17338
                                                K&L GATES LLP
6                                               925 Fourth Ave, Suite 2900
                                                Seattle WA 98104-1158
7                                               Telephone: 206-370-6642
                                                suzanne.thomas@klgates.com
8
                                                Richard G. Rosenblatt (*Pro Hac Vice*)
9                                               James Walsh, Jr. (*Pro Hac Vice*)
                                                MORGAN LEWIS & BOCKIUS
10                                              502 Carnegie Center
                                                Princeton, NJ 08540
11                                              Telephone: 609-916-6600
                                                rrosenblatt@morganlewis.com
12                                              james.walsh@morganlewis.com

13                                              Allison N. Powers (*Pro Hac Vice*)
                                                Meredith Riccio (*Pro Hac Vice*)
14                                              MORGAN LEWIS & BOCKIUS
                                                77 West Wacker Drive, 5th Floor
15                                              Chicago, IL 60601
                                                Telephone: 312-324-1000
16                                              allison.powers@morganlewis.com
                                                meredith.riccio@morganlewis.com
17

18

19

20

21

22

23

24

25

26   OPPOSITION TO NOTICE MOTION
     NO. 2:16-CV-01554-JCC                        19

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J.  08540
+1.609.919.6600

1

## **CERTIFICATE OF SERVICE**

2

3

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) to the following on January 13, 2017:

4

5
Adelaide Pagano                     Michael C Subit
Harold Lichten                       FRANK FREED SUBIT & THOMAS LLP

6
Shannon Liss-Riordan              705 2nd Ave, Suite 1200

7
LICHTEN & LISS-RIORDAN, P.C.      Seattle, WA 98104-1729
729 Boyston Street, Suite 2000    Tel: 206-682-6711

8
Boston, MA 02116                   msubit@frankfreed.com
Tel: 617-994-5800

9
apagano@llrlaw.com
hlichten@ llrlaw.com

10
ss@llrlaw.com

11

12

13

14
                                      */s/*      *Suzanne J. Thomas*

15

16
DB1/ 90365839.4

17

18

19

20

21

22

23

24

25

26

OPPOSITION TO MOTION FOR 216(b) NOTICE