Hon. John C. Coughenour

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BERNADEAN RITTMANN, FREDDIE CARROLL, JULIA WEHMEYER, and RAEF LAWSON, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>v.<br>AMAZON.COM, INC. and AMAZON LOGISTICS, INC.,<br><br>        Defendants. | Case No. 2:16-cv-01554-JCC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL THE CLAIMS OF PLAINTIFF RAEF LAWSON TO ARBITRATION AND TO EXCLUDE PUTATIVE ABSENT CLASS MEMBERS WHO AGREED TO ARBITRATE THEIR CLAIMS**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>NOTE DATE: FEBRUARY 3, 2017 |

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................ 1

II.  ARGUMENT ................................................................................................. 3

    A.   Plaintiffs Have Adequately Pled Their Overtime and Minimum Wage
        Claims ................................................................................................. 3

    B.   Plaintiffs Have Adequately Pled Their California Labor Code Claims ............ 5

    C.   The Court Should Not Dismiss or Stay the FLSA and California
        Causes of Action Pursuant to the First-to File Rule ....................... 6

    D.   Amazon's Argument That the Putative Class Should Be Limited
        Because of Its Arbitration Agreement Is Premature, and In Any
        Case, The Agreement Is Not Enforceable Against Plaintiff Lawson or
        Putative Class Members ............................................................. 12

        i.   Defendants' Arbitration Agreement Violates the NLRA and Is
            Therefore Unenforceable ........................................................ 13

            a.  The NLRA Applies Here Because Plaintiffs Have Alleged and
                Have Made a Colorable Showing that They Are Amazon's
                Employees ............................................................. 14

            b.  The Ability of Drivers to Opt-Out of Amazon's Arbitration
                Clause Does Not Save Rescue It from Illegality............................ 17

        ii.  Amazon's Agreement Also Violates the FLSA ......................................... 20

        iii. In Addition, Amazon Drivers Are Exempt from the Federal
            Arbitration Act Because They Are Transportation Workers
            Engaged in Interstate Commerce ......................................... 20

    E.   The Court Should Not Limit Plaintiffs' Recovery Under the Seattle
        Minimum Wage Ordinance to Violations Occurring After April 1, 2016 ........ 24

III. CONCLUSION ................................................................................................ 24

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    **I. INTRODUCTION**

2           Defendants Amazon.com, Inc. and Amazon Logistics, Inc. (collectively

3    "Amazon") have moved to dismiss the complaint, have asked the Court to enforce its

4    arbitration clause against one plaintiff, and have prematurely asked the Court to exclude

5    putative class members from this case who did not opt out of arbitration agreements.

6    For the reasons set forth below, this request should be denied in full.

7           Plaintiffs first take issue, though, with Amazon's opening comments that the

8    plaintiff delivery drivers in this case are no different from numerous other drivers who

9    are subcontracted to deliver its packages, such as FedEx drivers (who were previously

10   found by the Ninth Circuit to be misclassified as independent contractors as a matter of

11   law[1]), UPS drivers (who are classified as employees), and drivers for the United States

12   Postal Service (also classified as employees).  Contrary to Amazon's characterization

13   that "no one suggests that the[se] drivers delivering through [FedEx, UPS, and USPS]

14   are Amazon employees," Dkt. 36 at 1, there has actually been substantial litigation on

15   this very point; however, here, the situation is even clearer because the plaintiff drivers

16   contract and work *directly* for Amazon.[2]  Amazon argues that drivers cannot possibly

17   be employees because they "decide whether to work, when and where they want to

18   work" and the like, Dkt. 36 at 1; however, this assertion is belied by the complaint, as

19   well as evidence already submitted in this case, explaining that Amazon drivers are

---

20   [1]        See Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981 (9th Cir. 2014).

21   [2]        In other cases, Amazon drivers who contracted through intermediary entities have sought rulings
22   that they are employed by Amazon. See, e.g., Truong et al. vs. Amazon.com et al., BC598993 (Los
     Angeles County Sup. Ct.); Bradley et al. v. Silverstar Ltd. et al., Civ. A. No. 1:16-cv-10259 (N.D. Ill).
     Indeed, this is the subject of the case Morales v. Amazon.com LLC, Case No. 16-cv-06462-THE (N.D.
23   Cal.), filed *one week* before this case, based on which Amazon seeks to have claims in this case stayed
     or dismissed under the "first-to-file" rule.  For reasons discussed infra at Section C, the Court should *not*
24   exercise its discretion to do so.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1   scheduled for shifts and face consequences for failing to show up or complete them,

2   see Dkt. 20-2 at ¶¶ 5-6, 11; Dkt. 20-3 through 20-10; Dkt. 33 at ¶20.  In any event,

3   drivers challenging their classification as independent contractors by "ride-sharing"

4   companies Uber and Lyft, who truly can decide when and for how long to work (as they

5   can literally log on and off from work at will, and can work for just minutes at a time

6   instead of for scheduled blocks) have succeeded in defeating those companies' bids for

7   summary judgment. See O'Connor v. Uber Technologies, Inc., 82 F. Supp. 3d 1133

8   (N.D. Cal. 2015); Cotter v. Lyft, Inc., 60 F. Supp. 3d 1067 (N.D. Cal. 2015).

9        Here, at the early pleading stage, Plaintiffs have clearly made plausible

10   allegations to support their claim that they have been misclassified by Amazon as

11   independent contractors and have suffered wage violations as a result.  Amazon's

12   attempt to escape liability for its systemic misclassification of these workers by invoking

13   its arbitration agreements and citing to the existence of another lawsuit (on behalf of an

14   entirely distinct group of delivery drivers) are unavailing.  For all the reasons set forth

15   further below, the Court should reject Amazon's bid to dismiss this case – particularly

16   before any notice has been issued to putative class members regarding the existence of

17   these claims[3] – and should deny Amazon's Motion to Dismiss.

18

19

20

---

21   [3]     As explained in Plaintiffs' Opposition to Defendant's Motion for Relief from Deadlines (Dkt. 41),
the Court should issue notice pursuant to § 216(b) of the FLSA before considering whether to enforce
arbitration agreements.  That way, Amazon drivers whose rights may be affected by this case will be
22   apprised of the case and receive notice allowing them to opt-in to join it and thus be able to attempt to
vindicate their rights, regardless of whether that would be in court or arbitration.  By deferring such notice
23   (and asking the Court to enforce its arbitration agreement), Amazon simply wants to keep its drivers in the
dark about the legal issues raised in this case and thereby prevent them from pursuing these claims in
24   any forum.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

## II. ARGUMENT

### A.   Plaintiffs Have Adequately Pled Their Overtime and Minimum Wage Claims

Contrary to Amazon's characterization, the Ninth Circuit "does not require that a '*particular instance*' [of overtime or minimum wage violations] be pled" in order to state a valid claim, see Varsam v. Laboratory Corp. of America, 2015 WL 4624111, *3 (S.D. Cal. Aug. 3, 2015) (emphasis added), nor does it require that each Plaintiff provide the level of detail that Amazon urges.  Indeed, as the Ninth Circuit itself acknowledged in Landers v. Quality Commc'ns, Inc., 771 F.3d 638, 641-42 (9th Cir. 2014), "no circuit court has interpreted Rule 8 as requiring [plaintiffs] to plead in detail the number of hours worked, their wages, or the amount of overtime owed to state a claim for unpaid minimum wages or overtime wages." See also Boon v. Canon Bus. Sols., Inc., 592 F. App'x 631, 632 (9th Cir. 2015).

