The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BERNADEAN RITTMANN, *et al.*,<br><br>                              Plaintiffs,<br><br>          v.<br><br>AMAZON.COM INC. and AMAZON<br>LOGISTICS, INC.,<br><br>                              Defendant(s). | Consolidated Action<br>Case No. C16-1554-JCC<br><br>**PLAINTIFF IAIN MACK'S<br>MOTION TO LIFT THE STAY<br>AND FOR PARTIAL<br>SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR:<br>April 23, 2021<br><br>ORAL ARGUMENT<br>REQUESTED |

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - i
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................... 2

   A.   Package Delivery Is Within Amazon's Usual Course of Business ............................... 2

   B.   Amazon Flex Drivers Provide Package Delivery Services ........................................... 4

III.  ARGUMENT ...................................................................................................... 5

   A.   Standard Of Review ..................................................................................................... 5

   B.   The Court Should Grant Summary Judgment On Amazon Flex Drivers' Status As Employees Under The "Abc" Test ................................................................................. 7

      1.   California's "ABC" Test for Employee Status .......................................................... 7

      2.   The Delivery Services Provided by Amazon Flex Drivers is Within the Usual Course of Amazon's Business .................................................................................. 9

      3.   The "ABC" Test Applies to the California Labor Code Violations Underlying Mack's PAGA Claims in this Case ........................................................................ 17

IV.   CONCLUSION ................................................................................................. 18

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - i
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1

**TABLE OF AUTHORITIES**

2

3

**Cases**

4

Amazon.com Inc. v. Rittmann
    No. 20-622, 2021 WL 666403 (U.S. Feb. 22, 2021)............................................................ 1

Amero v. Townsend Oil
    2008 WL 5609064 (Mass. Super. Ct. Dec. 3, 2008) .......................................................... 6

Arias v. Superior Court,
    46 Cal. 4th 969 (2009)....................................................................................................... 1

Athol Daily News v. Bd. of Review of Employ. & Training
    (2003) 439 Mass. 171 ...................................................................................................... 10

Awuah v. Coverall North Am.
    707 F.Supp.2d 80 (D. Mass. 2010) ........................................................................... 6, 9, 14

Carey v. Gatehouse Media Massachusetts I, Inc.
    92 Mass. App. Ct. 801 (2018) .................................................................................... passim

Cassady v. Morgan, Lewis & Bockius LLP,
    145 Cal. App. 4th 220, 230, 51 Cal. Rptr. 3d 527 (2006) ................................................ 17

Chaves v. King Arthur's Lounge
    2009 WL 3188948 (Mass Super. July 30, 2009)......................................................... 6, 14

Cotter v. Lyft, Inc.
    60 F.Supp.3d 1067 (2015)................................................................................................ 15

Dynamex Operations W. v. Superior Court
    4 Cal.5th 903 (2018), reh'g denied (June 20, 2018) ............................................... 2, 6, 7, 8

Gonzales v. San Gabriel Transit
    --- P.3d ---, 2021 WL 1031870 (Cal. Mar. 17, 2021)...................................................... 17

Gonzales v. San Gabriel Transit, Inc.
    40 Cal.App.5th 1131 (Oct. 8, 2019), review dismissed ............................................. 17, 18

Granite State Ins. Co. v. Truck Courier, Inc.
    2014 WL 316670 (Middlesex Super. Ct. Jan. 17, 2014).................................................... 6

Jenks v. D & B Corp.
    2011 WL 3930190 (Mass Super. Aug. 24, 2011) ............................................................ 11

Johnson v. VCG-IS, LLC
    Case No. 30-2015-00802813 (Super Ct. Cal. Aug. 31, 2018) .................................... passim

Lawson v. GrubHub, Inc.
    302 F.Supp.3d 1071 (N.D. Cal. 2018) ............................................................................. 13

Linton v. Desoto Cab Co., Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

15 Cal.App.5th 1208 (2017).................................................................. 10

Mack v. Amazon.com Inc., et al.
    Civ. A. No. 2:17-cv-01438................................................................ 1

Martinez v. Combs
    49 Cal.4th 35 (2010), as modified (June 9, 2010)............................. 7

Martins v. 3PD, Inc.
    2013 WL 1320454 (D. Mass. Mar. 28, 2013) ............................. 6, 11

Namisnak v. Uber Techs, Inc.
    444 F.Supp.3d 1136 (N.D. Cal. 2020) ........................................... 15

O'Connor v. Uber Techs., Inc.
    82 F.Supp.3d 1133 (N.D. Cal. 2015) ....................................... 11, 15

Oliveira v. Adv. Delivery Sys., Inc.
    2010 WL 4072360 (Mass. Super. July 16, 2010)........................ 6, 16

People v. Uber Techs., Inc. & Lyft, Inc.
    56 Cal.App.5th 266 (2020).............................................. 8, 10, 11, 14

Rainbow Dev., LLC d/b/a Auto Shine v. Com., Dep't of Indus. Accidents
    2005 WL 3543770 (Suffolk Super Ct. Nov. 17, 2005).................... 16

Rittmann v. Amazon.com, Inc.
    971 F.3d 904 (9th Cir. 2020)............................................................. 1

Rogers v. Lyft, Inc.
    452 F.Supp.3d 904 (N.D. Cal. 2020) ............................................. 15

S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations
    48 Cal.3d 341 (1989)......................................................................... 7

Schwann v. FedEx Ground Package Sys., Inc.
    2013 WL 3353776 (D. Mass. July 3, 2013), aff'd in part rev'd in part  13 F.3d 429
    (1st Cir. 2016) ................................................................................. 14

Shuster v. BAC Home Loans Serv., LP
    211 Cal.App.4th 505 (2012).............................................................. 9

Tieberg v. Unemp't Ins. App. Bd.,
    2 Cal.3d 943 (1970).......................................................................... 6

