The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BERNADEAN RITTMANN, *et al.*,

Plaintiffs,

v.

AMAZON.COM INC. and AMAZON
LOGISTICS, INC.,

Defendants.

Consolidated Action
Case No. 2:16-cv-01554-JCC

**DEFENDANTS' OPPOSITION TO
PLAINTIFF IAIN MACK'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Noted on Motion Calendar: May 7, 2021

**ORAL ARGUMENT REQUESTED**

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

## TABLE OF CONTENTS

2
Page

3   I.    INTRODUCTION ................................................................. 1

4   II.   AMAZON'S COUNTERSTATEMENT OF FACTS ................................ 3

5         A.    Amazon's Global Business. ............................................. 3

6         B.    Mack Made Local Package Deliveries. ................................ 4

7         C.    Amazon Is Not in the Local Delivery Business. ...................... 5

8   III.  ARGUMENT ..................................................................... 5

9         A.    Issues of Fact Preclude Summary Judgment Under Prong B. ........... 5

10              1.    Delivery Partners are not "necessary" to Amazon's business. ........ 7

11                    i.    Amazon does not profit from Delivery Partners. ................ 7

12                    ii.   Disputed material facts exist as to whether Amazon's
                            business is dependent on Delivery Partners. ................... 7
13

14              2.    Amazon is not a local delivery company. ........................ 11

15                    i.    Disputed material facts exist as to whether Amazon holds
                            itself out as a package delivery company. ..................... 11

16                    ii.   Mack's own "evidence" creates more issues of fact. ............ 12

17                    iii.  Amazon is nothing like cleaning services, exotic dance
                            clubs, ride-share companies, trucking companies, or
18                          newspaper distributors. ..................................... 13

19        B.    Disputed Issues of Fact as to AB 5's Business-to-Business Exemption
                Also Preclude Summary Judgment. .................................... 15
20

21        C.    Even if the Court Did Not Find Issues of Fact Under AB 5, Summary
                Judgment Should Be Denied on Alternative Legal Grounds. ............ 16

22              1.    Mack cannot rely on the ABC test because he stopped providing
                      services as a Delivery Partner well before AB 5's January 1, 2020
23                    effective date. ............................................... 16

24              2.    Mack's claims are completely barred by Proposition 22. ............ 21

25  IV.   THE COURT SHOULD DENY MACK'S MOTION UNDER RULE 56(D) ............... 23

26  V.    CONCLUSION .................................................................. 24

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - i
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

4

CASES

5

*Alvarez v. XPO Logistics Cartage LLC*,
   No. 18-03736, 2018 WL 6271965 (C.D. Cal. Nov. 15, 2018) .........................................18, 19

6

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*,
   46 Cal. 4th 993 (2009) .........................................................................................................18

7

8

*Athol Daily News v. Bd. of Review of Employ. & Training*,
   439 Mass. 171 (2003) ...........................................................................................................14

9

10

*Awuah v. Coverall N. Am., Inc.*,
   707 F. Supp. 2d 80 (D. Mass. 2010) .....................................................................................14

11

12

*Cal. Trucking Ass'n v. Bonta*,
   No. 20-55106, 2021 WL 1656283 (9th Cir. Apr. 28, 2021)............................................15, 16

13

14

*California Trucking Ass'n v. Su*,
   903 F.3d 953 (9th Cir. 2018) ................................................................................................17

15

16

*California v. Maplebear, Inc.*,
   No. D077380, 2021 WL 612567 (Cal. App. Feb. 17, 2021), *reh'g denied*
   (Mar. 5, 2021) ......................................................................................................................23

17

*Carey v. Gatehouse Media Mass. I, Inc.*,
   92 Mass. App. Ct. 801 (2018)...............................................................................................10

18

19

*Curry v. Equilon Enters., LLC*,
   23 Cal. App. 5th 289 (2018) ...........................................................................................10, 11

20

*Davidson v. O'Reilly Enterprises, LLC*,
   No. 17-00603, 2018 WL 3359681 (C.D. Cal. June 5, 2018).......................................5, 6, 8, 15

21

22

*Dynamex Operations W. v. Superior Ct.*,
   4 Cal. 5th 903 (2018) ...............................................................................................9, 16, 17, 19

23

*In re Estrada*,
   63 Cal.2d 740 (1965) ............................................................................................................23

24

*Garcia v. Border Transp. Group, LLC*,
   28 Cal. App. 5th 558 (2018) .................................................................................................17

25

26

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Gonzales v. San Gabriel Transit, Inc.*,
　40 Cal. App. 5th 1131 (2019) ................................................19

5

*Governing Bd. v. Mann*,
　18 Cal. 3d 819 (1977) ...........................................................22

6

7

*Haitayan v. 7-Eleven, Inc.*,
　No. 17-7454, 2020 WL 1290613 (C.D. Cal. Feb. 19, 2020) .........................6, 9, 14

8

9

*Haitayan v. 7-Eleven, Inc.*,
　No. 17-7454, 2021 WL 757024 (C.D. Cal. Feb. 8, 2021) .....................20

10

*Henry v. Cent. Freight Lines, Inc.*,
　No. 16-00280, 2019 WL 2465330 (E.D. Cal. June 13, 2019) ................18

11

12

*James v. Uber Techs., Inc.*
　No. 19-06462, 2021 WL 254303 (N.D. Cal. Jan. 26, 2021)....................20

13

14

*Jenks v. D. & B. Corp.*,
　No. 09-01978, 2011 WL 3930190 (Mass Super. Aug. 24, 2011)..........................14

15

*Johnson v. VCG-IS, LLC*,
　Case No. 30-2015-00802813 (Super Ct. Cal. July 18, 2018) ................20

16

17

*Kim v. Reins Int'l California, Inc.*,
　9 Cal. 5th 73 (Cal. 2020)........................................................16

18

19

*Lawson v. GrubHub, Inc.*,
　302 F. Supp. 3d 1071 (N.D. Cal. 2018) ................................10, 11, 19

20

*McClung v. Emp't Dev. Dept.*,
　34 Cal. 4th 467 (2004) ...........................................................20

21

22

*Montoya v. 3PD, Inc.*,
　No. 13-8068, 2014 WL 3385116 (D. Ariz. July 10, 2014)....................11

23

24

*Moreno v. JCT Logistics, Inc.*,
　No. 17-2489, 2019 WL 3858999 (C.D. Cal. May 29, 2019)............................17, 19

25

*Myers v. Philip Morris Cos., Inc.*,
　28 Cal. 4th 828 (2002) ...........................................................21

26

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - iii
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

## TABLE OF AUTHORITIES
(continued)

Page(s)

3

4

*O'Connor v. Uber Technologies, Inc.*,
   82 F. Supp. 3d 1133 (N.D. Cal. 2015) ..........................................................9, 11, 14

5

*Oliveira v. Advanced Delivery Sys., Inc.*,
   No. 091311, 2010 WL 4071360 (Mass. Super. July 16, 2010) .....................................2, 3, 4, 8

6

7

*Olson v. California*,
   No. 19-10956, 2020 WL 905572 (C.D. Cal. Feb. 10, 2020) ....................................................20

8

9

*People v. Durbin*,
   64 Cal.2d 474 (1966) ...................................................................................................23

10

*People v. Uber Techs., Inc.*,
   56 Cal. App. 5th 266 (2020) ......................................................................................24

11

12

*People v. Uber Techs., Inc.*,
   No. CGC-20-584402, 2020 WL 5440308 (Cal. Super. Ct. Aug. 10, 2020) .........................24

13

14

*Physicians Comm. v. Tyson Foods, Inc.*,
   119 Cal. App. 4th 120 (2004) ................................................................................22, 23

15

*Puget Soundkeeper All. v. Cruise Terminals of Am., LLC*,
   No. 14-0476, 2014 WL 4649952 (W.D. Wash. Sept. 16, 2014)....................................23, 24

16

17

*Rainbow Dev., LLC v. Com., Dep't of Indus. Accidents*,
   No. 2005-00435, 2005 WL 3543770 (Mass. Super. Nov. 17, 2005)........................................8

18

19

*Rankin v. Longs Drug Stores Cal., Inc.*,
   169 Cal. App. 4th 1246 (2009) ..................................................................................22

20

*Rittmann v. Amazon.com, Inc.*,
   971 F.3d 904 (9th Cir. 2020) ....................................................................................2

