1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**The Honorable John C. Coughenour**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BERNADEAN RITTMANN, *et al.*,

Plaintiffs,

v.

AMAZON.COM, INC., *et al.*,

Defendants.

Case No. C16-1554 JCC

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO LIFT STAY**

**NOTE ON MOTION CALENDAR: July 15, 2022**

## I.   **INTRODUCTION**

Rather than lift the stay in its entirety as the *Rittmann* Plaintiffs request, Dkt. #201, this Court should lift the stay partially—for the limited purpose of resolving certain threshold issues raised by (a) the Court's consolidation of over a half-dozen related cases brought by different plaintiffs and different counsel and (b) the Supreme Court's decisions in *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022), and *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022).

Trying to jump over these threshold issues, the *Rittmann* Plaintiffs recently moved for class classification even though this case remains stayed.  Dkt. #220.  Recognizing the prematurity of that effort, the Court denied that motion without prejudice to refiling after the Court lifts the stay.  Dkt. #223.  The *Rittmann* Plaintiffs seek to force premature rulings on substantive issues like class certification before Amazon has even answered the operative complaints and before the parties have conducted any discovery in this action.  The Court should not allow them to do so.

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
502 Carnegie Center
Princeton, NJ  08540-6241
Telephone: +1.609.919.6600
Facsimile: +1.609.919.6701

1    As Amazon describes below, the consolidation of several actions and resolution of *Saxon*

2    and *Viking River* call for an orderly path forward, not a motions-practice free-for-all.   Amazon

3    respectfully submits that this Court should first clarify the effect of its consolidation orders on

4    these actions and set a briefing schedule for Amazon's anticipated motion(s) to compel arbitration.

5    The parties jointly recognized before that the arbitrability of any or all of the claims that Plaintiffs

6    assert "will affect the scope, timing and nature" of many other aspects of this litigation.  Dkt. #100

7    at 2.  That is even truer now because many additional Plaintiffs have joined this litigation either

8    through consolidation or opting in.  *See, e.g.*, Dkts. ##102, 132, 134, 135, 138, 139, 150, 151, 152,

9    153, 154, 163, 168, 180, 200, 202.   Many of these Plaintiffs are subject to different arbitration

10   agreements than the one this Court has previously considered.  For these reasons, the Court should

11   deny the *Rittmann* Plaintiffs' motion in part and instead lift the stay only for these limited purposes.

## II.    ARGUMENT

### A.    The consolidation of many different actions raises questions about whether there will be a new consolidated complaint, whether certain actions will be stayed, and whether there will be interim lead or class counsel.

15   This Court recently consolidated the *Rittmann* action with four other cases: *Ponce*, *Keller*,

16   *Diaz*, and *Puentes*.  *See* Dkt. #200.  The Court had already consolidated *Rittmann* with *Ronquillo*,

17   *Hoyt*, and *Lawson*.  *See id.* at 2 n.1.  As the Court noted, the cases present common legal questions

18   and consolidation promotes efficiency, conservation of judicial resources, and consistency.  *Id.* at

19   3.

20   The consolidation also raises questions, however, about how this litigation should proceed.

21   In particular, it remains uncertain whether all the consolidated cases will go forward

22   simultaneously or whether certain actions will be stayed, and whether there will be an omnibus

23   consolidated complaint reflecting the claims of all the named Plaintiffs.  In part because of this

24   Court's prior stay orders, Amazon has not yet had occasion to respond to all the operative

25   complaints in the consolidated cases and does not currently have deadlines for doing so.  How

26   Amazon responds will depend on whether all the cases move forward now and whether the named

DEFENDANTS' OPP'N TO MOT. TO LIFT STAY
Case No. C16-1554 JCC                          - 2 -

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
502 Carnegie Center
Princeton, NJ  08540-6241
Telephone: +1.609.919.6600
Facsimile: +1.609.919.6701

1    Plaintiffs will be submitting a new operative complaint.  For example, it is not clear whether

2    Amazon will file one motion to compel arbitration or whether it will have to file separate motions

3    for each case.  These questions may also affect how discovery eventually proceeds.

