THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BERNADEAN RITTMANN, *et al.*,

Plaintiffs,

v.

AMAZON.COM, INC., *et al.*,

Defendants.

Consolidated Action
Case No. C16-1554 JCC

**DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION**

**NOTE ON MOTION CALENDAR: January 13, 2023**

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................ 1

II. BACKGROUND ........................................................................................ 2

    A.  The Amazon Flex program and TOS. ............................................... 2

    B.  Procedural history. ........................................................................... 4

III. ARGUMENT ............................................................................................. 6

    A.  The Arbitration Plaintiffs agreed to arbitrate these disputes. ............. 6

    B.  The FAA requires enforcing the Arbitration Plaintiffs' agreements. ... 7

        1.  Plaintiffs are not exempt from the FAA under *Saxon*'s framework. ......... 8

            a.  Plaintiffs belong to the class of local delivery drivers. .................. 8

            b.  Local delivery drivers are not directly involved in transporting goods across borders. ............................................... 10

        2.  The prior arbitration decisions in this case are no longer valid after *Saxon*. ................................................................. 13

            a.  *Saxon* forecloses focusing on Amazon's business operations. ...................................................................... 14

            b.  *Saxon* adopts a narrower definition of engaging in interstate commerce. ........................................................ 16

        3.  Many Plaintiffs are non-exempt even under the *Rittmann* decisions. ................................................................................ 18

            a.  The class of California Amazon Flex drivers do not frequently perform last legs of interstate shipments. .................. 19

            b.  Many Arbitration Plaintiffs never, or almost never, signed up for delivery blocks involving brown-box orders. .................. 20

         4.  The FAA requires arbitration of Plaintiffs' PAGA claims. .................... 21

    C.  State law requires enforcing the Arbitration Plaintiffs' agreements. ................... 24

        1.  Arbitration Plaintiffs who accepted post-2019 TOS versions must arbitrate under Delaware law. ........................................ 26

            a.  Arbitration Plaintiffs who signed up after October 2, 2019 selected Delaware law and accepted a delegation provision. ...... 27

            b.  Arbitration Plaintiffs who clicked acceptance to Version 12 selected Delaware law and accepted a delegation provision. ...... 29

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - i

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

## <u>TABLE OF CONTENTS</u>
(continued)

                                                                                        **Page**

      c.    Arbitration Plaintiffs who continued delivering after October 2019 accepted a TOS modification selecting Delaware law. ........................................................................... 30

    2.    Even without an express selection of Delaware law, Arbitration Plaintiffs must arbitrate under the laws of the states with the most significant relationship to their contracts. ................................................. 31

IV.    CONCLUSION ............................................................................................... 40

CERTIFICATE OF SERVICE .................................................................................. 42

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1

## <u>TABLE OF AUTHORITIES</u>

2                                                                          **Page(s)**

3

4
**Cases**

5
*Abram v. C.R. Eng., Inc.*,
6      No. 20-cv-764, 2020 WL 5077373 (C.D. Cal. June 23, 2020)..........................................26, 40

7
*Adams v. Parts Distribution Xpress, Inc.*,
8      No. 2:20-CV-00697-JMG, 2021 WL 1088231 (E.D. Pa. Mar. 22, 2021) ..............................39

*Amazon.com, Inc. v. Rittmann*,
9      141 S. Ct. 1374 (2021)..................................................................................................................5

10
*Arafa v. Health Express Corp.*,
11      233 A.3d 495 (N.J. 2020)......................................................................................................33, 37

*Atwood v. Rent-A-Ctr. E., Inc.*,
12      No. 15-CV-1023-MJR-SCW, 2016 WL 2766656 (S.D. Ill. May 13, 2016) ....................33, 36

13
*Baffin Land Corp. v. Monticello Motor Inn, Inc.*,
14      425 P.2d 623 (Wash. 1967)......................................................................................................34

15
*Bd. of Educ. of Bloomfield Cent. Sch. Dist. v. Christa Constr., Inc.*,
      608 N.E.2d 755 (N.Y. 1992)....................................................................................................38

16
*Bean v. ES Partners, Inc.*,
17      533 F. Supp. 3d 1226 (S.D. Fla. 2021) ..............................................................................13, 19

18
*Benton v. Vanderbilt Univ.*,
      137 S.W.3d 614 (Tenn. 2004)...................................................................................................40
19

*Brennan v. Opus Bank*,
20      796 F.3d 1125 (9th Cir. 2015) .........................................................................................28, 29

21
*Burgos v. Ne. Logistics, Inc.*,
22      No. 15CV6840CBACLP, 2017 WL 10187756 (E.D.N.Y. Mar. 30, 2017)...........................38

23
*Butler v. ATS Inc.*,
      No. 20-CV-1631, 2021 WL 1382378 (D. Minn. Apr. 13, 2021).............................................37
24

*Callahan v. Paychex N. Am. Inc.*,
25      No. 21-CV-05670-CRB, 2022 WL 11902205 (N.D. Cal. Oct. 20, 2022) ..............................24

26

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - iii

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Capriole v. Uber Techs., Inc.*,
   7 F.4th 854 (9th Cir. 2021) ..................................................................................15, 20

*Carder v. Carl M. Freeman Communities, LLC*,
   No. CIV.A. 3319-VCP, 2009 WL 106510 (Del. Ch. Jan. 5, 2009) ...................28, 29

*Carmona v. Domino's Pizza, LLC*,
   21 F.4th 627 (9th Cir. 2021) .................................................................................14, 15

*Castro v. TCA Logistics Corp.*,
   No. 20-CV-2004(JS)(ARL), 2021 WL 7287305 (E.D.N.Y. Mar. 31, 2021)..........38

*Cent. Fla. Invs., Inc. v. Parkwest Assocs.*,
   40 P.3d 599 (Utah 2002).............................................................................................40

*Chappel v. Lab'y Corp. of Am.*,
   232 F.3d 719 (9th Cir. 2000) .....................................................................................24

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .....................................................................................6

*Pima County ex rel. City of Tucson v. Maya Constr. Co.*,
   761 P.2d 1055 (Ariz. 1988)........................................................................................35

*D.C. Pub. Emp. Rels. Bd. v. Fraternal Ord. of Police*,
   987 A.2d 1205 (D.C. 2010) ........................................................................................36

*Davis v. EGL Eagle Glob. Logistics L.P.*,
   243 F. App'x 39 (5th Cir. 2007) ................................................................................40

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)......................................................................................................7

*Diamond Match Co. v. Vill. of Ontonagon*,
   188 U.S. 82 (1903).......................................................................................................17

*Domino's Pizza, LLC v. Carmona*,
   143 S. Ct. 361 (2022)..............................................................................................13, 14

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018).................................................................................................7

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1
2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3
4
*In re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ............................................................30

5
*Fastuca v. L.W. Molnar & Assocs.*,
  10 A.3d 1230 (Pa. 2011) ...................................................................................39

6
7
*Fed. Ins. Co. v. Superior Court*,
  60 Cal. App. 4th 1370 (1998) ...........................................................................24

8
9
*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)............................................................................................6

10
*Forest Oil Corp. v. McAllen*,
  268 S.W.3d 51 (Tex. 2008)...............................................................................40

11
12
*Franco v. Arakelian Enters., Inc.*,
  234 Cal. App. 4th 947 (2015) ...........................................................................24

13
14
*Gardensensor, Inc. v. Stanley Black & Decker, Inc.*,
  No. 12-CV-03922 NC, 2012 WL 12925714 (N.D. Cal. Oct. 25, 2012).................31

15
*Graham v. State Farm Mut. Auto. Ins. Co.*,
  565 A.2d 908 (Del. 1989) .................................................................................26

16
17
*Green v. U.S. Xpress Enters., Inc.*,
  434 F. Supp. 3d 633 (E.D. Tenn. 2020)............................................................40

18
19
*In re Grice*,
  974 F.3d 950 (9th Cir. 2020) ............................................................................15

20
*Guidice v. Sage Corp.*,
  No. 06-80659-CIV, 2006 WL 8433427 (S.D. Fla. Nov. 6, 2006) .........................36

21
22
*Haider v. Lyft, Inc.*,
  No. 20-CV-2997 (AJN), 2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021).................27

23
24
*Harper v. Amazon.com Servs., Inc.*,
  12 F.4th 287 (3d Cir. 2021) ..............................................................................25

25
*Hauenstein v. Softwrap Ltd.*,
  No. C07-0572MJP, 2007 WL 2404624 (W.D. Wash. Aug. 17, 2007)............6, 30

26

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - v

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hayes v. Oakridge Home,*
908 N.E.2d 408 (Ohio 2009)..................................................................................38

*ICC v. Detroit, Grand Haven & Milwaukee Ry. Co.,*
167 U.S. 633 (1897)....................................................................................17, 18

*Immediato v. Postmates, Inc.,*
No. CV 20-12308-RGS, 2021 WL 828381 (D. Mass. Mar. 4, 2021)......................19

*Iskanian v. CLS Transportation Los Angeles, LLC,*
327 P.3d 129 (Cal. 2014).................................................................................21, 22

*Islam v. Lyft, Inc.,*
524 F. Supp. 3d 338 (S.D.N.Y. 2021)..........................................................32, 33, 38

*J.A. Walker Co. v. Cambria Corp.,*
159 P.3d 126 (Colo. 2007)....................................................................................35

*Johnson v. Lowe's Home Centers, LLC,*
No. 221CV00087TLNJDP, 2022 WL 4387796 (E.D. Cal. Sept. 22, 2022)............24

*Johnston Cnty. v. R.N. Rouse & Co., Inc.,*
414 S.E.2d 30 (N.C. 1992)....................................................................................38

*Jorgensen v. Cassiday,*
320 F.3d 906 (9th Cir. 2003) ...............................................................................34

*Kaul v. Mentor Graphics Corp.,*
730 F. App'x 437 (9th Cir. 2018) .........................................................................31

*Kim v. Reins Int'l Cal., Inc.,*
459 P.3d 1123 (Cal. 2020)....................................................................................22

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
313 U.S. 487 (1941)..............................................................................................25

*Lamps Plus, Inc. v. Varela,*
139 S. Ct. 1407 (2019)..........................................................................................23

*Lopez v. Cintas Corp.,*
47 F.4th 428 (5th Cir. 2022) ...................................................................... *passim*

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1

2

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

3

4
*Maldonado v. Sys. Servs. of Am., Inc.*,
No. SACV09542JVSRNBX, 2009 WL 10675793 (C.D. Cal. June 18, 2009) ...................35

5
*Martindale v. Sandvik, Inc.*,
800 A.2d 872 (N.J. 2002) ..................................................................................................37

6

7
*Martinez-Gonzalez v. Elkhorn Packing Co.*,
No. 18-CV-05226-EMC, 2022 WL 10585178 (N.D. Cal. Oct. 18, 2022) ...........................24

8

9
*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ............................................................................................................6

10
*Motsinger v. Lithia Rose-FT, Inc.*,
156 P.3d 156 (Or. Ct. App. 2007) ....................................................................................39

11

12
*Nedlloyd Lines B.V. v. Superior Ct.*,
834 P.2d 1148 (Cal. 1992) ..........................................................................................25, 31

13

14
*Nelson v. Gobrands, Inc.*,
No. 20-CV-5424-JMY, 2021 WL 4262325 (E.D. Pa. Sept. 20, 2021) ........................33, 39

15
*O'Shea v. Maplebear Inc.*,
508 F. Supp. 3d 279 (N.D. Ill. 2020) ..........................................................................13, 19

16

17
*Osborn ex rel. Osborn v. Kemp*,
991 A.2d 1153 (Del. 2010) ..................................................................................................6

18

19
*New York ex rel. Pa. R.R. Co. v. Knight*,
192 U.S. 21 (1904) .......................................................................................................17, 18

20
*Palcko v. Airborne Express, Inc.*,
372 F.3d 588 (3d Cir. 2004) ..............................................................................................26

21

22
*Parker v. New Prime, Inc.*,
No. LACV2003298DOCAGR, 2020 WL 6143596 (C.D. Cal. June 9, 2020) ...................29

23

24
*Phoenix Ins. Co. v. Rosen*,
949 N.E.2d 639 (Ill. 2011) .................................................................................................36

25
*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
282 P.3d 1217 (Cal. 2012) ..................................................................................................6

26

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*Powell v. Carey Int'l, Inc.*,
   No. 05-21395-CIV, 2006 WL 8434352 (S.D. Fla. Nov. 17, 2006) ........................................36

5

*Radcliff v. San Diego Gas & Elec. Co.*,
   No. 20-CV-1555-H-MSB, 2022 WL 4229305 (S.D. Cal. Sept. 12, 2022)............................24

6

7

*Ratajesak v. New Prime, Inc.*,
   No. SACV189396DOCAGRX, 2019 WL 1771659 (C.D. Cal. Mar. 20, 2019).....................29

8

9

*Rittmann v. Amazon.com, Inc.*,
   383 F. Supp. 3d 1196 (W.D. Wash. 2019), *aff'd*, 971 F.3d 904 (9th Cir. 2020)............. *passim*

10

*Rittmann v. Amazon.com, Inc.*,
   971 F.3d 904 (9th Cir. 2020) ...................................................................................... *passim*

11

12

*Roberts v. Cent. Refrigerated Serv.*,
   27 F. Supp. 3d 1256 (D. Utah 2014)....................................................................................40

13

14

*Romero v. Watkins & Shepard Trucking, Inc.*,
   No. 20-55768, 2021 WL 3675074 (9th Cir. Aug. 19, 2021) ................................24, 25, 26, 31

15

*Ross v. Subcontracting Concepts, LLC*,
   No. CV 20-12994, 2021 WL 6072593 (E.D. Mich. Dec. 23, 2021)................................12, 19

16

17

*SBC Interactive, Inc. v. Corp. Media Partners*,
   714 A.2d 758 (Del. 1999) .....................................................................................................27

18

19

*Schmidt v. Midwest Fam. Mut. Ins. Co.*,
   426 N.W.2d 870 (Minn. 1988).............................................................................................37

