The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BERNADEAN RITTMANN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM INC. and AMAZON LOGISTICS, INC.,<br><br>Defendant(s). | Consolidated Action<br>Case No. C16-1554-JCC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE PORTIONS OF PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT (ECF NO. 246)**<br><br>NOTE DATE:<br>February 3, 2023 |

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Plaintiffs' Minimum Wage Claims Are Adequately Pled. ........ 2

B. Plaintiffs' Overtime Claims Are Adequately Pled. ........ 5

C. Plaintiffs' Claim for Withheld Wages Under Washington Law is Adequately Pled and Adequately Alleges Willfulness on the Part of Defendants ........ 6

D. Plaintiffs' California State Law Claims Are Adequately Pled. ........ 7

1. Plaintiffs' California Meal & Rest Break Claims are Adequately Pled. ........ 7

2. California Tips Claim under Cal. Lab. Code § 351 is Adequately Pled ........ 9

3. California Waiting Time Claim is Adequately Pled ........ 11

4. California Sick Leave Claim is a Predicate to Plaintiffs' UCL Claim ........ 12

5. California Unlawful Deductions Claim is Adequately Pled ........ 12

6. Insofar as Count 8 and Count 13 of the Complaint are Duplicative, Count 13 may be dismissed. ........ 15

E. Plaintiffs' New York State Law Claims Are Adequately Pled ........ 15

1. Plaintiffs Have Adequately Pled Their Claim for Failure to Reimburse Necessary Business Expenses under N.Y. Lab. Law §§ 193, 198-b. ........ 15

2. Plaintiffs Have Adequately Pled Their Claim for Unremitted Tips Under N.Y. Lab. Law §§ 193, 196-d. ........ 17

F. Plaintiffs' New Jersey Wage Payment Law Claim Is Not Subject to Dismissal. ........ 19

G. Plaintiffs' Nationwide Common Law Claims Are Not Subject to Dismissal. ............... 20

III. CONCLUSION ........................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Adobe Systems Inc. v. Blue Source Group, Inc.*
125 F. Supp. 3d 945 (N.D. Cal. 2015) .......... 10

*Alberts v. Aurora Behavioral Health Care,*
241 Cal. App. 4th 388 (2015) .......... 8

*Ambriz v. Coca Cola Co.*,
No. 13-CV-03539-JST, 2013 WL 5947010, at *3 (N.D. Cal. Nov. 5, 2013) .......... 8, 9

*Angello v. Labor Ready, Inc.*,
7 N.Y.3d 579 (Ct. App. NY 2006) .......... 16

*In re Anthem Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) .......... 2

*Augustus v. ABM Security Services, Inc.*,
2 Cal.5th 257 (2016) .......... 9

*Black v. 7714 Entertainment, Corp.*,
2022 WL 4229260, at *10 (E.D.N.Y. Jul. 29, 2022) .......... 15

*Bland v. PNC Bank, NA.*,
2016 WL 10520047 (W.D. Pa. Dec. 16, 2016) .......... 20

*Boon v. Canon Bus. Sols., Inc.*,
592 F. App'x 631 (9th Cir. 2015) .......... 3, 4, 8

*Bradley v. Networkers Internat., LLC*,
211 Cal. App. 4th 1129 (2012) .......... 7

*Brinker Rest. Corp. v. Superior Ct.*,
53 Cal. 4th 1004 (2012) .......... 7, 8, 9

*Caballero v. Western Refining Retail, LLC*,
2021 WL 2935309 (C.D. Cal. Mar. 23, 2021) .......... 3

*Campbell v. Pricewaterhouse Coopers, LLP*,
2007 WL 841694, at *5 (E.D. Cal. Mar.20, 2007) .......... 13

*Chen v. Target Corporation*
(D. Minn., May 19, 2022, No. CV 21-1247) 2022 WL 1597417, at *7 .......... 23

*Clark v. United Emergency Animal Clinic, Inc.*,
123 Fed. Appx. 736 (9th Cir. 2004) ....................13

*Davenport v. Wendy's Co.*,
2014 WL 3735611, *5 (E.D. Cal. July 28, 2014)....................4

*Davis v. Farmers Ins. Exch.*,
245 Cal. App. 4th 1302, 1335, 200 Cal. Rptr. 3d 315 (2016) ....................12

*Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*,
2017 WL 3863866, at *6 (W.D. Mo. Aug. 3, 2017) ....................23

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014)....................5

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003)....................2

*Fiore v. PPG Industries, Inc.*,
169 Wash. App. 325 (Wash. Ct. App. 2012)....................6

*Foman v. Davis*,
371 U.S. 178 (1962) ....................2

*Fowler v. Scores Holding Co., Inc.*,
677 F. Supp. 2d 673 (S.D.N.Y. Dec. 28, 2009)....................19

*Gregory Vill Partners, L.P. v. Chevron U.S.A., Inc.*,
805 F. Supp. 3d 888 (N.D. Cal. 2011)....................5

*Hart v. Rick's Cabaret Int'l, Inc.*,
967 F. Supp. 2d 901 (S.D.N.Y. 2013) ....................15, 17, 18

*Hill v. Garda CL Nw., Inc.*,
191 Wash.2d 553 (2018) ....................6

*Hudgins v. Neiman Marcus Grp., Inc.*,
34 Cal. App. 4th 1109 (1995)....................13

*Huskey v. Colgate-Palmolive Co.*,
486 F. Supp. 3d 1339 (E.D. Mo. 2020) ....................23

*Kamar v. RadioShack Corp.*,
2008 WL 2229166, at *8 (C.D. Cal. May 15, 2008)....................13

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 2

*Koljenovic v. Marx*,
999 F. Supp. 2d 396 (E.D.N.Y. Feb. 6, 2014) .......... 16

*Landers v. Quality Commc'ns, Inc.*,
771 F.3d 638 (9th Cir. 2014) .......... passim

*Lee v. Woodstock Outdoor Co., Inc.*,
2020 WL 5606157, at *10 (S.D.N.Y. Sept. 2, 2020) .......... 16

*Lomeli v. Falkirk Management Corp.*,
179 A.D.3d 660, 116 N.Y.S.3d 332 (App. Div. 2d Dep't 2020) .......... 19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .......... 2

*McMillan v. Pepperidge Farm, Inc.*,
2022 WL 2619854, at *4 (D.N.J. July 7, 2022) .......... 19, 20

*McMullen v. Fluor Corp.*,
81 F. App'x 197 (9th Cir. 2003) .......... 2

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) .......... 22

*Ortiz v. Arthur T. Mott Real Estate, LLC*,
2016 U.S. Dist. LEXIS 127597, *18 (E.D.N.Y. Sept. 15, 2016) .......... 16

*Overka v. American Airlines, Inc.*,
265 F.R.D. 14 (D. Mass. 2010) .......... 20, 22

*Pennsylvania Baycol Third-Party Payor Litig.*,
2005 WL 852135, *6 (C.C.P. Phila. Cty. Apr. 4, 2005) .......... 21

*Perez v. Island Hospitality Management III, LLC,*
2019 WL 3064113 (C.D. Cal. Feb. 8, 2019) .......... 3

*Pichardo v. Fifty Five Long Island Corp.*,
2021 WL 4173654, at *5 (E.D.N.Y. Aug. 2, 2021) .......... 15, 18

*Prudential Ins. Co. America Sales Practice Litigation Agent Actions*,
148 F.3d at 315 (U.S.C.A 3rd Circuit, July 23, 1998) .......... 22

*Pruell v. Caritas Christi*,
678 F.3d 10 (1st Cir. 2012) ....................................................................................................4

*Reyes v. Altamarea Group, LLC*,
2011 WL 280799 (S.D.N.Y. Jan. 18, 2011)..............................................................................19

*Rodriguez v. F & B Solutions LLC*,
2014 WL 2069649 (E.D. Va. Apr. 29, 2014)..............................................................................3