The obvious reason for this fact is that Plaintiffs cannot be expected to allege such claims with "mathematical precision," when "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants." Landers, 771 F.3d at 645-46; see also Rodriguez v. F & B Solutions LLC, 2014 WL 2069649 (E.D. Va. Apr. 29, 2014); Davenport v. Wendy's Co., 2014 WL 3735611, *5 (E.D. Cal. July 28, 2014); Pruell v. Caritas Christi, 678 F.3d 10, 15 (1st Cir. 2012).  Here, where Amazon does not provide Plaintiffs with *any* record regarding the number of hours worked or the computation of their pay, instead paying them in lump sum payments without any explanation of how those figures are derived, it is patently unreasonable to expect Plaintiffs to include detailed examples of dates and amounts owed for overtime and minimum wage damages, and, more importantly, it is *not* required by the law of the Ninth Circuit.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    The cases Amazon cites do not hold otherwise.  For example, in Wright v. N. Am.

2   Terrazo, 2013 WL 441517, at *3 (W.D. Wash. Feb. 5, 2013), the plaintiff made the bare

3   assertion that the defendant "unreasonably denied [him] overtime pay" and nothing

4   more.  The Wright court held that he "must plead more than [a] naked assertion devoid

5   of factual content" such as facts supporting that "(1) the Union was Mr. Wright's

6   employer; (2) Mr. Wright worked more than forty hours in a week; and (3) Mr. Wright did

7   not receive compensation for his employment in excess of the forty hours." Id.; Landers,

8   771 F.3d at 644–45.  Here, Plaintiff Carroll has plainly done exactly that by alleging

9   facts showing that he was Amazon's employee, and by alleging that he received an

10  hourly rate for working scheduled shifts and "regularly worked in excess of forty hours

11  per week for Amazon from the period January through June of 2016 but was not been

12  paid one-and-a-half times his regular rate for any overtime hours." First Am. Compl.

13  ("FAC"), Dkt. 33 at ¶¶, 25, 27.  These allegations clearly meet the requirements set forth

14  in Wright and Landers.  Id.

15   The same is true of Plaintiffs' minimum wage allegations; Plaintiffs have put

16  Amazon on notice regarding their theory of liability – that delivery drivers' pay for the

17  hours they spent working shifts, when taking into account the amounts they had to pay

18  in necessary business expenses, and including uncompensated time worked past the

19  end of a shift, left them with less than minimum wage.  These allegations are sufficient

20  to state a plausible claim and survive a motion to dismiss. See Arriaga v. Florida Pac.

21  Farms, L.L.C., 305 F.3d 1228, 1236 (11th Cir. 2002). Thus, Plaintiffs' complaint

22  "contains enough substantive content to elevate the [wage] claims above the mere

23  possibility of defendants' liability," Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 45

24  (1st Cir. 2013), and to the extent that Amazon desires more detailed information, it is in

the best position to access those records.  Indeed, numerous courts across the country

have upheld overtime and minimum wage claims based on similar allegations,[4] and the

Court should do the same here.

### B.   Plaintiffs Have Adequately Pled Their California Labor Code Claims

Likewise, contrary to Amazon's contention, the allegations in the complaint

regarding violations of Cal. Labor Code § 226(a) (failure to provide itemized wage

statements) and § 2802 (failure to reimburse for necessary business expenses) are

more than plausible.

To state a claim for relief under Cal. Labor Code § 226(a), a plaintiff must allege

"(1) a violation of the statute; (2) the violation was knowing and intentional; and (3) an

injury resulted from the violation." Achal v. Gate Gourmet, Inc., 114 F. Supp. 3d 781,

810 (N.D. Cal. 2015).  A plaintiff is injured "if his employer fails to provide accurate and

complete information as required by any one or more of items under sections 226(a)(1)

to (9) and the employee cannot 'promptly and easily determine' from the wage

statement alone …: '(i) … any information required to be provided pursuant to … [§

226(a)](2) to (4), (6), and (9).'" Id. at 811.

Under this framework, Plaintiff Lawson has more than plausibly alleged a

violation of the statute.  In the First Amended Complaint, Plaintiffs allege that all

"Amazon delivery drivers … are simply provided with weekly totals that reflect how

much money they were paid that week without showing how many hours they actually

worked performing deliveries or how compensation was calculated." Dkt. 33, ¶ 23.

---

[4]    See, e.g., Martinez v. Regency Janitorial Servs. Inc., 2011 WL 4374458, *4 (E.D. Wis. Sept. 19, 2011) (collecting cases); Mitial v. Dr. Pepper Snapple Grp., 2012 WL 2524272, *3 (S.D. Fla. June 29, 2012); Rodriguez, 2014 WL 2069649, *3.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

From this allegation, the Court, on a motion to dismiss, can infer that (1) the pay statements, on their face, do not include the number of hours worked by a driver or their rate of pay (which are required by Section 226(a)(2) and (9), respectively), and (2) that, without that information, it is impossible for Amazon drivers in California to "promptly and easily" determine that information from the wage statement alone.  Accordingly, the First Amended Complaint states a claim under Cal. Labor Code § 226(a).

With respect to Cal. Labor Code § 2802, a plaintiff must "identif[y] the particular expenses that were not reimbursed and affirmatively allege[] that the expenses were part of the plaintiff's job duties." Tan v. GrubHub, Inc., 171 F. Supp. 3d 998, 1005 (N.D. Cal. 2016).  Section 2802 does not impose, as Amazon implicitly asserts, any requirement that a plaintiff identify the amount of the expenses; all that matters is that the expenses were incurred and were necessary to the performance of the job.  Id. at 1005 (holding that allegation that drivers "were required to bear expenses related to 'their vehicles, gas, parking, phone data, and other expenses'" stated a claim for relief).  Here, Plaintiffs have alleged that "Amazon requires [all] its drivers," including Lawson, "to pay for many of the expenses necessary to perform their job, including expenses for their vehicles, gas, phone and data plan." Dkt. 33 (FAC) at ¶ 22.  This single sentence, which Amazon inexplicably fails to discuss in its motion, is sufficient to state a claim for relief under Section 2802.  Accordingly, the Court should deny Defendants' motion to dismiss the California Labor Code claims.

## C.   The Court Should Not Dismiss or Stay the FLSA and California Causes of Action Pursuant to the First-to File Rule

Amazon erroneously argues that Plaintiffs' FLSA and California causes of action should be stayed or dismissed pursuant to the first-to-file rule because such claims

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    were first brought in another case, <u>Morales v. Amazon.com LLC</u>, Case No. 16-cv-

2    06462-THE (N.D. Cal.), which was filed in California state court just **one week** before

3    the filing of this action (and later removed to federal court) and which concerns an

4    entirely distinct group of drivers.  The first-to-file rule—which is discretionary, and

5    applies only where the parties and issues in the first-filed lawsuit are substantially

6    similar to the parties and issues in the second-filed lawsuit, <u>Alltrade, Inc. v. Uniweld</u>

7    <u>Products, Inc.</u>, 946 F.2d 622, 625 (9th Cir.1991)—has no application here where this

8    action and <u>Morales</u> are actually different cases against Amazon, concerning different

9    types of drivers.