Vazquez v. Jan-Pro Franchising Int'l, Inc.
    986 F.3d 1106 (9th Cir. 2021)...................................................passim

Zackaria v. Wal-Mart Stores, Inc.,
    142 F. Supp. 3d 949, n. 5 (C.D. Cal. 2015)...................................... 1

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - iii
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**Statutes**

Cal. Lab. Code § 2699 ........................................................................................... 1

Wage Order No. 9................................................................................................... 18

**Rules**

Fed. R. Civ. P. 56 .................................................................................................. 5

**Regulations**

Cal. Code Regs., tit. 8, § 11090.............................................................................. 18

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - iv
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

# I.    INTRODUCTION

Plaintiff Iain Mack has brought a claim under the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2699, et seq., challenging the practice of Defendants Amazon.com Inc. and Amazon Logistics Inc. (collectively, "Amazon") in misclassifying Amazon Flex delivery drivers in California as independent contractors rather than employees.[1]  A PAGA claim is not a class claim, but is instead a claim brought on behalf of the State of California.[2]

Now that the reason for the stay in this case is no longer at issue, Plaintiff Mack now moves for the stay to be lifted[3] and for the Court to grant partial summary judgment with respect only to the issue that California Amazon Flex drivers have been misclassified as independent contractors under the California "ABC" test.  Under the "ABC" test adopted by the California Supreme Court in Dynamex Operations W. v. Superior Court, 4 Cal.5th 903

---

[1]    This claim was originally filed in California but was transferred to this Court and consolidated with the Rittmann case.  See Mack v. Amazon.com Inc., Civ. A. No. 2:17-cv-02515-AB-RAO, Dkt. 25 (Sept. 19, 2017) (transferring case); Mack v. Amazon.com Inc., et al., Civ. A. No. 2:17-cv-01438, Dkt. 41.  The original plaintiff on the PAGA claim was Raef Lawson, but Iain Mack substituted in as the plaintiff.  See Mack v. Amazon.com Inc., Civ. A. No. 2:17-cv-02515-AB-RAO, Dkt. 17.

[2]    Under PAGA, a plaintiff may seek statutory penalties for California Labor Code violations, and 75% of those penalties is payable to the State of California and the remaining 25% is payable to the workers affected by the violations. See Cal. Lab. Code § 2699(i).  The California Supreme Court has made clear that PAGA claims are not subject to the same requirements as class claims, and it is not necessary for a court to certify a case as a class action prior to adjudicating PAGA claims.  See Arias v. Superior Court, 46 Cal. 4th 969, 984-986 (2009); Zackaria v. Wal-Mart Stores, Inc., 142 F. Supp. 3d 949, 955, n. 5 (C.D. Cal. 2015) (no provision in PAGA requires an employee to obtain class certification before proving labor code violations as to other aggrieved employees … [F]ar from being required, class certification in this context makes little sense.").

[3]    This case was most recently stayed pending Amazon's appeal of the Court's order denying Amazon's motion to compel arbitration.  See Dkt. 133.  The Ninth Circuit affirmed that order, Rittmann v. Amazon.com, Inc., 971 F.3d 904 (9th Cir. 2020), and the U.S. Supreme Court denied certiorari, Amazon.com Inc. v. Rittmann, No. 20-622, 2021 WL 666403 (U.S. Feb. 22, 2021).  On March 8, 2021, the parties filed a status report with this Court, jointly requesting that the stay be lifted. Dkt. 164.

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 1
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

(2018), <u>reh'g denied</u> (June 20, 2018), and codified by the California Legislature in Assembly Bill 5 ("A.B. 5"), Cal. Lab. Code § 2775, the drivers' status as employees is indisputable and can be decided by this Court now on summary judgment.[4]

## II.   STATEMENT OF FACTS

### A.  Package Delivery is Within Amazon's Usual Course of Business

Amazon is an electronic retailer based in Seattle, Washington, which does business throughout the country, including extensively in California, where it fulfills customer orders by dispatching delivery drivers to deliver orders to its customers. <u>See</u> Ex. C to Liss-Riordan Decl.[5] at p. 3 (describing its consumer services, "**We fulfill customer orders** in a number of ways…"; describing seller services, "We offer programs that enable sellers to grow their businesses, sell their products in our stores, and **fulfill orders through us**.").  Order fulfillment covers the process from when a sale takes place all the way through delivery to the customer, and thus, it necessarily involves package delivery.

Amazon promotes efficient delivery as a key offering to its customers. <u>See</u> Ex. C at p. 3 (describing its consumer services: "**We seek to offer our customers** low prices, **fast and free delivery**, easy-to-use functionality, and timely customer service.") (emphasis supplied).  Amazon's website provides a "Shipping and Delivery" FAQ section, which includes an

---

[4]     As discussed below, courts have routinely granted summary judgment to plaintiffs claiming misclassification under the "ABC" test and then have addressed issues regarding the employer's liability for specific statutory violations, as well as the calculation of damages or penalties, in further proceedings.  <u>See</u>, <u>e.g.</u>, <u>Johnson v. VCG-IS, LLC</u>, Case No. 30-2015-00802813 (Super Ct. Cal. Aug. 31, 2018) (attached as Ex. A Liss-Riordan Decl.) (granting plaintiffs' motion for summary adjudication that they had been misclassified as independent contractors under California's "ABC" test and reserving for further proceedings issues regarding defendant's liability on specific underlying Labor Code violations and appropriate penalties to be assessed under PAGA); <u>see also</u> cases cited <u>infra</u> at n. 6.

[5]     All Exhibits cited herein are to the Liss-Riordan Declaration, filed in support of this Motion.