21

22

*Ruggiero v. Am. United Life Ins. Co.*,
   137 F. Supp. 3d 104 (D. Mass. 2015) ....................................................................9, 10, 11

23

24

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
   48 Cal. 3d 341 (1989) ......................................................................................... *passim*

25

26

*Schwann v. FedEx Ground Package Sys., Inc.*,
   No. 11-11094, 2013 WL 3353776 (D. Mass. July 3, 2013), *aff'd in part rev'd
   in part*, 13 F.3d 429 (1st Cir. 2016) ..........................................................................8

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - iv
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Sebago v. Bos. Cab Dispatch, Inc.*,
   28 N.E.3d 1139 (Mass. 2015) ................................................................9, 10, 11, 12

5

*Thurman v. Bayshore Transit Mgmt., Inc.*,
   203 Cal. App. 4th 1112 (2012) ...........................................................................18

6

7

*U.S.A. Inc., v. Illinois Dep't of Employment Sec.*,
   201 Ill. 2d 351 (Ill. Sup. Ct. 2002)....................................................................12

8

9

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
   10 Cal. 5th 944 (2021) .......................................................................................17

10

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
   986 F.3d 1106 (9th Cir. 2021) ..............................................................6, 7, 9, 17

11

12

*Walfish v. Nw. Mut. Life Ins. Co.*,
   No. 16-4981, 2019 WL 1987013 (D.N.J. May 6, 2019)....................................6, 9

13

14

*Younger v. Superior Court*,
   21 Cal. 3d 102 (1978) ........................................................................................22

15

*ZB, N.A. v. Superior Court*,
   8 Cal. 5th 175 (2019) .........................................................................................19

16

17

*Zipperer v. Cty. of Santa Clara*,
   133 Cal. App. 4th 1013 (2005) .....................................................................22, 23

18

**STATUTES**

19

20

Cal. Bus. & Prof. Code
   § 7451...............................................................................................................21

21

Cal. Lab. Code
   §§ 2698 - 2699.5 (Private Attorneys General Act) ........................................ *passim*

22

   § 2699(a) ...........................................................................................................18
   § 2699.3(a) ........................................................................................................16

23

   § 2776(a) ...........................................................................................................15
   § 2776(a)(8) ......................................................................................................16

24

   § 2785(b) ...........................................................................................................21
   § 2802................................................................................................................19

25

26

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - v
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

Federal Aviation Administration Authorization Act, 49 U.S.C.
§ 14501(b)(1) and (c)(1) ...........................................................................................16

5

**RULES AND REGULATIONS**

6

7

Fed. R. Civ. P.
26(a)(1) ...................................................................................................................24
26(f)..........................................................................................................................24
56(d)................................................................................................................3, 23, 24

8

9

**OTHER AUTHORITIES**

10

Proposition 22, Official Voter Information Guide (available at
www.voterguide.sos.ca.gov/propositions/22/) (last accessed May 3, 2021) ...........................21

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - vi
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

I.    **INTRODUCTION**

Amazon has not yet even responded to the operative complaint filed by Plaintiff Iain Mack ("Mack") under the California Private Attorneys General Act ("PAGA"), let alone engaged in discovery. As Mack acknowledges, this case remains subject to a stay. Dkt. #165 ("Mot.") at 1. Still, Mack prematurely seeks partial summary judgment on Prong B of California's ABC test, effectively asking this Court to decide whether he and thousands of other Delivery Partners who made local package deliveries in California are independent contractors or employees. In other words, he asks the Court to rule, without the benefit of any discovery, that Amazon has violated the law as to thousands of individuals, about whom the Court has no evidence, before Amazon even answers the operative complaint and has an opportunity to test Mack's claims. Mack's position is as wrong as it is unfair. As discussed below, the ABC test does not apply to Mack's representative PAGA action for multiple reasons. Even if it did, Mack has failed to present, as he must, undisputed facts showing that he and every other Delivery Partner in California performed services in the "usual course" of Amazon's business.

Mack urges the Court to answer this fact-intensive Prong B inquiry by looking to "the substance of what" Amazon "actually *does*," not *"how* [Amazon] distribute[s] [its] products." Mot. at 15 (citation omitted). But Mack's own admissions confirm there are already disputed issues of fact at this early stage. According to Mack, the substance of what Amazon actually does is sell products as "*an electronic retailer.*" Mot. at 2 (emphasis added). Mack's business, in contrast, was limited to distributing some of those products by making local package deliveries for a brief period ending in January 2018. He ignores, and offers no facts about, the services performed by thousands of other California Delivery Partners. To be sure, Mack offers no evidence that he: sold consumer products "online and [in] physical stores"; "manufacture[d] and [sold] electronic devices"; "develop[ed] and produce[d] media content"; provided "unlimited streaming of tens of thousands of movies and TV episodes"; or offered a broad set of "on-demand" technology services. Dkt. #166-3 ("Amazon 10-K") at 3, 43.  Amazon's business

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 1
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    includes all of these things. *Id.* So, following discovery, Amazon will likely move for summary

2    judgment under Prong B because Amazon is not, by any measure, a local delivery company. For

3    now, the Court need only decide whether the facts unassailably support Mack's argument. They

4    do not, which is grounds alone to deny his motion.

5          For many assertions, Mack provides no facts *at all*—including about the thousands of

6    other Delivery Partners in California who provided different services at different times and yet

7    whose classification status he now asks this Court to decide. Where there are record facts, they

8    contravene Mack's only two arguments under Prong B. To begin, Mack has not shown that any,

9    let alone every, Delivery Partner is "necessary" to Amazon's business. Mot. at 12-16. The Ninth

10    Circuit has held that the logical starting point for this inquiry is to determine how the defendant

11    makes money. Yet Mack offers no evidence to prove, as he must, that Amazon profits from

12    Delivery Partners' services. Contracting with Delivery Partners is not a source of revenue for

13    Amazon, but a *cost*.

14          Mack also fails to prove with undisputed facts that Amazon is a delivery company. Mot.

15    at 10-12. It is not. As the Ninth Circuit observed *in this very case*: "Historically, Amazon has

16    shipped products by using large third-party delivery providers such as FedEx and UPS. Recently,

17    it has supplemented those delivery services by contracting with local delivery providers[.]"

18    *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 907 (9th Cir. 2020). Mack does not even try to

19    argue that Amazon's "usual course" of business is the same as those large carriers, nor could he

20    credibly do so. Instead, he cites cases involving exotic dancers, cleaners, and ride-share drivers.

21    Unlike the plaintiffs in those cases, Mack has not shown that Delivery Partners' local deliveries

22    are the very reason Amazon's global business exists. While Mack sprinkles his brief with the

23    words "fulfillment" and "logistics," he does not prove those activities are the same thing as local

24    deliveries. There is a critical distinction, recognized by courts but ignored by Mack, between

25    Amazon's logistics and fulfillment operations, which *source* and *store* products, and the *delivery*

26    of those products to consumers by outside vendors. Simply put, Amazon is not a local delivery

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 2
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  company.

2  Accordingly, if the Court finds that the ABC test applies, it should deny Mack's motion

3  because material issues of fact preclude summary judgment in his favor under Prong B.

4  But even if the Court did not find issues of fact, it should deny Mack's motion because

5  Prong B does *not* apply to Mack's representative PAGA action for at least three independent

6  reasons. *First*, there are triable issues—and no discovery—as to whether Mack or at least some

7  of the thousands of California Delivery Partners qualify as a "business service provider" under

8  the business-to-business exemption to AB 5, which amended the California Labor Code to codify

9  the ABC test effective January 1, 2020. *Second*, the ABC test does not apply to Mack because he

10  last provided services as a Delivery Partner in 2018, years before AB 5 went into effect. *Third*,

11  by passing Proposition 22 ("Prop 22") last year, California voters decided that app-based drivers

12  like Mack are not "employees" under California law. Mack has not demonstrated that Prop 22

13  does not apply to his claims; his failure to do so precludes a finding of employee status under the

14  ABC test (and any other test). At a minimum, issues of fact exist on this dispositive issue.

15  The Court should deny Mack's motion for all these reasons. As discussed below, the

16  Court can also take a simpler path and deny Mack's motion under Rule 56(d) to allow Amazon

17  an opportunity to take relevant discovery before the Court rules.

18  ## II.  AMAZON'S COUNTERSTATEMENT OF FACTS

19  ### A.  Amazon's Global Business.