4          The Court should first resolve these procedural questions related to the consolidation to

5    accomplish the Court's already stated objective of promoting the efficient and fair resolution of

6    these disputes.

7        **B.**      **Amazon intends to move to compel arbitration based on *Saxon* and the**
                  **presence of many new named and opt-in Plaintiffs.**

8

9          In its Order continuing the current stay pending the resolution of *Saxon* and *Viking River*,

10    this Court noted that the *Saxon* case might not narrowly focus on whether cargo loaders are

11    transportation workers and might instead produce "a more expansive opinion" that clarifies the

12    potential application of the Federal Arbitration Act ("FAA") in this case.  Dkt. #193 at 4.  That is

13    what happened.  The Court did not issue a narrow, fact-bound ruling about whether cargo loaders

14    do or do not perform actual transportation.  Instead, it gave needed clarity on how courts should

15    define the relevant class of workers and the sorts of activities that qualify as engagement in

16    interstate commerce in disputes over the FAA's Section 1 exemption.  This clarification

17    contradicts aspects of prior Ninth Circuit precedent.  Moreover, many of the named and opt-in

18    Plaintiffs are subject to enforceable agreements to arbitrate under state law for reasons that this

19    Court has not yet had any occasion to consider.  Amazon intends to move to compel arbitration

20    because of these legal and factual developments.  As before, these arbitrability questions should

21    take precedence over other aspects of litigation because otherwise the benefits of the parties'

22    agreements to arbitrate will be irretrievably lost.  *See, e.g.*, Dkt. #193 at 4.

23          First, although Amazon will fully brief *Saxon*'s implications in its forthcoming motion(s),

24    the decision casts doubt on the Ninth Circuit's prior approach to the FAA's exemption in this case

25    and others.  In particular, the Supreme Court clarified how to define the relevant class of workers,

26    holding that a plaintiff qualifies as "a member of a 'class of workers' based on what she does at

DEFENDANTS' OPP'N TO MOT. TO LIFT STAY
Case No. C16-1554 JCC          - 3 -

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
502 Carnegie Center
Princeton, NJ  08540-6241
Telephone: +1.609.919.6600
Facsimile: +1.609.919.6701

1    [her company], not what [the company] does generally." *Saxon*, 142 S. Ct. at 1788.  In this case,

2    however, the Ninth Circuit determined that "the activities of a company are relevant in determining

3    the applicability of the FAA exemption."  *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 917-18

4    (citation omitted)); *see also Rittmann v. Amazon.com, Inc.*, 383 F. Supp. 3d 1196, 1201 (W.D.

5    Wash. 2019) (considering, among other things, whether the putative "employer's business is

6    centered around the interstate transport of goods"), *aff'd*, 971 F.3d 904.  In fact, because of its

7    earlier *Rittmann* decision, the Ninth Circuit has since described "the interstate nature of an

8    employer's business as the *critical factor* for determining whether a worker qualifies for the § 1

9    exemption." *In re Grice*, 974 F.3d 950, 957 (9th Cir. 2020) (emphasis added).  That approach can

10   no longer stand after *Saxon*.  In a similar vein, *Saxon* requires that the class of workers be "*directly*

11   involved in transporting goods across state or international borders"; "play a direct and 'necessary

12   role in the free flow of goods' across borders"; and be "actively 'engaged in transportation' of

13   those goods across borders via the channels of foreign or interstate commerce." *Saxon*, 142 S. Ct.

14   at 1789-90 (citations omitted).  Ninth Circuit precedent, however, does not require a direct

15   connection between an exempt class of workers and the cross-border transportation.  It is enough

16   for the class of workers to be "employed to transport goods that are shipped across state lines."

17   *Rittmann*, 971 F.3d at 910; *see also Rittmann*, 383 F. Supp. 3d at 1200 (emphasizing that "Plaintiffs

18   deliver packaged goods that are shipped from around the country and delivered to the consumer

19   untransformed").  Again, that pre-*Saxon* holding no longer can stand.