20

*Schnall v. AT & T Wireless Servs., Inc.*,
   259 P.3d 129 (Wash. 2011)...................................................................................................25

21

22

*Shanghai Com. Bank Ltd. v. Chang*,
   404 P.3d 62 (Wash. 2017)...................................................................................25, 31, 34

23

24

*Shanks v. Swift Transp. Co. Inc.*,
   No. CIV.A. L-07-55, 2008 WL 2513056 (S.D. Tex. June 19, 2008) .....................................40

25

*Shotts v. OP Winter Haven, Inc.*,
   86 So. 3d 456 (Fla. 2011).....................................................................................................36

26

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - viii

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Singh v. Uber Techs., Inc.*,
   571 F. Supp. 3d 345 (D.N.J. 2021) ......................................................................33

*Siperavage v. Uber Techs., Inc.*,
   No. CV 20-12265, 2021 WL 2680060 (D.N.J. June 30, 2021) ..............................37

*Sprinkle v. Gen. Dynamics Land Sys.*,
   No. C09-1672Z, 2010 WL 1330328 (W.D. Wash. Mar. 30, 2010)..........................6

*St. Fleur v. WPI Cable Sys./Mutron*,
   879 N.E.2d 27 (Mass. 2008) .................................................................................37

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,
   14 Cal. App. 4th 637 (1993) .................................................................................25

*Sw. Airlines Co. v. Saxon*,
   142 S. Ct. 1783 (2022) ................................................................................. *passim*

*Vandenberg v. Superior Ct.*,
   982 P.2d 229 (Cal. 1999) .....................................................................................35

*Vargas v. Delivery Outsourcing, LLC*,
   No. 15-cv-3408, 2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ...............................7

*Viking River Cruises, Inc. v. Moriana*,
   142 S. Ct. 1906 (2022) ..........................................................................21, 22, 23, 24

*Viking River Cruises, Inc. v. Moriana*,
   Dkt. # 193.................................................................................................. *passim*

*W.L. Byers Trucking, Inc. v. Falcon Transp. Co.*,
   No. 2:09CV342JVB, 2010 WL 3724895 (N.D. Ind. Sept. 17, 2010)....................38

*Wagner Constr. Co. v. Pac. Mech. Corp.*,
   41 Cal. 4th 19 (2007) ...........................................................................................23

*Waithaka v. Amazon.com, Inc.*,
   966 F.3d 10 (1st Cir. 2020)..............................................................8, 15, 16, 17

*Wallace v. Grubhub Holdings*,
   970 F.3d 798 (7th Cir. 2020) ...............................................................................12

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1

2

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

3

*Webber v. Uber Techs., Inc.*,
4       No. 18-cv-2941, 2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) ............................................30

5

*Young v. Shipt, Inc.*,
       563 F. Supp. 3d 832 (N.D. Ill. 2021) ...................................................................................13

6

*Ziegler v. JP Morgan Chase Bank, N.A.*,
7       No. 2:20-CV-00298-SAB, 2021 WL 6274448 (E.D. Wash. Feb. 24, 2021)..........................31

8   **Statutes**

9   42 Pa. Cons. Stat. § 7303 ...............................................................................................................39

10  9 U.S.C. §§ 1-4 ....................................................................................................................*passim*

11  29 U.S.C. § 216(b) ............................................................................................................................6

12  Ariz. Rev. Stat. Ann. § 12-3006(A)...............................................................................................35

13  Arizona Revised Uniform Arbitration Act .....................................................................................35

14
    Cal. Civ. Proc. Code § 1281.........................................................................................................35
15
    California Arbitration Act...............................................................................................................35
16
    California's Private Attorneys General Act .............................................................................*passim*
17

18  Colo. Rev. Stat. § 13-22-206(1) ....................................................................................................35

19  Colorado Uniform Arbitration Act ................................................................................................35

20  D.C. Code § 16-4406(a) .................................................................................................................36

21  D.C. Revised Uniform Arbitration Act ..........................................................................................36

22  Del. Code tit. 10, § 5703 ................................................................................................................27

23  Delaware Uniform Arbitration Act............................................................................................26, 27

24  Fair Labor Standards Act ...........................................................................................................4, 5, 6

25  Federal Arbitration Act ..........................................................................................................*passim*

26

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - x

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

**TABLE OF AUTHORITIES**
(continued)

Page(s)

FLA. STAT. § 682.02(1) ...............................................................36

ILL. COMP. STAT. ANN. 5/1 ........................................................36

Illinois Uniform Arbitration Act ..................................................36

Interstate Commerce Act of 1887 ................................................17

MASS. GEN. LAWS ch. 251, § 1 ...................................................37

Massachusetts Uniform Arbitration Act .......................................37

MINN. STAT. § 572B.06(a) ..........................................................37

Minnesota Revised Uniform Arbitration Act ...............................37

N.C. GEN. STAT. ANN. § 1-569.6 ................................................38

N.J. STAT. ANN. § 2A:23B-6(a) ..................................................37

New Jersey Arbitration Act ....................................................33, 37

North Carolina Revised Uniform Arbitration Act ........................38

Ohio Arbitration Act ...................................................................38

OHIO REV. CODE ANN. § 2711.01(A) .........................................38

OR. REV. STAT. § 36.620(1) ........................................................39

Oregon Uniform Arbitration Act .................................................39

Pennsylvania Uniform Arbitration Act ........................................39

TENN. CODE ANN. § 29-5-302(a) ................................................39

Tennessee Uniform Arbitration Act .............................................39

TEX. CIV. PRAC. & REM. CODE ANN. § 171.001(a) .....................40

Texas Arbitration Act ..................................................................40

UTAH CODE ANN. § 78B-11-107(1) .............................................40

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - xi

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1

## <u>TABLE OF AUTHORITIES</u>
(continued)

2

**Page(s)**

3    Utah Uniform Arbitration Act ...................................................................................................40

4    **Other Authorities**

5
6    AM. ARB. ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION
         PROCEDURES R-7(a), at 13 (2016) ..........................................................................28

7    N.Y. C.P.L.R. 7501.....................................................................................................................38

8    RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 186–88 (1971) ................................... *passim*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1    **I.    INTRODUCTION**

2           Plaintiffs contend that they can litigate in court because their agreements to arbitrate

3    supposedly fall within the Federal Arbitration Act ("FAA") exemption for certain "class[es] of

4    workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Although this Court originally

5    adopted that view, which the Ninth Circuit affirmed, the Supreme Court has since set forth a new

6    framework for the FAA exemption in *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022).

7    *Saxon* compels a reassessment of those earlier rulings and the enforcement of Plaintiffs' arbitration

8    agreements. The Supreme Court's ruling makes clear that the exemption depends on whether the

9    relevant class of workers, based on the workers' own actual work activities, is "*directly involved*

10   in transporting goods *across state or international borders*." *Id.* at 1788-89 (emphasis added). As

11   drivers who make local deliveries, Plaintiffs are not so "directly involved."

12          Indeed, the only circuit-court decision to decide the issue since *Saxon* correctly holds that

13   local delivery drivers—even ones who prefer the label "last-mile driver"—do not qualify as

14   exempt under *Saxon*'s framework. *Lopez v. Cintas Corp.*, 47 F.4th 428, 431 (5th Cir. 2022). Local

15   drivers who "take items from a local warehouse to local customers . . . are not so 'engaged' in

16   'interstate commerce' as § 1 contemplates." *Id.* at 432. That is true even if the items picked up at

17   the local warehouse have been "shipped from out of state." *Id.* at 430. Even then, local drivers do

18   not have the "'direct and necessary role' in the transportation of goods across borders" that *Saxon*

19   requires, and are not "actively engaged in transportation of those goods across borders." *Id.* at 433

20   (quoting *Saxon*, 142 S. Ct. at 1790). *Saxon* instructs courts to base the exemption on the work

21   "actually" performed by the relevant class of workers. *Lopez*, 47 F.4th at 433; *see Saxon*, 142 S.

22   Ct. at 1788. And through that lens, "[o]nce the goods arrived at [an in-state] warehouse and were

23   unloaded, anyone interacting with those goods was no longer engaged in interstate commerce."

24   *Lopez*, 47 F.4th at 433. Amazon's broader interstate operations are irrelevant under *Saxon*.

25          But even if the prior decisions in this case were good law after *Saxon*, many Plaintiffs still

26   would have to arbitrate. To start, many do not qualify as exempt under those decisions because

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 1

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1   they almost always delivered goods stocked in the same state as the customer. So even if it were

2   relevant to the exemption whether items were located outside the customer's state at the time of

3   the order, such facts would not matter for the Plaintiffs who did not typically deliver such items.

4        In addition, state law requires enforcing Plaintiffs' arbitration agreements even assuming

5   the FAA does not. Several dozen Plaintiffs accepted new versions of the Amazon Flex Independent

6   Contractor Terms of Service ("TOS") that did not exist when this Court issued its earlier ruling.

7   And unlike the TOS before the Court previously, the new versions specify that Delaware law

8   governs their arbitration provisions if the FAA is inapplicable. Plaintiffs cannot identify any valid

9   reason under Delaware law not to enforce those arbitration agreements. For the remaining

10  Plaintiffs who agreed only to earlier versions, those agreements' arbitration clauses remain binding

11  contractual commitments and, under normal conflict-of-laws rules, are enforceable under the laws

12  of the states with the most significant relationship to the contracts. For all these reasons, the Court

13  should compel arbitration as to all Plaintiffs who did not opt out of the TOS arbitration provision.

14  **II.**     **<u>BACKGROUND</u>**

15       **A.**     **The Amazon Flex program and TOS.**

16       Amazon.com, Inc. and affiliates sell products through different channels, including the

17  Amazon.com website, mobile applications, and retail locations like Whole Foods Market. *See*

18  Declaration of Sarah Wilson ("Wilson Decl."), ¶¶ 5-6. Amazon Logistics, Inc. contracts with,

19  among other third-party contractors, individual independent contractor "Delivery Partners" like

20  Plaintiffs through a smartphone application-based program called Amazon Flex. *Id.* ¶¶ 7-8, 12, 21.

21  Delivery Partners use their personal vehicles to make local deliveries of groceries, food, and other

22  goods to Amazon's customers. *Id.* ¶¶ 12-15, 17, 20. To sign up, prospective Delivery Partners must

23  download the Amazon Flex app, create an account, select the local area in which they wish to

24  make deliveries, and accept the Amazon Flex TOS then in effect by clicking an acceptance button

25  in the Amazon Flex app. *Id.* ¶¶ 21-22, 31-.

26       Numerous versions of the TOS have governed at various times since the Amazon Flex

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

program began in 2015. *Id.* ¶ 22. Seven versions, which Amazon internally designates Versions 6 through 12, have been in effect through the Amazon Flex app during the named and opt-in Plaintiffs' collective participation in the Amazon Flex program, as shown below:

| TOS Version | Start Date |
|---|---|
| 6 | September 28, 2015 |
| 7 | April 25, 2016 |
| 8 | August 11, 2016 |
| 9 | September 21, 2016 |
| 10 | February 24, 2017 |
| 11 | October 2, 2019 |
| 12 | March 31, 2021 |

*Id.* ¶¶ 23-29; *see id.* Ex. A-G.

Each of these TOS versions includes a modification provision through which the contracting parties agreed (1) that Amazon could modify the TOS from time to time by providing notice to the Delivery Partner and (2) that the Delivery Partner would be bound by the modification if the Delivery Partner continued to perform deliveries after receiving notice. TOS v.6-v.8 § 14; TOS v.9-v.12 § 13. In accordance with these provisions, Amazon periodically sent emails to existing Amazon Flex Delivery Partners when it updated the TOS to a new version. After Version 11 went into effect in 2019 and Version 12 went into effect in 2021, Amazon emailed existing Delivery Partners to notify them of the TOS updates and remind them how to access the TOS within the app. Wilson Decl. ¶¶ 154-56 & Exs. H-I. Separately, Delivery Partners within the state of California who had active accounts received a notification in the Amazon Flex app when Version 12 went into effect in 2021, requiring them to read and accept the new agreement to continue performing deliveries. *Id.* ¶¶ 138-39. As with the original signup process, these California Delivery Partners saw the complete agreement and, after scrolling through it, had to click a button saying that they agreed to and accepted the Version 12 terms. *See id.*

All relevant versions contain a mutual agreement to arbitrate covered disputes and claims on an individual basis. The covered disputes and claims include any dispute or claim in any way related to the TOS, the Delivery Partner's participation in the Amazon Flex program, or the

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1  Delivery Partner's performance of services through the program. TOS v.6-v.8 § 12; TOS v.9-v.12

2  § 11(a). Versions 9 and 10, however, included an opt-out mechanism whereby Delivery Partners

3  could choose to reject the arbitration provision in those agreements by simply sending an email to

4  an address provided in the TOS within a 14-day window. TOS v.9-v.10 § 11(k). Nine Plaintiffs

5  opted out of the arbitration provision through this mechanism, Wilson Decl. ¶¶ 136-37, and

6  Amazon does not seek to compel their claims to arbitration.

7        A severability provision in each TOS stated, "If any provision of [this TOS] is determined

8  to be unenforceable, the parties intend that [this TOS] be enforced as if the unenforceable

9  provisions were not present and that any partially valid and enforceable provisions be enforced to

10  the fullest extent permissible under applicable law." TOS v.6-v.8 § 16; TOS v.9-v.12 § 16(a).

11        Another relevant provision is the choice-of-law provision, which varied over time.

12  Versions 6 through 10 generally selected Washington state law but specified that the arbitration

13  provisions were governed by the FAA and applicable federal law. TOS v.6-v.8 § 13; TOS v.9-v.10

14  § 12. Versions 11 and 12, on the other hand, generally selected Delaware law, continued to specify

15  that their arbitration provisions were governed by the FAA and applicable federal law, and further

16  made clear that, "If, for any reason, the Federal Arbitration Act is held by a court of competent

17  jurisdiction not to apply to [the arbitration provision], the law of the state of Delaware [] will

18  govern [the arbitration provision]." TOS v.11-v.12 § 12.