*Roman v. Jan-Pro Franchising Int'l, Inc.*,
342 F.R.D. 274 (N.D. Cal. 2022) ............................................................................................12

*Sagastume v. Psychemedics Corp.*,
2020 WL 817559 (C.D. Cal. Nov. 30, 2020) ..............................................................................3

*Sanchez v. Sams West, Inc.*,
2021 WL 8531592, *2 (C.D. Cal. Dec. 23, 2021)........................................................................3

*Schilling v. Radio Holdings, Inc.*,
136 Wash.2d 152 (1998) ..........................................................................................................6

*Sciborski v. Pac. Bell Directory*,
205 Cal. App. 4th 1152 (2012)................................................................................................13

*Smith v. Superior Ct.*,
39 Cal. 4th 77 (2006)...............................................................................................................11

*Starbucks Emp. Gratuity Litig.*,
264 F.R.D. 67 (S.D.N.Y. 2009)...............................................................................................17

*Stearne v. Heartland Payment Sys. LLC*,
2018 WL 746492 (E.D. Cal February 6, 2018)...........................................................................2

*Suarez v. Bank of Am. Corp.*,
No. 18-CV-01202-MEJ, 2018 WL 3659302, at *8 (N.D. Cal. Aug. 2, 2018) ..........................8

*Tan v. GrubHub, Inc.*,
171 F. Supp. 3d 998 (N.D. Cal. Mar. 22, 2016) .........................................................................3

*In re Target Corp. Data Sec. Breach Litig.*,
66 F. Supp. 3d 1154 (D. Minn. 2014) ....................................................................................22

*Tinnin v. Sutter Valley Medical Foundation,*
2022 WL 17968628 (E.D. Cal. Dec. 27, 2022);.........................................................................3

*Valenzuela v. Giumarra Vineyards Corp.*,
614 F.Supp.2d 1089 (E.D.Cal.2009) .......... 13

*Varsam v. Laboratory Corp. of America*,
2015 WL 4624111, *3 (S.D. Cal. Aug. 3, 2015) .......... 3

*Villalpando v. Exel Direct Inc.*
2014 WL 1338297 (N.D. Cal. March 28, 2014) .......... 10

*Warfarin Sodium Antitrust Litig.*,
391 F.3d 516, 529 (3d Cir. 2004) .......... 21

*Welch v. Montgomery Eye Physicians, P.C.*,
891 So.2d 837 (Ala. 2004) .......... 21

*Wheeler v. MicroBilt Corp.*,
700 F. App'x 725 (9th Cir. 2017) .......... 5

*Williams v. Yamaha Motor Co. Ltd.*,
851 F.3d 1015 (9th Cir. 2017) .......... 5

*Yuckming Chiu v. Citrix Sys., Inc.*,
No. 11–cv–1121–DOC, 2011 W L 6018278, at *3 (C.D. Cal. Nov. 23, 2011) .......... 9

*Yuckming Chiu v. Citrix Sys., Inc.*,
No. SA CV 11-1121 DOC, 2011 WL 6018278, at *5 (C.D. Cal. Nov. 23, 2011) .......... 11

**Statutes**

California Labor Code
§ 201 .......... 11

New York Lab. Law
§ 193(3)(a) .......... 15, 17, 18

**Treatises**

Restatement (Second) Torts,
§ 766B (1979) .......... 29

## I. INTRODUCTION

Defendants (collectively "Amazon") have moved to dismiss and strike vast portions of the complaint. For the reasons set forth below, this request should be denied in full. Although this case was filed many years ago in 2016, the case is still in its infancy, following a lengthy appeal from the Court's denial of Amazon's Motion to Compel arbitration (and subsequent denial of *certiorari* by the Supreme Court), and multiple stays while the appeal and other related Supreme Court decisions were decided. *See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), *cert denied*, 209 L. Ed. 2d 121 (2021). Thus, notwithstanding the passage of time, this case is still at the pleading stage. At this juncture, Plaintiffs need only put Amazon on notice of the nature of the claims against it. Plaintiffs have clearly made plausible allegations to support their claims that they have been misclassified by Amazon as independent contractors and have suffered numerous wage violations as a result, under federal law as well as state statutory and common law. In sum, Amazon is clearly on notice regarding the theory underlying all of Plaintiffs' wage claims.

Furthermore, Amazon is in possession of extensive records and data underlying these wage claims, which Plaintiffs uniformly lack. Indeed, as Plaintiffs alleged in the Consolidated Class Action Complaint (hereinafter "CCAC"), "Amazon utilized screenshot disabling features in the Amazon Flex app" while also failing to provide "Plaintiffs with any written or electronic wage statement showing hours worked, gross or net wages, hourly rates, paid or unpaid breaks or federal or state deductions." ECF No. 238 at ⁋ 64. Even through the Application (for those who are still working for Amazon), Plaintiffs cannot access records of their hours, pay, and deliveries before a date certain in the past. It is clearly not possible for Plaintiffs – some of whom have worked for Amazon long ago – to plead with particularity, specific workweeks in which they failed to receive minimum wage or overtime. And recent decisions have almost uniformly rejected such a hyper-technical reading of *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638,

641-42 (9th Cir. 2014). *See infra*, pp. 3-4. As set forth further below, Amazon's kitchen sink of arguments is misplaced, and its Motion to Strike should be denied in full.[1]

## II. ARGUMENT

### A. Plaintiffs' Minimum Wage Claims Are Adequately Pled.

Amazon broadly alleges that Plaintiffs' minimum wage claims are inadequately pled, but upon further examination, it concedes that Plaintiffs have set forth adequate allegations for their minimum wage claims under the FLSA, and the state laws of Washington, California, New Jersey, and New York by explaining the theory of their claims and alleging specific workweeks in which various plaintiffs failed to make minimum wage in these jurisdictions. *See* ECF No. 246 at 8. Amazon's specific quarrel is that Plaintiffs have not adequately alleged minimum wage claims under Illinois state law and the Seattle minimum wage ordinance. *Id.* Amazon's arguments must be rejected for multiple reasons.

First, and most fundamentally, contrary to Amazon's characterization, the Ninth Circuit

---

[1] This Court previously granted Plaintiffs leave to amend the complaint, following the Court's ruling on Amazon's initial Motion to Dismiss, so that Plaintiffs could re-plead in light of the Court's guidance. *See* ECF No. 76 at 8. The Court's action was in accordance with precedent dictating that "[l]eave to amend should be "freely given" where there is no 'undue delay, bad faith or dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment...." *Stearne v. Heartland Payment Sys. LLC*, 2018 WL 746492, at *2 (E.D. Cal. February 6, 2018) (granting leave to amend paid sick leave claim) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Numerous courts have granted leave to amend after the filing of consolidated complaints. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1018 (9th Cir. 2018) (dismissing Count II and part of Count I of consolidated complaint but granting leave to amend); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (Ninth Circuit reversed district court's decision to dismiss first consolidated amended complaint with prejudice, thereby granting leave to amend); *In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953, 983 (N.D. Cal. 2016) (granting motion to dismiss, while granting Plaintiffs leave to amend consolidated amended complaint); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1035 (9th Cir. 2008) (holding that the district court abused its discretion in denying Plaintiffs leave to amend consolidated lawsuits). Further, leave to amend after prior amendments is routinely granted in this Circuit. *See, e.g., McMullen v. Fluor Corp.*, 81 F. App'x 197, 201 (9th Cir. 2003) (reversing district court's holding which dismissed plaintiffs' third amended consolidated complaint).