10            The plaintiffs in this action contracted ***directly*** with Amazon to perform delivery

11   services and contend that such drivers are misclassified as independent contractors,

12   while the <u>Morales</u> plaintiff performed services for Amazon through an intermediary

13   company and would thus face different legal issues from the plaintiffs here (such as

14   needing to prove that Amazon is his joint employer, along with the company with whom

15   he directly contracted).  Also, since Morales contracted through an intermediary entity,

16   he would have been subject to different policies and practices from the drivers who

17   contracted directly with Amazon, whom Plaintiffs here seek to represent. <u>See</u> Gruber

18   Decl., Ex. A ("<u>Morales</u> Compl."), Dkt. 38-1, at ¶ 10 ("On or about May 2016, Plaintiff was

19   contracted through Action Messenger to provide services as delivery driver [sic] to

20   Amazon.").  For example, it appears that: (1) Amazon or Peach, Inc. provided Morales

21   with a delivery truck, <u>Morales</u> Am. Compl. at ¶ 13, whereas Plaintiffs and other drivers

22   who contracted directly with Amazon must provide their own vehicles; and (2) Amazon

23   or Peach, Inc., compensated Morales at a "flat day rate," <u>id.</u> at ¶ 16, which is different

24   from the hourly rate paid to Plaintiffs and putative class members in this case who

1    contracted directly with Amazon.

2         Moreover, while the nationwide FLSA class and California subclass in <u>Morales</u>,

3    as pled, may initially appear to encompass the nationwide class and California subclass

4    in the instant case, this is not the case.  Morales seeks to represent an FLSA Class

5    consisting of "[a]ll persons employed as 'delivery drivers' and/or with similar job titles or

6    duties at Amazon warehouse locations who worked in the United States in the past

7    three years" and a California class consisting of "[a]ll persons employed as 'delivery

8    drivers' and/or with similar job titles or duties at Amazon warehouse locations in

9    California." <u>See</u> Dkt. 38-2 ("<u>Morales</u> Am. Compl.") at ¶ 23.  Plaintiffs in this action all

10   seek to represent a nationwide FLSA collective action consisting of "all … drivers …

11   who have *contracted directly with Amazon* to provide delivery services in the United

12   States," while Plaintiff Lawson seeks to represent a California class consisting of "all

13   delivery drivers who have *contracted directly with Amazon* to provide delivery services

14   in California." Dkt. 33, ¶¶ 28, 39 (emphasis added).  The mere fact that <u>Morales</u> may

15   have been overbroadly pled to appear to also encompass drivers who contracted

16   directly for Amazon (although it is not entirely clear that it has) is not a basis to stay or

17   dismiss this case, which was properly pled.[5]

18        It is thus apparent from Morales' Complaint and Amended Complaint that his

19   work on behalf of Amazon differed substantially from the Plaintiffs' work in this case,

20   and Morales is therefore highly unlikely to satisfy Rule 23's requirements for class

21   _____

22   [5]    Moreover, when determining whether there is similarity of parties between two putative class
     actions, some courts in this Circuit have noted that it makes sense to compare the identity of *the named*
     *plaintiffs*, as opposed to comparing the putative classes (particularly given that the putative class may
23   have been overbroadly alleged in one case). <u>See</u>, <u>e.g.</u>, <u>Farrar v. Catalinanrestaurant Grp., Inc.</u>, 2016 WL
     2610110, at *1 (S.D. Cal. May 6, 2016); <u>Lac Anh Le v. PricewaterhouseCoopers LLP</u>, 2008 WL 618938,
24   at *1 (N.D. Cal. Mar. 4, 2008).

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    certification on behalf of a class of drivers that includes Plaintiffs in this action or the

2    nationwide and California classes he (may) seek to represent (i.e. drivers who

3    contracted directly with Amazon).  Thus, because the putative classes in this action and

4    in Morales do not actually overlap, there is no similarity of plaintiffs and the first-to-file

5    rule should not be applied to dismiss or stay this action.

6           Moreover, the first-to-file rule is discretionary, and there is no reason for the

7    Court to take the extraordinary action of dismissing or staying this case here, where

8    Plaintiffs, who filed this case a mere one week after Morales was filed in state court,

9    have already moved for notice to be issued pursuant to § 216(b) and are thus vigorously

10   moving forward with this litigation on behalf of Amazon drivers. The plaintiff in Morales

11   has not moved for notice to be issued under § 216(b), and there is no reason for the

12   putative class to have to wait because another worker (one week earlier) filed a case in

13   another forum.

14          Indeed, the Court should be quite skeptical of Amazon's attempt to dismiss or put

15   on hold this case, in favor of the Morales case.  Amazon is certainly aware of the

16   experience and reputation of Plaintiffs' counsel in this case and would prefer to defend

17   these claims against a plaintiff represented by counsel without the same experience.

18   When duplicative class cases are filed and courts must choose which counsel to

19   appoint as class counsel, courts look to Fed. R. Civ. P. 23(g), which requires

20   determination of which counsel is best suited to effectively prosecute the action on

21   behalf of the class. See Fed. R. Civ. P. 23(g)(l)(A) (enumerate the following factors for a

22   court to consider: "(i) the work counsel has done in identifying or investigating potential

23   claims in the action; (ii) counsel's experience in handling class actions, other complex

24   litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1  applicable law; and (iv) the resources that counsel will commit to representing the

2  class"); see also Kamakahi v. Am. Soc'y for Reproductive Med., 2012 WL 892163, *2

3  (N.D. Cal. Mar. 14, 2012); Levitte v. Google, Inc., 2009 WL 482252, *2 (N.D. Cal. Feb.

4  25, 2009). Under Rule 23(g)(2), Plaintiffs' counsel here is considerably more

5  experienced in this area of law than Morales' counsel, and would therefore be "best able

6  to represent the interests of the class." See, e.g., O'Connor v. Uber Techs., Inc., No. C-

7  13-3826 EMC, 2015 WL 5138097, at *1 (N.D. Cal. Sept. 1, 2015) (certifying class of

8  Uber drivers throughout California and appointing Plaintiffs' counsel as class counsel);

9  Cotter v. Lyft, 13-CV-04065, (N.D. Cal. June 4, 2015) (Dkt. 133) (federal judge noted

10  that it was "not even a close question" that Ms. Liss-Riordan was "more qualified to

11  represent" a class of on-demand drivers than counsel who had filed a similar case in

12  state court); Independent Contractor Misclassification, Lichten & Liss-Riordan, P.C.,

13  http://llrlaw.com/independent-contractor/, last visited January 11, 2017 (listing numerous

14  articles about Plaintiffs' counsel's substantial reputation and experience in this area and

15  dozens of suits on behalf of misclassified independent contractors).[6]

16       The Court should exercise its discretion not to dismiss or stay the nationwide and

17  California claims in this case. "The most basic aspect of the first-to-file rule is that it is

18  discretionary; 'an ample degree of discretion, appropriate for disciplined and

19

20  [6]    In addition, significantly, the Morales case is **not** pursuing claims for reimbursement of expenses
        under California Labor Code § 2802, which is included in this case and is a significant element of the
21     California claims asserted here.  Thus, even if the Court were to find that that the other nationwide and
        California claims meet the prerequisites of the first-to-file rule (which it should not, as discussed above),
22     the Court should at the very least allow the Section 2802 claim to proceed here. See, e.g., Taylor v.
        AlliedBarton Sec. Servs. LP., 2014 WL 1329415, at *8 (E.D. Cal. Apr. 1, 2014) (staying certain claims,
        pursuant to first-to-file rule, but permitting plaintiff to proceed with causes of action that were not part of
23     the first-filed suit).