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 2
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

explanation of its Shipping Policies and subsections setting forth, for example, Amazon's "Delivery Guarantees", and Special Shipping Options (e.g. how to instruct the delivery driver to leave a large item for delivery on the "front porch", "inside the entryway", or "room of choice"). See Ex. D.  In addition to its regular delivery services, Amazon offers a Prime membership program that touts free "One-day delivery", "Same-day delivery" and "2-hour grocery delivery". See Ex. E ("More of what you love, delivered in more ways"); see also Ex. C at p. 3 ("[W]e offer Amazon Prime, a membership program that includes unlimited free shipping on over 100 million items…").

As demonstrated by its 2020 Securities and Exchange Commission Current Report, Amazon's "faster delivery" offerings are central to its business model and planned growth. See Ex. C at p. 3 (describing consumer services, as quoted herein).  Indeed, Amazon identifies its "ability to… fulfill orders", and "the extent to which [it] offer[s] fast and free delivery" and "invest[s] in .. fulfillment" as key factors to its growth rate.  Id. at p. 9; see also id. at p. 19 ("**To increase sales of products and services, we focus on** improving all aspects of the customer experience, including lowering prices, improving availability, **offering faster delivery and performance times**, ….") (emphasis supplied).  In response to the COVID-19 pandemic, Amazon represented that it "modified numerous aspects of **our logistics, transportation,** supply chain, purchasing, and third-party seller **processes.**" Id. at p. 20 (emphasis supplied).

Amazon considers its competitors to be other companies whose usual course of business is fulfillment and delivery.  Id. at p. 4 ("Our current and potential competitors include:… (5) **companies that provide fulfillment and logistics services for themselves** or for third parties, whether online or offline"); id. at p. 6 ("Our businesses are rapidly evolving and intensely competitive, and we have many competitors across geographies, including…

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 3
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

**logistics services**.") (emphasis supplied).

Amazon has also promoted in press releases its efforts to grow its business by ensuring fast delivery, including through its Amazon Flex delivery drivers.  See Ex. G ("**Amazon has launched several initiatives to ensure fast delivery speeds and supply chain capacity for its customers, including** … **Amazon Flex**, the company's mobile application that allows individuals to sign-up, be vetted and begin delivering for Amazon, a dedicated network of over 10,000 trailers to increase trucking capacity and, now, the expanded fleet of cargo aircraft."); see also Ex. C at p. 20 ("we have hired over 400,000 full-time and part-time employees to increase **our fulfillment network** capacity.") (emphasis supplied).  Amazon promotes the Amazon Flex program as part of the thousands of jobs that it creates and recruits applications for Amazon Flex positions. See, e.g., Ex. F ("Amazon announced that it is creating hundreds of thousands of new jobs around the world for people at all skill levels and stages of their careers, including:… 100,000 new seasonal jobs with Amazon Air, **logistics**, fulfillment centers, sortation centers, and global specialty fulfillment teams in the U.S. and Canada.") (emphasis supplied); Ex. H ("In addition to direct full-time employment, **Amazon businesses such as Marketplace and Amazon Flex will continue to create thousands of jobs for people across the U.S.** who want to start their own business or the flexibility to work part-time and set their own schedule.") (emphasis supplied); see also, e.g., Ex. I ("Most drivers earn between $18-25 an hour"); Declaration of Iain Mack (Mack Decl.), at ¶ 8 ("Amazon determined the rate of pay for my delivery work, which I was told was $18/hour when I started in 2017.").

### B.  Amazon Flex Drivers Provide Package Delivery Services

As set forth above, Amazon Flex drivers, such as Plaintiff Mack, provide delivery services to accomplish the fulfillment and delivery of Amazon customer orders. Amazon Flex

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 4
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

drivers use their personal vehicles to accomplish delivery services.  See Mack Decl. at ¶ 3.
Amazon Flex delivery drivers deliver Amazon packages, typically packaged in cardboard
boxes branded with the Amazon logo.  Id. at ¶ 4.  The delivery drivers sign up to perform
delivery services in advance by selecting a block of time (Amazon's term for a shift) for
which they will work; blocks are typically several hours long.  Id. at ¶ 2.

Once the block begins, Amazon assigns the Amazon Flex driver a number of packages
to deliver within the block, which could range anywhere from 30 to 110 packages.  Id. at ¶ 4.
Amazon also supplies the Amazon Flex delivery driver with a prescribed route to follow to
complete the deliveries.  Id. at ¶ 5.  The driver is required to log each delivery into the
Amazon Flex mobile application ("app"), a requirement that has evolved into requiring that a
photo of the completed delivery be uploaded into the app.  Id.  Mack was supplied with an
Amazon branded vest to wear while making deliveries.  Id. at ¶ 5.  Amazon tracks customer
feedback for its deliveries and disciplines delivery drivers who receive complaints from its
customers (for example, if a package is purportedly not delivered).  Id. at ¶ 6.

Thus, the worked performed by Amazon Flex drivers such as Plaintiff Mack is fully
integrated into Amazon's business model.  Amazon's business includes having these delivery
drivers perform this service to fulfill customer orders.

## III.    ARGUMENT

### A.    Standard of Review

Summary judgment is proper when the evidence shows that there is "no genuine
dispute as to any material fact and that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "A grant of summary judgment is appropriate when there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981, 987 (9th Cir. 2014) (granting

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 5
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

summary judgment to delivery drivers on their misclassification claim as a matter of law); see also Tieberg v. Unemp't Ins. App. Bd., 2 Cal.3d 943, 951 (1970) ("[W]here the facts are without conflict, existence of an employment relationship is a question of law."); Johnson v. VCG-IS, LLC Case No. 30-2015-00802813 (Ex. A) (in a PAGA-only case, granting summary adjudication to plaintiff exotic dancers on the issue of misclassification, holding plaintiffs to be employees of A strip club under Prong B of California's "ABC" test as a matter of law). In applying the Massachusetts "ABC" misclassification test that the California Supreme Court expressly adopted in Dynamex, courts have routinely held that a worker's employment status may be decided as a matter of law on summary judgment.  See Dynamex 4 Cal.5th at 956, n. 23[6]; see also Vazquez v. Jan-Pro Franchising Int'l, Inc. 986 F.3d 1106 (9th Cir. 2021) (recognizing that Prong B of "ABC" test is susceptible to being decided in the plaintiffs' favor on summary judgment).