20  Amazon is an electronic retailer that offers various products, including books, electronics,

21  DVDs, household goods, apparel, and more that customers purchase online through Amazon

22  websites and smartphone applications. Dkt. #37 ("Lumba Decl."), ¶ 3. Amazon's business has

23  other segments. Amazon obtains significant income from Amazon Web Services ("AWS"),

24  which provides *data storage* and other technology services. *See* Amazon 10-K, at 3, 25-26.

25  AWS's business, which accounted for approximately 60% of Amazon's operating income in

26  2019 (*id.* at 25-26), does *not* include fulfillment or logistics operations, contract with any

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 3
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   Delivery Partners, or use Delivery Partners to deliver its services. Declaration of Alexa Hawrysz

2   ("Hawrysz Decl."), ¶ 12. Amazon also manufactures electronic devices, sells services to stream

3   tens of thousands of movies and television episodes, and produces original films and other

4   programming. Amazon 10-K, at 4, 47. Amazon began as on online bookseller; it continues to

5   offer programs that allow authors, musicians, and filmmakers to "publish and sell content." *Id.* at

6   4, 42. Mack offers no evidence that Delivery Partners are involved in these manufacturing,

7   media, or publishing facets of Amazon's business.

8            **B.    Mack Made Local Package Deliveries.**

9            Products purchased through Amazon historically have been delivered by large third-party

10  delivery providers (*e.g.*, Federal Express, UPS and the U.S. Postal Service). Hawrysz Decl. ¶ 11;

11  Lumba Decl. ¶ 4. More recently, Amazon has begun to supplement its use of large providers by

12  contracting with smaller delivery service providers and, now, independent contractors (Delivery

13  Partners) crowdsourced through a smartphone-application-based program known as Amazon

14  Flex. Lumba Decl. ¶ 4. Amazon did not begin contracting with Delivery Partners in California

15  until October 2016, after using other third-party delivery providers such as FedEx, UPS, and the

16  U.S. Postal Service for years. Hawrysz Decl. ¶ 11. Since then, Delivery Partners have been used

17  in *some* (but not all) markets in California to supplement deliveries made by national, regional,

18  and local delivery companies, which continue to make the majority of local customer deliveries.

19  *Id.*; *see also* Lumba Decl. ¶ 4. Thousands of sellers on Amazon's websites warehouse their own

20  products, which they also deliver directly to customers; Delivery Partners are not involved with

21  these deliveries either. Hawrysz Decl.¶ 7.

22           Mack cites *no* evidence that Amazon generates revenue from local deliveries by Delivery

23  Partners. It does not. *Id.* ¶ 10. Delivery Partners do not charge fees from customers and Amazon

24  does not charge or collect any fees from Delivery Partners. *Id.* Paying fees to Delivery Partners is

25  a *cost* that Amazon incurs. *Id.*

26

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 4
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

### C.  Amazon Is Not in the Local Delivery Business.

Mack maintains that order "fulfillment" is the same thing as local delivery. Mot. at 2. But "fulfillment" generally speaks to the process whereby third-party wholesalers, manufacturers, or sellers ship their products to Amazon fulfillment centers, where Amazon warehouses the products, and, once ordered by customers, packages and readies them for shipment to smaller facilities from which deliveries are made. *See* Hawrysz Decl. ¶ 4; Lumba Decl. ¶ 3. Nor are the "trucks and aircraft" referenced in Mack's motion (Mot. at 4, 16) part of Amazon's "usual course of business," as that work is not performed by Amazon employees; but what is most relevant here is that those trucks and aircraft move goods from sellers to Amazon warehouses and between Amazon warehouses. Hawrysz Decl. ¶ 9. The "trucks and aircraft" have nothing to do with local delivery to Amazon's customers. *Id.*

Delivery Partners do not enter the picture, *if at all*, until packages make their way to local Amazon delivery stations. *Id.* ¶ 5.  Unlike the package delivery services that Mack claims he provided (Dkt. #167 ("Mack Decl."), ¶ 2), some Delivery Partners in California provided different services—for example, delivery from third-party grocers—without ever visiting any Amazon delivery station. Hawrysz Decl. ¶¶ 5-6.[1]

### III.  ARGUMENT

### A.  Issues of Fact Preclude Summary Judgment Under Prong B.

"Because PAGA is a representative action undertaken on behalf of the state to enforce the Labor Code, a plaintiff cannot bring a PAGA claim on an individual basis." *Davidson v. O'Reilly Enterprises, LLC*, No. 17-00603, 2018 WL 3359681, at *3 (C.D. Cal. June 5, 2018) (internal

---

[1] Most contentions in Mack's perfunctory declaration are irrelevant. His allegations do, however, confirm that (1) he did not perform fulfillment services for Amazon and (2) his alleged experience conflicts with the record and the experiences of other Delivery Partners who, for instance: are not required to use their personal vehicles; select delivery blocks as short as 15 minutes; are "free to map out [their] own routes, [and] sequence [their] deliveries"; never wear *optional* Amazon-branded vests; and are never disciplined by Amazon. *Compare* Mack Decl., *with* Hawrysz Decl. Ex. A, ¶¶ 4-5, 8; Lumba Decl. ¶¶ 21-23; Dkt #50, ¶¶ 7-17.

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 5
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  citations omitted). The burden is much higher. To prevail under PAGA, the plaintiff must "prove

2  Labor Code violations with respect to each and every individual on whose behalf plaintiff seeks

3  to recover civil penalties." *Id.* at *2. Here, Mack attempts to summarily adjudicate the

4  classification status of thousands of individuals. If the Court finds a triable issue of fact as to

5  whether even a *single* Delivery Partner was an independent contractor under Prong B, it must

6  deny his motion. *Id.*

7       To satisfy the Prong B factors asserted in his motion, Mack must show that all Delivery

8  Partners in California are "necessary" to Amazon's business or that they are in the same business

9  that Amazon "proclaims to be in." *Haitayan v. 7-Eleven, Inc.*, No. 17-7454, 2020 WL 1290613,

10 at *8 (C.D. Cal. Feb. 19, 2020). Mack attempts to meet his burden by misstating Amazon's

11 business through a few isolated words and phrases. However, the limited record already before

12 the Court—including Mack's own "evidence"—reveals sharply disputed facts about each factor.

13 Fundamentally, Mack has failed to show that Amazon's complex, global business is dependent

14 on Delivery Partners' narrow work providing local deliveries. He has not carried his burden to

15 show that *he*, let alone every California Delivery Partner, acted at all times within Amazon's

16 usual course of business.[2]

17

18

19

---

20 [2] Some courts have considered a third factor: "whether [Amazon's] business model relies on [Delivery
21 Partners] continuously performing [local delivery] services." *Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
   986 F.3d 1106, 1126 (9th Cir. 2021). Mack, however, does not offer a single fact or argument addressing
22 this factor. He offers no facts to dispute, for example, that Amazon could deliver to customers in
   California without Delivery Partners (the record shows it has and can, *see* Hawrysz Decl. ¶¶ 5,11), that
23 Amazon generates profits from products ordered through Amazon that are *not* made by local delivery
   (*e.g.*, streaming, customer pick-up), or that Amazon generates the majority of its income from products
24 and services that do not rely on delivery *at all*. *See* Amazon 10-K, at 3, 25-26. Moreover, some Delivery
   Partners in California performed services that have been *discontinued*. *See* Hawrysz Decl. ¶ 6. Indeed,
25 even if workers have performed services over a period of years, that is not sufficient to meet Prong B.
   *See, e.g.*, *Walfish v. Nw. Mut. Life Ins. Co.*, No. 16-4981, 2019 WL 1987013, at *1, 8 (D.N.J. May 6,
26 2019) (granting summary judgment to defendant under Prong B where plaintiff-insurance agent regularly
   sold defendant's insurance products for "nearly twenty years").