20         Although *Saxon* held that loading and unloading interstate vehicles with cargo—at the very

21   center of the cargo's interstate journey—qualified as engaging in interstate transportation, *id.* at

22   1789, it expressly recognized that "last leg" delivery is "further removed from the channels of

23   interstate commerce or the actual crossing of borders," *id.* at 1789 n.2 (citing *Rittmann*).  Far from

24   "confirm[ing]" or making it "clear beyond a doubt" that the prior FAA rulings in this case are

25   "sound," as the *Rittmann* Plaintiffs argue (Dkt. #201 at 1, 4-5), the Supreme Court's mention of

26   *Rittmann* makes clear that whether "further removed" "last leg" delivery satisfies *Saxon*'s test

DEFENDANTS' OPP'N TO MOT. TO LIFT STAY
Case No. C16-1554 JCC                                    - 4 -

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
502 Carnegie Center
Princeton, NJ  08540-6241
Telephone: +1.609.919.6600
Facsimile: +1.609.919.6701

remains an open question that must still be decided.  And because the Supreme Court held in *Viking River* that the FAA preempts California law forbidding individualized arbitration of Private Attorneys General Act ("PAGA") claims, 142 S. Ct. at 1923-24, individuals who accepted the Amazon Flex terms of service and agreed to arbitrate cannot pursue those PAGA claims in court if the FAA governs those agreements.  This Court should address these issues by lifting the stay for the limited purpose of resolving a renewed motion to compel arbitration.

But even if *Saxon* did not disturb prior Ninth Circuit case law on the FAA exemption, there are alternative reasons, not yet addressed by this Court, that the arbitration agreements of many named and opt-in Plaintiffs are enforceable under state law.  For instance, many Plaintiffs have agreed to new versions of the terms of service that postdate this Court's prior arbitration ruling in April 2019.  These new versions expressly state that if the FAA is held inapplicable to the arbitration agreement, it is governed by Delaware law.  And Delaware law, much like the FAA, has a strong public policy in favor of enforcing arbitration agreements.  *see Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989).  Unlike the FAA, however, Delaware law does not exempt any sort of transportation workers from arbitration.  The Plaintiffs who have agreed to these newer versions of the agreements from 2019 and onward are bound to arbitrate their claims under Delaware law.  That is why, for example, Amazon moved to compel two Plaintiffs in the recently consolidated *Diaz* action to arbitrate under this Delaware law alternative.  *See Diaz v. Amazon.com, Inc.*, No. C21-419 JCC (W.D. Wash.), Dkt. #48.  Amazon intends to refile that motion if the Court lifts the stay and that case moves forward, and the same reasoning applies to many other Plaintiffs before the Court, including many of the dozens of individuals who have filed opt-in forms.  Amazon is currently gathering information on which of the named and opt-in Plaintiffs have agreed to arbitrate through an agreement that is expressly governed by Delaware law as a fallback to the FAA.

Finally, even for the named and opt-in Plaintiffs who are not bound by more recent agreements that include the Delaware choice-of-law provision, many must arbitrate their claims

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
502 Carnegie Center
Princeton, NJ  08540-6241
Telephone: +1.609.919.6600
Facsimile: +1.609.919.6701

1   under various state laws even if the FAA is inapplicable.  Even when an arbitration clause is

2   exempt under Section 1 of the FAA, a plaintiff who agreed to an arbitration clause "would still be

3   required under the law of contract to arbitrate in accordance with the clause." *Chappel v. Lab.*

4   *Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000).  The only question is which state law governs in

5   such cases, and that question turns on ordinary conflict-of-laws principles.  *See, e.g.*, *Harper v.*

6   *Amazon.com Servs., Inc.*, 12 F.4th 287, 295 (3d Cir. 2021) (addressing the pre-2019 version of the

7   Amazon Flex terms of service).  Even though this Court and the Ninth Circuit determined that the

8   pre-2019 contract's choice-of-law provision precluded application of Washington state law, it is

9   still appropriate to enforce that contract's arbitration provision under the laws of other states, such

10  as the states where the Plaintiffs resided or performed delivery services.  *See, e.g.*, *Singh v. Uber*

11  *Techs., Inc.*, No. 16-3044 (FLW), 2021 WL 5494439, at *15 (D.N.J. Nov. 23, 2021).  For this

12  reason too, Amazon has strong grounds to compel arbitration that should be resolved as a threshold

13  matter.