19      **B.    Procedural history.**

20        Plaintiffs Bernadean Rittmann, Freddie Carroll, and Julia Wehmeyer began this action in

21  2016, alleging that Amazon misclassified Amazon Flex Delivery Partners as independent

22  contractors rather than employees, in purported violation of the Fair Labor Standards Act

23  ("FLSA") and Washington and Seattle wage-and-hour laws. Dkt. # 1. A couple months later, the

24  First Amended Complaint added Raef Lawson as a named Plaintiff and added California claims.

25  Dkt. # 33. Amazon promptly moved to dismiss and simultaneously moved to compel Lawson to

26  arbitrate because he—unlike Rittmann, Carroll, and Wehmeyer—had not opted out of the TOS

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 4

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1   arbitration provisions. *See* Dkt. # 36. The Court dismissed nearly all of Plaintiffs' claims without

2   prejudice and deferred consideration of the motion to compel arbitration. *See* Dkt. # 76. On March

3   22, 2017, with Amazon's motion to compel arbitration still pending, this Court stayed proceedings.

4   *See* Dkt. # 77. That stay remained in place while the Supreme Court and Ninth Circuit entertained

5   a series of cases bearing on Amazon's motion to compel arbitration. *See* Dkt. # 98. In 2019, at the

6   parties' joint request, the Court partially lifted the stay for the limited purpose of resolving the

7   motion to compel arbitration. Dkt. # 101.

8        On April 23, 2019, this Court issued an order denying Amazon's motion to compel

9   arbitration. Dkt. # 115; *see Rittmann v. Amazon.com, Inc.* (*Rittmann I*), 383 F. Supp. 3d 1196, 1202

10  (W.D. Wash. 2019), *aff'd*, 971 F.3d 904 (9th Cir. 2020). Analyzing Version 9 of the TOS and its

11  predecessor (Versions 6-8 are identical in relevant respects), this Court determined that the TOS

12  was exempt from the FAA and unenforceable under Washington law. Dkt. # 115 at 2-9. The Court

13  maintained the existing stay of litigation pending Amazon's appeal. Dkt. # 133. On appeal, the

14  Ninth Circuit affirmed this Court's denial of Amazon's motion to compel arbitration. *Rittmann v.*

15  *Amazon.com, Inc.* (*Rittmann II*), 971 F.3d 904 (9th Cir. 2020). The Supreme Court later denied

16  Amazon's petition for a writ of certiorari. *Amazon.com, Inc. v. Rittmann*, 141 S. Ct. 1374 (2021).

17       After the denial of Amazon's cert petition, Plaintiff Iain Mack—whose action under

18  California's Private Attorneys General Act ("PAGA") had been consolidated with this action, *see*

19  Dkt. # 87—moved to lift the stay. This Court denied that motion, finding that continuation of the

20  stay was warranted by two pending Supreme Court cases: *Southwest Airlines Co. v. Saxon* and

21  *Viking River Cruises, Inc. v. Moriana*. Dkt. # 193. After the decisions in those two cases, the Court

22  lifted the stay and set various case deadlines, including for this Renewed Motion to Compel

23  Arbitration. Dkt. ## 226, 237.

24       On November 14, 2022, 19 named Plaintiffs filed a Consolidated Fourth Amended

25  Complaint. Dkt. # 238. They assert wage-and-hour claims under the Fair Labor Standards Act

26  ("FLSA"), statutory claims under the laws of Washington, Seattle, California, Illinois, New York,

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 5

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1    New Jersey law, and common law claims under the laws of various states. *Id.* ¶¶ 123-202.

2         Moreover, an additional 83 opt-in Plaintiffs have filed in consent forms under the FLSA.

3    *See* Dkt. ## 19, 63, 81, 84, 85, 89, 90, 91, 92, 93, 102, 135, 138, 139, 150, 151, 152, 153, 154, 163,

4    168, 180, 202; *cf.* 29 U.S.C. § 216(b). As noted, 9 of the 102 named and opt-in Plaintiffs opted out

5    of arbitration according to Amazon's records. Wilson Decl. ¶ 136. This Renewed Motion seeks to

6    compel arbitration of the remaining 93, whom this filing refers to as the "Arbitration Plaintiffs"

7    and who are listed in Appendix A to the concurrently filed Wilson Declaration.

8    **III.    ARGUMENT**

9         **A.    The Arbitration Plaintiffs agreed to arbitrate these disputes.**

10        "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether

11   the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*

12   *Inc.*, 473 U.S. 614, 626 (1985); *see Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126,

13   1130 (9th Cir. 2000). To do so, courts "apply ordinary state-law principles that govern the

14   formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Basic

15   contract-law principles require offer, acceptance, and consideration. *See, e.g.*, *Sprinkle v. Gen.*

16   *Dynamics Land Sys.*, No. C09-1672Z, 2010 WL 1330328, at *4 (W.D. Wash. Mar. 30, 2010);

17   *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010); *Pinnacle Museum Tower Ass'n*

18   *v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224 (Cal. 2012).

19        To sign up and become eligible to perform Amazon Flex deliveries, all Plaintiffs agreed to

20   the TOS version in effect at the time of signup by clicking the acceptance button in the Amazon

21   Flex app. Wilson Decl. ¶¶ 30-33; *see, e.g.*, *Hauenstein v. Softwrap Ltd.*, No. C07-0572MJP, 2007

22   WL 2404624, at *3 (W.D. Wash. Aug. 17, 2007) ("[C]ourts have held that 'clicking' agreement

23   to the terms of a contract is an 'assent' for purposes of contract analysis.").

24        Versions 9 and 10 (in effect between September 21, 2016 and October 2, 2019) gave drivers

25   the ability to opt out of the TOS arbitration provision by sending an email to a specified email

26   address during a specified opt-out period. TOS v.9-v.10 § 11(k). The 93 Arbitration Plaintiffs at

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1  issue in this motion either chose not to opt out of arbitration through this mechanism or signed up

2  under later versions of the TOS. Wilson Decl. ¶ 137 & Appx. A. They accordingly agreed to

3  arbitration all their Amazon Flex-related disputes. *See* TOS v.6-v.8 § 12; TOS v.9-v.12 § 11(a).

4      **B.    The FAA requires enforcing the Arbitration Plaintiffs' agreements.**

5      The FAA requires courts to rigorously enforce FAA-governed arbitration agreements

6  according to their terms, including by compelling arbitration and either staying (or dismissing)

7  litigation. 9 U.S.C. §§ 3-4; *see Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *Dean Witter*

8  *Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The contracting parties selected the FAA to

9  govern their arbitration agreements. *See* TOS v6-v8 § 13; TOS v9-v12 § 12. And the FAA's basic

10  coverage extends to any arbitration agreement in "a contract evidencing a transaction involving

11  commerce." 9 U.S.C. § 2. There is no question that Amazon Flex transactions involve interstate

12  commerce and that each TOS therefore triggers the FAA's basic coverage.

13      Plaintiffs argue, however, that the agreements implicate the FAA's limited exemption for

14  "contracts of employment of seamen, railroad employees, or any other class of workers engaged

15  in foreign or interstate commerce." 9 U.S.C. § 1. The Arbitration Plaintiffs bear "the burden of

16  demonstrating the exemption" applies to them. *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-

17  3408, 2016 WL 946112, at *3 (N.D. Cal. Mar. 14, 2016).

18      The Arbitration Plaintiffs cannot carry their burden under the Supreme Court's new

19  instructions for the exemption. In *Saxon*, the Court "laid out the proper framework for determining

20  whether a person falls within the transportation-worker exemption." *Lopez v. Cintas Corp.*, 47

21  F.4th 428, 431 (5th Cir. 2022). This framework prescribes a two-step inquiry. First, a court should

22  "begin by defining the relevant 'class of workers' to which [the plaintiff] belongs," and then it

23  should "determine whether that class of workers is 'engaged in foreign or interstate commerce.'"

24  *Saxon*, 142 S. Ct. at 1788; *accord Lopez*, 47 F.4th at 431.

25      Under *Saxon*'s two-step framework, the Arbitration Plaintiffs belong to the class of local

26  delivery drivers, and this class of workers is not engaged in foreign or interstate commerce. The

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1   Fifth Circuit's recent *Lopez* decision is squarely on point. There, a self-described "last-mile driver"

2   invoked *Rittmann II* and *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020), to argue that

3   he was exempt from the FAA, even though his deliveries were all within Texas, because he

4   delivered goods that had arrived at the in-state warehouse from outside Texas. *Lopez*, 47 F.4th at

5   430-32. Although the Fifth Circuit acknowledged that *Rittmann II* and *Waithaka* had held such

6   drivers are exempt, it determined that "after *Saxon*," the opposite conclusion was required: "local

7   delivery drivers are not so 'engaged' in 'interstate commerce' as § 1 contemplates." *Id.* at 432.

8   Even though the goods had originated in other states, "[o]nce the goods arrived at the Houston

9   warehouse and were unloaded, anyone interacting with those goods was no longer engaged in

10  interstate commerce" under *Saxon*'s test. *Id.* at 433. *Saxon* compels the same conclusion here.

11          But even if the Fifth Circuit's reading of *Saxon* were wrong, many Arbitration Plaintiffs

12  still would not be exempt under *Rittmann II*. While *Rittmann II* held that performing the "last leg"

13  of a business's interstate shipments triggers the exemption, many Arbitration Plaintiffs did not

14  perform such last leg deliveries on a frequent basis. Even under *Rittmann II*, then, these Arbitration

15  Plaintiffs are engaged in purely intrastate activities within the meaning of the FAA and thus are

16  not exempt as detailed below.

17          **1.    Plaintiffs are not exempt from the FAA under *Saxon*'s framework.**

18              **a.    Plaintiffs belong to the class of local delivery drivers.**

19          At step one of its two-step framework, *Saxon* makes clear how to define the class of

20  workers to which the Arbitration Plaintiffs belong. The *Saxon* plaintiff was a Southwest Airlines

21  "ramp supervisor" who frequently loaded cargo onto outbound aircraft and unloaded cargo from

22  aircraft that had just landed. 142 S. Ct. at 1787-88. She asked the Supreme Court to define the

23  relevant class of workers based on the business of her employer: "airline employees." *Id.* at 1788

24  (citation omitted). Southwest, in contrast, argued that the class of workers should be defined "based

25  on *their* conduct, not their *employer's*." *Id.* (citation omitted).

26          The Supreme Court adopted Southwest's approach for defining the class of workers, and

---

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 8

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

defined the class as "workers who physically load and unload cargo on and off airplanes on a frequent basis." *Id.* at 1789. The Court explained that Section 1, by its terms, centers on "workers" and thus on the *work they perform* rather than the *business* that pays them. *Id.* at 1788. Section 1 also asks how those workers are "engaged," reinforcing this emphasis on "the actual work that the members of the class, as a whole, typically carry out." *Id.* The *Saxon* plaintiff was "a member of a 'class of workers' based on what she does at Southwest, not what Southwest does generally." *Id.*; *Lopez*, 47 F.4th at 431 ("Because the FAA 'speaks of "workers," not "employees" or "servants,"' we determine the relevant 'class of workers' by the work that Lopez actually did at Cintas.").

These principles show that the relevant class of workers here is *local delivery drivers*—workers who use ordinary vehicles, like their own cars, to deliver customer orders within a local area during delivery blocks that typically last between two and six hours. Wilson Decl. ¶¶ 12-17. Amazon Flex deliveries include grocery and food items, like orders that drivers pick up from Whole Foods Market stores, as well as "brown box" packages that drivers pick up from delivery stations. *Id.* ¶¶ 13-15. For a period, Amazon Flex deliveries included some restaurant orders as well. *Id.* ¶ 13. Amazon categorizes delivery blocks as "GSF" ("Global Specialty Fulfillment") or "SSD" ("Sub Same-Day") blocks when they involve locally stocked items like Whole Foods groceries, restaurant orders, or merchandise available for same-day delivery, and Amazon categorizes delivery blocks as "AMZL" ("Amazon Logistics") blocks when they involve brown-box packages of goods warehoused in Amazon sites known as "fulfillment centers," which may need to travel longer distances after customers purchase them. *Id.* ¶¶ 13-15. But regardless of the type of delivery block being performed, the basic work is the same: drivers arrive at the local pickup location, place the items in their personal vehicles, and deliver them to nearby customers in the same local area. *Id.* ¶ 20.

Indeed, even on occasions when an Amazon Flex driver picks up a brown-box package that may have traveled across state lines after the customer ordered it, the Amazon Flex driver's own activities are purely local. The Amazon Flex driver does not interact with tractor-trailers,

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

airplanes, or their drivers and pilots. *Id.* ¶ 19. Rather, several layers of distinct workers and vehicles separate the Amazon Flex driver from the long-distance transportation work. Once a customer purchases an item destined for a brown-box delivery, warehouse associates pick the item from the shelves, move it through the facility using conveyor belts and other means, and package it for the customer. *Id.* ¶ 16. These brown-box packages then go to other associates at the fulfillment center, who load them onto trucks normally destined for a sort center. *Id.* At the sort center, different associates unload these trucks and organize and bundle packages by zip code. *Id.* Sort center associates load the organized packages onto other trucks, which other drivers (not Amazon Flex drivers) drive to delivery stations. *Id.* At the delivery station, various workers there (again not Amazon Flex drivers) unload these trucks, reorganize and rebundle packages for specific batches of local deliveries, and place the batched items onto a cart or into bags. *Id.* ¶ 17. Only then do Amazon Flex drivers pick up these batched brown-box packages, transfer them from the carts or bags into the trunk or backseat of the driver's car, and head out for a local delivery route. *Id.*

The Arbitration Plaintiffs thus belong to a class of local delivery drivers. Whether an Amazon Flex driver delivers locally stocked items—like Whole Foods groceries, restaurant orders, or same-day merchandise—or delivers brown-box packages of items from Amazon network of fulfillment centers, the work is fundamentally the same. And that work is separated, in time and space, from the interstate journey on long-distance transportation on tractor-trailers and airplanes.