"does not require that a '***particular instance***' [of overtime or minimum wage violations] be pled" in order to state a valid claim, *see Varsam v. Laboratory Corp. of America*, 2015 WL 4624111, *3 (S.D. Cal. Aug. 3, 2015) (emphasis added), nor does it require that each Plaintiff provide the level of detail that Amazon urges. Indeed, as the Ninth Circuit itself acknowledged in *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641-42 (9th Cir. 2014), "no circuit court has interpreted Rule 8 as requiring [plaintiffs] to plead in detail the number of hours worked, their wages, or the amount of overtime owed to state a claim for unpaid minimum wages or overtime wages." *See also Boon v. Canon Bus. Sols., Inc.*, 592 F. App'x 631, 632 (9th Cir. 2015). The obvious reason for this fact is that Plaintiffs cannot be expected to allege such claims with "mathematical precision," when "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants." *Landers*, 771 F.3d at 645-46; *see also Boon*, 592 F. App'x at 632 (holding that plaintiff satisfied pleading requirement by describing "tasks for which [plaintiff] was not paid and alleg[ing] that he regularly worked more than eight hours in a day and forty hours in a week"); *Perez v. Island Hospitality Management III, LLC*, 2019 WL 3064113 (C.D. Cal. Feb. 8, 2019) (holding that plaintiff must demonstrate at least one work week where wage and hour laws were violated, but need not plead specific dates); *Sanchez v. Sams West, Inc.*, 2021 WL 8531592, *2 (C.D. Cal. Dec. 23, 2021) ("*Landers* does not stand for the proposition that a plaintiff asserting an overtime claim must plead an itemized calendar of each date on which he was denied overtime wages and the amount of those unpaid wages."); *Tinnin v. Sutter Valley Medical Foundation*, 2022 WL 17968628 (E.D. Cal. Dec. 27, 2022); *Caballero v. Western Refining Retail, LLC*, 2021 WL 2935309 (C.D. Cal. Mar. 23, 2021); *Sagastume v. Psychemedics Corp.*, 2020 WL 817559 (C.D. Cal. Nov. 30, 2020); *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1008 (N.D. Cal. Mar. 22, 2016) ("*Landers* does not require the plaintiff to identify an exact calendar week or particular instance of denied overtime; instead, the allegations need only give rise to a plausible inference that there was such an instance."); *Rodriguez v. F & B Solutions LLC*, 2014 WL 2069649 (E.D. Va. Apr. 29, 2014); *Davenport v.*

*Wendy's Co.*, 2014 WL 3735611, *5 (E.D. Cal. July 28, 2014); *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012).

Here, Plaintiffs have specifically pled that "[w]hen using the Amazon Flex app to view their current earnings in the app's interface, delivery workers were unable to capture images" and that "Amazon utilized screenshot disabling features in the Amazon Flex app" while also failing to provide "Plaintiffs with any written or electronic wage statement showing hours worked, gross or net wages, hourly rates, paid or unpaid breaks or federal or state deductions." ECF No. 238 at ⁋ 64. These actions by Amazon have rendered it not feasible for Plaintiffs who no longer have access to the Amazon Flex Application (because they are not currently working for Amazon Flex) to reconstruct their hours or pay because they have *no record of their hours or earnings*. By contrast, Amazon has detailed data in its possession regarding Plaintiffs' pay, the shifts they signed up to work, and time-stamped records of their deliveries. In sum, Plaintiffs should not be required to plead specific workweeks given they do not have access to any documentation that would allow them to determine the workweeks at issue. *See, e.g.*, *Landers*, 771 F.3d at 645-46; *see also Boon*, 592 F. App'x at 632.

In any case, Plaintiff Rittmann has provided specific allegations regarding her failure to make minimum wage in July 2016, when she was working in Seattle, Washington. *See* CCAC, ⁋ 51. Defendants concede that Rittmann has adequately pled her FLSA minimum wage claim, and the Seattle minimum wage was much higher, such that she has necessarily also adequately pled her claim under the Seattle Minimum Wage Ordinance. Amazon insists that Rittmann did "not allege where she was working when her wages allegedly fell below the federal minimum wage", *see* ECF No. 246 at 8, but this argument is frivolous because by naming specific workweeks in July 2016, Amazon *knows* that Rittmann was working in Seattle, Washington, at the time. The federal pleading standard has two main goals: first, to "give fair notice and to enable the opposing party to defend itself," and second, to ensure that the plaintiff's allegations "plausibly suggest an entitlement to relief." *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751

F.3d 990, 996 (9th Cir. 2014) (citation omitted).[2] By providing detail regarding specific occasions on which Rittmann did not make minimum wage in July 2016 – a timeframe in which she was exclusively working in the Seattle, Washington, area for Amazon Flex – she has clearly provided sufficient detail to put Amazon on notice regarding the nature of the claims against it and plausibly explained her entitlement to relief.[3]

### B. Plaintiffs' Overtime Claims Are Adequately Pled.

Plaintiffs have alleged overtime claims under Washington, California, and federal law. Amazon argues that the CCAC fails to state a claim because, although Plaintiff Carroll pleads two specific workweeks in which he worked more than forty hours per week without overtime pay, he "does not allege how many hours he actually worked" and does not "allege in which state he performed services, and therefore he fails to state a claim under California or Washington overtime laws" *See* ECF No. 246 at 9. This latter quibble by Amazon is immaterial because Amazon *knows* where Carroll performed work on the weeks in question; by providing specific workweeks in which he worked overtime, Amazon can easily determine that the location Carroll worked during those weeks was Washington state. Moreover, "[n]o circuit court has interpreted Rule 8 as requiring FLSA plaintiffs to plead in detail ***the number of hours worked***,

---

[2] "Federal Rule of Civil Procedure 8(a)(2) requires only that a plaintiff provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,' such that the defendant receives 'fair notice' of the claims against it." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017). A plaintiff must "plead at least enough facts to put the defendant on notice of the claim against it," but the complaint need not contain "detailed factual allegations." *Wheeler v. MicroBilt Corp.*, 700 F. App'x 725, 727 (9th Cir. 2017).

[3] It is worth noting that Fed. R. Civ. P. 12(e) dictates that a motion for a more definite pleading is only proper where the "complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted and therefore cannot reasonably be expected to frame a proper response." *Gregory Vill Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 3d 888, 896 (N.D. Cal. 2011). Here, Defendants plainly have sufficient information to understand that Rittmann – who worked for them exclusively in the Seattle Washington area in July 2016, as Defendant well knows from its own records – is alleging that she made well below the prevailing minimum wage, both for Washington state and the city of Seattle. The pleading here would not qualify under Rule 12(e) to require more definite pleading, much less warrant dismissal.

their wages, or the amount of overtime owed to state a claim for unpaid minimum wages or overtime wages." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641-42 (9th Cir. 2014), *as amended* (Jan. 26, 2015) (emphasis added). In sum, Plaintiffs' FLSA and Washington state overtime claims are plainly not subject to dismissal.

**C. Plaintiffs' Claim for Withheld Wages Under Washington Law is Adequately Pled and Adequately Alleges Willfulness on the Part of Defendants.**

Next, Amazon erroneously claims that Plaintiffs have failed to adequately plead their Washington state law claim under RCW section 49.52.50 (Count Five) because Plaintiffs have not adequately pled the element of willfulness. ECF No. 246 at 10.

The Washington Supreme Court has repeatedly underscored that the "standard for proving willfulness is low." *Hill v. Garda CL Nw., Inc.*, 191 Wash.2d 553, 561, 424 P.3d 207 (2018). The employer's failure to pay need only be volitional—he "merely" needs to "know what he is doing, intend[] to do what he is doing, and [act as] a free agent.'" *Schilling v. Radio Holdings, Inc.*, 136 Wash.2d 152, 961 P.2d 371 (1998) (citations omitted). Typically, an employer's failure to pay wages will only be deemed not willful where it is the result of carelessness or where there is a bona fide dispute about whether certain wages were really due. *Hill*, 191 Wash.2d at 561. When a worker alleges that her employer has violated RCW 49.52.50 by misclassifying and thus underpaying her, all she needs to show is that her employer "acted volitionally" in failing to pay her wages. *Fiore v. PPG Industries, Inc.*, 169 Wash. App. 325, 348, 279 P.3d 972 (Wash. Ct. App. 2012).