24

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1   experienced judges, must be left to the lower courts.'" Alltrade, Inc., 946 F.2d at 628

2   (quoting Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co., 342 U.S. 180, 183–84

3   (1952)).  Accordingly, when applying the rule, the Court always retains the discretion to

4   decline to stay or dismiss an action. Id.  Here, the Court should exercise that discretion

5   to refrain from acting on the first-to-file rule both because of the likelihood that the

6   classes do not, in fact, overlap, and because Plaintiffs in this action have promptly and

7   vigorously moved forward to pursue their claims in this case.  Plaintiffs have already

8   moved to send notice to putative class members pursuant to § 216(b) of the FLSA and

9   Amazon has already moved to dismiss some of Plaintiffs' claims and to determine

10  whether its arbitration clause is enforceable. See Dkts. 20, 36.  Thus, many of the

11  important substantive issues in this case are already in the process of being briefed.  In

12  contrast, there has been no substantive action taken in Morales, and Plaintiffs have not

13  filed a conditional certification motion in that case. See Morales docket (attached here

14  as **Exhibit A)**.  As a result, the Court should decline Amazon's request for a stay or

15  dismissal of this action, which would not only prejudice Plaintiffs and putative class

16  members but unnecessarily delay the resolution of their claims.[7]

17

18

19  _____

7       Even if the Court were inclined to grant Amazon some relief under the first-to-file rule (which it
20  should not), the remedy should not be dismissal or a stay, but instead a transfer of this action, or portions
    thereof, to the court presiding over Morales in the Northern District of California.  Amazon conveniently
    omits that one remedy under the first-to-file rule is to transfer the later-filed case to the courtroom of the
21  first-filed case. See Alltrade, 946 F.2d at 623.  Given the prejudice that would result from staying or
    dismissing this action when it is all but certain that the classes in this case and in Morales do not actually
22  overlap, transferring would at least protect the rights of the putative class here. See, e.g., Fossum v. Nw.
    Mut. Life Ins. Co., 2010 WL 11054415, at *2 (N.D. Cal. Sept. 16, 2010); Persepolis Enter. v. United Parcel
    Serv., Inc., 2007 WL 2669901, at *2 (N.D. Cal. Sept. 7, 2007).  However, as discussed above, even a
23  transfer is not necessary.  Indeed, **this court** obtained jurisdiction before the federal court in the Northern
    District of California, since the Morales case was filed in state court and only recently removed to federal
    court.
24

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1

2

**D.    Amazon's Argument That the Putative Class Should Be Limited Because of Its Arbitration Agreement Is Premature, and In Any Case, The Agreement Is Not Enforceable Against Plaintiff Lawson or Putative Class Members**

3

Amazon has moved to narrow or dismiss Plaintiffs' class claims on the ground

4

that some drivers (including named plaintiff Lawson) are bound by agreements that

5

require them to individually arbitrate their claims against Amazon.  Preliminarily, as

6

Plaintiffs explained in their Opposition to Amazon's Motion for Relief from Deadlines

7

(Dkt. 41), the Court should reject Amazon's hasty attempt to deploy its arbitration

8

agreement as premature because "consideration of the validity of arbitration

9

agreements is inappropriate" at the first stage of collective action certification, and

10

"issues of fact surrounding arbitration agreements are properly resolved at the second

11

stage of the [FLSA's] two-step inquiry." Romero v. La Revise Assocs., L.L.C., 968 F.

12

Supp. 2d 639, 647 (S.D.N.Y. 2013).  Likewise, numerous courts have granted

13

conditional certification under § 216(b), as well as certified classes under Rule 23 that

14

included both workers who were and were not bound by arbitration agreements, finding

15

that consideration of arbitration agreements should be deferred until after class

16

certification and should ***not*** prevent certification.[8]  As these courts recognized, "the

17

sensible course . . . is to decide whether to certify the class without considering the

18

possibility of arbitration, bring the [putative class] into the case, see what their position is

19

on arbitration, and ***then*** decide who must arbitrate." In re Evanston Nw. Corp. Antitrust

20

21

22

23

[8]    See, e.g., Davis v. Four Seasons Hotel Ltd., 2011 WL 4590393, *4 (D. Haw. Sept. 30, 2011); Bittinger v. Tecumseh Products Co., 123 F.3d 877, 884 (6th Cir. 1997); Herrera v. LCS Fin. Servs. Corp., 274 F.R.D. 666, 681 (N.D. Cal. 2011);; Bond v. Fleet Bank (RI), N.A., 2002 WL 31500393, *7 (D.R.I. Oct. 10, 2002); Midland Funding, LLC v. Brent, 2010 WL 4628593, at *4 (N.D. Ohio Nov. 4, 2010); Bird Hotel Corp. v. Super 8 Motels, Inc., 246 F.R.D. 603, 606 (D.S.D. 2007); Coleman v. Gen. Motors Acceptance Corp., 220 F.R.D. 64, 88, 90-91 (M.D. Tenn. 2004); Bond v. Fleet Bank (RI), N.A., 2002 WL 31500393, at *7 (D.R.I. Oct. 10, 2002); Collins v. Int'l Dairy Queen, Inc., 168 F.R.D. 668, 678 (M.D. Ga.1996); Finnan v. L.F. Rothschild & Co., 726 F. Supp. 460, 465 (S.D.N.Y. 1989).

24

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    Litig., 2013 WL 6490152, *5 (N.D. Ill. Dec. 10, 2013) (emphasis added).

2          In any case, the Court should reject Amazon's argument on the merits (including

3    with respect to Plaintiff Lawson) because its arbitration clause is unenforceable for two

4    reasons: (1) the class action waiver in the agreement violates the National Labor

5    Relations Act ("NLRA"), 29 U.S.C. §§ 157 & 158, and is thus unenforceable, see Morris

6    v. v. Ernst & Young, LLP, 834 F.3d 975 (9th Cir. 2016); and (2) Amazon delivery drivers

7    fall within an exemption to the Federal Arbitration Act ("FAA") for transportation workers

8    engaged in interstate commerce, 9 U.S.C. § 1.[9]

9          **i.  Defendants' Arbitration Agreement Violates the NLRA and Is Therefore
               Unenforceable**

10         Amazon's arbitration agreement, which contains a class action waiver, violates

11   the Sections 7 and 8 of the NLRA, as decided by the Ninth Circuit in Morris v. v. Ernst &

12   Young, LLP, 834 F.3d 975 (9th Cir. 2016), and is thus unenforceable.  In Morris, the

13   Ninth Circuit joined the Seventh Circuit in adopting the National Labor Relations Board's

14   ("NLRB") conclusion that "an agreement that precludes [employees] from filing joint,

15   class, or collective claims addressing their wages, hours, or other working conditions

16   against the employer in any forum, arbitral or judicial" violates the NLRA. Id. at 980

17   (quoting D.R. Horton, 357 NLRB No. 184 (2012), enf. denied 737 F.3d 344 (5th Cir.