---

[6]     See e.g., Carey v. Gatehouse Media Massachusetts I, Inc. 92 Mass. App. Ct. 801 (2018) (affirming trial court's grant of summary judgment to plaintiff newspaper delivery drivers on liability for misclassification); Granite State Ins. Co. v. Truck Courier, Inc. 2014 WL 316670, *4 (Middlesex Super. Ct. Jan. 17, 2014) (finding truck couriers to be employees as a matter of law under Prong B of Massachusetts ABC test); Martins v. 3PD, Inc. 2013 WL 1320454 (D. Mass. Mar. 28, 2013) (holding delivery drivers to be employees of delivery company under Prong B of Massachusetts ABC test); Awuah v. Coverall North Am. 707 F.Supp.2d 80 (D. Mass. 2010) (granting summary judgment to cleaning "franchisees" on misclassification under Prong B of Massachusetts ABC test) (cited in Dynamex 4 Cal.5th at 963); Oliveira v. Advanced Delivery Sys., Inc. 2010 WL 4071360 (Mass. Super. July 16, 2010) (granting delivery drivers' motion for summary judgment on liability, finding them to be employees of delivery company under Massachusetts ABC test); Chaves v. King Arthur's Lounge  2009 WL 3188948, *1 (Mass Super. July 30, 2009) (granting summary judgment to plaintiff exotic dancers under all three prongs of ABC test and noting that "failing to prove the second prong of the test is sufficient to find that Chaves was an employee under the statute"); Amero v. Townsend Oil  2008 WL 5609064 (Mass. Super. Ct. Dec. 3, 2008) (granting oil delivery driver's motion for summary judgment on misclassification under Massachusetts ABC test).

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 6
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

**B.**     **The Court Should Grant Summary Judgment on Amazon Flex Drivers' Status as Employees Under the "ABC" Test**

**1.**     **California's "ABC" Test for Employee Status**

In 2018, the California Supreme Court clarified in its landmark <u>Dynamex</u> ruling the proper standard for determining whether a worker is an employee or an independent contractor for the purposes of the wage-and-hour laws that form the basis for Plaintiff's PAGA claims in this case. The Court engaged in a lengthy and detailed analysis of the various tests used to determine employee status and ultimately concluded that it would adopt the Massachusetts version of the "ABC" test for determining employee status. <u>See</u> <u>Vazquez</u> 986 F.3d at 1122 ("In particular, <u>Dynamex</u> embraced the Massachusetts version of the test."). In doing so, the Court recognized that over time, the multi-factor test that had previously been used, set forth in <u>S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations,</u> 48 Cal.3d 341 (1989), had led to uncertainty and manipulation by employers. <u>Dynamex,</u> 4 Cal.5th at 956-57. The Supreme Court therefore adopted the Massachusetts "ABC" test to clarify the "suffer or permit to work" test, one of the three tests that the Court had announced in <u>Martinez v. Combs,</u> 49 Cal.4th 35 (2010), <u>as modified</u> (June 9, 2010). The California State Legislature codified the "ABC" test in California Assembly Bill 5 ("A.B. 5"), which went into effect on January 1, 2020. Cal. Lab. Code § 2775.[7]

Under this "ABC" test, workers are presumed to be employees, and the burden is on the putative employer to establish each of three factors in order to prove independent

---

[7]     The California Supreme Court later clarified that the "ABC" test it announced in <u>Dynamex</u> applied retroactively to claims that had accrued prior to the Court's adoption of the test. <u>See</u> <u>Vazquez v. Jan-Pro Franchising Int'l, Inc.</u> 10 Cal.5th 944, 273 Cal.Rptr.3d 741, 751 (2021). A.B. 5 also applies retroactively, since it expressly states that it clarified the law that already existed. <u>See</u> <u>James v. Uber Techs., Inc.</u> 2021 WL 254303, at *17 (N.D. Cal. Jan. 26, 2021) (recognizing that A.B. 5 (unlike Proposition 22, which is not retroactive) contained a statement that it is a declaration of current existing law, which indicates legislative intent that it be applied retroactively).

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 7
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

contractor status: "(A) the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; and (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." Dynamex, 4 Cal.5th at 956-57; Cal. Lab. Code § 2775 (a)(1). The test is conjunctive, meaning that if the putative employer cannot establish *all three* factors, then the workers are employees. Dynamex, 4 Cal. 5th at 963 ("It bears emphasis that in order to establish that a worker is an independent contractor under the ABC standard, the hiring entity is required to establish the existence of each of the three parts of the ABC standard."); see People v. Uber Techs., Inc. & Lyft, Inc. 56 Cal.App.5th 266, 288 (2020) (the conjunctive nature of the "ABC" test is what makes it "a streamlined analysis readily amenable to application as a matter of law"). In other words, if the Court finds that the alleged employer cannot meet even one of the three prongs, then the workers are employees. Dynamex, 4 Cal. 5th at 963; People v. Uber, 56 Cal. App.5th at 288 ("there are three steps to the ABC test, these steps may be considered in any order, and the analysis is at an end if the putative employer fails at any step"). Notably, "a court is free to consider the separate parts of the ABC standard in whatever order it chooses" and "in many cases it may be easier and clearer for a court to determine whether or not part B or part C of the ABC standard has been satisfied." Dynamex, 4 Cal. 5th at 963. The California Court of Appeal in People v. Uber recognized that "the simplicity of the ABC test ma[kes] it possible to decide at [an] early stage in [] litigation", without the need for extensive discovery. Id. at 302; see also Carey, 92 Mass. App. Ct. at 805, 807-08 (noting that Prong B is particularly amenable to resolution at the summary judgment stage).