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 6
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

### 1.    Delivery Partners are not "necessary" to Amazon's business.

#### i.    Amazon does not profit from Delivery Partners.

Courts analyze the "necessary" factor by looking to whether the business "derives [its] profits from the earnings of the" workers such that they are "necessary to the success of the" business. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1125-27 (9th Cir. 2021) (internal citation and quotation omitted). The common-sense conclusion that Amazon is not in the delivery business is borne out by the fact that Delivery Partners' services are a cost, not a source of revenue for Amazon. *See* Hawrysz Decl. ¶ 10. That fact materially distinguishes this case from the cases cited by Mack (*see infra* at 13-14) involving exotic dancers, delivery drivers, ride-share drivers, and cleaners where the defendant "actively and continuously profit[ed] from the performance of" the workers' "services as they are being performed." *Vazquez*, 986 F.3d at 1126. In short, Mack does not come close to proving that Amazon's profitability depends on Delivery Partners, and so does not meet that component of the *Vazquez* analysis. *Id.*

#### ii.    Disputed material facts exist as to whether Amazon's business is dependent on Delivery Partners.

While the lack of revenue should end the discussion, Delivery Partners are not "necessary" to Amazon's business for the additional reasons that they are just one of the multiple vendor options with which Amazon contracts to make deliveries to its customers, *see supra* at 4, and Amazon obtains the majority of its income from business units *that do not involve package delivery*. *See* Amazon 10-K, at 3, 25-26; Hawrysz Decl. ¶ 12. Even as to Amazon's online business, Mack provides *no* evidence that deliveries to Amazon customers would be interrupted, let alone cease, without Delivery Partners. Indeed, Amazon reached its customers in California for years without Delivery Partners and continues to use national, regional, and local delivery companies to make most customer deliveries. Hawrysz Decl. ¶ 11. Amazon does not use Delivery Partners in all California markets. *Id.* Not only that, thousands of Amazon sellers send products to customers directly; Delivery Partners never touch those packages either. *Id.* at ¶ 7.

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 7
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Unlike Mack, some Delivery Partners in California did not perform package delivery services *at*

2    *all* (they, *e.g.*, delivered from third-party grocers) or delivered goods without ever visiting any

3    Amazon facility. *Id.* at ¶¶ 5-6. Some Delivery Partners performed services that have been

4    discontinued. *Id.* at ¶ 6. That is the opposite of "necessary." Mack has not shown (or even

5    alleged) what businesses *these* Delivery Partners engaged in or whether Amazon's business

6    depended on them. *At a minimum*, the facts presented by Amazon, and Mack's failure to present

7    evidence about the experiences of *any* other Delivery Partner, raise an issue of fact as to whether

8    "each and every" Delivery Partner performed services within Amazon's usual course of

9    business. *Davidson*, 2018 WL 3359681, at *2 ("[Defendant] moves for partial summary

10   judgment on Davidson's PAGA claim, arguing that (1) Davidson has failed to introduce any

11   evidence as to other aggrieved employees; and (2) without evidence as to those other aggrieved

12   employees, Davidson cannot pursue an individual PAGA claim. The Court agrees on both

13   counts.").

14          Mack implicitly acknowledges these materially disputed facts by arguing that Delivery

15   Partners need not be "essential" to Amazon's "economic survival" to perform work in its usual

16   course of business. Mot. at 12. However, "economic survival" is exactly the line drawn by the

17   cases cited in his motion. *See, e.g.*, *Oliveira v. Advanced Delivery Sys., Inc.*, No. 091311, 2010

18   WL 4071360, at *6 (Mass. Super. July 16, 2010) (workers "provid[ed] physical delivery of

19   furniture, which [was] ***essential*** to [defendant's] business"; without deliveries, the "business

20   *would not exist*") (emphasis added); *Schwann v. FedEx Ground Package Sys., Inc.*, No. 11-

21   11094, 2013 WL 3353776, *5 (D. Mass. July 3, 2013), *aff'd in part rev'd in part*, 13 F.3d 429

22   (1st Cir. 2016) ("[T]he pick-up and delivery services performed by the drivers fall within

23   FedEx's usual course of business if, 'without the services of the [drivers], [FedEx] would *cease*

24   *to operate.*'") (emphasis added) (quoting *Rainbow Dev., LLC v. Com., Dep't of Indus. Accidents*,

25   No. 2005-00435, 2005 WL 3543770, at *3 (Mass. Super. Nov. 17, 2005) ("The *only* 'business'

26   Auto Shine does is to provide its customers with the services that these [workers] perform . . .

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 8
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  Without the services of the workers, Auto Shine *would cease to operate*.") (second emphasis

2  added)); *O'Connor v. Uber Technologies, Inc.*, 82 F. Supp. 3d 1133, 1142 (N.D. Cal. 2015)

3  (finding under *Borello* test that Uber "simply would not be a viable business entity without its

4  drivers"); *see also Ruggiero v. Am. United Life Ins. Co.*, 137 F. Supp. 3d 104 (D. Mass. 2015)

5  (Prong B requires showing "that individual is performing an essential part of the employer's

6  business").

7       Regardless of where one draws the line of dependence under Prong B, Mack fails to get

8  his motion across it. *See Haitayan*, 2020 WL 1290613, at *8 (denying summary judgment to

9  plaintiffs under Prong B where 7-Eleven asserted that it obtained the "majority of its revenue and

10 profits" from "selling franchises" as opposed to "operating convenience stores"). His illogical

11 argument boils down to this: Because some products are sold online through Amazon, and

12 because some of those products are delivered by Delivery Partners to buyers, Amazon and

13 Delivery Partners are in the same business. In a decision cited with approval by the Ninth Circuit

14 in *Vazquez*, the Supreme Judicial Court of Massachusetts ***rejected this exact argument***:

15       One may . . . be engaged in a business that cannot be conducted unless he . . . can
16       ship the finished product to the various markets. It is hard to imagine a business
         that is not dependent in some way upon transportation. In such instances, while
17       transportation is a necessity, it does not thereby become a part of or a process in the
         business but it continues as ancillary and incidental thereto.

18 *Sebago v. Bos. Cab Dispatch, Inc.*, 28 N.E.3d 1139, 1152 (Mass. 2015) (citation omitted).[3] The

19 *Ruggiero* court reached a similar conclusion. After acknowledging that "[a]ny manufacturing

20 business is, of course, dependent on such ancillary functions as product sales and advertising,"

21 the court held that, under Prong B, insurance agents were *not* employed by the company that

22 "manufactured" the insurance products sold by the agents, even though those sales were

23 "critical" to the company's "financial stability." *Id.*, 137 F. Supp. 3d at 120; *see also Walfish v.*

24 *Nw. Mut. Life Ins. Co.*, No. 16-4981, 2019 WL 1987013, at *1 (D.N.J. May 6, 2019) (defendant

25

26 ---
[3] In *Dynamex Operations W. v. Superior Ct.*, 4 Cal. 5th 903, 964 (2018), the California Supreme Court
also adopted the same ABC test defined in *Sebago,* 28 N.E.3d at 1146.

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 9
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  was not employer under ABC test where its "core business [was] underwriting, issuing, and

2  servicing insurance policies" and plaintiff provided service selling those policies).

3      In *Curry v. Equilon Enters., LLC*, 23 Cal. App. 5th 289 (2018), the California Court of

4  Appeal applied the same reasoning to affirm summary judgment in favor of the *defendant*. There,

5  "Shell owned approximately 365 fueling stations in California," "owned the gasoline that was sold

6  to customers," and "received all the revenue from the fuel sales." *Id.* at 297, 307. Still, the court

7  held that the plaintiff's work managing one of Shell's fueling stations was outside Shell's usual

8  course of business because Shell was "not in the business of operating fueling stations—it was in

9  the business of owning real estate and fuel." *Id.* at 315.

10     *Curry*, *Sebago*, and *Ruggiero* compel the conclusion that, even where a retailer depends on

11  carriers to put products in customers' hands (as do all e-retailers), the delivery workers' service is

12  not in the retailer's usual course of business. Mack concedes that Amazon is, at its core, an

13  "electronic retailer." Mot. at 2. He has not presented undisputed facts showing that Amazon is a

14  *delivery company*. *See supra* at 3-5. Instead, the facts confirm that, because Amazon "considers

15  [local deliveries] to be beyond th[e] boundaries" of "its business," it has contracted with Delivery

16  Partners and other third parties to perform those services. *Ruggiero*, 137 F. Supp. 3d at 119. The

17  ABC test "cannot be used to expand those boundaries." *Id.* (citation omitted).

18     Mack cites two cases to try: *Carey v. Gatehouse Media Mass. I, Inc.*, 92 Mass. App. Ct.

19  801 (2018) and *Lawson v. GrubHub, Inc.*, 302 F. Supp. 3d 1071 (N.D. Cal. 2018). Neither

20  supports his argument that Delivery Partners are "necessary" to Amazon's business. In *Carey*,

21  GateHouse described itself "as a publisher and distributor" and earned profits directly from

22  newspaper sales generated by delivery drivers. 92 Mass. App. Ct. at 803. Under that model, the

23  drivers pay "GateHouse a portion of the revenue [they] receive from each customer; the more

24  customers they have, the more they pay GateHouse." *Id.* at 809. As a result, Gatehouse was

25  directly and financially "***dependent on the success of the drivers' endeavors***." *Id.* at 810

26  (emphasis added). Not so here. Delivery Partners do not pay any fees to Amazon; it is the other

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 10
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  way around—Amazon incurs the *cost* of paying fees *to* Delivery Partners. Hawrysz Decl.¶ 10.