14      **C.    Plaintiffs identify no specific harm from the passage of time that would**
        **justify lifting the stay in its entirety.**

15

16      Although the *Rittmann* Plaintiffs are eager to move this case forward, they identify no

17  specific harm that comes from a continued partial stay.  They claim there might generally be a loss

18  of evidence (Dkt. #201 at 6), but do not cite any particular evidence at risk of being lost.  As before,

19  their concerns about potential prejudice are overblown, particularly given the importance of

20  definitively resolving the arbitration issues first.  *See* Dkt. #193 at 4-5.

21      In contesting a stay, a plaintiff generally must make specific allegations of prejudice, such

22  as "undue loss or destruction of evidence" as a result of the delay.  *Ontiveros v. Zamora*, No. CIV.

23  S-08-567, 2013 WL 1785891, at *5 (E.D. Cal. Apr. 25, 2013).  Prejudice may be shown through

24  "citing particular witnesses or documents that may be adversely affected by a stay." *Eberle v.*

25  *Smith*, No. 07-CV-0120 W WMC, 2008 WL 238450, at *3 (S.D. Cal. Jan. 29, 2008).  Without

26  such a showing, however, the *Rittmann* Plaintiffs cannot establish that any delay rises to the level

DEFENDANTS' OPP'N TO MOT. TO LIFT STAY
Case No. C16-1554 JCC                - 6 -

MORGAN, LEWIS & BOCKIUS LLP
*Attorneys at Law*
502 Carnegie Center
Princeton, NJ 08540-6241
Telephone: +1.609.919.6600
Facsimile: +1.609.919.6701

of harm.  *See Cardenas v. AmeriCredit Fin. Servs. Inc.*, No. C 09-04978, 2011 WL 846070, at *4 (N.D. Cal. Mar. 8, 2011) (an "unsubstantiated" argument that a delay will result in harm is insufficient to militate against a stay).

None of the cases that the *Rittmann* Plaintiffs cite on this subject involve threshold arbitration questions or comparable procedural postures.  *See 1st Media, LLC v. doPi Karaoke, Inc.*, No. 2:07-CV-1589 JCM NJK, 2013 WL 1250834, at *1 (D. Nev. Mar. 27, 2013) (rejecting defendants' request to postpone holding a status and scheduling conference until after the disposition of their petition for a writ of certiorari because defendants had not asked for stays in the appellate courts); *Adams v. Nationstar Mortgage LLC*, No. CV 15-9912-DMG (KSX), 2018 WL 702848, at *1 (C.D. Cal. Feb. 2, 2018) (identifying harm because claims relied on alleged misstatements to third party witnesses, and the D.C. Circuit was 15 months after oral argument and without a decision); *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) (discussing 5-year delay in determining whether court had jurisdiction over an appeal from a stay and where harm was potentially going out of business while suits were stayed); *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) (discussing unnecessary delay in context of a plaintiff's default and failure to explain his actions); *Brenner v. Procter & Gamble Co.*, No. SACV161093JLSJCG, 2016 WL 8192946, at *10 (C.D. Cal. Oct. 20, 2016) (addressing defendants that failed to articulate how a potential appellate decision would change contours of discovery); *Keshishzadeh v. Arthur J. Gallagher Serv. Co.*, No. 09CV0168-LAB (RBB), 2010 WL 1904887, at *3 (S.D. Cal. May 12, 2010) (denying stay where defendants could not show hardship and had delayed too long in requesting the stay).