**b.   Local delivery drivers are not directly involved in transporting goods across borders.**

At *Saxon* step two, the class of local delivery drivers do not engage in activities that qualify as interstate commerce under the exemption. Analyzing the key statutory terms, the Supreme Court concluded that the exemption encompasses "any class of workers *directly involved* in transporting goods *across state or international borders*." *Saxon*, 142 S. Ct. at 1789 (emphasis added). That means that exempt workers "must at least play a *direct and necessary role* in the free flow of goods *across borders*" and "be *actively engaged* in transportation of those goods *across borders* via the

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

channels of foreign or interstate commerce." *Id.* at 1790 (citations and quotation marks omitted).

Plaintiffs would have the Court stop reading at "transporting goods"—ignoring the key phrase "across state or international borders." But as the Fifth Circuit recently held in *Lopez*, local delivery drivers "do not have such a 'direct and necessary role' in the transportation of goods across borders." 47 F.4th at 433. Nor are they "actively engaged in transportation of those goods across borders." *Id.* On the contrary, "[o]nce the goods arrived at the [in-state] warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce." *Id.*

These local drivers differ markedly from the transportation workers in *Saxon* because local drivers lack any direct role in transporting goods across borders. Airplane cargo loaders are "directly involved in transporting goods across state or international borders" because loading and unloading interstate vehicles is a direct and integral part of the goods' travel across state lines. *Saxon*, 142 S. Ct. at 1789. According to *Saxon*, that cross-border travel begins when cargo is loaded onto the vehicle "bound for interstate transit" and does not end until the cargo is unloaded from the same vehicle. *Id.* at 1790. That is because the Supreme Court held long ago that cross-border transportation remains in progress throughout the processes of loading and unloading the vehicles that cross state lines. *Id.* at 1789-90 (citing *Baltimore & Ohio Sw. R.R. Co. v. Burtch*, 263 U.S. 540, 544 (1924), and *Erie R.R. Co. v. Shuart*, 250 U.S. 465, 468 (1919)). In contrast, *Saxon* explicitly "recognize[d]" that the exemption's application to so-called "last leg" drivers is not "so plain." *Id.* at 1789 n.2. Although it noted that *Rittmann II* had held such drivers exempt, the Supreme Court characterized them as "carr[ying] out duties further removed from the channels of interstate commerce or the actual crossing of borders" than airplane cargo loaders. *Id.*

While the Supreme Court did not need to resolve the status of "last leg" drivers to decide *Saxon*, applying *Saxon*'s test to such drivers is straightforward—as the Fifth Circuit recently showed. The "last leg" or "last mile" label does not change the fact that a local driver lacks any direct or active role in transporting goods across international or state borders. *See Lopez*, 47 F.4th at 431. By the time an Amazon Flex Delivery Partner in Seattle or San Francisco loads a group of

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

customers' orders into the trunk or backseat of their cars, whatever cross-border transportation may have occurred has happened with zero involvement by the Amazon Flex driver. *See* Wilson Decl. ¶¶ 10-20; *cf. Lopez*, 47 F.4th at 432 ("[L]ocal delivery drivers take items from a local warehouse to local customers; these drivers enter the scene after the goods have already been delivered across state lines."). Other classes of workers loaded airplanes and/or tractor-trailers, piloted or driven them, unloaded them, and sorted and otherwise handled them at in-state sort centers and delivery stations. Wilson Decl. ¶¶ 16-18. Only after those workers have performed these discrete functions do the Amazon Flex drivers pick up items batched by others, load the batches into their cars, and take them short distances to local customers. *Id.* ¶ 17. But by the time "the goods arrived at the [in-state] warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce." *Lopez*, 47 F.4th at 433.

That conclusion is particularly clear here because the record shows that many Amazon Flex delivery blocks are to deliver locally stocked items—such as groceries from a Whole Foods Market store, restaurant orders, or items kept at nearby warehouses capable of fulfilling same-day orders. Nickerson Decl. ¶¶ 5-7; Wilson Decl. ¶¶ 13-14. Even under *Rittmann II*'s pre-*Saxon* analysis, deliveries of groceries, restaurant orders, and locally stocked items do not qualify as exempt transportation because such items are already in the same locale as the customer who orders them. For example, the Ninth Circuit approved of cases holding that "local food delivery drivers are not 'engaged in the interstate transport of goods'" because such drivers do not "complete the journey" of goods in continuous interstate transportation. *Rittmann II*, 971 F.3d at 916-17 (citation omitted); *see also Wallace v. Grubhub Holdings*, 970 F.3d 798, 803 (7th Cir. 2020) (holding that restaurant delivery drivers are not exempt from the FAA). As courts have widely recognized, the same reasoning applies to delivery drivers who go to other nearby locations—like a grocery store, retail store, or facility for same-day orders—to pick up and deliver goods stocked in the same locale as the customer who orders them. *See, e.g.*, *Ross v. Subcontracting Concepts, LLC*, No. CV 20-12994, 2021 WL 6072593, at *8 (E.D. Mich. Dec. 23, 2021) (finding that *Rittmann II* does not support

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 12

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1  exempting drivers who deliver items that "have already made their interstate journey and then are

2  purchased by consumers from a local retailer"); *Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 839

3  (N.D. Ill. 2021) (concluding that under *Rittmann II*, "'[t]he flow in interstate commerce ha[s]

4  ceased' when the goods are delivered to [a] retail store, and the goods 'have come to a permanent

5  rest within the state'"); *Bean v. ES Partners, Inc.*, 533 F. Supp. 3d 1226, 1236 (S.D. Fla. 2021)

6  (explaining that "same day" delivery drivers who "pick up from local warehouses, merchants, or

7  pharmacies, and then deliver to customers within [a state]" are not exempt even under *Rittmann*

8  *II*); *O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 287 (N.D. Ill. 2020) ("[D]rivers who deliver

9  food purchased over the internet from a grocery store differ in no material way from drivers who

10  pick up food purchased over the web from a restaurant[.]"). In such cases, the goods remain in the

11  same local area from when the customers place their orders to when they receive them.

12      Amazon Flex drivers are thus several steps removed from—not "directly involved in" or

13  playing a "direct and necessary role in"—"transporting goods across state or international

14  borders." *Saxon*, 142 S. Ct. at 1789 (citation and quotation marks omitted). If customers could not

15  rely on the convenience of local delivery, goods would still flow freely across state and national

16  borders. Many Amazon customers could obtain the very same products, even if local delivery were

17  unavailable, by going to a Whole Foods Market, an Amazon Hub locker or counter, or another

18  nearby pickup location. *See* Wilson Decl. ¶ 6. For all these reasons, the class of local delivery

19  drivers does not play a direct and necessary role in the transportation of goods across borders.

20          **2.      The prior arbitration decisions in this case are no longer valid after**

21                  ***Saxon*.**

22      Plaintiffs will likely argue that *Saxon* has no bearing on local delivery drivers. But the Fifth

23  Circuit's recent application of *Saxon* holds otherwise. Moreover, the Supreme Court has already

24  determined that *Saxon*'s reasoning has implications for in-state delivery drivers' status under the

25  FAA exemption by vacating a Ninth Circuit decision that rested on *Rittmann II*. *See Domino's*

26  *Pizza, LLC v. Carmona*, 143 S. Ct. 361, 361 (2022). In that case, the Ninth Circuit had relied on

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

*Rittmann II* to hold that intrastate truck drivers were exempt from the FAA because they "operate[d] in a 'single, unbroken stream of interstate commerce'" and engaged in "transportation of interstate goods on the final leg of their journey." *Carmona v. Domino's Pizza, LLC*, 21 F.4th 627, 629-30 (9th Cir. 2021) (addressing intrastate deliveries of ingredients from Domino's warehouses). The Supreme Court granted certiorari and vacated that Ninth Circuit decision, determining that it warranted "further consideration in light of *Southwest Airlines Co. v. Saxon*." *Carmona*, 143 S. Ct. at 361. Given *Carmona*'s heavy reliance on *Rittmann II*, the Supreme Court's decision to vacate and remand confirms that *Rittmann II* requires reassessment in light of *Saxon*.

And under that necessary reassessment, *Rittmann I* and *II* violate the Supreme Court's new instructions in *Saxon* in two ways. The past decisions in this case therefore cannot justify exempting the Arbitration Plaintiffs from the FAA.

        a.     **_Saxon_ forecloses focusing on Amazon's business operations.**

First, *Saxon*'s instruction on how to define the relevant class of workers preclude the definition used in the prior rulings in this case. Those rulings defined the class of workers as drivers who perform the "last leg" of an interstate journey, incorporating information about the interstate footprint of other components of Amazon's shipping and logistics activities in the characterization of local workers who did not perform those broader activities. *See, e.g.*, *Rittmann II*, 971 F.3d at 917 ("AmFlex workers complete the delivery of goods that Amazon ships across state lines"); *Rittmann I*, 383 F. Supp. 3d at 1200 ("Defendants are in the business of delivering packages and goods across the country that are not transformed or modified during the shipping process."). This consideration of Amazon's broader business was a major point of disagreement between the *Rittmann II* majority and dissent. The dissent agreed with Amazon that Amazon's business operations were irrelevant because the statutory text centers on the work the workers perform and because "the out-of-state nature of the goods is irrelevant to the actual work the AmFlex workers perform." *Rittmann II*, 971 F.3d at 926 (Bress, J., dissenting) ("While no one doubts that Amazon is of course engaged in interstate commerce (if that were the only question this would be a very

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1    easy case), the interstate provenance of Amazon packages does not affect the actual work that local

2    AmFlex workers do."). But the majority followed the First Circuit in holding that "[t]he nature of

3    the business for which a class of workers perform their activities must inform that assessment." *Id.*

4    at 917 (quoting *Waithaka*, 966 F.3d at 19); *see also Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 866

5    (9th Cir. 2021) (discussing *Rittmann II*'s emphasis on "the interstate nature of Amazon's

6    business"); *Carmona*, 21 F.4th at 630 (discussing *Rittmann II*'s emphasis on the fact that "Amazon

7    coordinated the deliveries from origin to destination"); *Rittmann I*, 383 F. Supp. 3d at 1200

8    (emphasizing that "Defendants are in the business of shipping goods across state lines"). Indeed,

9    because of *Rittmann II*, the Ninth Circuit has characterized "the interstate nature of an employer's

10   business as the *critical factor* for determining whether a worker qualifies for the § 1 exemption."

11   *In re Grice*, 974 F.3d 950, 957 (9th Cir. 2020) (emphasis added); *accord Capriole*, 7 F.4th at 861;

12   *Carmona*, 21 F.4th at 629.

13          The approach of *Rittmann II* and its progeny does not survive *Saxon*. Under *Saxon*, defining

14   the class of workers turns on evidence about what the workers "actually" do, not what the business

15   does. *Saxon*, 142 S. Ct. at 1788-89; *Lopez*, 47 F.4th at 431. It is therefore wrong to define the class

16   of workers as drivers performing the "last leg" of an interstate journey. That definition improperly

17   incorporates facts about Amazon's interstate transportation operations, even though local drivers

18   are not involved in, or even affected by, those cross-border business activities. *See, e.g.*,

19   *Rittmann II*, 971 F.3d at 926 (Bress, J., dissenting) ("[F]rom the perspective of the local delivery

20   person, whether he is delivering goods from out of state is irrelevant to his work.").

21          More than that, *Saxon* rejected these courts' rationale for emphasizing "the nature of the

22   business for which the workers perform their activities." *Waithaka*, 966 F.3d at 22. The First

23   Circuit rooted this approach in the interpretive canon of *ejusdem generis*: "Consideration of the

24   nature of the hiring company's business . . . construe[s] the residual clause of Section 1 consistently

25   with the specific preceding categories of workers—'seamen' and 'railroad employees'—whose

26   employment contracts are exempt from the FAA." *Id.* at 23. The First Circuit thought that both

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 15

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

"seamen" and "railroad employees" are "defined by the nature of the business for which they work." *Id.* The Ninth Circuit also followed this reasoning. *Rittmann II*, 971 F.3d at 917. But *Saxon* criticized the *Saxon* plaintiff's attempt to apply *ejusdem generis* this way. The Supreme Court explained that "[i]n 1925, seamen did not include all those employed by companies engaged in maritime shipping." *Saxon*, 142 S. Ct. at 1791. The term instead "include[d] only those who work[ed] on board a vessel, [who] constitute[d] a subset of workers engaged in the maritime shipping industry." *Id.* Because the term "seamen" (unlike "railroad employees") does not define workers in reference to the hiring business's identity, *Waithaka* and *Rittmann II* erred in using *ejusdem generis* to justify consideration of the workers' company or industry. *See id.*

Courts must define exempt classes of workers based on what they do, not what their company does. That means the relevant class here is local delivery drivers, not "last mile" or "last leg" drivers as the earlier *Rittmann* decisions determined. *See Lopez*, 47 F.4th at 431-32.

### b.     *Saxon* adopts a narrower definition of engaging in interstate commerce.

The *Rittmann* decisions violate *Saxon* in a second way by holding that delivery drivers need *not* be directly and actively involved in transportation across borders: it is enough to carry "goods that remain in the stream of interstate commerce until they are delivered." *Rittmann II*, 971 F.3d at 915; *see also Rittmann I*, 383 F. Supp. 3d at 1196 (relying on pre-*Saxon* cases extending the exemption to drivers performing in-state transportation of "a good that is undisputedly in the stream of interstate commerce"); *Waithaka* 966 F.3d at 23 (construing the exemption "to encompass workers who are transporting goods within the flow of interstate commerce").

But by requiring the workers' direct and active role in the interstate part of the goods' transit—"transporting goods across state or international borders"—*Saxon* rejects the "stream" or "flow" of interstate commerce test for the FAA. That is no accident: the Supreme Court was fully aware of the *Rittmann II* decision, which it cited, and the Supreme Court has applied a flow of interstate commerce test when interpreting other statutes that refer to interstate commerce.