Paragraph 65 of the CCAC alleges that "Amazon voluntarily and knowingly misclassified delivery workers as independent contractors for the purpose of avoiding the significant costs and responsibilities associated with the employer/employee relationship" and that, "[i]n misclassifying delivery workers as independent contractors and failing to pay wages and compensation due to them, as well as by committing the numerous other violations detailed in this complaint, Amazon, by and through its officers, directors or managing agents, acted with

malice, oppression or conscious disregard for the statutory or other rights of Plaintiffs, and committed fraud by willfully and wrongly treating Plaintiffs as independent contractors and not employees." *See* ECF No. 238 at ⁋ 65. These allegations are more than sufficient to plead the element of willfulness with respect to Amazon's failure to pay drivers for time spent working after the end of their scheduled block under RCW section 49.52.50.

**D. Plaintiffs' California State Law Claims Are Adequately Pled.**

Defendants take issue with the pleading of a number of Plaintiffs' California state law claims. As described further below, these claims are adequately pled, and Defendant's arguments must be rejected.

**1. Plaintiffs' California Meal & Rest Break Claims are Adequately Pled.**

Employees are entitled to one thirty-minute meal break after a five-hour work period and a second meal break after a ten-hour period. They are also entitled to a ten-minute rest period after every four hours of work. *See Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1028 (2012); *id*. at 1034; Labor Code § 226. 7 ("an employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission ('IWC')."); *see also* Wage Order 9-2001.

When providing meal and rest breaks, an employer has an affirmative obligation to relieve its employees, relinquish control over their activities, and give them a reasonable opportunity to take an uninterrupted break. *Brinker Rest. Corp.*, 53 Cal. 4th at 1040. "When an employer has not authorized and not provided legally-required meal and/or rest breaks, the employer has violated the law[.]" *Bradley v. Networkers Internat., LLC*, 211 Cal. App. 4th 1129, 1151 (2012), *as modified on denial of reh'g* (Jan. 8, 2013) (citing *Brinker*).

At the pleading stage, Plaintiffs are only required to establish that it is plausible that they were denied at least one break. Plausibility can be established through estimates and averages of the number of violations. *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir.

2014), *as amended* (Jan. 26, 2015) ("A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility."); *see also Boon v. Canon Bus. Sols., Inc*., 592 F. App'x 631, 632 (9th Cir. 2015) (allegations identifying tasks for which the plaintiff was not paid and stating that he regularly worked more than eight hours a day and forty hours a week were sufficient to satisfy the pleading requirement). Alternatively, plausibility can be established through allegations that the employer maintained a policy denying breaks. *See Suarez v. Bank of Am. Corp.*, No. 18-CV-01202-MEJ, 2018 WL 3659302, at *8 (N.D. Cal. Aug. 2, 2018) (citing *Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2013 WL 5947010, at *3 (N.D. Cal. Nov. 5, 2013)).

California Plaintiffs allege they worked sufficient hours to entitle them to two meal breaks and a rest break under the applicable law. CCAC at ¶ 134 (Plaintiffs worked in excess of eight hours per day); *id.* at ¶ 139 (Amazon required Plaintiffs to work for periods of ten hours per day). Plaintiffs also allege that they were categorically denied meal breaks on every shift (*id.* at ¶ 63) and that they were denied rest breaks as a result of a policy under which Amazon did not authorize such breaks. (*Id.* at ¶ 62; *id.* at ¶ 141.) Finally, Plaintiffs allege Amazon's policy denying breaks was a product of its misclassification of Plaintiffs as independent contractors and its per-delivery payment scheme. (*Id.* at ¶ 62.) These allegations are sufficient to establish that California Plaintiffs were denied meal and rest breaks.[4]

---

[4] Since Defendant did not offer employees the opportunity to receive a compliant off-duty ten minute rest periods, "the court may not conclude employees voluntarily chose to skip ... breaks." *Alberts v. Aurora Behavioral Health Care,* (2015) 241 Cal. App. 4th 388, 410 ("[i]f an employer fails to provide legally compliant meal or rest breaks, the court may not conclude employees voluntarily chose to skip those breaks."); *accord Brinker Rest. Corp. v. Sup. Ct., supra,* 53 Cal.4th at 1033 ("No issue of waiver ever arises for a rest break that was required by law but never authorized; if a break is not authorized, an employee has no opportunity to decline to take it.").

Amazon argues that Plaintiffs have not affirmatively described at least one specific instance in which breaks were denied. But Plaintiffs have done more; they have alleged that they were denied breaks in *every* instance because they were not subject to a policy that relieved them of all duties. *See Augustus v. ABM Security Services, Inc*., 2 Cal.5th 257, 269 (2016) (holding that employers must permit off-duty rest periods). It is this failure to have an applicable policy providing breaks that results in a violation for every working day. *Brinker Rest. Corp. v. Sup. Ct., supra,* 53 Cal.4th at 1033. Plaintiffs are "not required to allege the non-existence of something, such as meal breaks, with any greater specificity than [they have] done here, because 'there is no more factual content Plaintiff *could* have alleged.'" *Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2013 WL 5947010, at *4 (N.D. Cal. Nov. 5, 2013) (quoting *Yuckming Chiu v. Citrix Sys., Inc.,* No. 11–cv–1121–DOC, 2011 W L 6018278, at *3 (C.D. Cal. Nov. 23, 2011).) Accordingly, Plaintiffs have plausibly alleged violations of California's meal and rest break laws.

**2. California Tips Claim under Cal. Lab. Code § 351 is Adequately Pled.**

Defendants argue that Plaintiffs claim under Cal. Lab. Code § 351 is insufficiently pled because "California Plaintiffs merely allege that 'Defendants have violated California Labor Code § 351 in not remitting to Amazon Flex delivery drivers the total gratuities that are charged to customers.'" ECF No. 246 at 13 (quoting CCAC ⁋ 132). But Plaintiffs incorporate allegations from elsewhere in the Complaint where they go into further detail about how Amazon violated § 351. *See* CCAP at ⁋ 132 ("Amazon's conduct, *as set forth above*…") (emphasis added). Plaintiffs allege that:

> [S]ome orders fulfilled by Amazon delivery drivers were eligible to receive tips from customers. However, those tips, which were made by customers with the intention that the tips be distributed to the drivers, were instead used by Amazon to fund its operations by subsidizing the guaranteed minimum payments that it promised and owed its drivers. As a result of Amazon's practice of using customer tips to defray the cost of the guaranteed minimum payments it owes drivers, part or all of the tips that consumers paid for drivers provided no benefit to the drivers.

*See* CCAP ⁋ 3; *see also id.* at ⁋⁋ 11, 38, 56-61 (alleging in detail the time period at issue and the manner in which Amazon deliberately misled Plaintiffs and class members by utilizing customer tips to subsidize rates guaranteed by Amazon).

The notice requirement of Rule 8 only requires a Plaintiff "allege what role [the] Defendant played in the alleged harm." *Adobe Systems Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015). "Put another way, a plaintiff's allegations must 'provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them,' including 'what conduct is at issue.' " *Id.* (*quoting Villalpando v. Exel Direct Inc.*, 2014 WL 1338297, at *5 (N.D. Cal. March 28, 2014)). The aim of the pleading standard is to ensure that pleadings "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F. 3d 1202, 1216 (9th Cir. 2011). Here, Plaintiffs have more than sufficiently put Amazon on notice as to the role the company has played in the alleged harm; between "late 2016 until approximately August 2019 … Amazon used customer tips to subsidize its minimum payments to drivers. Amazon used these customer tips to offset its contribution to drivers' promised hourly base pay rate without the knowledge of drivers or customers." CCAP, ⁋ 57.[5] Nothing further is required, and Amazon's Motion to dismiss this claim should be overruled.