18   2013)); see Lewis v. Epic Sys. Corp., 823 F.3d 1147 (7th Cir. 2016).[10]  Here, the class

19

20   ───────────────────────
     [9]       In addition, as Plaintiffs have indicated, they intend to include a claim under the California Private
21   Attorney General Act ("PAGA"), Cal. Lab. Code § 2699 et seq., which is a representative claim on behalf
     of the state and cannot be barred by a class action waiver in an arbitration agreement.  See Iskanian v.
22   CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 383 (2014).  Lawson filed his prerequisite letter on
     November 21, 2016, and intends to amend the complaint to add this claim once the requisite 65-day
     waiting period has run.

23   [10]      On January 13, 2017, the U.S. Supreme Court granted certiorari in Morris and Lewis, given the
     split in the circuits on this issue. See No. 16-300; No.16-307; and No. 16-285.
24

LICHTEN & LISS-RIORDAN, P.C.
                                                                729 Boylston Street, Suite 2000
                                                                Boston, Massachusetts 02116 ~ (617) 994-5800

action waiver in Amazon's Terms of Service violates the NLRA because it repeatedly

states that drivers are prohibited from bringing any form of joint, class, collective, or

representative action against Amazon in any forum. See Dkt. 37-2 at § 11(b); id. at §

11(c); id. at § 11(d).

Recognizing that Morris is binding on this Court, Amazon argues that its

agreement is nevertheless enforceable because: (1) Amazon drivers are classified as

independent contractors, and only employees are protected by the NLRA, and (2) an

opt-out provision in Amazon's arbitration agreement rescues it from illegality under the

NLRA.  Amazon is wrong on both counts, as discussed below.[11]

### a. The NLRA Applies Here Because Plaintiffs Have Alleged and Have Made a Colorable Showing that They Are Amazon's Employees

Amazon claims that the drivers are not protected by the NLRA because they are

independent contractors and not employees.  In making this argument, Amazon asks

this Court to decide up front the ultimate issue in this case *against* the drivers, i.e.

assume that they are properly classified as independent contractors and force them to

individually arbitrate their claims.  The Court cannot force them to arbitrate this question

on an individual basis, and thus deprive them of their rights under the NLRA, simply on

the ground that they have not yet obtained a determination that they are in fact

---

[11]    The Court should reject Amazon's argument that this Court lacks jurisdiction to find that the class action waiver here violates the NLRA. Dkt. 36 at 21.  Amazon invokes the preemption doctrine established in San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 246 (1959), but this argument ignores that the Ninth Circuit has invalidated arbitration agreements containing class waivers in Morris and has not required such a challenge to be made only at the NLRB. Garmon preemption only applies where the plaintiff's claims "hinge on whether an unfair labor practice ... occurred."  Tamburello v. Comm-Tract Corp., 67 F.3d 973, 978 (1st Cir. 1995).  Where, as here, an unfair employment practice "is being offered as a defense to the enforcement of a contract, and not as an affirmative claim on which the plaintiff seeks relief, the Court retains jurisdiction." Grant v. Convergys Corp., 2013 WL 781898, at *2 (E.D. Mo. Mar. 1, 2013) (collecting cases); see also Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 86 (1982).

1   employees.  Such reasoning would deprive the drivers of making this challenge to their

2   classification on a classwide basis, which itself would violate the NLRA and Morris.

3        For purposes of determining the applicability of the NLRA, the Court can and

4   should presume (as other courts have) that Plaintiffs are employees. See, e.g., Curtis v.

5   Contract Mgmt. Servs., 2016 WL 5477568, at *7 (D. Me. Sept. 29, 2016) ("I assume for

6   the sake of this motion that the employer/employee relationship exists"); Bekele v. Lyft,

7   Inc., 2016 WL 4203412, *21 (D. Mass. Aug. 9, 2016) (assuming, for purposes of

8   deciding whether class action waiver violates NLRA, that workers classified as

9   independent contractors were employees covered by NLRA).[12]

10        Alternatively, if the Court believes this issue needs to be decided up front, the

11   Court could make a preliminary determination of employee status.  The Court could

12   make this determination either through a preliminary hearing, or simply rely upon the

13   allegations in the First Amended Complaint and the evidence submitted by the drivers in

14   their materials in support of their § 216(b) motion, to conclude that Plaintiffs have made

15   a colorable showing that they are Amazon's employees. See Dkts. 20-0 to 20-10, 33

16   (incorporated here by reference).[13]

17        Indeed, the current record shows that, pursuant to Amazon's contract with

18   drivers, Amazon exercises substantial control over its delivery drivers.  Amazon requires

19

20   [12]    Similarly, even though the NLRB only has jurisdiction over employees, see 29 U.S.C. §152(3), the Board routinely decides cases in which workers challenge their classification as independent

21   contractors. See, e.g., FedEx Home Delivery, 361 NLRB 55 (Sept. 30, 2014). In order to do so, the Board must **assume** they are employees in order to exercise its jurisdiction. The Court should do likewise.

22   [13]    In determining whether workers are employees under the NLRA, the NLRB considers the factors enumerated in the Restatement (Second) of Agency § 220. Roadway Package Sys., Inc., 326 NLRB 842,

23   849-850 (1998) (which are similar to the factors considered by California courts under the Borello test (see S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations, 48 Cal. 3d 341, 769 P.2d 399 (1989) as well

24   as the factors considered under the FLSA (see 29 U.S.C. § 201 et. seq).

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1  that drivers deliver packages on time, ensure customers actually receive deliveries,

2  return undeliverable packages to Amazon, be respectful and professional to customers

3  and Amazon staff, and "follow all delivery instructions" Amazon directs to drivers. See

4  Dkt. 37-2, at p. 9.  Drivers' failure to meet any of these policies can result in termination.

5  Id. at 3.  Drivers must also set their weekly availability online and then either sign up for

6  shifts, or are assigned shifts. See Ex. 1 Dkt. 20-2 at ¶ 5; id., Dkt. 20-3 at ¶ 5. The drivers

7  report to Amazon's warehouse where Amazon assigns them a route and provides them

8  with a number of packages, which they must then scan and deliver. Dkt. 20-2 at ¶ 6.

9  Amazon constantly monitors the drivers' performance, including whether drivers have

10  worked their assigned shifts, how quickly they make their deliveries, and the drivers'

11  customer service.  For example, Amazon tracks its drivers' "reliability rating", which is a

12  measure of how many two-hour delivery shifts a driver has completed out of the last

13  twenty (20) for which he or she was scheduled. Id. at ¶ 11; 216(b); Dkt. 20-6 at ¶ 10.