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 8
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

Because the California Supreme Court expressly adopted the Massachusetts version of the "ABC" test, case law from Massachusetts is instructive to courts applying this test in California. See Vazquez 986 F.3d at 1122 (citing Shuster v. BAC Home Loans Serv., LP 211 Cal.App.4th 505, 507-08 (2012)) (acknowledging that California courts may look to authorities from other jurisdictions for when considering novel issues, such as application of the "ABC" test); Dynamex, 4 Cal. 5th at 963 (citing caselaw from Massachusetts to illustrate the "ABC" test, including Awuah v. Coverall, 707 F.Supp.2d 80, 82 (D. Mass. 2010) (granting summary judgment to plaintiffs on misclassification issue under Prong B)).  As set forth supra, p. 6, n. 6, federal and state courts in Massachusetts have routinely granted summary judgment on liability to workers who claim they have been misclassified under the "ABC" test, holding that they are employees as a matter of law.  Following that lead, the court in Johnson (a California PAGA case) granted summary judgment to plaintiffs on the issue of their misclassification as independent contractors. See Johnson Case No. 30-2015-00802813 (Ex. A).  There, the court found the defendant strip club could not meet its burden to show that the plaintiff exotic dancers performed services outside the defendant club's usual course of business.  Id. at *2.  Because "the plaintiffs ha[d] established that defendant w[ould] be unable to prove Prong B", analysis of Parts A and C of the test "was unnecessary under Dynamex."  Id.  Here, as discussed next, it is clear that Amazon Flex delivery drivers, like the exotic dancers in Johnson, are employees under the "ABC" test.

### 2.     The Delivery Services Provided by Amazon Flex Drivers are Within the Usual Course of Amazon's Business

Amazon cannot meet its burden to justify independent contractor status for its Amazon Flex delivery drivers under the B prong of the "ABC" test because the delivery drivers perform services in the usual course of Amazon's business, which includes delivery and order

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 9
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

fulfillment.  Importantly, under Prong B, "the parties' characterization of their relationship is not dispositive because their 'actions determine the relationship, not the labels they use.'" People v. Uber, 56 Cal. App.5th at 295 (quoting Linton v. Desoto Cab Co., Inc., 15 Cal.App.5th 1208, 1217 (2017)).

A service falls within the scope of a putative employer's usual course of business for purposes of Prong B where the putative employer either holds itself out as offering that service or defines its activities as including that service.  See Carey 92 Mass. App. Ct. at 807 ("GateHouse's self-description as a newspaper publisher and distributor, and the manner in which it holds itself out to the public and its drivers, support the conclusion that the drivers performed services in the usual course of GateHouse's business"); Vazquez 986 F.3d at 1127; Athol Daily News v. Bd. of Review of Employ. & Training, 439 Mass. 171, 178-79 (2003); see also Johnson Case No. 30-2015-00802813 (Ex. A) at *2.  Importantly, as made clear in Carey, a company can have more than one usual course of business (there, newspaper publishing *and* distribution).

Here, Amazon defines its *own* activities as including package delivery and logistics services – even in filings to the government.  For instance, in its 2020 Securities and Exchange Commission ("SEC") filing, Amazon states, "**[t]o increase sales of products and services, we focus on** improving all aspects of the customer experience, including lowering prices, improving availability**, [and] offering faster delivery and performance times**." Ex. C at p. 19.  Its filings frequently mention "order fulfillment" as a central part of its business, of which last-mile delivery is a critical component.  Id. at p. 3.  In press releases, Amazon promotes the Amazon Flex program as one of its "initiatives to ensure fast delivery speeds and supply chain capacity for its customers", alongside efforts like expanding its own cargo aircraft fleet and trucking capacity.  See Ex. G.

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 10
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1    That package delivery is part of Amazon's usual course of business is also

2    demonstrated by the way it holds itself out to the public.  Courts consider advertising and

3    statements on company websites to determine whether a defendant holds itself out as

4    providing a particular service, such that that service is part of its usual course of business.  See

5    Vazquez 986 F.3d at 1127 (defendant's website statements and advertisements promoting the

6    company as being in the business of cleaning and offering cleaning services is relevant to the

7    Prong B analysis); People v. Uber 56 Cal. App.5th at 293 (citing O'Connor v. Uber Techs.,

8    Inc. 82 F.Supp.3d 1133, 1141 (N.D. Cal. 2015) (acknowledging that public perception

9    demonstrates that "Uber does not simply sell software; it sells rides")); Carey 92 Mass. App.

10    Ct. at 805-06 (statements made in corporate filings to the Secretary of the Commonwealth

11    describing itself as a publisher *and* distributor and describing its business as newspaper

12    publishing--and public statements promising when newspapers will be delivered to

13    customers--pointed towards plaintiff newspaper delivery workers performing services within

14    the usual course of defendant's business); Johnson Case No. 30-2015-00802813 (Ex. A) at

15    *2-3 (information on Google searches and defendants' website was "evidence of the nature of

16    the business conducted at Imperial Showgirls").[8]

17    Here, Amazon uses the lure of unlimited free shipping to attract customers to its

18    Amazon Prime membership program, and its website touts free "One-day delivery", "Same-

19    day delivery" and "2-hour grocery delivery." Ex. E.  Its website also includes a "Shipping and

20    Delivery" FAQ section, which includes an explanation of its Shipping Policies and

---

[8]    See also e.g., Martins 2013 WL 1320454 at *14 (noting that in assessing Prong B of
Massachusetts "ABC" test, "[c]ourts also consider how the putative employer holds itself out
to the public"); Jenks v. D & B Corp. 2011 WL 3930190, at *3 (Mass Super. Aug. 24, 2011)
(noting that the fact that "the club's website advertises '[g]orgeous, totally nude dancers,'" is
evidence that plaintiffs "perform their services" as exotic dancers within the usual course of
defendant's business).

subsections setting forth, for example, Amazon's "Delivery Guarantees", and Special

Shipping Options. See Ex. D.  Indeed, Amazon-branded boxes and packages have become a

familiar sight in many places, see Mack Decl. at ⎕ 4, and public perception plainly considers

Amazon to be in the business of fulfilling online retail orders through package delivery to its

customers.