2  *Lawson* does not help Mack either. In *Lawson*, the court found after a fully developed

3  trial record that the plaintiff was in the same business as GrubHub, "providing food delivery for

4  certain restaurants," but applied the *Borello* test (not the ABC test) to find that the plaintiff was

5  properly classified as an independent contractor. *Id.*, 302 F. Supp. 3d at 1091.

6          **2.       Amazon is not a local delivery company.**

7          **i.       Disputed material facts exist as to whether Amazon holds itself
                        out as a package delivery company.**
8

9          Mack contends that Amazon's business is "package delivery." Mot. at 2. This assertion

10 conflicts with the record and common sense. Facts presented by Amazon demonstrate that its

11 fulfillment operations focus on inventory procurement, warehousing, sorting, and packaging—

12 not local deliveries. *See supra* at 5. While Mack seizes on the words "fulfillment" and "logistics"

13 in a few press releases and securities filings, Mot. at 2-5, he cites no evidence to explain these

14 operations. Moreover, under Prong B, companies may engage in operations that may be critical

15 to their business—including shipping and delivery—without becoming a shipping or delivery

16 *business*. *See Curry*, 23 Cal. App. 5th at 315; *Sebago*, 28 N.E.3d at 1152; *Ruggiero*, 137 F. Supp.

17 3d at 119.

18         By Mack's own logic, "the substance of what [Amazon] actually does" (Mot. at 14) is *not*

19 a local delivery. Delivery is "*how*" retailers "distribute" their products. *O'Connor*, 82 F. Supp.

20 3d at 1141. It is not the substance of what they actually *do*. *See, e.g.*, *Montoya v. 3PD, Inc.*, No.

21 13-8068, 2014 WL 3385116, at *8 (D. Ariz. July 10, 2014) (granting summary judgment to

22 Home Depot after finding that delivery driver who contracted to provide "last mile" deliveries to

23 Home Depot customers failed to show deliveries were "integral" to "Home Depot's business

24 model"). Amazon's acknowledgment that it maintains fulfillment and logistics operations or uses

25 "trucks and aircraft" to move inventory within its fulfillment center and delivery station network,

26 *see* Hawrysz Decl. ¶ 9, does not "override the realities of [Amazon's] actual business" as an

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 11
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    online retailer, manufacturer, media, and technology company. *Sebago*, 28 N.E.3d at 1151 (radio

2    associations were not in same business as taxicab drivers, even though "associations advertise

3    themselves as providing taxicab services" and "arrange for the transportation of passengers");

4    *see also U.S.A. Inc., v. Illinois Dep't of Employment Sec.*, 201 Ill. 2d 351 (Ill. Sup. Ct. 2002)

5    (services of carpet installers were "outside" of carpet retailer's "usual course" of business, even

6    though retailer gained "a competitive advantage . . . by arrang[ing] for installation by

7    independent installers" and 75% of customers opted for installation service).

8                    ii.    ***Mack's own "evidence" creates more issues of fact.***

9            Amazon's 2020 Form 10-K, about which there has been no discovery and yet is the

10   linchpin of Mack's motion (Mot. at 3-4, 10), does not establish that the company's "fulfillment"

11   operations are co-extensive with making local deliveries. *See* Amazon 10-K, at 44. The portion

12   cited by Mack does not mention deliveries at all. *Id.* ("***Fulfillment costs*** . . . include[e] costs

13   attributable to buying, receiving, inspecting, and warehousing inventories; picking, packaging,

14   and preparing customer orders for shipment[.]") (emphasis added). Nonetheless, Mack states in

15   conclusory fashion that "[o]rder fulfillment covers the process from when a sale takes place all

16   the way through delivery to the customer, and thus, it necessarily involves package delivery."

17   Mot. at 2. Yet, ***Mack cites no evidence*** to support this statement. *Id.* Nor does Mack claim that

18   his work as a Delivery Partner, which ended in January 2018 (Declaration of Peter Nickerson,

19   ("Nickerson Decl."), ¶¶ 4-5), included activities that *do* involve fulfillment, such as "buying,

20   receiving, inspecting, and warehousing inventories" or "picking, packaging, and preparing

21   customer orders for shipment[.]" Amazon 10-K, at 44. While Mack attests that he picked up

22   packages from an Amazon "fulfillment center" in San Bernardino, California (Mack Decl. ¶ 2),

23   ***this is false***. Delivery Partners do *not* pick up packages from Amazon fulfillment centers in

24   California, which are facilities where some products are warehoused and then shipped to other

25   locations for local deliveries. Hawrysz Decl. ¶ 5. Mack's argument that fulfillment and logistics

26   means local package deliveries—misguided as it is—also conflicts with the fact that some

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 12
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   Delivery Partners provided services that did *not* involve package delivery and never visited any

2   Amazon facility, period. *Id.* at ¶ 6.

3          Citing Amazon's annual report, Mack contends that Amazon "fulfills customer orders by

4   dispatching delivery drivers to deliver orders to its customers." Mot. at 2 (citing Amazon 10-K,

5   at 3). But there is no mention of "dispatching delivery drivers" in Amazon's 10-K. Amazon 10-

6   K, at 3. The actual language in Amazon's 10-K states: "We fulfill customer orders in a number

7   of ways"; "We offer programs that enable sellers to grow their businesses, sell their products in

8   our stores, and fulfill orders through us[.]" *Id.* The 10-K also confirms that "faster delivery"—

9   referring to shipping, not local deliveries—is a *cost* to Amazon: "We expect our cost of shipping

10  to continue to increase" as "we use more expensive shipping methods, including faster

11  delivery[.]" *Id.* at 26.

12         Mack also claims that Amazon "considers its competitors to be other companies whose

13  usual course of business is . . . delivery." Mot. at 3 (citing Amazon 10-K, at 4). But the cited

14  portion of the 10-K states no such thing. *Id.* Instead, Amazon's competitor list establishes (1) the

15  complexities of its business and (2) that package delivery is *not* within Amazon's "usual course

16  of business." *See* Amazon 10-K, at 4 (competitive businesses include: "physical, e-commerce,

17  and omnichannel retailers"; media "publishers, producers, and distributors"; "comparison

18  shopping websites"; "information technology services or products"; "manufactur[ing],

19  market[ing], or sell[ing] consumer electronics").

20         Mack has not met his burden to show that Amazon is, and holds itself out to be, a local

21  delivery company.

22              ***iii.*     Amazon is nothing like cleaning services, exotic dance clubs,
                           ride-share companies, trucking companies, or newspaper
23                         distributors.**

24         Mack attempts to squeeze within Prong B by citing cases involving exotic dance clubs,

25  janitorial/cleaning services, ride-sharing companies, trucking or shipping companies, and

26  newspaper distributors. Mot. at 11-14. None involves local package delivery for an electronic

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 13
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

retailer. Unlike here, those courts held there was no dispute that the defendants held out their business to be *the very service* performed by the plaintiffs. Applying common sense, those courts found that customers visit exotic dance clubs to watch exotic dancers, hire cleaning companies for cleaning services, and so on. *Cf. Awuah v. Coverall N. Am., Inc.*, 707 F. Supp. 2d 80, 81-82 (D. Mass. 2010) (plaintiffs were "workers who performed cleaning services" for company that advertised itself as being in the "janitorial cleaning service business[]"); *Jenks v. D. & B. Corp.*, No. 09-01978, 2011 WL 3930190, at *1 (Mass Super. Aug. 24, 2011) ("[T]he issue in this case [is] rather obvious: strippers dancing at a strip club are performing within the usual course of business of the club."); *O'Connor*, 82 F. Supp. 3d at 1137, 1144 ("Uber has previously referred to itself as an 'On-Demand Car Service,' and goes by the tagline 'Everyone's Private Driver'"; "Uber could not be 'Everyone's Private Driver' without the drivers."); *Athol Daily News v. Bd. of Review of Employ. & Training*, 439 Mass. 171, 172, 178-79 (2003) ("the News itself defines its business as 'publishing and distributing' a daily newspaper" that is "distributed to subscribers within the News's circulation territory by carriers").