In short, the *Rittmann* Plaintiffs identify no reason to lift the stay in its entirety, as opposed to partially lifting it to resolve threshold issues of procedure and arbitrability.  As this Court has previously noted, if Plaintiffs think they are harmed by the ongoing stay in litigation, they can honor their contractual commitments and submit their disputes to arbitration.  *See, e.g.*, Dkt. #193 at 5.

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
502 Carnegie Center
Princeton, NJ  08540-6241
Telephone: +1.609.919.6600
Facsimile: +1.609.919.6701

**D.** **At a minimum, the Court should maintain the stay with respect to class certification.**

Although Amazon maintains that arbitration issues should be resolved before litigation over the merits, if the Court is inclined to lift the stay more broadly, Amazon asks the Court to retain the stay with respect to any motion for class certification that the *Rittmann* Plaintiffs may intend to refile.  As Amazon's motion for relief from deadlines explained, Dkt. #222 at 3, the parties have not even engaged in discovery related to class certification.  The *Rittmann* Plaintiffs' last class certification motion, however, included 25 exhibits including numerous declarations from named Plaintiffs and Amazon Flex delivery partners.  *See* Dkt. ##220-1 to 220-25.  Because of the existing stay, Amazon has had no chance to depose any of these declarants or request production of documents.

In these circumstances, a motion for class certification would be premature.  This Court noted that Mack's motion for partial summary judgment was premature for similar reasons:  the Court has not issued a discovery and scheduling order, and discovery has not begun.  Dkt. #193 at 5.  The same considerations support temporarily staying class certification proceedings (or setting a scheduling order addressing class certification) to permit Amazon to engage in relevant discovery if the Court lifts stay.

### III.   CONCLUSION

For all these reasons, the Court should deny Plaintiffs' motion in part and lift the stay solely for the purposes of resolving procedural questions presented by consolidation and Amazon's forthcoming requests to compel arbitration.

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
502 Carnegie Center
Princeton, NJ  08540-6241
Telephone: +1.609.919.6600
Facsimile: +1.609.919.6701

1  Dated: July 11, 2022

2

Respectfully Submitted,

By: s/ *Todd L. Nunn*

3

Todd L. Nunn, WSBA #23267
K&L GATES LLP

4

925 Fourth Ave, Suite 2900
Seattle, WA 98104-1158

5

Telephone:  (206) 623-7580
Facsimile:  (206) 623-7022
todd.nunn@klgates.com

6

7

By: s/ *James P. Walsh, Jr.*

Richard G. Rosenblatt (*pro hac vice*)
James P. Walsh, Jr. (*pro hac* vice)

8

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center

9

Princeton, NJ 08540-6241
Telephone:  (609) 916-6600

10

Facsimile:  (609) 916-6601
richard.rosenblatt@morganlewis.com

11

james.walsh@morganlewis.com

12

*Attorneys for Defendants Amazon.com, Inc.,*
*and Amazon Logistics, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
502 Carnegie Center
Princeton, NJ  08540-6241
Telephone: +1.609.919.6600
Facsimile: +1.609.919.6701

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on July 11, 2022, I caused to be electronically filed the foregoing

3   **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO LIFT STAY** with the Clerk

4   of Court using the CM/ECF system, which will automatically send email notification of such filing

5   to the registered attorneys of record.

6

7                                                        By: s/ *James P. Walsh, Jr.*

8                                                        James P. Walsh, Jr. (*pro hac* vice)
                                                         MORGAN, LEWIS & BOCKIUS LLP
9                                                        502 Carnegie Center
                                                         Princeton, NJ 08540-6241
10                                                       Telephone:  (609) 916-6600
                                                         Facsimile:  (609) 916-6601
11                                                       james.walsh@morganlewis.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPP'N TO MOT. TO LIFT STAY
Case No. C16-1554 JCC                          - 10 -

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
502 Carnegie Center
Princeton, NJ  08540-6241
Telephone: +1.609.919.6600
Facsimile: +1.609.919.6701