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1    *Compare Saxon*, 142 S. Ct. at 1789-90 & n.2, 1792, *with Rittmann II*, 971 F.3d at 913-14, *and*

2    *Waithaka*, 966 F.3d at 18-19, 24. Yet the *Saxon* Court did not adopt "flow of interstate commerce"

3    as the test for the FAA exemption. Had it done so, the decision would have been much shorter,

4    because there is no doubt that airline luggage is in the flow of interstate commerce. Instead, the

5    Supreme Court determined that the FAA's unique language requires the workers' direct and active

6    role in cross-border transit. *Saxon*, 142 S. Ct. at 1789-90. This deliberate decision not to embrace

7    a "flow of interstate commerce" test for the FAA shows that *Rittmann* and *Waithaka* decisions

8    erred in applying that standard to Amazon Flex drivers. *See Lopez*, 47 F.4th at 432-33 (applying

9    *Saxon*'s direct-and-active-role test, not a flow-of-commerce test).

10    　　　　Pre-FAA precedents also undermine those decisions' attempt to collapse the distinction

11    between interstate and intrastate phases of transportation that occur as separate steps through

12    separate vehicles. Cases applying the U.S. Constitution establish that there may be an interior

13    movement of property which does not constitute interstate commerce, [even] though [the] property

14    [may] come from or be destined to another state." *Diamond Match Co. v. Vill. of Ontonagon*, 188

15    U.S. 82, 96 (1903). The interstate movement begins when the goods are "shipped or started for

16    transportation from the one state to the other." *Id.* at 95. But before that interstate movement

17    begins, "[t]he carrying of [goods] in carts or other vehicles, or even floating them, to the depot

18    where the journey is to commence, is no part of that journey." *Id.* Similarly, under the Interstate

19    Commerce Act of 1887, once goods had arrived from out of state by interstate rail, delivering them

20    to their purchasers locally, in carts, was "a new and distinct service," not part of the transportation

21    across state lines *ICC v. Detroit, Grand Haven & Milwaukee Ry. Co.*, 167 U.S. 633, 643 (1897).

22    Likewise under the FAA, delivering an Amazon package in one's own automobile is a new and

23    distinct service from any prior transportation by airplane, tractor-trailer, or some other vehicle that

24    may have crossed state lines. Wilson Decl. ¶¶ 10-11, 16-20; *see also, e.g.*, *New York ex rel. Pa.*

25    *R.R. Co. v. Knight*, 192 U.S. 21, 28 (1904) (concluding, under U.S. Constitution, that railroad's

26    local cab service between train station and interstate passengers' residences or hotels was "an

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 17

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

independent local service, preliminary or subsequent to any interstate transportation").

*Rittmann II* dismissed the Supreme Court's differentiation between cross-border and local transit in the *Knight* case because it involved a question about taxation: whether the Constitution permitted the state of New York to tax a local transportation service that was associated with cross-border transportation. *See Rittmann II*, 971 F.3d at 916. But regardless of the legal question *Knight* happened to involve, *Saxon* shows that pre-FAA cases can help decide when particular transportation is "part of the interstate transportation of goods" for purposes of the FAA. *Saxon*, 142 S. Ct. at 1789. The cases that *Saxon* cited show that under the FAA, loading and unloading the vehicles cross state lines is directly part of the cross-border transportation. *See id.* at 1790. But *Knight*, *ICC*, and other cases show that so-called "last leg" transportation is not.

Even when Amazon Flex drivers deliver brown-box packages that may have crossed state lines, they do not hitch an interstate trailer to their cars to drive its contents the last step of its way. They take local routes to deliver items that other workers have previously brought to the pickup location in wholly different vehicles. Wilson Decl. ¶¶ 16-20. The Arbitration Plaintiffs therefore do not belong to a class of workers directly involved in cross-border transportation under *Saxon*, and the FAA applies and requires them to arbitrate. *See Lopez*, 47 F.4th at 433.

### 3.    Many Plaintiffs are non-exempt even under the *Rittmann* decisions.

Even if the *Rittmann* decisions survived *Saxon*, the FAA would still require holding many Arbitration Plaintiffs to their agreements. *Saxon* is clear that a court must categorize individual plaintiffs within a "class of workers" based on their own actual activities. 142 S. Ct. at 1788-89; *see also Lopez*, 47 F.4th at 431.

Here, the activities actually performed by several dozen Arbitration Plaintiffs show that they do not belong to a class of "last leg" delivery drivers and thus are not exempt even under the prior *Rittmann* cases. In particular, some Arbitration Plaintiffs could not have frequently performed the "last leg" of a shipment that crossed state lines because the overwhelming majority of the items they delivered were at rest in the same state as the customer when the order began.

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 18

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1

a.       **The class of California Amazon Flex drivers do not frequently**

2

**perform last legs of interstate shipments.**

3        Fifty-four Arbitration Plaintiffs performed Amazon deliveries in California. Wilson Decl.

4   Appx. B. Because of California's large number of Amazon fulfillment centers, these drivers belong

5   to a class of workers especially far removed from cross-border transportation. The evidence shows

6   that these drivers do not frequently perform the last legs of shipments that crossed state lines to

7   get to the customer who orders them. California Amazon Flex drivers therefore are not exempt

8   from the FAA even under the prior *Rittmann* decisions.

9        That analysis presupposed that Amazon Flex drivers deliver items that must cross state

10  lines to get to the customer because they are located in another state at the time the order is placed.

11  *See, e.g.*, *Rittmann II*, 971 F.3d at 915-16. Other courts have emphasized this key premise

12  underlying *Rittmann II*. *See, e.g.*, *Immediato v. Postmates, Inc.*, No. CV 20-12308-RGS, 2021 WL

13  828381, at *2 (D. Mass. Mar. 4, 2021) (explaining that *Rittmann II* conceived of "Amazon

14  shipments [as] travel[ing] through a national network of warehouses in which the in-state

15  warehouse is simply a staging stop in the interstate journey"); *Ross*, 2021 WL 6072593, at *8

16  (concluding that *Rittmann II* does not support applying the FAA exemption when "products came

17  from out of state, [but] had not been purchased at the time of arrival at the warehouse [and] would

18  instead come to rest until ordered by a customer").

19       The record here refutes this key premise for the 54 Arbitration Plaintiffs who deliver in

20  California. The goods that California Delivery Partners deliver are almost always in the same state

21  as the customer when the customer places the order. To start, nearly two-thirds (62%) of all

22  Amazon Flex delivery blocks in California, since the program's inception, have been for locally

23  stocked items like restaurant meals, groceries, or same-day merchandise under the GSF or SSD

24  programs. Nickerson Decl. ¶¶ 5-6; Wilson Decl. ¶¶ 13-14. As noted above, such deliveries are not

25  exempt even under *Rittmann II*. *See, e.g.*, *Rittmann II*, 971 F.3d at 916-17; *O'Shea*, 508 F. Supp.

26  3d at 287 (groceries); *Bean*, 533 F. Supp. 3d at 1236 (same-day merchandise). And for California

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 19

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

AMZL blocks (involving brown-box orders that originate at an Amazon fulfillment center), today roughly 70% of the orders start their movement to the California customer from a California fulfillment center. Wilson Decl. ¶¶ 15, 18. In other words, only 30% of the delivered goods are outside California when a California customer orders them. And the items that originate from these California fulfillment centers have been in California, on average, for over 30 days. *Id.* ¶ 18.

Together, these statistics show that only about 30% of 38% of the Amazon Flex delivery work in California—or about 11%—could possibly qualify as "last legs" of shipments that crossed state lines and trigger the FAA exemption under *Rittmann II*. In other words, around *89%* of California Amazon Flex work is not spent performing the "last leg" of such shipments. As a result, Amazon Flex drivers in California do not belong to a class of drivers that perform exempt "last mile" deliveries under *Rittmann II*. Plaintiffs in FAA exemption disputes belong to a class of workers depending on what they "typically" or "frequently" do. *Saxon*, 142 S. Ct. at 1788-89. Workers who perform a certain activity "for up to three shifts per week" perform that activity "on a frequent basis." *Id.* But workers who perform a certain activity only around 10-13% of the time perform that activity "only occasionally." *Capriole*, 7 F.4th at 864 (describing work that made up roughly 10.1% to 12.6% of all Uber trips). Amazon Flex drivers delivering in California are not exempt from the FAA even under *Rittmann II*.

> **b.     Many Arbitration Plaintiffs never, or almost never, signed up for delivery blocks involving brown-box orders.**

For similar reasons, the *Rittmann* decisions do not support applying the exemption to those Arbitration Plaintiffs who never—or almost never—performed the sorts of brown-box deliveries that could qualify as "last leg" deliveries of goods shipped to the customer across state lines. Amazon's records through July 2022 reveal that 31 Arbitration Plaintiffs performed fewer than 10% of their delivery blocks within the AMZL category involving items stocked in Amazon's network of fulfillment centers, as opposed to GSF or SSD delivery blocks of items stocked locally at grocery pickup locations, restaurants, or same-day centers. *See* Nickerson Decl. ¶¶ 5, 7. And 18

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1    of these Plaintiffs *never* performed AMZL delivery blocks during this period. *See id.* ¶ 7.

2    So even if it were appropriate to describe some Amazon Flex drivers as performing the last

3    legs of shipments that crossed state lines, those who never (or almost never) performed such "last

4    leg" deliveries cannot bear that label consistent with *Saxon*. Such deliveries were not a typical or

5    frequent part of these drivers' transportation work. And because grocery, restaurant, and same-day

6    delivery is not exempt transportation even under the prior *Rittmann* decisions, *see supra* pp. 12-

7    13, those decisions cannot support exempting these 31 drivers from the FAA.

8            **4.    The FAA requires arbitration of Plaintiffs' PAGA claims.**

9            Three Arbitration Plaintiffs—Iain Mack, Adriana Ponce, and Sean M. Hoyt—assert claims

10    under California's Private Attorneys General Act ("PAGA"). Compl. ¶¶ 7, 200-02. Mack initially

11    agreed to Version 9 of the TOS, and Ponce and Hoyt initially agreed to Version 10, and none of

12    the three opted out of the arbitration provision. Wilson Decl. ¶¶ 79, 90, 104, 137, Appx. A. And

13    for reasons discussed above, their agreements are not exempt from the FAA: (1) like all Amazon

14    Flex Delivery Partners, they belong to the class of local delivery drivers and such local delivery

15    does not qualify as direct or active involvement in transporting goods across borders, *see supra*

16    Section III.B.1; and (2) they are California Delivery Partners and as such do not frequently or

17    typically perform the last leg of shipments that cross state lines, *see supra* Section III.B.3.a; and

18    (3) over 90% of Hoyt's delivery blocks were in the GSF category of grocery, restaurant, and same-

19    day orders, *see supra* Section III.B.3.b; Nickerson Decl. ¶ 7. Because these three drivers are not

20    exempt from the FAA, they must arbitrate their individual PAGA claims in accordance with the

21    Supreme Court's recent decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022).

22            Until abrogated by *Viking River*, the rule of *Iskanian v. CLS Transportation Los Angeles,*

23    *LLC*, 327 P.3d 129 (Cal. 2014), prevented PAGA claims from being compelled to individual

24    arbitration. Among other things, *Iskanian* precluded the division of PAGA actions into arbitrable

25    "individual PAGA claims for Labor Code violations that [a particular] employee suffered" and

26    non-individual or "*representative*" claims based on the Labor Code violations allegedly suffered

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 21

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1  by other employees. *Id.* at 149; *see also Kim v. Reins Int'l Cal., Inc.*, 459 P.3d 1123, 1132 (Cal.

2  2020) ("Appellate courts have rejected efforts to split PAGA claims into individual and

3  representative components.").

4       But this aspect of *Iskanian* is no longer good law. *Viking River* held that the FAA preempts

5  the "indivisibility" rule in *Iskanian* "insofar as it precludes division of PAGA actions into

6  individual and non-individual claims through an agreement to arbitrate" and bars an individual

7  PAGA claim from being compelled to arbitration. 142 S. Ct. at 1922-25. Because *Iskanian*'s

8  indivisibility rule is preempted, the employer in *Viking River* "was entitled to enforce the

9  agreement insofar as it mandated arbitration of [plaintiff's] individual PAGA claim." *Id.* at 1925.

10       The same conclusion holds here. These three Plaintiffs expressly agreed to arbitrate their

11  Amazon Flex-related disputes "ON AN INDIVIDUAL BASIS THROUGH FINAL AND

12  BINDING ARBITRATION." *See* TOS v.9-v.10 § 11(b). This language unambiguously

13  encompasses individual PAGA claims based on alleged Labor Code violations that involve

14  Plaintiffs individually. And it precludes Mack, Ponce, and Hoyt from seeking an arbitration

15  recovery based on alleged Labor Code violations that involve other workers. Indeed, the TOS

16  explicitly states that, "TO THE EXTENT PERMITTED BY LAW," any arbitration proceedings

17  "WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS" and *not* "ON A

18  REPRESENTATIVE BASIS." TOS v.9-v.10 § 11(b)-(c).

19       In thus specifying that "NO DISPUTE RESOLUTION PROCEEDING WILL BE

20  CONDUCTED ON A REPRESENTATIVE BASIS," the TOS does not attempt a "wholesale"

21  waiver of the right to bring any representative PAGA action in arbitration. *See Viking River*, 142

22  S. Ct. at 1924. As *Viking River* explains, while all "PAGA actions are 'representative' in that they

23  are brought by employees acting as representatives . . . of the State," they are also "representative"

24  in a second sense "when they are predicated on code violations sustained by other employees. *Id.*

25  at 1916. And "when the word 'representative' is used in the second way, it makes sense to

26  distinguish 'individual' PAGA claims, which are premised on Labor Code violations actually

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 22

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA claims arising out of events involving other employees." *Id.* The TOS draws exactly this distinction, agreeing to the arbitration of "INDIVIDUAL" claims but, "TO THE EXTENT PERMITTED BY LAW," not "REPRESENTATIVE" claims.[1]

In addition, *Viking River* instructs that even if an agreement does contain an unenforceable wholesale waiver of the right to bring PAGA actions, the agreement is still enforceable as to the individual component of the PAGA claim so long as the agreement has a severability clause. *See id.* at 1925 ("[T]he severability clause in the agreement provides that if the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.'"). Here, the agreement contains a severability clause, which states that "[i]f any provision of this Agreement is determined to be unenforceable, the parties intend that this Agreement be enforced as if the unenforceable provisions were not present and *that any partially valid and enforceable provisions be enforced to the fullest extent permissible under applicable law.*" TOS v.9-v.10 § 16 (emphasis added). The relevant "valid and enforceable provisions" of the agreement are those requiring Mack, Ponce, and Hoyt to arbitrate their Amazon Flex-related claims on an individual basis, including his individual PAGA claims. *See Viking River*, 142 S. Ct. at 1924-25 (holding that the severability clause entitled employer to enforce the agreement "insofar as it mandated arbitration of [the employee's] individual PAGA claim.").