---

[5] Amazon asserts that Plaintiffs must allege that they were deprived of a particular gratuity during a particular workweek. *See* ECF No. 246 at 13. But the very nature of the allegations against Amazon are such that Plaintiffs would not know which specific tip-eligible deliveries resulted in their tips from customers being utilized to offset Amazon's minimum pay guarantees. *See* CCAC, ⁋ 57 (alleging that "Amazon used these customer tips to offset its contribution to drivers' promised hourly base pay rate *without the knowledge of drivers*…") (emphasis added). Only through discovery will Plaintiffs be able to ascertain how much a customer tipped on a particular delivery and how much of that tip was diverted to meet Amazon's minimum guarantees. *O'Connor v. Uber Techs., Inc.,* No. C-13-3826 EMC, 2013 WL 6354534, at *7-10 (N.D. Cal. Dec. 5, 2013).

**3. California Waiting Time Claim is Adequately Pled.**

Sections 201 and 202 of the California Labor Code require that an employer pay all earned wages to an employee upon discharge. Section 203 imposes penalties for a willful failure to pay wages upon discharge. "Discharge" includes the release of an employee "upon the employee's completion of the particular job assignment or time duration for which he or she was hired." *Smith v. Superior Ct.*, 39 Cal. 4th 77, 90 (2006) (model hired for one-day assignment was entitled to earned wages at the end of the day).

Plaintiffs allege that, upon the end of their employment, Amazon failed to pay them their earned wages. (Complaint at ¶ 150.) Based on the allegations in the complaint relating to nonpayment of wages, it can be inferred that the "earned wages" referred to in this cause of action include, *inter alia*, payment for all hours worked (*id.* at ¶ 131), overtime wages (*id.* at ¶¶ 133-136), expense reimbursements (*id.* at ¶ 129), gratuities (*id.* at ¶ 132), and meal and rest break premiums (*id.* at ¶¶ 137-142).

California Plaintiffs have also alleged that they completed their work for Amazon on *specific dates*. *See* CCAC at ¶ 17 (Plaintiff Wilkins worked until 2020); *id.* at ¶ 22 (Plaintiff Keller worked until February 2017); *id.* at ¶ 30 (Plaintiff Puentes worked until July 31, 2019). The reasonable inference from these allegations, as well as Amazon's concession that it does not require its Flex drivers to continue providing services for a set amount of time, is that Plaintiffs were released from their employment on the specified dates. Accordingly, they were "discharged" within the meaning of the operative statutes.

Finally, Plaintiffs have adequately alleged that Amazon's failure to pay earned wages upon discharge was willful. Allegations of a deliberate policy to avoid paying due wages are sufficient establish a plausible claim for willful conduct. *See Yuckming Chiu v. Citrix Sys., Inc.*, 2011 WL 6018278, at *5 (C.D. Cal. Nov. 23, 2011) (allegations that the defendant "deliberately implemented a companywide policy of not paying overtime to save money" was sufficient to establish willful failure to pay wages). Here, Plaintiffs allege that Amazon's conduct was willful

(CCAC at ¶ 150) and that its failure to pay earned wages was a result of a deliberate policy of misclassification. (*Id.* at ¶ 65.) Specifically, Plaintiffs allege:

> Amazon voluntarily and knowingly misclassified delivery worker as independent contractors for the purpose of avoiding significant costs and responsibilities associated with the employer/employee relationship, including, *inter alia*, the payment of wages for non-productive time, expense reimbursements, […] and other benefits."

*Id.*; *see also id.* at ¶¶ 58-59 ("Amazon deliberately failed to provide drivers with information about how much that had been paid in tips and how much they had been paid by Amazon […]. As a result, Plaintiffs and class members have been deprived of gratuities[.]). This is more than a conclusory allegation and sufficient to plausibly establish willfulness.

**4. California Sick Leave Claim is a Predicate to Plaintiffs' UCL Claim**

Defendants argue that Plaintiffs' claim under Cal. Lab. Code § 246 should be dismissed because no private right of action exists under the statute. *See* ECF No. 246 at 15-16. However, Plaintiffs may plead paid sick leave violations as a predicate violation to their UCL claim as well as the PAGA claim in this case, and as such, Plaintiffs should at a minimum, be granted leave to amend to make clear that Amazon's failure to provide paid sick leave is a basis for these claims.

**5. California Unlawful Deductions Claim is Adequately Pled**

Defendants also argue that there is no private right of action for Plaintiffs' deductions claim under California law, but this assertion is patently incorrect, as the case law is replete with cases finding employers liable for unlawful deductions from wages under Cal. Lab Code § 221 in cases brought against them by their employees or would-be employees. *See, e.g., Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274, 311 (N.D. Cal. 2022) (granting class certification and summary judgment on unlawful deductions claim under Cal. Lab. Code §§ 221, 224 in case involving cleaning franchisees misclassified as independent contractors); *Davis v. Farmers Ins. Exch.,* 245 Cal. App. 4th 1302, 1335, 200 Cal. Rptr. 3d 315, 342 (2016), *as modified on denial of reh'g* (Apr. 21, 2016) (finding insurance agent misclassified as an independent contractor could recover deductions for "operational expenses, such as the computer equipment he used in his

office, promotional mailers and stationery, contributions toward Farmers's lobbying efforts, and advertisements" under Labor Code §§ 221 and 224); *Sciborski v. Pac. Bell Directory*, 205 Cal. App. 4th 1152, 1167-68 (2012) (affirming ruling in plaintiff's favor on claim under Lab. Code, § 221 for unlawful deductions from pay); *Hudgins v. Neiman Marcus Grp., Inc.*, 34 Cal. App. 4th 1109, 1124 (1995), *as modified* (May 25, 1995) (reversing summary judgment in favor of employer and entering summary judgment in favor of under Lab. Code, § 221, which prohibits an employer from collecting or receiving from an employee any part of wages theretofore paid to the employee"); *Clark v. United Emergency Animal Clinic, Inc.*, 123 Fed. Appx. 736, 737 (9th Cir. 2004) (affirming judgment on claim under Labor Code § 221). In sum, the line of cases Defendant cites to the contrary ignore decades of California law that have acknowledged the right of employees in California to bring claims for unlawful deductions from wages.

Moreover, § 218 of the California Labor Code authorizes a private right of action to recover "any wages," and thus, Plaintiffs may sue under section 218 for any violation of section 221. *See Campbell v. Pricewaterhouse Coopers, LLP,* 2007 WL 841694, at *5 (E.D. Cal. Mar.20, 2007) ("Because Section 226.7 falls within the same article (i.e., Sections 200–243) as Section 218, the legislature has provided in unmistakably clear language that a private right of action exists under Section 226.7"); *Valenzuela v. Giumarra Vineyards Corp.,* 614 F.Supp.2d 1089, 1101 (E.D.Cal.2009) ("Plaintiffs may seek recovery for violations of Section 226.7 in a private suit ... Sections 218 and 226.7 are both contained in Division 2, Part 1, Chapter 1, Article 1 of the Labor Code."); *Kamar v. RadioShack Corp.,* 2008 WL 2229166, at *8 (C.D. Cal. May 15, 2008) ("Given that Section 218 simply does not specify what kinds of wages a worker may seek in a lawsuit, and given that this kind of statute must be construed broadly in favor of protecting workers [citation omitted] the phrase can be construed to refer not to a specific

mandated category of wages, but to wages of any kind that had not been paid in accordance with requirements in Article 1 governing the time and manner of payment.”).[6]

Defendant also argues that Plaintiffs have not sufficiently pled their deductions claim because they have not specified a specific instance in which Amazon made a deduction from any of the California Plaintiffs’ wages to make any refund to a customer, as described in Plaintiffs’ Complaint. *See* CCAC, ⁋ 162. But it is sufficient that Plaintiffs have alleged the type of deductions from their wages that are unlawful[7], and Defendant is in a far better position than Plaintiffs to identify particular occasions on which such deductions occurred. As described supra, Plaintiffs have specifically pled allegations that Amazon made it nearly impossible for them to maintain records of their hours and pay, in part by making it impossible to screenshot the App, which is the only place to view their earnings and schedule. *See* CCAC at ⁋ 64. Particularly for those Plaintiffs who no longer have access to the Amazon Flex Application (because they are not presently working for Amazon Flex) they cannot easily reconstruct their hours or pay because they have *absolutely no record of their hours or earnings*. By contrast, Amazon has detailed data in its possession regarding Plaintiffs’ pay and any deductions therefrom. Plaintiffs should not be required to plead specific workweeks where they no longer have access to any documentation that would allow them to determine the workweeks at issue – as a result of Amazon’s own willful and unlawful conduct.