14  Amazon also tracks drivers' "successful delivery rating", which is a percentage of the

15  orders a driver delivered on time in their last 100 orders. Dkt. 20-2 at ¶ 11.  If drivers'

16  performance does not meet Amazon's standards, they may receive warnings and can

17  be subject to termination. Id. at ¶¶ 11-12; Dkt. 20-3 at ¶ 11; Dkt. 20-4 at ¶ 12; Dkt. 20-5

18  at ¶ 12; Dkt. 20-6 at ¶¶ 11-12; Dkt. 20-7 at ¶¶ 9-11; see also Ex. 8, Ex. 9.  This high

19  level of multi-faceted control supports a finding that Amazon employs the drivers.

20      In determining whether workers are employees under the NLRA, the NLRB

21  considers the factors enumerated in the Restatement (Second) of Agency § 220.

22  Roadway Package Sys., Inc., 326 NLRB 842, 849-850 (1998) (which are similar to the

23  factors considered by California courts, see S. G. Borello & Sons, Inc. v. Dep't of Indus.

24  Relations, 48 Cal. 3d 341, 769 P.2d 399 (1989) as well as the factors considered under

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1  the FLSA (<u>see</u> 29 U.S.C. § 201 *et. seq*)). These factors all uniformly point toward a

2  finding of employee status here.  For example, rather than being engaged in a distinct

3  occupation, drivers further Amazon's package delivery business.  Amazon closely

4  supervises drivers' deliveries of Amazon packages.  There is essentially no skill

5  required to become a delivery driver; <u>see</u> Dkt. 37-2 at p. 9 (listing requirements).

6  Although drivers provide their own modes of transportation, Amazon provides an app

7  and the infrastructure which is essential for the endeavor.  Amazon and drivers' working

8  relationship is indefinite in duration. <u>Id.</u> at 3; <u>Alexander</u>, 765 F.3d at 996 (contracts of

9  indefinite length indicate employment status).  Payment is by the hour, not per delivery.

10  There is essentially no opportunity for profit and/or loss.  And finally, Amazon is a

11  business, as contrasted with a household hiring a plumber to fix the toilet.  The contract

12  between Amazon and drivers does state that drivers are independent contractors. Dkt.

13  37-2 at pp. 1-2.  However, the Ninth Circuit has made clear that the label the parties

14  place on a working relationship is not dispositive where, as here, the economic realities

15  indicate that the worker is an employee. <u>Real</u>, 603 F.2d at 755.

**b. The Ability of Drivers to Opt-Out of Amazon's Arbitration Clause Does Not Save Rescue It from Illegality**

16

17      Amazon also argues, relying on <u>Johnmohammadi v. Bloomingdale's, Inc.</u>, 755

18  F.3d 1072 (9th Cir. 2014), that because its arbitration agreement had an opt-out

19  provision, the class action waiver does not violate the NLRA. Dkt. 36 at 22.[14]  However,

20  Amazon is wrong, as the NLRB has now explicitly held that the existence of an "opt-out"

21

_____

22  [14]      In <u>Bloomingdale's</u>, the Ninth Circuit said that an arbitration agreement that had an opt-out provision would not violate the NLRA.  However, in that case (which predated <u>Morris</u>), the Ninth Circuit did not actually reach the question of whether a class waiver in an arbitration agreement violates the NLRA in the first place.  Thus, it was premature for the court to address there what effect an opt-out provision would have on NLRA rights, before the Ninth Circuit had even decided whether to <u>D.R. Horton</u>.

23

24

1  clause does not rescue an arbitration clause containing a class action waiver from

2  illegality under the NLRA, and contrary to Amazon's contentions, this issue remains an

3  open question in this Circuit.

4  　　　After the Ninth Circuit issued <u>Bloomingdale's</u>, the NLRB held in <u>On Assignment</u>

5  <u>Staffing Servs., Inc.</u>, 2015 WL 5113231 (Aug. 27, 2015), that Section 7 rights are non-

6  waivable, even by "voluntary" contract, and that an opt-out provision like Amazon's

7  burdens those rights by requiring workers to take affirmative steps to preserve their

8  ability to engage in concerted activity and by requiring workers to reveal their desire to

9  opt-out to their employer.  As the Ninth Circuit made clear in <u>Morris</u>, "[t]he Board's

10  reasonable interpretations of the NLRA command deference" under the <u>Chevron</u>

11  framework. <u>Morris</u>, 2016 WL 4433080, at *3.  Pursuant to <u>Chevron</u>, "if a statute is

12  ambiguous, and if the implementing agency's construction is reasonable," then a court

13  <u>must</u> "accept the agency's construction of the statute, even if the agency's reading

14  differs from what the court believes is the best statutory interpretation." <u>Cuomo v.</u>

15  <u>Clearing House Ass'n, L.L.C.</u>, 557 U.S. 519, 538 (2009).

16  　　　Here, the NLRB's decision in <u>On Assignment Staffing</u> constitutes an intervening

17  agency interpretation of a statute entitled to <u>Chevron</u> deference, which displaces the

18  Ninth Circuit's prior holding in <u>Bloomindale's</u>, 755 F.3d 1072.  In <u>Bloomingdale's</u>, the

19  Court was not asked to defer to the NLRB's interpretation because, at the time, *there*

20  *was no Board opinion on this question to defer to* on this issue; however, now, in light of

21  <u>On Assignment</u>, <u>Chevron</u> deference requires the Court to hold that opt-out provisions do

22

23

24

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    *not* rescue arbitration agreements containing class action waivers from illegality.[15]

2         Amazon also relies on footnotes in <u>Mohamed v. Uber Technologies, Inc.</u>, 836

3    F.3d 1102, 1112 n.6 (9th Cir. 2016), and <u>Morris</u>, 834 F.3d at 982 n.4, to support its

4    argument that an opt-out provision can save a concerted action waiver from violating

5    the NLRA.  However, the Ninth Circuit, in denying *en banc* review in <u>Mohamed</u>, recently

6    specifically modified the decision to *delete* this dicta from footnote 6.  <u>See</u> <u>Mohamed v.</u>

7    <u>Uber Technologies, Inc.</u>, 2016 WL 7470557, at *1 (9th Cir. Dec. 21, 2016).  And the

8    footnote in the <u>Morris</u> opinion suggesting that an opt-out provision could save an

9    arbitration agreement from illegality, 834 F.3d at 982 n.4, was clearly dicta, as that case

10   did not even involve an agreement containing an opt-out provision.  Indeed, the only

11   authority relied upon for this proposition in <u>Morris</u> is <u>Bloomingdale's</u>, which as Plaintiffs

12   explain above, is no longer good law.  Thus, the question of whether an opt-out

13   provision rescues an arbitration agreement with a class action waiver from illegality

14   under the NLRA is an open question in the Ninth Circuit, and for the reasons discussed

15   above, the Court should hold that Amazon's arbitration clause is unenforceable, even

16   though it has an opt-out clause.[16]

17

18

---

19   [15]     The Board's decision in <u>On Assignment</u> is eminently reasonable. The only three courts to address
     it have *all* held that the Board's interpretation of the NLRA is reasonable and entitled to deference. <u>See</u> <u>In</u>

20   <u>re: Fresh & Easy, LLC,</u> 2016 WL 5922292, at *10-12 (Bankr. D. Del. Oct. 11, 2016); <u>Curtis v. Contract</u>
     <u>Mgmt. Servs.</u>, 2016 WL 5477568, at *6 (D. Me. Sept. 29, 2016); <u>Tigges v. AM Pizza, Inc.</u>, 2016 WL

21   4076829, at *16 (D. Mass. July 29, 2016); <u>see also</u> <u>Lewis v. Epic Sys. Corp.</u>, 823 F.3d 1147, 1155 (7th
     Cir. 2016) ("[A]n arbitration agreement limiting Section 7 rights [i]s a <u>per se</u> violation of the NLRA and
     [can]not be legalized by showing the contract was entered into without coercion").