A service also falls within the scope of a putative employer's usual course of business

where the work performed is integral to the employer's business and not merely incidental to

it.  See Vazquez, 986 F.3d at 1125; Carey, 92 Mass. App. Ct. at 807.  "[A] service need not be

the sole, principal, or core product that a business offers its customers, or inherently essential

to the economic survival of that type of business, in order to be furnished in the usual course

of business."  Carey, 92 Mass. App. Ct. at 807.  Here, although package delivery is not

Amazon's sole, or even principal, business, it certainly is not merely incidental to it, for the

purposes of Prong B.  Indeed, in Carey, the Massachusetts Appeals Court explained that

newspaper delivery was in the usual course of business of a newspaper publisher, even though

delivery was just one aspect of its business (and was not even its most important or lucrative

course of business).  The Court found that Gatehouse was "not merely a wholesaler that takes

little interest in whether and how its drivers succeed in making deliveries" but instead was

"directly dependent on the success of the drivers' endeavors".  Carey, 92 Mass. App. Ct. at

810.  The Court explained that:

> GateHouse deals directly with potential customers in selling subscriptions that include
> the drivers' delivery services; GateHouse assigns subscribers in accepting payments,
> specific delivery instructions, and delivery complaints and conveys those instructions
> and complaints to the drivers; and GateHouse maintains contractual disincentives to
> poor delivery service, as well as contractual incentives for expanding delivery service
> to new customers.

Id.  The same is true here where Amazon interacts directly with its customers, assigns

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 12
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

package deliveries and routes to drivers, fields customer complaints, and generates revenue

from each delivery performed.  <u>See generally</u>, Mack Decl.  Therefore, like in <u>Carey</u>, Amazon

"is not merely a wholesaler that takes little interest in whether and how its drivers succeed" in

making deliveries"; instead, Amazon is "directly dependent on the success of the drivers'

endeavors".  <u>Carey</u>, 92 Mass. App. Ct. at 810.

Similarly, in <u>Lawson v. GrubHub, Inc.</u>, the court held that the plaintiff's work as a

takeout food delivery driver was part of the "regular business" of GrubHub even though "food

delivery is not GrubHub's only or primary business…" 302 F.Supp.3d 1071, 1090 (N.D. Cal.

2018) (internal citation omitted); <u>see also id.</u> at 1091 ("[J]ust because [delivery service] is not

the majority of its business does not mean it is not a regular part of its business in those

markets where Grubhub offers delivery service)[9]; <u>Carey</u> 92 Mass. App. Ct. at 806

(recognizing that an employer can have more than one usual course of business and work

need not be performed in the "primary business" in order for a worker to be an employee

under Prong B).  Here, Amazon may argue that package delivery to consumers is not a core

part of its business; however, this argument must be rejected because package delivery plainly

*is* a regular part of Amazon's business that is necessary to its business model, regardless of

whether or not it is Amazon's "primary business."  As in <u>Carey</u> and <u>Lawson</u>, it is enough that

the services Plaintiff Mack and other California Amazon Flex drivers provide form a

continuing and "regular" part of Amazon's usual course of business.

---

[9]      In <u>Lawson</u>, the court held a bench trial to analyze the driver's misclassification claim
under the prior multi-factor <u>Borello</u> test for employee status, and so the question of whether
the plaintiff's work was within the usual course of GrubHub's business was just one of a
number of factors to be balanced.  The court reached the same conclusion after trial on this
factor as it had before trial on summary judgment (namely, finding that drivers' delivery
services were within Grubhub's usual course of business).  Here, however, under the "ABC"
test, that one factor is dispositive, since Amazon's inability to satisfy Prong B alone means
that the drivers are employees.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

Amazon may also argue that its business is actually as a "technology company" that simply connects customers and willing delivery people rather than acknowledging that part of its business is a package delivery service.  However, courts have regularly used common sense to reject similar attempts by companies to recharacterize the nature of their business and disguise their usual course of business.[10]  For example, courts have rejected efforts by companies focused on the fact that work assignments are delivered through sophisticated technology, such as through an app, to camouflage their usual course of business through linguistic gymnastics and illogical abstraction.  See People v. Uber 56 Cal.App.5th at 292 ("[a] number of cases have considered contentions that ride-sharing companies such as Lyft and Uber are in the business of creating technological platforms, not of transporting passengers, and have dismissed them out of hand") (collecting cases).  In a case against Uber, a court examined this issue in detail and rejected (as a legal matter) the argument that Uber is merely a "technology company", as opposed to a transportation service:

> Uber's self-definition as a mere "technology company" focuses exclusively on the mechanics of its platform (i.e., the use of internet enabled smartphones and software applications) rather than on the substance of what Uber actually does (i.e., enable customers to book and receive rides).  This is an unduly narrow frame. Uber engineered a software method to connect drivers with passengers, but this is merely

---

[10]     Courts have rejected attempts by employers to use clever linguistics to define their business narrowly to avoid employer liability across numerous industries.  See, e.g., Schwann v. FedEx Ground Package Sys., Inc. 2013 WL 3353776, *5 (D. Mass. July 3, 2013), aff'd in part rev'd in part, 13 F.3d 429 (1st Cir. 2016) (rejecting FedEx's attempt to characterize itself as a "logistics" company rather than a "delivery" company, and noting, "[w]hether intended as shorthand for a more metaphysical purveyor of logistics business entity or not, FedEx advertises that it offers package pick-up and delivery services and its customers have no reason to believe otherwise"); Awuah v. Coverall North Am., Inc. 707 F.Supp.2d 80 (D. Mass. 2010) (rejecting argument that defendant cleaning franchise company was in the business of "franchising," rather than "commercial cleaning"); Chaves 2009 WL 3188948, at *1 (rejecting defendant strip club's attempt to deny that exotic dancers performed services in the ordinary course of its business – which court recognized to be adult entertainment – despite club's claim that it merely sold alcoholic beverages; noting that "[a] court would need to be blind to human instinct to decide that live nude entertainment was equivalent to the wallpaper of routinely-televised matches, games, tournaments and sports talk in such a place").