Delivery Partners bear no resemblance to the plaintiffs in the cases cited by Mack. Amazon does not refer to itself as a local delivery business. Amazon's websites and physical stores sells thousands of products, such as electronic devices (some manufactured by Amazon), sunglasses, books (audio or hardcopy), and movies (DVDs or streaming). *See* Amazon 10-K, at 3. AWS generates billions of dollars in income by providing technology services, particularly to businesses. *Id.* at 3, 27. Delivery Partners "do none of these things," *Haitayan*, 2020 WL 1290613, at *8, and the disputed issues of fact created by these varied products and services are grounds alone to deny Mack's motion. *Id.* (finding issue of fact as to whether 7-Eleven "holds itself out as a 'convenience store company'" because it "also leases property and equipment to franchisees and licensees [its] trademarks and operating system").

Mack has not proven with undisputed facts that local delivery is Amazon's usual course of business. The record before the Court shows that it is not. For this reason, his motion should

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 14
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

be denied. Even if Mack had met his burden, his motion would still fail because, as explained below, Prong B does not apply to his PAGA claim.

**B.**   **Disputed Issues of Fact as to AB 5's Business-to-Business Exemption Also Preclude Summary Judgment.**

As the Ninth Circuit just observed, "[AB 5] contains a number of exemptions, including a 'business-to-business' exemption, which exempts any 'business service provider' that meets several requirements." *Cal. Trucking Ass'n v. Bonta*, No. 20-55106, 2021 WL 1656283, at *2 (9th Cir. Apr. 28, 2021); *see also* Cal. Labor Code § 2776(a). The Court should deny Mack's motion because there are triable issues—and no discovery to date—as to whether he or any of the thousands of California Delivery Partners would qualify under this business-to-business ("B2B") exemption to the ABC test. Mack's premature motion ignores this exemption. If it *does* apply, then the ABC test *does not*, and the "determination of employee or independent contractor status of the business service provider [Delivery Partner] shall be governed by *Borello*[.]" *See* Cal. Labor Code § 2776(a). Mack bears the burden under PAGA to prove Labor Code violations as to *each and every* Delivery Partner in California. *See, e.g.*, *Davidson*, 2018 WL 3359681, at *2-3. Given the B2B exemption, even if Mack could establish that AB 5 applies, he cannot establish on this record that he and all Delivery Partners are subject to the ABC test, not *Borello*.

Analyzing the many B2B exemption factors entails a fact-specific inquiry for Mack and each Delivery Partner. Consider just two of the 12 factors. One overarching factor is whether "an individual acting as a sole proprietor, or a business entity formed as a sole proprietorship, partnership, limited liability company, limited liability partnership, or corporation ("business service provider") contracts to provide services to another such business or to a public agency or quasi-public corporation[.]" *See id.*, § 2776(a). Evaluating this requires a fact-specific inquiry into whether *each* Delivery Partner acted as a sole proprietor or formed such a business entity. While Amazon has had no opportunity to conduct discovery on this issue, there are already issues of act as to whether this factor applies. Hawrysz Decl. ¶ 8. Another factor that must be

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 15
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   assessed is whether "the business service provider advertises and holds itself out to the public as

2   available to provide the same or similar services." *Id.*, § 2776(a)(8). Did Mack do so? Did other

3   Delivery Partners? At this stage, neither the parties nor the Court knows, as there is no evidence

4   in the record and there has been no discovery. The Court cannot rule on whether Mack or any

5   other Delivery Provider was misclassified without determining whether the ABC test or *Borello*

6   governs that issue. And that determination cannot be made without an individualized inquiry into

7   whether the B2B factors applied to any Delivery Partner. The absence of evidence in the record

8   on the B2B factors, and more importantly the lack of any discovery on these factors, is, standing

9   alone, reason to deny Mack's motion.

10       **C.**    **Even if the Court Did Not Find Issues of Fact Under AB 5, Summary Judgment Should Be Denied on Alternative Legal Grounds.[4]**

12           ***1.***    ***Mack cannot rely on the ABC test because he stopped providing services as a Delivery Partner well before AB 5's January 1, 2020 effective date.***

14       Mack stopped providing services as a Delivery Partner in January 2018. *See* Nickerson

15   Decl. ¶¶ 4-5. This means his aggrieved employee status[5] and PAGA claim must be decided under

16   the multi-factor "right to control" test articulated in *S.G. Borello & Sons, Inc. v. Dep't of Indus.*

17   *Relations*, 48 Cal. 3d 341 (1989), not the ABC test. For this independent reason, Mack's partial

18   summary judgment motion must be denied.

19       In *Dynamex,* which first adopted the ABC test in California in 2018, the California

20   Supreme Court limited that test to "one specific context"—determining "whether workers should

---

21   [4] While Amazon acknowledges the Ninth Circuit's recent decision in *California Trucking Ass'n v. Bonta*,

22   No. 20-55106, 2021 WL 1656283 (9th Cir. Apr. 28, 2021), Amazon reiterates that no discovery has taken place in this action and reserves its right to argue that Prong B is preempted in this case by the Federal

23   Aviation Administration Authorization Act, 49 U.S.C. § 14501(b)(1) and (c)(1), as further factual and/or legal developments warrant.

24   [5] **Under California law, a PAGA suit can only be brought by an "aggrieved employee."** *See* Cal. Lab.

25   Code § 2699.3(a); *Kim v. Reins Int'l California, Inc.*, 9 Cal. 5th 73, 85 (Cal. 2020) ("Employees who were subjected to at least one unlawful practice have standing to serve as PAGA representatives . . . .").

26   Whether Mack is an aggrieved employee with standing to bring a PAGA claim must be decided under *Borello*.

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 16
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  be classified as employees or as independent contractors *for purposes of California wage*

2  *orders*." 4 Cal. 5th at 913-14. This limitation was significant because *Dynamex* involved alleged

3  violations of both an Industrial Welfare Commission ("IWC") wage order and, separately, the

4  California Labor Code. *Id. Dynamex* distinguished wage order claims from Labor Code claims

5  by adopting the ABC test only to interpret the "suffer or permit to work" standard that is used in

6  wage orders to define the term "employ." *Id.* at 913, 956-957. The wage orders' definition of

7  "employ" and its "suffer or permit to work" standard do not exist in the California Labor Code.

8      After *Dynamex*, numerous courts, including the Ninth Circuit, held that the *Borello*

9  control test—not the ABC test—applies to misclassification claims *not* arising under California's

10  wage orders. Indeed, the Ninth Circuit has expressly noted that "*Dynamex* did not purport to

11  replace the *Borello* standard in every instance where a worker must be classified as either an

12  independent contractor or an employee for purposes of enforcing California's labor protections."

13  *California Trucking Ass'n v. Su*, 903 F.3d 953, 959 n.4 (9th Cir. 2018); *see also Vazquez v. Jan-*

14  *Pro Franchising Int'l, Inc*., 10 Cal. 5th 944, 948 (2021) (describing *Dynamex* as addressing

15  "what standard applies in determining whether, for purposes of the obligations imposed by

16  California's wage orders, a worker should be considered *an employee* who is covered and

17  protected by the applicable wage order or, instead, *an independent contractor* to whom the wage

18  order's obligations and protections do not apply"). In a subsequent opinion in *Vazquez*, the Ninth

19  Circuit again confirmed that "*Dynamex* adopted the so-called 'ABC test' for determining

20  whether workers are independent contractors or employees under **California wage order laws**."

21  *Vazquez*, 986 F.3d at 1110 (emphasis added). The Ninth Circuit added: "*Dynamex* . . . is about

22  wage orders . . . There is no reason that the tests for employee status must necessarily be the

23  same in wage order cases as in [other types of] cases." *Id.* at 1123; *see also*, *e.g.*, *Garcia v.*

24  *Border Transp. Group, LLC*, 28 Cal. App. 5th 558, 561 (2018) (*Dynamex* only applies to wage

25  order claims); *Moreno v. JCT Logistics, Inc.,* No. 17-2489, 2019 WL 3858999, at *12 (C.D. Cal.

26  May 29, 2019) (the ABC test only applied to those claims addressed by the wage orders while

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 17
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   other claims remained subject to the *Borello* test).