The Court should uphold these agreements and dismiss the non-individual PAGA claims. *Viking River* held that when a PAGA plaintiff's individual claim is compelled to arbitration, that plaintiff lacks standing to maintain representative non-individual PAGA claims and so those court claims must be dismissed. As the Supreme Court observed, "PAGA provides no mechanism to

---

[1] Were it ambiguous whether the parties agreed to arbitrate individual PAGA claims, federal and state law would resolve that ambiguity in favor of arbitration. *See, e.g., Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019) ("[W]e have repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration."); *Wagner Constr. Co. v. Pac. Mech. Corp.*, 41 Cal. 4th 19, 26 (2007) ("Even were the language less clear, 'doubts concerning the scope of arbitrable issues' would still have to be 'resolved in favor of arbitration.'" (citation omitted)).

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 23

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1    enable a court to adjudicate non-individual PAGA claims once an individual claim has been

2    committed to a separate proceeding." 142 S. Ct. at 1913. PAGA lacks such a mechanism because,

3    under its statutory "standing requirement, a plaintiff can maintain non-individual PAGA claims in

4    an action only by virtue of also maintaining an individual claim in that action." *Id.* (citing

5    California Labor Code Sections 2699(a) and (c), which together only authorize PAGA civil actions

6    "brought by an aggrieved employee on behalf of himself or herself and other current or former

7    employees"). When a plaintiff's individual PAGA claim is compelled to arbitration, the plaintiff

8    "lacks statutory standing to continue to maintain her non-individual claims in court, and the correct

9    course is to dismiss her remaining claims." *Id.* So the Court should compel Mack's, Ponce's, and

10    Hoyt's individual PAGA claims to arbitration and dismiss their non-individual PAGA claims. *See,*

11    *e.g.*, *Callahan v. Paychex N. Am. Inc.*, No. 21-CV-05670-CRB, 2022 WL 11902205, at \*8 (N.D.

12    Cal. Oct. 20, 2022); *Johnson v. Lowe's Home Centers, LLC*, No. 221CV00087TLNJDP, 2022 WL

13    4387796, at \*4 (E.D. Cal. Sept. 22, 2022); *Radcliff v. San Diego Gas & Elec. Co.*, No. 20-CV-

14    1555-H-MSB, 2022 WL 4229305, at \*4 (S.D. Cal. Sept. 12, 2022).[2]

15    **C.    State law requires enforcing the Arbitration Plaintiffs' agreements.**

16    Even if the agreements were exempt from the FAA, they would still be binding contracts

17    to arbitrate and enforceable under applicable state law. *See, e.g.*, *Chappel v. Lab'y Corp. of Am.*,

18    232 F.3d 719, 725 (9th Cir. 2000) (explaining that the FAA's "distinctive procedural apparatus"

19    falls away when the exemption applies, but the parties are still "required under the law of contract

20    to arbitrate"); *Romero v. Watkins & Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at

21    \*1 (9th Cir. Aug. 19, 2021) (using Nevada arbitration law to enforce an arbitration agreement held

22    exempt from the FAA).

23

24    _____

[2] Were the Court to decline at this time to follow *Viking River* on this point and dismiss these three Plaintiffs' non-individual PAGA claims, the Court should stay this action pending their individual arbitrations. *See, e.g.*, *Martinez-Gonzalez v. Elkhorn Packing Co.*, No. 18-CV-05226-EMC, 2022 WL 10585178, at \*12 (N.D. Cal. Oct. 18, 2022); *see also Franco v. Arakelian Enters., Inc.*, 234 Cal. App. 4th 947, 966 (2015) (staying PAGA action pending plaintiff's compelled individual arbitration); *see also Fed. Ins. Co. v. Superior Court*, 60 Cal. App. 4th 1370, 1374-75 (1998) ("The stay's purpose is to preserve the status quo until the arbitration is resolved, preventing any continuing trial court proceedings from disrupting and rendering ineffective the arbitrator's jurisdiction to decide the issues.").

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 24

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1    If the FAA exemption makes the FAA inapplicable, the question becomes *which state law*

2    applies to each contract under conflict-of-law principles. *See, e.g.*, *Harper v. Amazon.com Servs.,*

3    *Inc.*, 12 F.4th 287, 294-95 (3d Cir. 2021) ("[T]he parties still have an agreement to arbitrate, and

4    if federal law does not govern the arbitrability of their contract, *some* law must. . . . Generally, a

5    court can only determine *whether* state law provides grounds for arbitration by deciding *what* state

6    law applies[.]"); *Romero*, 2021 WL 3675074, at *1 ("[B]ecause the FAA § 1 exemption applies[,]

7    . . . [w]e must . . . decide the governing state law."). Here, that question turns on Washington

8    conflict-of-laws principles because the forum state for this litigation is Washington. *See, e.g.*,

9    *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be

10   applied by the federal court in Delaware must conform to those prevailing in Delaware's state

11   courts."); *Harper*, 12 F.4th at 295 ("When engaging in substantive contractual interpretation, a

12   federal court must look to the choice-of-law rules of the forum state[.]"). For contractual disputes,

13   Washington conflict-of-laws principles follow Sections 187 and 188 of the *Restatement (Second)*

14   *of Conflicts of Laws*. *See, e.g.*, *Shanghai Com. Bank Ltd. v. Chang*, 404 P.3d 62, 65-69 (Wash.

15   2017). Under these rules, the governing law depends on whether the contracting parties have made

16   an effective choice of law. *See id.*; RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 186–88

17   (1971) ("*Restatement*"). Washington courts "generally enforce contract choice of law provisions."

18   *Schnall v. AT & T Wireless Servs., Inc.*, 259 P.3d 129, 131 (Wash. 2011) (citation omitted).[3]

19   This framework leads to two central conclusions. First, the Arbitration Plaintiffs who are

20   bound by TOS Versions 11 and 12 must arbitrate under the law of Delaware, where Amazon is

21   incorporated, because their choice-of-law provisions select Delaware law if the FAA is

22   inapplicable. Second, the remaining Arbitration Plaintiffs, who are bound by earlier TOS versions,

---

23   [3] Were Plaintiffs to argue that California law supplies the appropriate conflict-of-laws principles

24   for those Plaintiffs who originally filed their claims in California, the outcome would not change.
     Like Washington, California follows Sections 187 and 188 of the *Restatement* and recognizes "a

25   strong policy favoring enforcement of [choice-of-law] provisions." *Nedlloyd Lines B.V. v.*
     *Superior Ct.*, 834 P.2d 1148, 1151 (Cal. 1992); *see also, e.g.*, *Stonewall Surplus Lines Ins. Co. v.*

26   *Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 646 (1993).

---

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 25

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1  must arbitrate under the laws of the states with the most significant relationship to those contracts,

2  which are ordinarily the states where the Arbitration Plaintiffs performed Amazon Flex services.

3         **1.      Arbitration Plaintiffs who accepted post-2019 TOS versions must**

4                   **arbitrate under Delaware law.**

5         Since October 3, 2019, the TOS has specified that Delaware law governs its arbitration

6  provisions (Section 11) as a fallback to the FAA: "[i]f, for any reason, the [FAA] is held by a court

7  of competent jurisdiction not to apply to Section 11 of this Agreement, the law of the state of

8  Delaware will govern Section 11 of this Agreement." TOS v.11 § 12; *see also* TOS v.12 § 12 ("If,

9  for any reason, the [FAA] is held by a court of competent jurisdiction not to apply to Section 11

10 of this Agreement, the law of the state of Delaware and the Delaware Uniform Arbitration Act, 10

11 Del. C. § 5701 et seq. will govern Section 11 of this Agreement[.]").

12        These TOS versions—Versions 11 and 12—did not exist when this Court resolved

13 Amazon's original motion to compel arbitration and thus were not at issue in *Rittmann I* or *II*. But

14 their clear selection of Delaware law as a fallback to the FAA requires enforcing these agreements

15 to arbitrate even if the FAA exemption applies. Courts widely enforce FAA-exempt arbitration

16 agreements under the parties' chosen body of state law. *See, e.g.*, *Romero*, 2021 WL 3675074, at

17 *1 (enforcing exempt agreement under Nevada law); *Palcko v. Airborne Express, Inc.*, 372 F.3d

18 588, 596 (3d Cir. 2004) (enforcing exempt agreement under Washington law); *Abram v. C.R. Eng.,*

19 *Inc.*, No. 20-cv-764, 2020 WL 5077373, at *7 (C.D. Cal. June 23, 2020) (enforcing exempt

20 agreement under Utah law).

21        Delaware law requires enforcing these arbitration agreements. The Delaware Supreme

22 Court has long stressed that "the public policy of [Delaware] favors the resolution of disputes

23 through arbitration." *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989)

24 (citation omitted). Reflecting that policy, Delaware "enacted a Uniform Arbitration Act" that is

25 "similar to the [FAA]." *Id.* (citing DEL. CODE tit. 10, §§ 5701-5725). Like the FAA, the Delaware

26 Uniform Arbitration Act "provides that 'a written agreement to submit to arbitration any

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 26

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

controversy existing at or arising after the effective date of the agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting DEL. CODE tit. 10, § 5701). And "[a]ny doubt as to arbitrability is to be resolved in favor of arbitration." *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1999). Where, as here, "there is no substantial question whether a valid agreement to arbitrate in [Delaware] was made or complied with the Court shall order the parties to proceed with arbitration." DEL. CODE tit. 10, § 5703. Delaware law does not exempt any transportation workers from arbitration, nor is there any other basis not to enforce these arbitration agreements through Delaware law. *See, e.g.*, *Haider v. Lyft, Inc.*, No. 20-CV-2997 (AJN), 2021 WL 3475621, at *4 (S.D.N.Y. Aug. 6, 2021) (enforcing FAA-exempt arbitration agreement under Delaware choice-of-law provision).

As explained next, dozens of Arbitration Plaintiffs accepted Version 11 and/or Version 12 of the TOS after October 3, 2019. Some did so by clicking a button accepting Version 11 as the then-current version when they initially signed up for Amazon Flex. Some did so by clicking a button accepting Version 12 within the Amazon Flex app. And some did so by continuing to make deliveries after receiving email notice of the TOS update. All these Arbitration Plaintiffs therefore must arbitrate under Delaware law.

   a. **Arbitration Plaintiffs who signed up after October 2, 2019 selected Delaware law and accepted a delegation provision.**

All Amazon Flex drivers agree to the then-current TOS when they sign up to be eligible to make deliveries by affirmatively clicking their assent through the Amazon Flex app. Here, 9 Arbitration Plaintiffs—Juan Manuel Alvarez, Sancak Davarci, Ricky Diaz, LaQuita Houston, Marie Y. Solis, Matthew Talbot, Bryan Wells, Cinthia Yarleque, and Michael Zollner—accepted Version 11 originally because that was the current version when they originally signed up for Amazon Flex. Wilson Decl. ¶¶ 43, 58-59, 77, 117, 119, 124, 130, 135.

These 9 Arbitration Plaintiffs' claims necessarily arose or accrued after they accepted

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

Version 11 of the TOS. They did not perform any Amazon Flex deliveries while earlier versions of the TOS were in effect. That is significant because Versions 11 and 12, unlike some earlier TOS versions, include a delegation provision in which the parties agreed to arbitrate not just substantive disputes but also disputes over arbitrability. In particular, Section 11(k) of Version 11 and Section 11(i) of Version 12 provide for arbitration under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). TOS v.11 § 11(k); TOS v.12 § 11(i). The AAA's Commercial Arbitration Rules empower the arbitrator to decide questions of arbitrability. Am. Arb. Ass'n, Commercial Arbitration Rules and Mediation Procedures R-7(a), at 13 (2016) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."), https://adr.org/sites/default/files/ Commercial%20Rules.pdf. As a result, agreeing to arbitrate under these rules clearly and unmistakably delegates arbitrability disputes to the arbitrator. *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *Carder v. Carl M. Freeman Communities, LLC*, No. CIV.A. 3319-VCP, 2009 WL 106510, at *6 (Del. Ch. Jan. 5, 2009) ("[T]he arbitration clause at issue in this case references AAA Rules that empower the arbitrator to determine questions as to her own jurisdiction and reflects a decision of the parties to use AAA arbitration to resolve a wide range of disputes."). Versions 11 and 12 likewise explain that while courts resolve issues like the validity and enforceability of the contract as a whole and whether the agreement is exempt from the FAA, the "arbitrator must resolve all other disputes, including . . . the arbitrability of claims" under Section 11(a). TOS v.11 § 11(*l*); TOS v.12 § 11(j).

This delegation provision assigns to the arbitrator, rather than this court, any challenge Plaintiffs may raise to the choice-of-law provision requiring enforcement of the arbitration agreement through Delaware law. For example, in *Ratajesak v. New Prime, Inc.*, No. SACV189396DOCAGRX, 2019 WL 1771659, at *3-4 (C.D. Cal. Mar. 20, 2019), California

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 28

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1 employees had agreed to enforce an FAA-exempt arbitration provision under Missouri law but

2 tried to avoid arbitration by arguing that the choice-of-law provision was unenforceable and

3 violated fundamental California policies. Because the contracts had a delegation provision,

4 however, the court determined that it could not consider whether "California policy governing

5 arbitration of unpaid wages" precluded enforcement of the arbitration and choice-of-law

6 provisions. *Id.* at *5. The plaintiffs had to raise such challenges before the arbitrator. *Id.* at *7; *see*

7 *also Parker v. New Prime, Inc.*, No. LACV2003298DOCAGR, 2020 WL 6143596, at *4 (C.D.