---

[6] Even if the Court were to find there is no private right of action for claims for unlawful deductions under § 221 – which Plaintiffs dispute -- Plaintiffs could still plead violation of these statutory provisions as a predicate for their UCL claim, and as such, should be given the opportunity to amend.

[7] Some federal courts have applied the *Landers* pleading standard to state law minimum wage and overtime claims, but the case was decided in the context of FLSA claims, and there is simply no support for Amazon’s effort to import this pleading standard – which Amazon overreads into a stringent requirement to provide particular times, dates, and details – to every conceivable state law wage-and-hour claim, for which there is no analog under the FLSA.

**6. Insofar as Count 8 and Count 13 of the Complaint are Duplicative, Count 13 may be dismissed.**

Lastly, Defendant argues that Count 13 (pleading violations of Cal. Lab. Code §§ 226 & 1174 for failing to keep employment records) is duplicative of Count 8 (pleading failure to provide accurate pay statements). Insofar as the claims are duplicative, Plaintiffs concede that Count 13 is properly dismissed.

**E. Plaintiffs' New York State Law Claims Are Adequately Pled.**

**1. Plaintiffs Have Adequately Pled Their Claim for Failure to Reimburse Necessary Business Expenses under N.Y. Lab. Law §§ 193, 198-b.**

"Section 193 broadly prohibits employers from taking money from their employees for the employer's own benefit." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 951 (S.D.N.Y. 2013). The statute "provides that no employer 'shall make any charge against wages, ***or*** require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages.'" *Id.* at 952 (citing NYLL § 193(3)(a) (emphasis added)). In other words, the statute prohibits both making unauthorized deductions from wages ***and*** otherwise requiring workers to pay the equivalent of such deductions through "separate transactions" as a means of getting around the prohibition on unauthorized deductions from wages.

Thus, in *Rick's Cabaret*, 967 F. Supp. 2d at 952, the Court found that NYLL § 193(3)(a) allowed adult entertainers to recover fines, fees, and tip outs that they were required to pay even though the payments did ***not*** come out of the dancers' wages. *See also Black v. 7714 Entertainment, Corp.*, 2022 WL 4229260, at *10 (E.D.N.Y. Jul. 29, 2022), *report and recommendation adopted*, 2022 WL 3643969 (E.D.N.Y. Aug. 24, 2022) (permitting recovery of "house fees" that dancer was required to pay, notwithstanding that she was not paid any wages); *Pichardo v. Fifty Five Long Island Corp.*, 2021 WL 4173654, at *5 (E.D.N.Y. Aug. 2, 2021), *report and recommendation adopted,* 2021 WL 4173067 (E.D.N.Y. Sept. 14, 2021) (permitting recovery of payments that exotic dancers made to the defendant from customer-paid

tips rather than from the "wages" paid to them by defendant); *Ortiz v. Arthur T. Mott Real Estate, LLC*, 2016 U.S. Dist. LEXIS 127597, *18-22 (E.D.N.Y. Sept. 15, 2016) (employee alleged valid claim under § 193(3)(a) for purchase of tools for her job duties for which she was not reimbursed); *Koljenovic v. Marx*, 999 F. Supp. 2d 396, 402-04 (E.D.N.Y. Feb. 6, 2014) (employee alleged valid claim under section 193 for side payment that employer compelled to make up for another employee's wrongful conversion of business funds; "The absence of a direct deduction from wages, however, is not dispositive, as New York law also prohibits indirect wage deductions such as compelled side payments.").[8]

In support of its contrary argument, Amazon cites to several cases finding that a defendant's failure to reimburse necessary business expenses is not the equivalent of an unlawful deduction. *See* ECF No. 246 at 18. But as Plaintiffs' cited cases make clear there is a split of authority on this issue, and the cases cited by Defendants take a simplistic view of the issue insofar as they simply assert that "[a] 'deduction' literally is an act of taking away or subtraction." *Lee v. Woodstock Outdoor Co., Inc.*, 2020 WL 5606157, at *10 (S.D.N.Y. Sept. 2, 2020), *report and recommendation adopted,* No. 17-CV-7696 (JPO), 2020 WL 5603693 (S.D.N.Y. Sept. 18, 2020). The same can be said of the failure to reimburse expenses, which operates as a "taking away or subtraction" from pay otherwise promised and owed to the Plaintiffs. Indeed, *Rick's Cabaret* and other cases make clear that the statute was intended to cover far more than a literal deduction from wages and that when the statute was amended and broadened, "[t]he Commissioner's rationale was that the statute should not be interpreted to

---

[8] The decision in *Angello v. Labor Ready, Inc.*, 7 N.Y.3d 579 (Ct. App. NY 2006), clarifies that based on the legislative history of the statute, a 1974 amendment indicates that the "Legislature sought to end the subterfuge of an employer's paying full wages but then seeking payment at another time." Although some courts have characterized this decision as defining the scope of the statute relatively narrowly, those cases misread *Angello*; the import of the case is clearly that claims for unlawful deductions are broader than literal subtraction of wages and should encompass other means of effectively reducing a workers' wages by requiring them to bear costs that should be borne by the employer.

allow employers to do indirectly what they could not do directly." *Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d at 953. The same rationale applies here; Amazon could not deduct the cost of Plaintiffs' mileage and phone expenses from their wages, and it cannot be permitted to do indirectly what it could not do directly. The cases cited by Defendants therefore take an unduly narrow view of New York state law. This Court should hold that under Rick's Cabaret and the other cases cited by Plaintiffs above, Plaintiffs have pled a plausible claim for relief under § 193(3)(a).[9]

**2. Plaintiffs Have Adequately Pled Their Claim for Unremitted Tips Under N.Y. Lab. Law §§ 193, 196-d.**

Defendants also allege that Plaintiffs have not adequately pled their tips claim under New York state law, but Amazon's arguments are erroneous and must be rejected.

First, Defendants cite *In re Starbucks Emp. Gratuity Litig.*, 264 F.R.D. 67, 73 (S.D.N.Y. 2009), for the proposition that Section 193 is "wholly inapplicable" to a failure-to-remit-tips claim. But the *Starbucks* decision is distinguishable insofar as it concerned the employer's practice of including shift supervisors in a tip pool; the case did ***not*** involve a situation like this one where a defendant improperly utilized customer tips to meet its own obligation to pay contractually agreed-upon wages. Here, Amazon effectively did take deductions from Plaintiffs' wages because it did not pay them their agreed-upon base pay and instead diverted customer tips to meet that contractual obligation, thereby taking unauthorized deductions from their wages (and tips).

---

[9] Alternatively, Plaintiffs pled a claim under N.Y. Lab. Law § 198. Defendant alleges there is no private right of action under N.Y. Lab. Law § 198. ECF No. 246 at 19. In light of recent authority, *Konkur v. Utica Acad. of Sci. Charter Sch.*, 38 N.Y.3d 38 (2022), Plaintiffs agree there is no private right of action under § 198-b. Though Plaintiffs note that courts continue to disagree regarding the availability of a private right of action under proximate statutory provisions, such as § 198(1-a) or § 191. See, e.g., *Georgiou v. Harmon Stores, Inc.*, 2023 WL 112805 (EDNY Jan. 5, 2023).