22   [16]     The question of whether an opt-out provision rescues a class waiver from illegality is now pending
     before the Ninth Circuit in <u>O'Connor v. Uber Technologies, Inc.</u>, No. 15-17420 (9th Cir.), where the NLRB

23   has submitted an amicus in support of the plaintiffs' argument that it does not, <u>see id.</u>, Dkt. 65 (<u>see</u> NLRB
     amicus brief attached here as **Exhibit B**).

24

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

**ii.  Amazon's Agreement Also Violates the FLSA**

Another federal court recently held that a concerted action waiver also violates the FLSA itself, a conclusion that is also ***not*** preempted by the FAA.  In Gaffers v. Kelly Servs., Inc., 2016 WL 4445428, at *9 (E.D. Mich. Aug. 24, 2016), the court held that the right under the FLSA for employees to bring a collective action on behalf of themselves and others similarly situated, pursuant to 29 U.S.C. §216(b), was not waivable because it was central to the entire enforcement scheme of the FLSA. The court found that "rights under the FLSA … cannot be waived, since allowing employees to waive those rights (and thereby permitting employers to induce employees to do so), would give employers who manage to secure such waivers a substantial economic advantage over their competitors, and that outcome is the exact result that the FLSA's uniform wage regulations were enacted to prevent." Gaffers, 2016 WL 4445428, at *9 (citing Killion v. KeHE Distributors, LLC, 761 F.3d 574, 592 (6th Cir. 2014)). This is an additional ground upon which the Court can and should find the arbitration clause containing a class action waiver unenforceable in this case.

**iii.  In Addition, Amazon Drivers Are Exempt from the Federal Arbitration Act Because They Are Transportation Workers Engaged in Interstate Commerce**

Amazon's request that the Court compel Plaintiff Lawson to arbitration, and narrow the putative class to drivers who opted out of arbitration, must also be denied on the ground that its drivers are exempt from arbitration altogether because they qualify for the "transportation worker" exemption to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1.  Section 1 of the FAA exempts from the Act's coverage all "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.  To qualify for the Section 1 exemption,

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    an individual must work for a business pursuant to (1) a "contract of employment," (2)

2    be a "transportation worker," and (3) be "engaged in interstate commerce."  See Harden

3    v. Roadway Package Sys., Inc., 249 F.3d 1137, 1140 (9th Cir. 2001) (citing Circuit City

4    Stores, Inc. v. Adams, 532 U.S. 105, 118 (2001)).  Amazon drivers meet all three

5    criteria and are therefore exempt from the FAA.

6        First, Amazon drivers are "transportation workers," because they are workers

7    whose primary duty is to physically transport goods on behalf of a company that

8    transports goods. See, e.g., Int'l Broth. of Teamsters Local Union No. 50 v. Kienstra

9    Precast, LLC, 702 F.3d 954, 957 (7th Cir. 2012) (holding truck drivers who delivered

10   goods are transportation workers); Lenz v. Yellow Transp., Inc., 431 F.3d 348, 351 (8th

11   Cir. 2005) (stating that individuals who drive delivery trucks for a company in the

12   transportation industry are "indisputably … transportation worker[s]"); Hill v. Rent-A-Ctr.,

13   Inc., 398 F.3d 1286, 1289 (11th Cir. 2005) ("The emphasis, therefore, was on a class of

14   workers in the transportation industry, rather than on workers who incidentally

15   transported goods …").[17]  Here, the sole purpose of the drivers' work for Amazon is to

16   transport goods.  Although Amazon, as a company, serves multiple functions, one of its

17   primary functions is the transportation of goods.  The creation of Amazon Logistics, Inc.,

18   a wholly-owned subsidiary of Amazon, Inc. whose only purpose is to transport the

19   goods sold by Amazon, underscores Amazon's position as a transportation company.

20   Accordingly, Amazon delivery drivers are transportation workers.

21       Second, Amazon drivers are clearly engaged in interstate commerce because

22

---

[17]    See also Zamora, 2008 WL 2369769, at *6; Tran v. Texan Lincoln Mercury, Inc., 2007 WL
23   2471616, at *5 (S.D. Tex. Aug. 29, 2007); Veliz v. Cintas Corp., 2004 WL 2452851, at *6-7 (N.D. Cal. Apr.
5, 2004), modified on reconsideration, 2005 WL 1048699 (N.D. Cal. May 4, 2005).

24

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    they transport goods in the flow of interstate commerce.  See Circuit City, 532 U.S. at

2    121 (noting that the phrase "engaged in interstate commerce" "means engaged in the

3    flow of interstate commerce" and "denotes only persons or activities within the flow of

4    interstate commerce") (quotation marks and citations omitted).  Indeed, it is difficult to

5    imagine goods more in the flow of interstate commerce than goods delivered to

6    customers across the country from Amazon, a behemoth in the international retail

7    market that sends and delivers goods throughout the country to people's homes and

8    businesses.[18]  When drivers transport the goods sold by Amazon on the last leg of their

9    interstate journeys from manufacturers to customers, the drivers are undoubtedly

10   "engaged in interstate commerce."

11       Finally, the Amazon drivers qualify for the Section 1 exemption from the FAA

12   because they work for Amazon pursuant to "contracts of employment."  Courts have

13   held this exemption applies regardless of whether the contract classifies the workers as

14   "independent contractors" (i.e. holding "contracts of employment" to include

15   independent contractor contracts). See, e.g., Owner-Operator Indep. Couriers Ass'n v.

16   C.R. England, Inc., 325 F. Supp. 2d 1252, 1258 (D. Utah 2004) (presuming that

17   independent-contractors performed work pursuant to contracts of employment).  This

18   approach is fully consistent with the understanding of the phrase "contracts of

19

20   _____

     [18]    Drivers can qualify for the Section 1 exemption even if they themselves do not cross state lines;
21   "had Congress intended [the Section 1 exemption] to cover only those workers who physically transported
     goods across state lines, it would have phrased the FAA's language accordingly." Palcko v. Airborne
22   Express, Inc., 372 F.3d 588, 593–94 (3d Cir. 2004).  Workers who remain within the boundaries of state
     are still "engaged in interstate commerce" so long as they transport goods "'in the flow of interstate
23   commerce.'" Christie v. Loomis Armored US, Inc., 2011 WL 6152979, at *3 (D. Colo. Dec. 9, 2011)
     (quoting Siller v. L & F Distributors, Ltd., 109 F.3d 765 (5th Cir.1997)); see also Circuit City Stores, Inc. v.
24   Adams, 532 U.S. 105, 121 (2001); see also Christie v. Loomis Armored US, Inc., 2011 WL 6152979, at *3
     (D. Colo. Dec. 9, 2011); Bacashihua v. U.S. Postal Serv., 859 F.2d 402, 405 (6th Cir. 1988).