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 14
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

> one instrumentality used in the context of its larger business. Uber does not simply sell software; it sells rides. Uber is no more a "technology company" than Yellow Cab is a "technology company" because it uses CB radios to dispatch taxi cabs, John Deere is a "technology company" because it uses computers and robots to manufacture lawn mowers, or Domino Sugar is a "technology company" because it uses modern irrigation techniques to grow its sugar cane. Indeed, very few (if any) firms are not technology companies if one focuses solely on how they create or distribute their products. If, however, the focus is on the substance of what the firm actually does (e.g., sells cab rides, lawn mowers, or sugar) it is clear that Uber is most certainly a transportation company, albeit a technologically sophisticated one.

O'Connor v. Uber Technologies, Inc., 82 F.Supp.3d 1133, 1141-42 (N.D. Cal. 2015). Other

courts considering Uber's business have come to similar conclusions.[11]

Similarly, Amazon may try to argue that it is merely in the business of e-commerce or

retail and that it does not provide package delivery services itself; under this theory, Amazon

would posit that it merely provides administrative services to the delivery drives like Plaintiff

Mack by processing orders, packaging them, creating routes, and assigning them to drivers,

but that it does not do any deliveries itself. However, this argument has likewise been

uniformly rejected by courts. See, e.g., Rainbow Dev., LLC d/b/a Auto Shine v. Com., Dep't

---

[11]     See e.g., James v. Uber Techs, Inc., 2021 WL 254303, at *10 (N.D. Cal. Jan. 26, 2021) ("This Court has repeatedly held that Uber and Uber's drivers are both in the business of transportation."); Namisnak v. Uber Techs, Inc., 444 F.Supp.3d 1136, 1143 (N.D. Cal. 2020) ("Uber's claim that it is 'not a transportation company' strains credulity, given the company advertises itself as a 'transportation system.'"). Similarly, another federal judge considered whether Lyft is in the technology or transportation business and concluded that "the work performed by the drivers is 'wholly integrated' into Lyft's business' and rejected the notion that Lyft was "merely furnishing a platform that allows drivers and riders to connect, analogous perhaps to a company like eBay." Cotter v. Lyft, Inc., 60 F.Supp.3d 1067, 1078-79 (2015). There, the court went on to explain that "Lyft concerns itself with far more than simply connecting random users of its platform" and instead Lyft "markets itself to customers as an on-demand ride service [that] actively seeks out those customers." Id. at 1078. In a later case, that same judge used even stronger language; in Rogers v. Lyft, Inc., the court explained that the ABC "test is obviously met here: Lyft drivers provide services that are squarely within the usual course of the company's business, and Lyft's argument to the contrary is frivolous." Rogers v. Lyft, Inc., 452 F.Supp.3d 904, 911 (N.D. Cal. 2020). The court went on to scold these "gig economy companies", stating that "rather than comply[ing] with a clear legal obligation, companies like Lyft are thumbing their noses at the California Legislature, not to mention the public officials who have primarily responsibility for enforcing A.B. 5." Id.

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 15
Case No. 2:16-cv-01554-JCC

of Indus. Accidents, 2005 WL 3543770, at *3 (Suffolk Super Ct. Nov. 17, 2005) ("The workers are engaged in the exact business Auto Shine is engaged in; Auto Shine merely provides the administration."); Oliveira v. Adv. Delivery Sys., Inc. 2010 WL 4072360, at *6-7 (Mass. Super. July 16, 2010) (rejecting defendant employer's distinction between "the 'management' [and] the 'performance' function of the furniture delivery" services at issue in the case). Here, there can be no dispute that Amazon delivery drivers "are engaged in the exact business" as Amazon even though the drivers perform the service of delivering the package while Amazon's (acknowledged) employees "provides the administration" by sorting packages, creating delivery routes, and assigning them to drivers. Just like the delivery company in Oliveira, which arranged deliveries while its drivers performed them, Amazon relays delivery orders, administers payment, and oversees quality while the drivers (the workers actually performing the service for customers) carry out the deliveries. Moreover, here, Amazon *does* provide package delivery services through its own fleet of trucks and aircraft in addition to the Amazon Flex program, which belies any argument that Amazon itself does not provide any actual package delivery services. See Ex. I (describing its "network of over 10,000 trailers to increase trucking capacity and, now, the expanded fleet of cargo aircraft" and its "more than 185 fulfillment centers"); see also Ex. M, Ex. N. In sum, the Court should reject any creative attempts Amazon may make to attempt to re-characterize its business and run away from its public representations (and the undeniable existence) of its business as a package delivery service.

Amazon simply cannot escape the fact that, although it has other lines of business as well, it *is* in the business of providing package delivery services. While it is true that Amazon has created the software that its Amazon Flex platform runs on, Amazon also *sells package delivery services* to its customers, and it earns revenue from these deliveries. As such,

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 16
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

Amazon Flex drivers such as Plaintiff Mack perform services in its usual course of business and are thus its employees under Prong B of the "ABC" test.