2       Here, Mack seeks partial summary judgment solely as to his PAGA claim. PAGA is

3   limited to alleged Labor Code violations. Its full name is the **Labor Code** Private Attorneys

4   General Act of 2004. PAGA provides a mechanism to deputize employees as private attorneys

5   general to recover civil penalties through a civil action "for a violation of this code," *i.e.*, the

6   Labor Code. Labor Code § 2699(a); *see also Amalgamated Transit Union, Local 1756, AFL-CIO*

7   *v. Superior Court*, 46 Cal. 4th 993, 1003 (2009). Consequently, the California Court of Appeal

8   has held that PAGA cannot be used to recover penalties under wage orders, which are not

9   incorporated into the Labor Code. *See Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App.

10   4th 1112, 1119, 1131-1132 (2012) (explaining that "PAGA allows the recovery of *civil penalties*

11   *only* for violations of '*this code*,' meaning the California Labor Code" and stating "there is no

12   right of action under PAGA to enforce an IWC order") (emphasis added).

13       For this reason, courts have held that contractor misclassification claims brought under

14   PAGA prior to the 2020 enactment of AB 5 are governed by *Borello*, not the ABC test. *See*

15   *Henry v. Cent. Freight Lines, Inc.*, No. 16-00280, 2019 WL 2465330, at *8 (E.D. Cal. June 13,

16   2019) ("[C]laims for reimbursement, unlawful deductions, waiting time penalties, wage

17   statement penalties, and **violations of PAGA** are not grounded in the wage orders, but rather in

18   the California Labor Code, and must therefore be decided based on Henry's classification under

19   the *Borello* standard.") (emphasis added); *Alvarez v. XPO Logistics Cartage LLC*, No. 18-03736,

20   2018 WL 6271965, at *4 (C.D. Cal. Nov. 15, 2018) (concluding *Borello*, not ABC test, applied

21   to plaintiff's non-wage order claims, including a PAGA claim).[6] Because Mack stopped

22   providing services as a Delivery Partner in January 2018, his misclassification claim under

23   PAGA is governed by the *Borello* test, not the ABC test.

[6] AB 5 became effective on January 1, 2020—after Mack stopped providing services as a Delivery Partner (Nickerson Decl. ¶¶ 4-5)—but was then replaced as to covered drivers by the passage of Prop 22 in November 2020.

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 18
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

On this point, the *Lawson v. GrubHub* trial court proceedings are instructive. Before the California Supreme Court decided *Dynamex*, the *Lawson* case went to trial. At that time, it was widely accepted that the *Borello* control test determined the issue of employee versus independent contractor status under both the California wage orders and the California Labor Code. *Lawson*, 302 F. Supp. 3d at 1072. After a bench trial applying the "multi-factor *Borello* test," *see* Mot. at 13 n.9, the court entered judgment for GrubHub, holding that Lawson was not so controlled by GrubHub as to be deemed an "aggrieved employee" with standing to bring a PAGA claim. *Lawson*, 302 F. Supp. 3d at 1093. Although *Lawson* is currently on appeal regarding whether the ABC test should have applied (*id.*, No. 18-15386 (9th Cir. 2018)), the undeniable fact is that, if it does not, Lawson's claim failed under the *Borello* test. So, too, would Mack's claim fail here under *Borello* and, in any event, Mack's motion does not even attempt to argue that he is entitled to summary judgment under the *Borello* test.

Mack's reliance on *Gonzales v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131 (2019) is misplaced for several reasons. First, it did not address whether the *Dynamex* test applies to PAGA claims because there was no PAGA claim at issue in that case. *Id.* Second, any ruling about what test to apply to "claims for expense reimbursement" is not relevant here because Mack's PAGA claim does not (and cannot) seek expense reimbursement damages purportedly "rooted in wage order protections." *Id.* at 1159. Rather, Mack only seeks *civil penalties* under PAGA for certain violations of the Labor Code, because that is the only remedy PAGA authorizes. *See ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 197 (2019). Even as to the non-PAGA Labor Code Section 2802 claim for business expenses in *Gonzales*, that holding is contrary to decisions which have held that Section 2802 claims fall outside California's wage orders and, instead, are subject to *Borello*. *See Moreno*, 2019 WL 3858999, at *12; *Alvarez*, 2018 WL 6271965, at *4. Finally, *Gonzales* addressed a motion for class certification, and so the court did not make a merits ruling such as Mack seeks here on behalf of himself and thousands of other Delivery Partners. *Id.,* 40 Cal. App. 5th at 1139-41.

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 19
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  No federal court or state appellate court decision supports Mack's argument, so he cites

2  an unpublished California Superior Court minute order on a motion in limine, *Johnson v. VCG-*

3  *IS, LLC*, Case No. 30-2015-00802813 (Super Ct. Cal. July 18, 2018). *Johnson* has no

4  precedential value and should be disregarded in any event because the trial court's result-driven

5  rejection of the *Borello* test for *any* Labor Code claims merely to avoid the "practical problem"

6  of applying different tests to different claims, contradicts the law discussed above. *Id.* at 4.

7  Mack misrepresents the holding in *James v. Uber Techs., Inc.* No. 19-06462, 2021 WL

8  254303, at *17 (N.D. Cal. Jan. 26, 2021), by arguing that the court suggested that AB 5 applies

9  retroactively. Mot. at 18. Rather, in discussing retroactivity of another law, Prop 22, the court

10  only vaguely noted that "[u]nlike A.B. 5, Prop 22 does not contain any statement that it is

11  declarative of existing law, or any express retroactivity provision." *Id.*[7] The court did not rule

12  whether the ABC test applied, but rather noted in the context of a class certification analysis that

13  the issue of the proper test "presents a common question." *Id.* at *5 n.2.

14  In a last-ditch effort to support application of the ABC test, Mack cites California AB 5,

15  which codified the *Dynamex*-created ABC test under California law and applied it to both the

16  wage orders and the Labor Code, effective January 1, 2020. But in so arguing, Mack ignores that

17  he never made a delivery to an Amazon customer after 2018. The courts that have actually

18  addressed the retroactivity issue have held that "AB 5 is not retroactive and, therefore, applies

19  only to work performed after January 1, 2020, when the statute went into effect." *Haitayan v. 7-*

20  *Eleven, Inc.*, No. 17-7454, 2021 WL 757024, at *5 (C.D. Cal. Feb. 8, 2021); *see also Olson v.*

21  *California*, No. 19-10956, 2020 WL 905572, at *12 (C.D. Cal. Feb. 10, 2020) (same). These

22  holdings align with the "strong presumption against retroactivity" as to California statutes.

23  *McClung v. Emp't Dev. Dept.*, 34 Cal. 4th 467, 471-72 (2004). "[A] statute may be applied

---

[7] Citing *James*, Mack argues in a footnote that Prop 22 is not retroactive (Mot at. n.7); however, the court in *James* stated in a subsequent clarifying order that it was premature to address the "retroactive application of Proposition 22," and therefore the court was "not deciding at th[at] time whether Proposition 22 applies retroactively." *Id.*, 2021 WL 254303, at *19.

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 20
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

retroactively only if it contains express language of retroactivity or if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application." *Myers v. Philip Morris Cos., Inc.*, 28 Cal. 4th 828, 844 (2002). Here, Mack cannot cite any language establishing that AB 5 should apply to his services, all of which pre-date AB 5. To the contrary, the only section of AB 5 that has express retroactivity language concerns ***exceptions*** to the ABC test. *See* Cal. Lab. Code 2785(b).

### 2.    *Mack's claims are completely barred by Proposition 22.*

Finally, Mack also largely ignores that the California voters rejected the ABC test as to drivers like those at issue here in passing Prop 22 on November 3, 2020. Effective December 16, 2020, Prop 22 replaced the ABC test and instead established that app-based drivers are independent contractors under California law (including PAGA) if four conditions are met.[8] *See* Cal. Bus. & Prof. Code § 7451 ("Notwithstanding any other provision of law . . . an app-based driver is an independent contractor and not an employee or agent with respect to the app-based driver's relationship with a network company if the following conditions are met . . . ."). The Official Voter Information Guide stated that "[t]his measure makes app-based rideshare ***and delivery drivers*** independent contractors," such that "[t]he new state law that limits the ability of companies to hire independent contractors [AB 5] ***would not apply to drivers***." *Id.* (available at www.voterguide.sos.ca.gov/propositions/22/) (last accessed May 3, 2021)(emphasis added).