8 Cal. June 9, 2020) (following *Ratajesak* on this point).

9        Here too, any challenges these 9 Arbitration Plaintiffs may wish to raise against the choice-

10 of-law provision are reserved for the arbitrator and are no barrier to compelling arbitration.[4] In any

11 event, as detailed below in Section III.C.1.c, the choice of Delaware law is valid and enforceable.

12            **b.**       **Arbitration Plaintiffs who clicked acceptance to Version 12**

13                   **selected Delaware law and accepted a delegation provision.**

14        When Amazon introduced Version 12 for Delivery Partners in California with existing

15 accounts, the app presented the new terms in their entirety and the existing California account

16 holders had to manually click acceptance to the new terms if they wished to continue participating

17 in the Amazon Flex program—much as they had to manually click acceptance in signing up

18 originally. Wilson Decl. ¶¶ 138-39. Here, 13 Arbitration Plaintiffs in California—Ramin Akramy,

19 Timothy Clarke, Mervyn Cole, Noor Dahy, Carlos Esquivel Gonzalez, Shawn Miller, Shanita

20 Murray, Helai Olomi, Louie Ronquilo, Jon Shehab, Marie Y. Solis, Bryan Wells, and Zouaoui

21 Zazou—clicked the button in the Amazon Flex app signifying their assent to Version 12. Wilson

22 Decl. ¶¶ 140-53. They are bound by that agreement in full, just as they were bound by the version

23 they originally accepted in the app. *See, e.g.*, *Hauenstein*, 2007 WL 2404624, at *3 (discussing

24 how clicking agreement to an online contract constitutes assent). And for the reasons just given,

25
26 [4] Because of the delegation provision, these 9 Arbitration Plaintiffs would also have to arbitrate unconscionability challenges to the arbitration provision and disputes over whether the provision covers their claims. *See, e.g.*, *Brennan*, 796 F.3d at 1128-31 (unconscionability); *Carder*, 2009 WL 106510, at *8 (scope of arbitration clause).

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 29

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1    the delegation provision in Version 12 requires these 13 Arbitration Plaintiffs to arbitrate any

2    disputes they might wish to raise over arbitrability. *See supra* Section III.C.1.a.

3            c.    **Arbitration Plaintiffs who continued delivering after October**

4                  **2019 accepted a TOS modification selecting Delaware law.**

5            Amazon's records show that 34 Arbitration Plaintiffs agreed to Version 11 and/or Version

6    12 as a modification to a previously accepted version of the TOS. Wilson Decl. ¶¶ 157-91. Each

7    relevant TOS version has a modification provision stating that Amazon could modify the TOS by

8    giving notice to existing drivers and that these drivers are bound by the modifications if they

9    continue to perform deliveries after receiving such notice. TOS v.6-v.8 § 14; TOS v.9-v.12 § 13.

10   In accordance with this procedure, Amazon sent emails to existing Amazon Flex drivers when it

11   updated the TOS to Version 11 in 2019 and to Version 12 in 2021, explaining that the TOS was

12   changing and that continued participation in Amazon Flex would constitute acceptance of the new

13   terms. Wilson Decl. ¶¶ 155-56. Amazon also made the new versions accessible to existing drivers

14   within the Amazon Flex app. *Id.* ¶ 30. Such individualized notice of a terms-of-service update is

15   binding on the Arbitration Plaintiffs who continued to use the Amazon Flex app to perform

16   deliveries after receiving the notice. *See, e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, 185

17   F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (explaining that "individualized notice" of a terms of

18   service update "in combination with a user's continued use [of the defendant's platform] is enough

19   for notice and assent"); *Webber v. Uber Techs., Inc.*, No. 18-cv-2941, 2018 WL 10151934, at *4

20   (C.D. Cal. Sept. 5, 2018) ("Courts have found that when consumers receive emails such as this

21   one, continued use of the service or product constitutes assent to the updated terms.").

22           The provisions in these agreements selecting Delaware law as a fallback to the FAA are

23   fully enforceable. Under the governing framework from *Restatement* Section 187, the first

24   question is whether Delaware has a substantial relationship to the parties or transaction or there is

25   otherwise a reasonable basis for choosing Delaware law. *See, e.g.*, *Shanghai Com. Bank*, 404 P.3d

26   at 66-67; *Nedlloyd Lines*, 834 P.2d at 1152. Delaware satisfies this requirement because Amazon

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 30

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

is incorporated in Delaware. *See, e.g.*, RESTATEMENT § 187 cmt. f (explaining that "the state of the chosen law has some substantial relationship to the parties or the contract" and the parties have "a reasonable basis for their choice . . . when this state is that . . . where one of the parties is domiciled"); *Kaul v. Mentor Graphics Corp.*, 730 F. App'x 437, 439 (9th Cir. 2018) ("Delaware has a substantial connection to the parties' transaction because it was the place of incorporation for . . . one of the contracting parties."); *Gardensensor, Inc. v. Stanley Black & Decker, Inc.*, No. 12-CV-03922 NC, 2012 WL 12925714, at *4 (N.D. Cal. Oct. 25, 2012) ("[A] substantial relationship between the parties and the forum exists where one party to the agreement is incorporated in the chosen state. Gardensensor is incorporated in the state of Delaware, and therefore has a substantial connection with the selected forum." (citation omitted)).

The only possible question is whether enforcing the arbitration agreement through Delaware law would conflict with a fundamental public policy of the state with the most significant relationship to the issue. *See, e.g.*, *Shanghai Com. Bank*, 404 P.3d at 67; *Ziegler v. JP Morgan Chase Bank, N.A.*, No. 2:20-CV-00298-SAB, 2021 WL 6274448, at *2 (E.D. Wash. Feb. 24, 2021). The Arbitration Plaintiffs bound by Versions 11 or 12 cannot make that showing and so must comply with the choice-of-law provision. *See, e.g.*, *Romero*, 2021 WL 3675074, at *2 (enforcing arbitration provision under chosen Nevada law because plaintiff had failed to prove that the choice of Nevada law conflicted with fundamental California policies).

Indeed, as explained in the next section, the arbitration provisions in all the TOS versions would be enforceable under alternative state laws even if the choice of Delaware law were ineffective for some reason. Plaintiffs thus cannot show conflict between those states' fundamental policies and Delaware's with respect to enforcing the arbitration provisions here.

**2.    Even without an express selection of Delaware law, Arbitration Plaintiffs must arbitrate under the laws of the states with the most significant relationship to their contracts.**

The Arbitration Plaintiffs who did not accept Version 11 or Version 12 still agreed to

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 31

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

arbitrate in earlier versions—just without choice-of-law provisions explicitly selecting Delaware law as a fallback to the FAA. Amazon previously argued that the choice-of-law provisions in the pre-2019 TOS versions select Washington law for the arbitration provisions. But this Court and the Ninth Circuit disagreed, interpreting those choice-of-law provisions as containing "express contractual language that precludes [Washington law's] application." *Rittmann II*, 971 F.3d at 921; *see also Rittmann I*, 383 F. Supp. 3d at 1203 ("[I]t appears that it is precisely against the parties' intent to apply Washington law to the Arbitration Provision."). This interpretation hinged on the language in the pre-2019 choice-of-law provisions, which select Washington law for the TOS "except for" the arbitration provision in Section 11. TOS v.9-10 § 12; *see also* TOS v.6-8 § 13.

That interpretation, though, does not preclude applying ordinary conflict-of-laws principles to identify which states besides Washington furnish the law governing the contractual promise to arbitrate. As one court recently explained in discussing *Rittmann I* and *II*, "the problem with applying Washington law as an alternate basis to compel arbitration was that 'the parties [had] explicitly contracted for Washington law to not apply to the Arbitration Provision.'" *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 359 (S.D.N.Y. 2021) (quoting *Rittmann I*, 383 F. Supp. 3d at 1202). On this view, "[a]pplying Washington law after the parties made clear in the contract that it did not apply to the arbitration clause would have amounted to 'rewrit[ing] the contract.'" *Id.* (quoting *Rittmann II*, 971 F.3d at 920). But when the contracts say "nothing about the applicability of [a different state's] law in the event that the FAA was found not to apply[,] [t]here is . . . nothing improper about applying standard choice-of-law principles to reach the conclusion that [some state's] law applies to the arbitration agreement in the absence of the FAA." *Id.* at 359-60.

When a contract's general choice-of-law provision has a "carveout" that subjects the arbitration provision to the FAA instead of the state law that the contract selects for the other provisions, the laws of *other* states remain fully available to enforce the arbitration provision even if it is exempt from the FAA. *See, e.g.*, *Singh v. Uber Techs., Inc.*, 571 F. Supp. 3d 345, 367 (D.N.J. 2021) (identifying applicable law through the forum state's conflict-of-laws rules because the

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

contract's choice-of-law provision "treats the arbitration provision differently from the rest of the agreement"); *Nelson v. Gobrands, Inc.*, No. 20-CV-5424-JMY, 2021 WL 4262325, at *7 (E.D. Pa. Sept. 20, 2021) ("A plain reading of the carveout in the Choice-of-Law Provision simply means that Delaware law will not apply to the agreement to arbitration claims. Nothing suggests that the rejection of Delaware law should preclude the Court from determining that the Arbitration Provision is governed by either Pennsylvania or Illinois law."). That conclusion fits with courts' widely held view that, "even when the contract says that the [FAA] applies and mentions no other law—if the federal act doesn't apply, the agreement to arbitrate remains viable, and the only question becomes what state's law applies to the contract to arbitrate." *Atwood v. Rent-A-Ctr. E., Inc.*, No. 15-CV-1023-MJR-SCW, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016); *see also, e.g.*, *Arafa v. Health Express Corp.*, 233 A.3d 495, 507 (N.J. 2020) ("[T]he NJAA [*i.e.*, New Jersey Arbitration Act] will apply unless preempted even without being explicitly referenced in an arbitration agreement; no express mention of the NJAA is required to establish a meeting of the minds that it will apply inasmuch as its application is automatic."). "[T]he effect of the FAA being found inapplicable is only that the arbitration clause contains no choice-of-law provision, and therefore that 'the law of the jurisdiction having the greatest interest in the litigation will be applied.'" *Islam*, 524 F. Supp. 3d at 359.

Under Washington conflict-of-laws rules, *Restatement* Section 188—titled "Law Governing in Absence of Effective Choice by the Parties"—prescribes a "most significant relationship" test if the contract does not have an effective choice-of-law provision. *See Shanghai Com. Bank*, 404 P.3d at 67. Here, with one exception discussed below, this test compels application of the laws of the states where the Arbitration Plaintiffs performed services. Those states are the location of the services' performance and of the subject matter of the contracts, and ordinarily also the location of contracting and of a contracting party's residence (because typically Delivery Partners perform services in the states in which they live). *See Restatement* § 188(2); *Jorgensen v. Cassiday*, 320 F.3d 906, 913-14 (9th Cir. 2003) (emphasizing similar factors in applying the

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1    *Restatement*'s most significant relationship test to a contract for the rendition of services); *Baffin*

2    *Land Corp. v. Monticello Motor Inn, Inc.*, 425 P.2d 623, 628 (Wash. 1967) (same).

3         The one exception is for the 7 Arbitration Plaintiffs who performed services in Washington.

4    *See* Wilson Decl. Appx B. Because *Rittmann I* and *II* held that Washington law cannot apply to

5    the arbitration provision in the pre-2019 TOS versions, Delaware is left as the state with the most

6    significant relationship to those contractual provisions because it is where one of the contracting

7    parties (Amazon) is incorporated. *See Restatement* § 188(2)(e) (considering, among other things,

8    a party's "place of incorporation"). If Washington law cannot apply, Delaware law must.

9         For all these Arbitration Plaintiffs, the agreements are enforceable under the laws of the

10   states with the most significant relationship to the contracts. For the contracts to which Delaware

11   has the most significant relationship, Delaware law, as explained already, requires enforcement of

12   the arbitration agreements. *See supra* Section III.C.1. And as discussed next, for the contracts to

13   which the states where Plaintiffs signed up to work have the most significant relationship, those

14   states also require enforcement of the arbitration agreements. So the Arbitration Plaintiffs who did

15   not accept post-2019 versions of the TOS must still arbitrate under these state laws. And if, for

16   whatever reason, the post-2019 selection of Delaware law were ineffective of its own force under

17   *Restatement* Section 187, the parties bound by the post-2019 TOS would also have to arbitrate

18   under these alternative state laws under *Restatement* Section 188. These states have arbitration

19   statutes and pro-arbitration policies that resemble the FAA. Indeed, for the vast majority of these

20   states, courts have already used their state arbitration laws to enforce FAA-exempt arbitration

21   agreements.

22        **Arizona.** Two Arbitration Plaintiffs signed up to perform services in Arizona. Wilson Decl.

23   Appx. B. Much like the FAA, Arizona's Revised Uniform Arbitration Act directs that "[a]n

24   agreement contained in a record to submit to arbitration any existing or subsequent controversy

25   arising between the parties to the agreement is valid, enforceable and irrevocable except on a

26   ground that exists at law or in equity for the revocation of a contract." ARIZ. REV. STAT. ANN. § 12-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

3006(A); *see also id.* § 12-1501. The state's "arbitration statutes … express Arizona's public policy that arbitration is a highly desirable method of resolving disputes." *Pima County ex rel. City of Tucson v. Maya Constr. Co.*, 761 P.2d 1055, 1058 (Ariz. 1988).

**California.** Fifty-four Arbitration Plaintiffs signed up to perform services in California. Wilson Decl. Appx. B. Like the FAA, the California Arbitration Act states that "[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." CAL. CIV. PROC. CODE § 1281. "Through this detailed statutory scheme, the Legislature has expressed a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Vandenberg v. Superior Ct.*, 982 P.2d 229, 238 (Cal. 1999) (citation omitted). An FAA-exempt agreement is enforceable under California law. *See Maldonado v. Sys. Servs. of Am., Inc.*, No. SACV09542JVSRNBX, 2009 WL 10675793, at *2 (C.D. Cal. June 18, 2009).