Furthermore, *In re Starbucks Emp. Gratuity Litig.*, predates *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 952 (S.D.N.Y. 2013), which held that where the Plaintiffs were effectively required to forfeit part of their customer tips to the defendant, these payments constituted an actionable deduction under § 193(3). Specifically, the Court noted that the statue "prohibits: (1) making direct 'deduction *from the wages* of an employee,' *id.* at § 193(1) (emphasis added); (2) making 'any charge *against wages*,' *id.* at § 193(3)(a) (emphasis added); and (3) requiring "an employee to make *any payment* by *separate transaction*' unless that payment is a permitted deduction under § 193(1), *id.* at § 193(3)(a) (emphasis added)." *Id.* at 952–53. "[T]he text of § 193(3)(a) does not require that the objectionable 'separate transactions' come from wages paid to the employees by the employer", such that the plaintiffs could recover for deductions made from their tips. *Id.*; *see also Pichardo*, 2021 WL 4173654, at *5 (permitting recovery of payments that exotic dancers made to the defendant from customer-paid tips rather than from the "wages" paid to them by defendant). The same applies here where Amazon effectively took deductions from Plaintiffs' tips that they were paid by customers. In sum, the case law is clear that deductions made from a worker's tips – like those at issue here – are recoverable under Section 193(3)(a).

Defendants also allege that Plaintiffs have failed to state a claim under § 196-d insofar as "Plaintiffs [do not] allege any [specific] workweek in which Amazon demanded, accepted or retained any tip intended for Davarci." ECF No. 246 at 20. But as set forth *supra*, n. 3, the very nature of the allegations against Amazon are such that Plaintiffs would ***not*** know which specific tip-eligible deliveries resulted in their tips from customers being utilized to offset Amazon's minimum pay guarantees. *See* CCAC, ⁋ 57 (alleging that "Amazon used these customer tips to offset its contribution to drivers' promised hourly base pay rate *without the knowledge of drivers…*") (emphasis added). Only through discovery will Plaintiffs be able to ascertain how much a customer tipped on a particular delivery and how much of that tip was diverted to meet Amazon's minimum guarantees with respect to any particular delivery. Where Plaintiffs have

alleged a policy of misappropriating tips, courts have not required Plaintiffs to plead a specific instance, as Defendant falsely claims. *See, e.g., Fowler v. Scores Holding Co., Inc.*, 677 F. Supp. 2d 673, 684 (S.D.N.Y. Dec. 28, 2009) (plaintiff made facially plausible claim for relief under sections 193 and 196-d by alleging that her managers took a percentage of exotic dancers' gratuities for themselves and required plaintiff to share part of her gratuities with other employees at nightclub); *Reyes v. Altamarea Group, LLC*, 2011 WL 280799 (S.D.N.Y. Jan. 18, 2011) (plaintiffs' allegations that employer violated section 196-d by withholding tips and distributing a portion of tips to managers and the head sommelier were adequate to state a claim under the statute); *Lomeli v. Falkirk Management Corp.*, 179 A.D.3d 660, 116 N.Y.S.3d 332 (App. Div. 2d Dep't 2020) ("[T]he plaintiff's allegation as to the service charges constituting gratuities that were not paid to the plaintiff and other waitstaff…if true, were sufficient to state a cause of action" for violation of section 196-d.). In sum, Plaintiffs have clearly pled sufficient allegations to survive a Motion to Dismiss on their New York state law claims.

**F. Plaintiffs' New Jersey Wage Payment Law Claim Is Not Subject to Dismissal.**

In its Motion to Dismiss, Defendants argue that Plaintiffs' claim under the New Jersey Wage Payment Law ("NJWPL") is improper because the statute governs deductions from wages, and requiring Amazon Flex drivers to pay for the cost of their own vehicle and phone-related expenses does not qualify as a deduction. *See* ECF No. 246 at 21. But Defendants' argument ignores more recent authority recognizing that such "indirect deductions" can indeed be recoverable under the NJWPL. In *McMillan v. Pepperidge Farm, Inc.*, 2022 WL 2619854, at *4 (D.N.J. July 7, 2022), a New Jersey federal court made clear that the Plaintiffs may indeed recover the deductions they are pursuing in this case, which require them to pay for the costs of their own vehicles and smartphones, necessary to run the Amazon Flex application and to make deliveries. In *McMillan*, as in this case, the defendant moved to dismiss drivers' NJWPL claim, in which the drivers sought to recover for work-related expenses for "the cost associated with vehicles, the cost associated with a handheld device and a printer that are required for Plaintiffs'

employment, expenses associated with inventory irregularities and cost of required business liability insurance." The *McMillan* court held that these alleged expenses "'cut into' [the drivers' paychecks] because Plaintiffs were required to pay for these expenses," and therefore "allowing Plaintiffs' claim to move forward is consistent with the policy of the NJWPL . . . which is 'to protect employees' wages and to guarantee receipt of the fruits of their labor." *Id.* (internal citations omitted). The *McMillan* case is a recent case – more recent than any of the authorities cited by Defendants – and is ***directly on-point*** insofar as the Plaintiffs there were drivers, just like the Plaintiffs here, and they were arguing that the necessity of paying the very same expenses for the costs of their vehicles and hand-held devices operated as deductions from their wages. As such, this claim should be permitted to go forward, as it was in *McMillan*.

**G. Plaintiffs' Nationwide Common Law Claims Are Not Subject to Dismissal.**

In its Motion to Dismiss, Defendants argue that Plaintiffs' common law claims for unjust enrichment and intentional interference with advantageous relations, stemming from its treatment of Plaintiffs' tips from customers, must be dismissed because (1) Plaintiffs have not alleged the applicable states' laws; and (2) Plaintiffs do not have standing to pursue these claims on behalf of a nationwide class because the Complaint does not include Plaintiffs from all fifty states. ECF No. 246 at 22-23. Defendants are wrong in both respects.

First, numerous courts have allowed the certification of nationwide classes alleging breaches of common law duties, including unjust enrichment, provided that the claims have similar elements across the various jurisdictions. *See, e.g., Bland v. PNC Bank, NA.*, 2016 WL 10520047 (W.D. Pa. Dec. 16, 2016) (certified a nationwide class of mortgage loan officers asserting breach of contract and unjust enrichment claims); *Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 20 (D. Mass. 2010) (finding it manageable to certify a nationwide class on both unjust enrichment and tortious interference theories). For instance, these courts have recognized that an unjust enrichment claim exists in all 50 states, and the elements of an unjust enrichment claim are substantially similar, with minimal variation by state. *In re Pennsylvania Baycol Third-*

*Party Payor Litig.*, 2005 WL 852135, *6 (C.C.P. Phila. Cty. Apr. 4, 2005) ("All state laws commonly find unjust enrichment when a defendant wrongfully retains the money received from a sale when the defendant thereafter advises the consumer not to use the product because it may be unsafe. Essentially, the law everywhere requires proof that the defendant has kept what a plaintiff paid for a product under circumstances in which retention is inequitable."). Because the laws of the various states are largely the same, and any minor differences in the elements (such as certain states that require proof of an additional element) can be easily managed by the Court, Amazon's contrary arguments should be rejected, and the claim should be permitted to proceed.