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

employment" at the time Congress passed the FAA, which, in 1925, meant a contract to perform work, not a contract between an employer and employee.[19]  Thus, for purposes of determining whether Amazon drivers can be subject to arbitration under the FAA, the Court need not even delve at this juncture into the question of whether the drivers are employees or independent contractors.  Instead, the Court can either assume that the drivers work pursuant to "contracts of employment", or as with the question of whether the drivers are protected by the NLRA, the Court could rely on the record already developed in this case, or hold a hearing, to make a preliminary determination that the Amazon drivers are employees and thus exempt from the FAA under Section 1.  See Doe v. Swift Transp. Co., 2017 WL 67521, at *1 (D. Ariz. Jan. 6, 2017) (making preliminary finding on this issue).

Because Amazon drivers satisfy all requirements of the "transportation worker" exemption from the FAA, the Court must deny Amazon's motion to enforce its arbitration clause.[20]

---

[19]     Numerous courts throughout the country specifically used the phrase "contract of employment" to refer to employers' contracts with independent contractors. See, e.g., Tankersley v. Webster, 116 Okla. 208 (1925); Lindsay v. McCaslin, 123 Me. 197 (1923); Waldron v. Garland Pocahontas Coal Co., 89 W. Va. 426 (1921); U.S. Fid. & Guar. Co. of Baltimore, Md., v. Lowry, 231 S.W. 818, 822 (Tex. Civ. App. 1921); Luckie v. Diamond Coal Co., 41 Cal. App. 468, 477 (1919); Hamill v. Territilli, 195 Ill. App. 174, 176 (Ill. App. Ct. 1915).  Moreover, as the Supreme Court explained in Circuit City, the Section 1 exemption emanated from Congress' concerns regarding "transportation workers and their necessary role in the free flow of goods."  532 U.S. at 121.  Given that purpose, Congress would have undermined the purpose of the exemption by distinguishing between transportation workers who were independent contractors and employees.

[20]     If the drivers are exempt from the FAA, the Court cannot instead compel arbitration under state law because (1) the Terms of Service includes a choice of law provision that states that Washington law will govern, with the exception of Section 11, the arbitration clause, "which is governed by the Federal Arbitration Act." Dkt. 37-2 at § 12; and (2) even if Washington law applied (which it does not), Amazon could not compel arbitration pursuant to state law, see Wash. Rev. Code Ann. § 7.04A.030(4).

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1

2

**E.  The Court Should Not Limit Plaintiffs' Recovery Under the Seattle Minimum Wage Ordinance to Violations Occurring After April 1, 2016**

3       Finally, Amazon contends that because individuals could not file suit in court to

4   enforce the Seattle Minimum Wage Ordinance until April 1, 2016, Plaintiffs should be

5   barred from recovering for violations of the Ordinance prior to that date. Seattle Mun.

6   Code § 14.19.110(A).  Amazon is mistaken, however, that the Ordinance's limit on

7   when an individual could first sue for a violation of the Ordinance narrowed the period of

8   time for which an aggrieved individual can *recover* for violations of the Ordinance.  In

9   fact, the Ordinance, which became effective April 1, 2015, explicitly provides that a

10  prevailing employee "may be awarded reasonable attorney fees and costs and such

11  legal or equitable relief as may be appropriate ***to remedy the violation*** including,

12  without limitation, the payment of any unpaid wages plus interest due to the person …."

13  Id. (emphasis added).  A violation of the Act could begin accruing as early as April 1,

14  2015, when the Ordinance went into effect; thus, by giving workers the right "to remedy

15  the violation," the Ordinance grants workers like the Plaintiffs the ability to recover for

16  violations of the Ordinance going back as early as April 1, 2015.

**III. CONCLUSION**

17      For the foregoing reasons, the Court should deny Amazon's motion.[21]

18

19

20

21

22

23  _____

[21]     Plaintiffs do not contest that they may not seek injunctive relief pursuant to the FLSA or the WMWA and therefore are willing to stipulate to the dismissal of this aspect of their claims only.

24

1    Dated:  January 27, 2017                    Respectfully submitted,

2                                                BERNADEAN RITTMANN, FREDDIE
                                                 CARROLL, JULIA WEHMEYER, and RAEF
3                                                LAWSON, individually and on behalf of all
                                                 others similarly situated,

4
                                                 By their attorneys,
5
                                                 ____/s/ Shannon Liss-Riordan____
6                                                Shannon Liss-Riordan, *pro hac vice*
                                                 Harold Lichten, *pro hac vice*
7                                                Adelaide Pagano, *pro hac vice*
                                                 Lichten & Liss-Riordan, P.C.
8                                                729 Boylston Street, Suite 2000
                                                 Boston, MA 02116
9                                                Tel: (617) 994-5800
                                                 sliss@llrlaw.com; hlichten@llrlaw.com;
10                                               apagano@llrlaw.com

11                                               Michael C. Subit, WSBA #29189
                                                 Frank Freed Subit & Thomas LLP
12                                               705 Second Avenue, Suite 1200
                                                 Seattle, WA 98104-1798
13                                               Tel: (206) 682-6711
                                                 msubit@frankfreed.com

14

15

16

17

18

19

20

21

22

23

24

Pₗₜfₛ.' Oₚₚ'ₙ ₜₒ Dₑfₛ.' Mₒₜᵢₒₙ ₜₒ Dᵢₛₘᵢₛₛ - 25

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1

2

## CERTIFICATE OF SERVICE

3       I hereby certify that on January 27, 2017, I electronically filed the foregoing with

4    the Clerk of the Court using the CM/ECF system which will send notification of such

     filing to the following:
5

6       Suzanne Thomas
        K&L Gates
7       925 Fourth Avenue, Suite 2900
        Seattle, WA  98104
8       Suzanne.thomas@klgates.com

9       Richard G. Rosenblatt
        James Walsh Jr.
10      Morgan Lewis Bockius
        502 Carnegie Center
11      Princeton, NJ 08540
        rrosenblatt@morganlewis.com
12      james.walsh@morganlewis.com

13      Meredith Riccio
        Allison N. Powers
14      Morgan Lewis Bockius
        77 W. Wacker Drive 5th Floor
15      Chicago, IL 60601
        Allison.powers@morganlewis.com
16      Meredith.riccio@morganlewis.com

17   and I hereby certify that there are no parties receiving this notice via US Mail.

18      DATED this 27th day of January, 2017.

19

20

21

22       _/s/ Shannon Liss-Riordan_____
         Shannon Liss-Riordan, Esq.

23

24

PLTFS.' OPP'N TO DEFS.' MOTION TO DISMISS - 26

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800