### 3. The "ABC" Test Applies to the California Labor Code Violations Underlying Mack's PAGA Claims in this Case

Plaintiff expects that Amazon may attempt to argue that the California "ABC" test does not apply to all of the predicate violations underlying Plaintiff's PAGA claim, notably the claim for expense reimbursement under Labor Code § 2802.[12] In Dynamex, the Court declined to address § 2802 specifically because the parties there had not addressed it. See Dynamex 4 Cal.5th at 916, n. 5.

However, since Dynamex, it has become clear that the "ABC" test applies to claims brought under Labor Code § 2802, including claims for expense reimbursement which are "rooted in the wage orders." The California Court of Appeal in Gonzales v. San Gabriel Transit, Inc., 40 Cal.App.5th 1131 (Oct. 8, 2019), review dismissed Gonzales v. San Gabriel Transit --- P.3d ---, 2021 WL 1031870 (Cal. Mar. 17, 2021), determined that the "ABC" test applies to misclassification claims where (like here) drivers requested expense reimbursement for use of their vehicles pursuant to Labor Code § 2802.[13] Likewise, in Johnson v. VCG-IS,

---

[12]  If Amazon has misclassified its drivers as independent contractors, as Plaintiffs allege, then Amazon has clearly violated § 2802 for all of its California drivers, as this provision requires employers to reimburse employees for all expenses need to perform their jobs. Cassady v. Morgan, Lewis & Bockius LLP, 145 Cal. App. 4th 220, 230, 51 Cal. Rptr. 3d 527, 535 (2006), as modified (Dec. 21, 2006) (elements of cause of action are under § 2802 are: "(1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary"); Cochran v. Schwan's Home Serv., Inc., 228 Cal. App. 4th 1137, 1143, 176 Cal. Rptr. 3d 407, 412 (2014). Amazon requires its Flex drivers to use their own cars for deliveries, and it does not reimburse them for the expenses of owning or leasing and operating their vehicles. See Mack Decl. at ☐ 9. Thus, under PAGA, Amazon would be liable for penalties for each workweek in which it has violated § 2802 for its California drivers.

[13]  In Gonzales, the Court determined that the Dynamex ABC test applies to Labor Code claims that are either "rooted in one or more wage orders, or predicated on conduct alleged to have violated a wage order." 40 Cal.App.5th at 1157; see also 40 Cal.App.5th at 1160 (noting

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 17
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

LLC, Case No. 30-2015-00802813 (Super Ct. Cal. July 18, 2018) (attached as Ex. B) at *4-5, the court recognized that exotic dancers' misclassification claims, including for expense reimbursement under § 2802, would be covered by the "ABC" test.

Moreover, A.B. 5, which codified <u>Dynamex</u>, expressly provides that the "ABC" test applies to all Labor Code claims, including claims under § 2802. <u>See</u> Assembly Bill 5, Stats. 2019, c. 296 § 1; Cal. Lab. Code § 2750.3. Indeed, A.B. 5 became effective on January 1, 2020, and it is retroactive. <u>See</u> <u>James v. Uber Techs., Inc.</u> 2021 WL 254303, at *17 (N.D. Cal. Jan. 26, 2021) (recognizing that A.B. 5 contained a statement that it is a declaration of current existing law, which indicates legislative intent that it be applied retroactively).

## IV.   CONCLUSION

As described above, there is no question that Amazon Flex drivers in California are employees under the "ABC" test established in <u>Dynamex</u> and A.B. 5. The Court should grant Plaintiff Mack partial summary judgment on this issue for purposes of his PAGA claim. This claim is not a class claim and thus does not need to await class certification motion practice or discovery. As this is a preliminary issue that can be, and is routinely, decided by courts on summary judgment, the Court should grant this motion.

---

that "[i]n a wage and hour action where the purposes served by the Labor Code and wage order provisions are coextensive, there is no principled reason to treat the claims differently"). <u>Gonzales</u> 40 Cal.App.5th 1131. The <u>Gonzales</u> Court went on to determine that the ABC test applied to plaintiffs' expense reimbursement claim and pay statement claims (which included claims for vehicle-related expenses), because they are encompassed by the wage orders. <u>Id.</u> at 1157, 60. The wage orders require an employer to provide its employees with any "tools or equipment" that are "necessary to the performance of a job" (with certain exceptions not applicable here). <u>See</u> Wage Order No. 9 at ¶ 9(B), Cal. Code Regs., tit. 8, § 11090. This requirement mirrors that of Cal. Lab. Code § 2802, which requires that employees be reimbursed for their reasonable and necessary business expenses. Likewise, the wage order requires an employer to keep accurate "time records" and records of "wages paid each payroll period", etc. <u>See</u> Wage Order No. 9 at ¶ 7, Cal. Code Regs., tit. 8, § 11090.

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 18
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800

1   Date: April 1, 2021                    Respectfully submitted,

2

3                                          IAIN MACK, individually and in his capacity as
                                           Private Attorney General Act Representative,

4
                                           By his attorneys,
5
                                           ____/s/ Shannon Liss-Riordan_____
6                                          Shannon Liss-Riordan, *pro hac vice*

7                                          Harold Lichten, *pro hac vice*
                                           Adelaide Pagano, *pro hac vice*
8                                          Lichten & Liss-Riordan, P.C.
                                           729 Boylston Street, Suite 2000
9                                          Boston, MA 02116
                                           Tel: (617) 994-5800
10                                         sliss@llrlaw.com; hlichten@llrlaw.com;
                                           apagano@llrlaw.com
11

12                                         Michael C. Subit, WSBA #29189
                                           Frank Freed Subit & Thomas LLP
13                                         705 Second Avenue, Suite 1200
                                           Seattle, WA 98104-1798
14                                         Tel: (206) 682-6711
                                           msubit@frankfreed.com
15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF IAIN MACK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 19
Case No. 2:16-cv-01554-JCC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116 ~ (617) 994-5800