Here, because of Prop 22, the ABC test does ***not*** apply to any California claims, even if Mack had worked ***after*** the effective date of AB 5. Prop 22 both abates and abrogates the ABC test as to all covered app-based delivery drivers who provided delivery services both ***before*** and ***after*** its effective date. California law recognizes two distinct doctrines by which a new law can

---

[8] Those conditions are: (1) "[t]he network company does not unilaterally prescribe specific dates, times of day, or a minimum number of hours" of work, (2) "does not require the app-based driver to accept any specific rideshare service or delivery service request," (3) "does not restrict the app-based driver from performing rideshare services or delivery service through other network companies," and (4) "does not restrict the app-based driver from working in any other lawful occupation or business." Cal. Bus. & Prof. Code § 7451.

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 21
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   nullify pending claims: abatement and retroactivity.[9] *See Physicians Comm. v. Tyson Foods, Inc.*,

2   119 Cal. App. 4th 120, 125 (2004). Under the doctrine of abatement, where, as here, the statutory

3   basis for a claim for penalties is eliminated by subsequently passed legislation, the claim cannot

4   be pursued even as to an alleged harm that occurred **before** the law was passed. *See Governing*

5   *Bd. v. Mann*, 18 Cal. 3d 819, 830-831 (1977) ("a repeal of such a statute without a saving clause

6   will terminate all pending actions based thereon") (citation omitted); *Younger v. Superior Court*,

7   21 Cal. 3d 102, 109 (1978) (It is "well settled . . . that an action wholly dependent on statute

8   abates if the statute is repealed without a saving clause before the judgment is final."); *Zipperer*

9   *v. Cty. of Santa Clara*, 133 Cal. App. 4th 1013, 1023-24 (2005) (**even without express words of**

10  **repeal**, ["]the effect is the same in so far as the application of the principles is concerned when

11  the legislature by apt expression has withdrawn the right and remedy in particular cases,

12  including all pending actions based thereon").

13        While a "new statutory scheme is ordinarily construed to operate prospectively rather

14  than retroactively . . . different considerations are implicated in the limited circumstances in

15  which the Legislature enacts a statute that . . . effectively permit[s] previously prohibited

16  conduct." *Rankin v. Longs Drug Stores Cal., Inc*., 169 Cal. App. 4th 1246, 1253 (2009). In these

17  circumstances, courts "apply the common law principle of abatement to conclude all still

18  pending actions brought under the old statutes must be abated and dismissed." *Id.* Courts

19  consider four factors when determining whether an action must be abated: (1) "the statutory

20  nature of the plaintiff['s] claim"; (2) "the unvested nature of the plaintiff['s] claimed rights"; (3)

21  "the timing of the elimination of those rights"; and (4) "the nature of the mechanism by which

22  the right of action was eliminated." *Zipperer*, 133 Cal. App. 4th at 1023.

23        Here, Mack bases his PAGA claim on a new statute that was expressly rejected less than

24  a year later by Prop 22. His claims seek only unvested civil penalties to be paid largely to the

25

26  ───────────────────
[9] To the extent Mack cites cases in his reply regarding implied repeal, those cases are not responsive to
    Amazon's arguments regarding abatement and retroactivity.

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 22
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  State of California. Indeed, PAGA is a law enforcement action on behalf of the state. In short,

2  Prop 22 declares that it is in the public interest to allow app-based drivers to be independent

3  contractors. Under California law, the state cannot punish Amazon for alleged past practices that

4  Prop 22 now endorses. *See Zipperer*, 133 Cal. App. 4th at 1025 (ordinance creating an

5  exemption to a state law barred plaintiffs' claims under that law, including claims arising before

6  the ordinance passed).

7      Further, "[a] statute has retrospective effect when it substantially changes the legal

8  consequences of past events." *Physicians Comm.,* 119 Cal. App. 4th at 125.  By approving the

9  classification of covered delivery drivers as independent contractors, Prop 22 forecloses Mack

10  from seeking PAGA penalties under that test. The California Supreme Court has held that where,

11  as here, new legislation "reduc[es] or eliminat[es] civil penalties or forfeitures," California law

12  requires that it be ***applied retroactively*** to ensure that affected parties will benefit from the

13  change in law. *See People v. Durbin*, 64 Cal.2d 474, 479 (1966), citing *In re Estrada*, 63 Cal.2d

14  740 (1965). As one California Court of Appeal recently observed, Prop 22 is a "significant

15  change in law" that created the "distinct possibility [that] the ABC framework no longer" applies

16  to driver misclassification cases. *See California v. Maplebear, Inc*., No. D077380, 2021 WL

17  612567, at *8 (Cal. App. Feb. 17, 2021), *reh'g denied* (Mar. 5, 2021).

18      For these additional reasons, Prop 22 and the doctrines of abatement and retroactivity

19  preclude granting Mack's Motion, which is based solely on the ABC test. Mack does not even

20  try to present facts addressing whether the four Prop 22 conditions are met as to Delivery

21  Partners. If they are met, there can be no ruling in Mack's favor because Prop 22 declares that

22  covered app-based drivers are independent contractors as a matter of law. As that determination

23  cannot be made as to even one Delivery Partner, much less all, based on the evidence in Mack's

24  motion, his motion should be denied for this additional reason.

25  **IV.    THE COURT SHOULD DENY MACK'S MOTION UNDER RULE 56(D).**

26      In *Puget Soundkeeper All. v. Cruise Terminals of Am., LLC*, No. 14-0476, 2014 WL

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 23
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    4649952 (W.D. Wash. Sept. 16, 2014) (Coughenour, J.), this Court granted a Rule 56(d) request

2    for additional discovery and denied a motion for summary judgment where, as here, the parties

3    had "not yet held their Rule 26(f) conference" or "exchanged Rule 26(a)(1) initial disclosures,"

4    and the Court had not "issued any scheduling order" for "discovery, disclosures, or trial." *Id.* at

5    *5.  Likewise, Amazon "has not had the opportunity to discover information" that may be

6    essential to its opposition, *id.*, including by deposing Mack and other Delivery Partners about

7    their businesses or, in light of the stay, to conduct expert discovery on the question of whether

8    local package delivery is within Amazon's usual course of business. *See* Declaration of James P.

9    Walsh, at ¶¶ 2-10.

10        Mack says that his motion "does not need to await" discovery. Mot. at 18. Yet he points

11   to no case deciding summary judgment under Prong B before *any* discovery has occurred. His

12   motion should not be the first. While he suggests that Prong B can be decided "without the need

13   for extensive discovery," Mot. at 8 (citing *People v. Uber Techs., Inc.*, 56 Cal. App. 5th 266,

14   302 (2020)), that proposition is quite different than "no discovery at all." Unlike here, the

15   preliminary injunction (*i.e.*, non-final) order on appeal in *People **was*** decided "based on an

16   extensive factual record." *Id.*, No. CGC-20-584402, 2020 WL 5440308, at *8 (Cal. Super. Ct.

17   Aug. 10, 2020).

18        For this additional reason, Mack's motion should be denied.

19                              **V.      CONCLUSION**

20        For the foregoing reasons, the Court should deny Mack's motion for partial summary

21   judgment.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 24
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

| | |
|---|---|
| 1 | Dated: May 3, 2021 |

Respectfully submitted,

By: *s/Ryan Redekopp*
Ryan D. Redekopp, WSBA #36853
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
Telephone:  (206) 623-7580
Fax:  (206) 623-7022
Email: ryan.redekopp@klgates.com

By: *s/James P. Walsh*
Richard G. Rosenblatt (*Pro Hac Vice*)
James P. Walsh, Jr. (*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Second Floor
Princeton, NJ  08540-6241
Telephone:  (609) 919-6600
Fax:  (609) 919-6701
Email: richard.rosenblatt@morganlewis.com
Email: james.walsh@morganlewis.com

Jason Burns (*Pro Hac Vice*)
MORGAN LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Fax: [insert]
Email: jason.burns@morganlewis.com

*Attorneys for Defendants*

DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT- 25
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2021, I caused to be electronically filed the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF IAIN MACK'S MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the registered attorneys of record.

By: _s/James P. Walsh, Jr._
James P. Walsh, Jr. (*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Second Floor
Princeton, NJ  08540-6241
Telephone:  (609) 919-6600
Fax:  (609) 919-6701
Email: james.walsh@morganlewis.com

CERTIFICATE OF SERVICE
Case No. 2:16-cv-01554-JCC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022