**Colorado.** Three Arbitration Plaintiffs signed up to perform services in Colorado. Wilson Decl. Appx. B. Like the FAA, the Colorado Uniform Arbitration Act states that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract." COLO. REV. STAT. § 13-22-206(1). "Colorado law favors the resolution of disputes through arbitration." *J.A. Walker Co. v. Cambria Corp.*, 159 P.3d 126, 128 (Colo. 2007).

**District of Columbia.** One Arbitration Plaintiff signed up to perform services in the District of Columbia. Wilson Decl. Appx. B. Like the FAA, the D.C. Revised Uniform Arbitration Act states, "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." D.C. CODE § 16-4406(a). And "[j]ust as 'Congress [has] declared a national policy favoring arbitration,' so

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1   has the District of Columbia." *D.C. Pub. Emp. Rels. Bd. v. Fraternal Ord. of Police*, 987 A.2d

2   1205, 1209 (D.C. 2010) (citation omitted).

3      **Florida.** One Arbitration Plaintiff signed up to perform services in Florida. Wilson Decl.

4   Appx. B. "An agreement contained in a record to submit to arbitration any existing or subsequent

5   controversy arising between the parties to the agreement is valid, enforceable, and irrevocable

6   except upon a ground that exists at law or in equity for the revocation of a contract." FLA. STAT. §

7   682.02(1). "Florida public policy favors arbitration." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d

8   456, 472 (Fla. 2011). An FAA-exempt agreement is enforceable under Florida law. *See Powell v.

9   Carey Int'l, Inc.*, No. 05-21395-CIV, 2006 WL 8434352, at *6 (S.D. Fla. Nov. 17, 2006); *Guidice

10  v. Sage Corp.*, No. 06-80659-CIV, 2006 WL 8433427, at *2 (S.D. Fla. Nov. 6, 2006).

11     **Illinois.** Two Arbitration Plaintiffs signed up to perform services in Illinois. Wilson Decl.

12  Appx. B. Like the FAA, the Illinois Uniform Arbitration Act states, "A written agreement to

13  submit any existing controversy to arbitration or a provision in a written contract to submit to

14  arbitration any controversy thereafter arising between the parties is valid, enforceable and

15  irrevocable save upon such grounds as exist for the revocation of any contract." 710 ILL. COMP.

16  STAT. ANN. 5/1. "[P]ublic policy in Illinois favors arbitration." *Phoenix Ins. Co. v. Rosen*, 949

17  N.E.2d 639, 647 (Ill. 2011). An FAA-exempt agreement is enforceable under Illinois law. *See,

18  e.g.*, *Atwood*, 2016 WL 2766656, at *3-4.

19     **Massachusetts.** One Arbitration Plaintiff signed up to perform services in Massachusetts.

20  Wilson Decl. Appx. B. Like the FAA, the Massachusetts Uniform Arbitration Act states, "A

21  written agreement to submit any existing controversy to arbitration or a provision in a written

22  contract to submit to arbitration any controversy thereafter arising between the parties shall be

23  valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the

24  revocation of any contract." MASS. GEN. LAWS ch. 251, § 1. "Similar to the Federal Act, the

25  Massachusetts Act 'express[es] a strong public policy favoring arbitration.'" *St. Fleur v. WPI

26  Cable Sys./Mutron*, 879 N.E.2d 27, 31 (Mass. 2008) (citation omitted).

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 36

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

**Minnesota.** Two Arbitration Plaintiffs signed up to perform services in Minnesota. Wilson Decl. Appx. B. Like the FAA, the Minnesota Revised Uniform Arbitration Act states, "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of contract." MINN. STAT. § 572B.06(a). "The public policy of [Minnesota] favoring the employment of arbitration is clearly and firmly established in [Minnesota] law." *Schmidt v. Midwest Fam. Mut. Ins. Co.*, 426 N.W.2d 870, 875 (Minn. 1988). An FAA-exempt agreement is enforceable under Minnesota law. *E.g.*, *Butler v. ATS Inc.*, No. 20-CV-1631 (PJS/LIB), 2021 WL 1382378, at *26 (D. Minn. Apr. 13, 2021).

**New Jersey.** Two Arbitration Plaintiffs signed up to perform services in New Jersey. Wilson Decl. Appx. B. Like the FAA, the New Jersey Arbitration Act states, "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." N.J. STAT. ANN. § 2A:23B-6(a). "[T]he affirmative policy of [New Jersey], both legislative and judicial, favors arbitration as a mechanism of resolving disputes." *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 881 (N.J. 2002). An FAA-exempt agreement is enforceable under New Jersey law. *See, e.g.*, *Arafa*, 233 A.3d at 509; *Siperavage v. Uber Techs., Inc.*, No. CV 20-12265, 2021 WL 2680060 (D.N.J. June 30, 2021).

**New York.** Two Arbitration Plaintiffs signed up to perform services in New York. Wilson Decl. Appx. B. Like the FAA, the New York's arbitration statute states, "A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award." N.Y. C.P.L.R. 7501. "[A]rbitration is a favored method of dispute resolution in New York, and 'New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration.'" *Bd. of Educ. of Bloomfield Cent. Sch. Dist. v. Christa Constr., Inc.*, 608 N.E.2d 755 (N.Y. 1992) (citations

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 37

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1    omitted). An FAA-exempt agreement is enforceable under New York law. *See, e.g.*, *Islam*, 524 F.

2    Supp. 3d at 360; *Castro v. TCA Logistics Corp.*, No. 20-CV-2004(JS)(ARL), 2021 WL 7287305,

3    at *8 (E.D.N.Y. Mar. 31, 2021); *Burgos v. Ne. Logistics, Inc.*, No. 15CV6840CBACLP, 2017 WL

4    10187756, at *4 (E.D.N.Y. Mar. 30, 2017).

5        **North Carolina.** One Arbitration Plaintiff signed up to perform services in North Carolina.

6    Wilson Decl. Appx. B. Like the FAA, the North Carolina Revised Uniform Arbitration Act states,

7    "An agreement contained in a record to submit to arbitration any existing or subsequent

8    controversy arising between the parties to the agreement is valid, enforceable, and irrevocable

9    except upon a ground that exists at law or in equity for revoking a contract." N.C. GEN. STAT. ANN.

10   § 1-569.6. "North Carolina has a strong public policy favoring the settlement of disputes by

11   arbitration." *Johnston Cnty. v. R.N. Rouse & Co., Inc.*, 414 S.E.2d 30, 32 (N.C. 1992).

12       **Ohio.** Two Arbitration Plaintiffs signed up to perform services in Ohio. Wilson Decl.

13   Appx. B. Like the FAA, the Ohio Arbitration Act states, "A provision in any written contract . . .

14   to settle by arbitration a controversy that subsequently arises out of the contract, or out of the

15   refusal to perform the whole or any part of the contract . . . shall be valid, irrevocable, and

16   enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

17   OHIO REV. CODE ANN. § 2711.01(A). "Both the Ohio General Assembly and Ohio courts have

18   expressed a strong public policy favoring arbitration." *Hayes v. Oakridge Home*, 908 N.E.2d 408,

19   411 (Ohio 2009). An FAA-exempt agreement is enforceable under Ohio law. *See W.L. Byers*

20   *Trucking, Inc. v. Falcon Transp. Co.*, No. 2:09CV342JVB, 2010 WL 3724895, at *4 (N.D. Ind.

21   Sept. 17, 2010).

22       **Oregon.** One Arbitration Plaintiff signed up to perform services in Oregon. Wilson Decl.

23   Appx. B. Like the FAA, the Oregon Uniform Arbitration Act states, "An agreement contained in

24   a record to submit to arbitration any existing or subsequent controversy arising between the parties

25   to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or

26   in equity for the revocation of a contract." OR. REV. STAT. § 36.620(1). "Oregon law and the FAA

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 38

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

favor arbitration as a means for resolving disputes." *Motsinger v. Lithia Rose-FT, Inc.*, 156 P.3d 156, 165 (Or. Ct. App. 2007).

**Pennsylvania.** One Arbitration Plaintiff signed up to perform services in Pennsylvania. Wilson Decl. Appx. B. Like the FAA, the Pennsylvania Uniform Arbitration Act states, "A written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract." 42 Pa. Cons. Stat. § 7303. "[T]he settlement of disputes by arbitration is favored by the public policy of [Pennsylvania] and is, therefore, encouraged by [Pennsylvania] courts and by statute." *Fastuca v. L.W. Molnar & Assocs.*, 10 A.3d 1230, 1245 (Pa. 2011). An FAA-exempt agreement is enforceable under Pennsylvania law. *See, e.g.*, *Nelson*, 2021 WL 4262325, at *7; *Adams v. Parts Distribution Xpress, Inc.*, No. 2:20-CV-00697-JMG, 2021 WL 1088231, at *5 (E.D. Pa. Mar. 22, 2021).

**Tennessee.** One Arbitration Plaintiff signed up to perform services in Tennessee. Wilson Decl. Appx. B. Like the FAA, the Tennessee Uniform Arbitration Act states, "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract." Tenn. Code Ann. § 29-5-302(a). "[A]rbitration agreements in contracts are favored in Tennessee both by statute and existing case law." *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 617 (Tenn. 2004). An FAA-exempt agreement is enforceable under Tennessee law. *See, e.g.*, *Green v. U.S. Xpress Enters., Inc.*, 434 F. Supp. 3d 633, 644 (E.D. Tenn. 2020).

**Texas.** Eight Arbitration Plaintiffs signed up to perform services in Texas. Wilson Decl. Appx. B. Like the FAA, the Texas Arbitration Act states that written arbitration agreements are generally valid and enforceable and are revocable "only on a ground that exists at law or in equity for the revocation of a contract." Tex. Civ. Prac. & Rem. Code Ann. § 171.001(a). "Texas law

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 39

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1    strongly favor[s] arbitration." *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008). An

2    FAA-exempt agreement is enforceable under Texas law. *See, e.g.*, *Davis v. EGL Eagle Glob.*

3    *Logistics L.P.*, 243 F. App'x 39, 44 (5th Cir. 2007); *Shanks v. Swift Transp. Co. Inc.*, No. CIV.A.

4    L-07-55, 2008 WL 2513056, at *12 (S.D. Tex. June 19, 2008).

5          **Utah.** Two Arbitration Plaintiffs signed up to perform services in Utah. Wilson Decl.

6    Appx. B. Like the FAA, the Utah Uniform Arbitration Act states, "An agreement contained in a

7    record to submit to arbitration any existing or subsequent controversy arising between the parties

8    to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or

9    in equity for the revocation of a contract." UTAH CODE ANN. § 78B-11-107(1). "It is the policy of

10   the law in Utah to interpret contracts in favor of arbitration." *Cent. Fla. Invs., Inc. v. Parkwest*

11   *Assocs.*, 40 P.3d 599, 606 (Utah 2002). An FAA-exempt agreement is enforceable under Utah law.

12   *See, e.g.*, *Abram*, 2020 WL 5077373, at *7; *Roberts v. Cent. Refrigerated Serv.*, 27 F. Supp. 3d

13   1256, 1263 (D. Utah 2014).

14   **IV.    <u>CONCLUSION</u>**

15         For all these reasons, the Court should compel the Arbitration Plaintiffs to arbitrate under

16   federal and/or state law and either stay litigation of their claims pending arbitration or dismiss

17   those claims from this action.

18   Dated: December 19, 2022           Respectfully submitted,

19                       By: <u>s/ *Richard G. Rosenblatt*</u>

20                          Richard G. Rosenblatt (*pro hac vice*)
                            James P. Walsh, Jr. (*pro hac vice*)

21                          MORGAN, LEWIS & BOCKIUS LLP
                            502 Carnegie Center

22                          Princeton, NJ 08540-6241
                            Telephone:  (609) 916-6600

23                          Facsimile:  (609) 916-6601
                            richard.rosenblatt@morganlewis.com

24                          james.walsh@morganlewis.com

25                       By: <u>s/ *Andrew DeCarlow*</u>
                            Andrew DeCarlow, WSBA No. 54471

26                          MORGAN, LEWIS & BOCKIUS LLP

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 40

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1301 Second Avenue, Suite 2800
Seattle, WA 98101
Telephone: (206) 274-0154
Facsimile: (206) 274-6401
andrew.decarlow@morganlewis.com

Brian D. Berry (*pro hac vice*)
Andrea L. Fellion (*pro hac vice*)
Sarah Zenewicz (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Fax: (415) 442-1001
brian.berry@morganlewis.com
andrea.fellion@morganlewis.com
sarah.zenewicz@morganlewis.com

John S. Battenfeld (*pro hac vice*)
Max C. Fischer (*pro hac vice*)
Brian D. Fahy (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
300 S. Grand Ave., Suite 2200
Los Angeles, CA 90071
Telephone: (213) 612-2500
Fax: (213) 612-2501
jbattenfeld@morganlewis.com
max.fischer@morganlewis.com
brian.fahy@morganlewis.com

By: s/ *Todd L. Nunn*
Todd L. Nunn, WSBA #23267
K&L GATES LLP
925 Fourth Ave, Suite 2900
Seattle, WA 98104-1158
Telephone:  (206) 623-7580
Facsimile:  (206) 623-7022
todd.nunn@klgates.com

*Attorneys for Defendants*

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 41

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on December 19, 2022, I caused to be electronically filed the foregoing

3 **DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION** with the Clerk of

4 Court using the CM/ECF system, which will automatically send email notification of such filing

5 to the registered attorneys of record.

6

7                                          By: s/ *Andrew DeCarlow*
                                           Andrew DeCarlow, WSBA No. 54471
8                                          MORGAN, LEWIS & BOCKIUS LLP
                                           1301 Second Avenue, Suite 2800
9                                          Seattle, WA 98101
                                           Telephone: (206) 274-0154
10                                         Facsimile: (206) 274-6401
                                           andrew.decarlow@morganlewis.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 42

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' RENEWED MOT. TO COMPEL ARBITRATION
Case No. C16-1554 JCC - 1

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Ste. 2800
Seattle, WA 98101
Telephone: +1-206-274-6400
Facsimile: +1-206-274-6401