Specifically, in all jurisdictions at issue, a cause of action for unjust enrichment exists when the defendant is benefited by an action of the plaintiff, and the defendant's retention of that benefit would be unjust in the eyes of the court under wrongful or inequitable circumstances.[10] In some jurisdictions, defendant's knowledge of the benefit is explicitly required.[11] In Alabama and Louisiana, the plaintiff must also plead an unconscionable or illegal act on the part of the defendant.[12] It is therefore clear that this Court could create manageable subgroupings of the various states' unjust enrichment claims, and a decision not to strike this class claim would be in keeping with the decisions of numerous other courts. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529-30 (3d Cir. 2004) ("Although there may be situations where variations

---

[10] *See* **Exhibit A**, attached hereto.

[11] These states are Alaska, Arkansas, Colorado, Georgia, Idaho, Kansas, Kentucky, Maine, Maryland, Minnesota, Missouri, Montana, Nevada, North Carolina, New Mexico, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

[12] *See e,g., Welch v. Montgomery Eye Physicians, P.C.*, 891 So.2d 837, 843 (Ala. 2004) ("One is unjustly enriched if his retention of a benefit would be unjust…Retention of a benefit is unjust if (1) the donor of the benefit ... acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship.").

in state laws are so significant so as to defeat commonality and predominance even in a settlement class certification, this is not such a case.”); *In re Prudential*, 148 F.3d at 315; *see also Overka*, 265 F.R.D. at 20 (finding that it would be manageable to certify a nationwide unjust enrichment class by charging the jury with the “base claim of unjust enrichment, which can be stated as: enrichment of the defendant at the expense of the plaintiff under such circumstances that non-payment will be unjust,” and then asking the jury special questions specific only to certain states).[13]

Second, Amazon’s argument that Plaintiffs lack standing to pursue these common law claims because the Complaint does not include plaintiffs from all fifty states is incorrect and most importantly, premature at the pleading stage. Courts have routinely held that the analysis that Defendant presses for here is premature at the pleading stage and should be addressed at class certification. *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (citing cases from other Circuits and noting that Plaintiffs’ approach “is the one adopted by ‘most’ other federal courts to have addressed the issue”); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1159- 60 (D. Minn. 2014) (“[A]s Target undoubtedly knows, there are consumers in [the unrepresented states] whose personal financial information was stolen in the 2013 breach. To force Plaintiffs’ attorneys to search out those individuals at this stage serves no useful purpose.”); *Chen v. Target Corporation* (D. Minn., May 19, 2022, No. CV 21-1247) 2022 WL

---

[13] The same is true with respect to Plaintiffs’ claim for intentional interference with advantageous relations. For example, the Court in *Overka* likewise certified a nationwide tortious interference claim in a case in which plaintiffs alleged that their gratuities had been taken from them by the defendant. *Id.* at 21-23. The Court noted that “the Restatement’s definition of tortious interference, identif[ies] as its core the following four elements: (1) the existence of a prospective business relationship; (2) the defendant's knowledge of the prospective relationship; (3) the defendant's intentional and improper interference causing breach of the relationship; and (4) damage to the plaintiff.” *Id.* at 21-22 (citing Restatement (Second) Torts, § 766B (1979)). The court went through each of the proposed elements of the claim and concluded that any minor differences across the elements of the claim were manageable and could “be addressed through special questions to the jury.” *Id.* at 23. The same is true here.

1597417, at *7 ("At this stage in the proceedings, the Court declines to dismiss Plaintiffs' nationwide claims for unjust enrichment… and breach of implied contract and negligence for lack of standing."); *Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339, 1350-51 (E.D. Mo. 2020) (denying motion to dismiss and deferring fate of nationwide class allegations pleaded under Missouri law, including unjust enrichment claim, until after discovery); *In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 2017 WL 3863866, at *6 (W.D. Mo. Aug. 3, 2017) (finding that plaintiffs had plausibly alleged nationwide unjust enrichment and breach of warranty claims under Tennessee law and deferring choice of law issues).

In sum, Plaintiffs have plausibly alleged that their common law claims can be adjudicated on a class-wide basis and nothing more is required at the pleading stage. In any case, Plaintiffs have also demonstrated the manageability of a nationwide class on their unjust enrichment and tortious interference claims due to the minimal and classifiable variations in state laws; but most importantly, that issue can be addressed in more depth at the class certification stage. The Court should deny Amazon's motion to dismiss and/or strike these claims.

## III. CONCLUSION

For all these reasons, Amazon's Motion to Strike should be denied in its entirety. At a minimum, Plaintiffs should be granted leave to amend in the event the Court believes any further detail or allegations are required.

Respectfully submitted,

_s/ Adelaide Pagano____________________
Shannon Liss-Riordan (*Pro Hac Vice*)
Harold L. Lichten (*Pro Hac Vice*)
Adelaide Pagano (*Pro Hac Vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Fax: (617) 994-5801
Email: sliss@llrlaw.com
Email: hlichten@llrlaw.com
Email: apagano@llrlaw.com

*Attorneys for Rittmann Plaintiffs*

Michael C. Subit, WSBA No. 29189
FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1729
Telephone: (206) 682-6711
Fax: (206) 682-0401
Email: msubit@frankfreed.com

*s/ Elizabeth Hanley*____________
Elizabeth Ann Hanley
Schroeter Goldmark & Bender
401 Union Street, Suite 3400
Seattle, WA 98101
Telephone: 206-622-8000
Email: hanley@sgb-law.com

Shounak S. Dharap (Pro Hac Vice)
The Arns Law Firm
515 Folsom St. 3rd Floor
San Francisco, CA 94105
Telephone: (415) 495-7800
Email: ssd@arnslaw.com

*Attorneys for Keller Plaintiffs*

*s/ Elizabeth Hanley*___________
Elizabeth Ann Hanley
Schroeter Goldmark & Bender
401 Union Street, Suite 3400
Seattle, WA 98101
Telephone: 206-622-8000
Email: hanley@sgb-law.com

Mark Burton (*Pro Hac Vice*)
HERSH & HERSH, a Professional Corp.
1388 Sutter St., Suite 1210
San Francisco, CA 94109
Phone: (415) 441-5544 ext. 308
Email:mburton@hershlaw.com

*Attorneys for Plaintiff Adriana Ponce*

*s/ Beth E. Terrell*____________
Beth E. Terrell
Terrell Marshall Law Group PLLC
936 N. 34th Street, Suite 200
Seattle, WA 98103
Telephone: 206-816-6603
Email: bterrell@terrellmarshall.com

Steven M. Tindall (Pro Hac Vice)
Gibbs Law Group LLP
1111 Broadway Suite 2100
Oakland, CA 94607
Telephone: 510-350-9700
Email: smt@classlawgroup.com

*Attorneys for Hoyt Plaintiffs*

*s/ Daniel F. Johnson*____________
Daniel Foster Johnson
Breskin Johnson & Townsend PLLC
1000 Second Ave. Suite 3670
Seattle, WA 98104
Telephone: 206-652-8660
Email: djohnson@bjtlegal.com

Jim Treglio
Potter Handy LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: 619-933-3598
Email: jimt@potterhandy.com

*Attorneys for Diaz Plaintiffs*

*s/ Daniel F. Johnson*____________

Daniel Foster Johnson
Breskin Johnson & Townsend PLLC
1000 Second Ave. Suite 3670
Seattle, WA 98104
Telephone: 206-652-8660
Email: djohnson@bjtlegal.com

Farzad Rastegar (Pro Hac Vice)
Douglas Perlman (Pro Hac Vice)
Rastegar Law Group APC
22760 Hawthorne Blvd. Suite 200
Torrance, CA 90505
Telephone: 310-961-9600
Email:

*Attorneys for Ronquillo Plaintiffs*

Ramin R. Younessi
Law Offices of Ramin Younessi APLC
3435 Wilshire Boulevard, Suite 2200
Los Angeles, CA 90010
Telephone: 213-480-6200
Email: ryounessi@younessilaw.com

*Attorneys for Puentes Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be electronically filed the foregoing OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE PORTIONS OF PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the registered attorneys of record.

DATED: January 23, 2023

*/s/ Adelaide Pagano*