HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BERNADEAN RITTMANN, *et al.*,

Plaintiffs,

v.

AMAZON.COM, INC., and AMAZON LOGISTICS, INC.,

Defendants.

Consolidated Action
Case No. 2:16-cv-01554-JCC

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR NOTICE TO BE ISSUED TO SIMILARLY SITUATED EMPLOYEES PURSUANT TO 29 U.S.C. § 216(b)**

NOTE ON MOTION CALENDAR:
November 1, 2024

**ORAL ARGUMENT REQUESTED**



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## TABLE OF CONTENTS


**Page**

I. Introduction ........ 1
II. Summary of Relevant Facts ........ 3
  A. The Amazon Flex Program ........ 3
  B. DPs Have Widely Varying Experiences Affecting Liability And Classification ........ 4
  C. All DPs Have Had The Opportunity To Pursue Their Claims, Including Through Arbitration, And Tens Of Thousands Are Doing So ........ 7
III. Argument ........ 7
  A. The Applicable "Similarly Situated" Standard Is Not A Rubber Stamp. ........ 7
  B. The Putative Collective Action Members Are Not Similarly Situated. ........ 10
    1. Plaintiffs Have Not Shown Any Common Unlawful Policy Or Practice. ........ 10
      a. Plaintiffs' handful of declarations do not come close to what is needed to carry their burden. ........ 11
      b. A review of the record proves DPs are not subject to the same unlawful policy. ........ 14
    2. Plaintiffs Also Are Not "Similarly Situated" To Absent DPs With Respect To Issues Material To Plaintiffs' Misclassification Claims. ........ 17
    3. Plaintiffs Are Not Similarly Situated To The Vast Majority Of Delivery Partners Who Must Arbitrate—Or Are Arbitrating—Their Claims ........ 22
  C. Even If The Court Allows Some Notice, The Court Should Deny Plaintiffs' Requested Notice And Order The Parties To Meet And Confer. ........ 25
  D. Plaintiffs Do Not Satisfy Their High Burden To Extend The FLSA's Limitation Period To More Than A Decade Based On Equitable Tolling. ........ 28
    1. Amazon Did Not Engage In Wrongful Conduct And No Extraordinary Circumstances Made It Impossible For Opt-Ins To Timely File. ........ 29
    2. Equitable Tolling Is Premature At This Stage. ........ 31
IV. Conclusion ........ 31




MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adami v. Cardo Windows, Inc.*,
299 F.R.D. 68 (D.N.J. 2014) ....................23

*Adedapoidle-Tyehimba v. Crunch, LLC*,
2013 WL 4082137 (N.D. Cal. 2013) ....................28

*Amendola v. Bristol-Myers Squibb Co.*,
558 F. Supp. 2d 459 (S.D.N.Y. 2008) ....................9

*Andel v. Patterson-UTI Drilling Co.*,
280 F.R.D. 287 (S.D. Tex. 2012) ....................18

*Arredondo v. Delano Farms Co.*,
922 F. Supp. 2d 1071 (E.D. Cal. 2013) ....................22

*Avilez v. Pinkerton Gov't Servs., Inc.*,
596 F. App'x 579 (9th Cir. 2015) ....................23

*Bamgbose v. Delta-T Grp., Inc.*,
684 F. Supp. 2d 660 (E.D. Pa. 2010) ....................17, 22

*Bertone v. HSBC USA, Inc.*,
2019 WL 13144576 (E.D.N.Y. 2019) ....................12

*Bigger v. Facebook, Inc.*,
947 F.3d 1043 (7th Cir. 2020) ....................23

*Bills v. Clark*,
628 F.3d 1092 (9th Cir. 2010) ....................31

*Bobbitt v. Broadband Interactive, Inc.*,
2012 WL 2872846 (M.D. Fla. 2012) ....................30



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

*Bollinger v. Residential Capital, LLC*,
761 F. Supp. 2d 1114 (W.D. Wash. 2011)....26

*Bonilla v. Las Vegas Cigar Co.*,
61 F. Supp. 2d 1129 (D. Nev. 1999)....30

*Bouthner v. Cleveland Constr., Inc.*,
2012 WL 738578 (D. Md. 2012)....18

*Boutros v. JTC Painting & Decorating Corp.*,
2013 WL 3110943 (S.D.N.Y. 2013)....11

*Bowerman v. Field Asset Servs., Inc.*,
60 F.4th 459 (9th Cir. 2023)....10

*Brant v. Schneider Nat'l Inc.*,
2023 WL 4042016 (E.D. Wis. 2023)....18

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018)....8

*Carter v. XPO Last Mile, Inc.*,
2016 WL 5680464 (N.D. Cal. 2016)....13

*Channel PES Acquisition Co. v. Heritage-Crystal Clean, Inc.*,
2024 WL 3252166 (Del. Super. Ct. 2024)....24

*Christianson v. NewPark Drilling Fluids, LLC*,
2015 WL 1268259 (S.D. Tex. 2015)....17

*Clark v. A&L Homecare & Training Center, LLC*,
68 F.4th 1003 (6th Cir. 2023)....8, 9, 25

*Clay v. Huntington Ingalls Inc.*,
2011 WL 13205917 (E.D. La. 2011)....15

*Colson v. Avnet, Inc.*,
687 F. Supp. 2d 914 (D. Ariz. 2010)....9, 10, 13



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

*CompareBolding v. Banner Bank*,
2017 WL 6406136 (W.D. Wash. 2017) ........ 9, 11

*Cranney v. Carriage Servs., Inc.*,
559 F. Supp. 2d 1106 (D. Nev. 2008) ........ 29

*Cruz v. Ham N Eggery Inc.*,
2016 WL 4186967 (E.D.N.Y. 2016) ........ 12

*Curtis v. Scholarship Storage Inc.*,
2015 WL 1241365 (D. Me. 2015) ........ 18

*Daughtery v. Encana Oil & Gas (USA), Inc.*,
838 F. Supp. 2d 1137 (D. Colo. 2011) ........ 23

*Davis III v. Westgate Planet Hhollywood Las Vegas, LLC*,
2009 WL 102735 (D. Nev. 2009) ........ 14

*Delano v. Mastec, Inc.*,
2011 WL 2173864 (M.D. Fla. 2011) ........ 23

*Donovan v. Sureway Cleaners*,
656 F.2d 1368 (9th Cir. 1981) ........ 20

*Douglas v. Xerox Bus. Servs. LLC*,
2014 WL 3396112 (W.D. Wash. 2014) ........ 10

*Duckett v. Rentokil N. Am., Inc.*,
2019 WL 13201977 (E.D. Wash. 2019) ........ 25

*Edmonds v. Amazon.com, Inc.*,
2020 WL 5993908 (W.D. Wash. 2020) ........ 8, 9, 10

*Fichtner v. Am. Fam. Mut. Ins. Co.*,
2004 WL 3106753 (D. Or. 2004) ........ 30

*Fischer v. Kmart Corp.*,
2014 WL 3817368 (D.N.J. 2014) ........ 23



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

*Geiger v. Charter Commc'ns, Inc.*,
2019 WL 8105374 (C.D. Cal. 2019)....................23

*Gonzalez v. Diamond Resorts Int'l Marketing, Inc.*,
2021 WL 6123538 (D. Nev. 2021)....................25

*Guan Ming Lin v. Benihana Nat'l Corp.*,
755 F. Supp. 2d 504 (S.D.N.Y. 2010)....................12

*Guillen v. Marshalls of MA, Inc.*,
841 F. Supp. 2d 797 (S.D.N.Y. 2012)....................13

*Haider v. Uber Techs, Inc.*,
No. 16-04098, Dkt. 98 (S.D.N.Y. 2018)....................17

*Harper v. Amazon.com Servs., Inc.*,
12 F.4th 287 (3d Cir. 2021)....................24

*Harper v. Amazon.com Servs. Inc.*,
2022 WL 17751465 (D.N.J. 2022)....................24

*Hoffman-LaRoche, Inc. v. Sperling*,
493 U.S. 165 (1989)....................7, 22, 26

*Holmes v. Quest Diagnostics, Inc.*,
2012 WL 12876965 (S.D. Fla. 2012)....................11

*Ide v. Neighborhood Rest. Partners, LLC*,
32 F. Supp. 3d 1285 (N.D. Ga. 2014), *aff'd*, 667 F. App'x 746 (11th Cir. 2016)....................9

*Jibowu v. Target Corp.*,
492 F. Supp. 3d 87 (E.D.N.Y. 2020)....................9

*In re JP Morgan Chase & Co.*,
916 F.3d 494 (5th Cir. 2019)....................23



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

*Korenblum v. Citigroup, Inc.*,
195 F. Supp. 3d 475 (S.D.N.Y. 2016) ........ 12

*LaFleur v. Dollar Tree Stores, Inc.*,
2012 WL 4739534 (E.D. Va. 2012) ........ 30

*Laverenz v. Pioneer Metal Finishing, LLC*,
2024 WL 3887110 (E.D. Wis. 2024) ........ 8, 9

*Lewis v. Wells Fargo & Co.*,
669 F. Supp. 2d 1124 (N.D. Cal. 2009) ........ 28

*Litty v. Merrill Lynch & Co.*,
2014 WL 5904907 (C.D. Cal. 2014) ........ 9

*Long v. CPI Sec. Sys., Inc.*,
292 F.R.D. 296 (W.D.N.C. 2013) ........ 12

*Lopez v. PT Noodles Holdings Inc.*,
2021 WL 2576912 (D. Ariz. 2021) ........ 26

*Mathews v. USA Today Sports Media Grp., LLC*,
2023 WL 3676795 (E.D. Va. 2023) ........ 8

*McColley v. Casey's Gen. Stores, Inc.*,
627 F. Supp. 3d 972 (N.D. Ind. 2022) ........ 29

*Melikyan v. Amazon.com, Inc.*,
2023 WL 4505065 (C.D. Cal. 2023) ........ 24

*Moba v. Total Transp. Servs. Inc.*,
16 F. Supp. 3d 1257 (W.D. Wash. 2014) ........ 18, 22

*Morangelli v. Chemed Corp.*,
2010 WL 11622886 (E.D.N.Y. 2010) ........ 23

*Morden v. T-Mobile USA, Inc.*,
2006 WL 2620320 (W.D. Wash. 2006) ........ 26



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

*Nghiem v. NEC Elec., Inc.*,
25 F.3d 1437 (9th Cir. 1994) ....................25

*Olukayode v. UnitedHealth Grp.*,
2019 WL 4898466 (D. Minn. 2019) ....................13

*Ortiz-Patino v. Kamcor, Inc.*,
2018 WL 2170324 (D. Mass. 2018) ....................13

*Palacios v. Boehringer Ingelheim Pharms., Inc.*,
2011 WL 6794438 (S.D. Fla. 2011) ....................13

*Parker v. Rowland Express, Inc.*,
492 F. Supp. 2d 1159 (D. Minn. 2007) ....................11

*Peterson v. Alaska Commc'ns Sys. Grp., Inc.*,
2014 WL 12696527 (D. Alaska 2014) ....................31

*Pfaahler v. Consultants for Architects, Inc.*,
2000 WL 198888 (N.D. Ill. 2000) ....................17, 22

*Phillips v. Cty. of Riverside*,
2022 WL 2162822 (C.D. Cal. 2022) ....................31

*Rhoades v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
961 F.2d 217, 1992 WL 84188 (9th Cir. 1992) ....................25

*Robinson v. Empire Equity Grp.*,
2009 WL 4018560 (D. Md. 2009) ....................28

*Rudd v. T.L. Cannon Corp.*,
2011 WL 831446 (S.D.N.Y. 2011) ....................14

*Russell v. Wells Fargo & Co.*,
2008 WL 4104212 (N.D. Cal. 2008) ....................27, 28

*Salazar v. Driver Provider Phoenix LLC*,
2021 WL 1394115 (D. Ariz. 2021) ....................26



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

*Sandoz v. Cingular Wireless, LLC*,
700 F. App'x 317 (5th Cir. 2017) ....................29

*Schiller v. Rite of Passage, Inc.*,
2014 WL 644565 (D. Ariz. 2014)....................26

*Scholar v. Pac. Bell*,
963 F.2d 264 (9th Cir. 1992) ....................28

*Scott v. NOW Courier, Inc.*,
2012 WL 1072751 (S.D. Ind. 2012) ....................17

*Scovil v. FedEx Ground Package System, Inc.*,
811 F. Supp. 2d 516 (D. Me. 2011) ....................13, 17

*Shaia v. Harvest Mgmt. Sub LLC*,
306 F.R.D. 268 (N.D. Cal. 2015)....................27

*Sherman v. CLP Res., Inc.*,
2015 WL 13542759 (C.D. Cal. 2015)....................23

*Silverman v. SmithKline Beecham Corp.*,
2007 WL 6344674 (C.D. Cal. 2007)....................8, 11

*Slaughter v. Caidan Mgmt. Co.*,
317 F. Supp. 3d 981 (N.D. Ill. 2018) ....................27

*Sloane v. Gulf Interstate Field Servs., Inc.*,
2017 WL 1105236 (M.D. Pa. 2017) ....................9

*Smith v. Cable Wiring Specialist, Inc.*,
2014 WL 4795160 (M.D. Fla. 2014) ....................26

*Spellman v. Am. Eagle Exp., Inc.*,
2013 WL 1010444 (E.D. Pa. 2013) ....................20

*Stickle v. SCI W. Mkt. Support Ctr., L.P.*,
2009 WL 3241790 (D. Ariz. 2009)....................27



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

*Stoll v. Runyon*,
165 F.3d 1238 (9th Cir. 1999) ....................29

*Swales v. KLLM Transp. Servs., LLC*,
985 F.3d 430 (5th Cir. 2021) ....................8

*Sylvester v. Wintrust Fin. Corp.*,
2014 WL 10416989 (N.D. Ill. 2014) ....................30

*Thornton v. Mainline Commc'ns, LLC*,
2015 WL 3938652 (E.D. Mo. 2015)....................13

*Trinh v. JP Morgan Chase & Co.*,
2008 WL 1860161 (S.D. Cal. 2008)....................9, 10, 11

*Veliz v. Cintas Corp.*,
2007 WL 841776 (N.D. Cal. 2007) ....................30

*West v. Border Foods, Inc.*,
2006 WL 1892527 (D. Minn. 2006)....................23

*Woods v. Vector Mktng. Corp.*,
2015 WL 1198593 (N.D. Cal. 2015) ....................23

*Zeman v. Twitter, Inc.*,
2024 WL 4032051 (N.D. Cal. 2024) ....................31

**Statutes**

29 U.S.C. § 216(b) ....................2, 7, 8, 22

29 U.S.C. § 251(a) ....................7

29 U.S.C. § 255(a) ....................28

Fair Labor Standards Act ("FLSA")....................*passim*



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## I. INTRODUCTION

Plaintiffs seek to conditionally certify a sprawling, nationwide collective action under the Fair Labor Standards Act ("FLSA") comprising over one million Delivery Partners ("DPs"). Yet as Amazon explains in its pending Motion to Enforce the Court's July 30, 2024 Order (Dkt. 339), and Plaintiffs do not meaningfully dispute in their response (Dkt. 346), Plaintiffs have hurriedly filed this motion before the Court could order them to produce additional discovery. They do so despite this Court recognizing "Defendants' need for some discovery prior to conditional certification." Order Granting Motion to Compel Discovery (Dkt. 326) at 2.

Their obstructionism aside, Plaintiffs still fail to carry their own burden. Instead, they insist on a "low bar" for certification—as though the Court were a rubber stamp—and submit just six boilerplate, conclusory declarations, which they recycle from their original Motion eight years ago (Dkt. 20). Of the six declarants relied on by Plaintiffs, three should be struck because two have refused to participate in discovery despite the Court's order, Dkt. 339 at 4-6, and a third is former Plaintiff Rittmann, whose claims were dismissed because they remained facially inadequate even after the Court provided an opportunity to replead. Dkt. 338 at 9-11. Moreover, the declarations are all from October 2016, address the experience of just a tiny fraction of DPs, and ignore material changes over the last eight years that change DPs' experiences in the ensuing years. The boilerplate declarations also identify no workweek in which any declarant was paid less than minimum wage—let alone how they plan to prove hours worked or other facts necessary to establish common nationwide liability.

Differences among DPs, which Plaintiffs gloss over, are important because individual circumstances bear on whether any DP was ever paid less than the federal minimum wage, $7.25/hour, ever worked more than 40 hours in a workweek, and was ever not paid statutory overtime. Alleged misclassification, by itself, is not enough to make any DP similarly situated. A common claim to liability is required—and Plaintiffs don't even assert that's possible. Moreover, misclassification depends on the fact-specific, multi-factor FLSA economic realities test (not even



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

mentioned by Plaintiffs) which looks at individual circumstances. Plaintiffs' fail to carry their evidentiary burden to conditionally certify such a sweeping, nationwide class.

The accompanying expert report of Robert Crandall confirms that there is no representative evidence applicable to all (or even some) putative collective members. The report shows that, like Rittmann and others whose FLSA claims this Court dismissed, many DPs nationwide to whom Plaintiffs want to send notice will have no claim at all. The vast majority of DPs never approached the overtime threshold of 40 hours per week. And many, if not most, DPs disengaged from performing services from Amazon during their accepted Amazon Flex blocks (whether for breaks, personal errands, or other gig work), so there is no way to tell their hours worked from timestamped delivery data without obtaining evidence from each DP.

The discovery Amazon has sought and Plaintiffs resist would have helped highlight these facts. But other DPs have submitted declarations on many differences going to liability and the FLSA's economic realities test—more than enough to see that DPs are not similarly situated and their claims will need to be adjudicated individually. Section 216(b) certification would lead to massive inefficiencies and confusion by sending notice to more than one million DPs who almost certainly have no viable claims and would not promote judicial economy.

Moreover, this Court should first resolve the threshold issue of whether a significant number of DPs must arbitrate their claims. All DPs who contracted with Amazon in 2019 and beyond have signed arbitration agreements with Delaware choice of law provisions, there have been two relevant Supreme Court decisions since the Ninth Circuit's decision in this case, and other federal courts have enforced the arbitration provision under different state laws.[1] Further, over 32,000 DPs have filed for arbitration, including several Opt-Ins. It would be confusing and a waste of judicial resources to send notice to participate in this action to over one million DPs,

[1] Amazon's current deadline to move to compel arbitration is November 19, 2024. Dkts. 298, 338.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

many of whom are ineligible to participate due to valid arbitration agreements or already initiated arbitration proceedings.

And as explained below, the FLSA typically has a two-year statute of limitations, and most of the putative collective spanning 10 years is time-barred from bringing these claims. Plaintiffs' argument for equitable tolling fail to meet the requirements for what is considered "extraordinary" relief. The existence of the arbitration agreements that all DPs accepted highlight this point. No Plaintiff or putative Opt-In has been hampered in bringing their claims. As this Court explained in granting a stay: "[I]f they seek immediate redress, Plaintiffs have another way to do so: arbitration." Dkt. 133 at 2. Ten of thousands of them have done so.

Finally, Plaintiffs' sweeping demands in the form and distribution of notice—like posting at Amazon facilities where DPs never visit, sending through text and email, giving contact information to Plaintiffs' counsel instead of a neutral claims administrator, and many others—are improper and should be rejected.

## II. SUMMARY OF RELEVANT FACTS

### A. The Amazon Flex Program

Amazon maintains "fulfillment" and "logistics" operations to ensure its customers receive their orders. For certain physical goods purchased by Amazon customers, Order "fulfillment" is the process by which wholesalers, manufacturers, or sellers ship products to Amazon for warehousing and, ultimately, shipment to smaller facilities. (Order fulfillment differs in the case of grocery items, restaurant orders, and items for fast, sub-same-day delivery, all of which are also at issue in this case.) For such physical goods orders, Amazon contracts with the United States Postal Service ("USPS"), UPS, and various other third-party delivery companies to deliver the packages to customers (referred to as "brown box" deliveries). *See* Haubold Decl.¶¶5-7.[2] Most packages are delivered by national, local, or regional delivery companies. *Id.* ¶7. Only some

[2] The DP, Haubold and Wilson declarations and Waithaka's deposition cited herein are appended to the Declaration of Sarah Zenewicz, Exs. 19-38.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

packages are contracted for pickup by individual couriers (DPs) who contract to provide supplemental local delivery services. *Id.* ¶¶5-9. The relevant Independent Contractor Terms of Service ("TOS") each DP accepts has changed multiple times over the course of the proposed ten-year collective action period. While each TOS provides that DPs "decide the means and manner in which to provide the Services and achieve the results that [they] have agreed to provide" and "are free to map out [their] own routes, sequence [their] deliveries and in every other way control the means and manner in which [they] deliver Deliverables," Haubold Decl.¶¶14-17, Exs. A-C at Ex. A, ¶¶ III.B, the TOS versions differ in other ways, including their incorporation of different policies, their provision of delivery from restaurants (or not), and what state's law applies—including that Delaware law applies for each TOS beginning in 2019. Dkt. 248 (Wilson Decl. Exs. A-G).

### B. <u>DPs Have Widely Varying Experiences Affecting Liability And Classification.</u>

DPs differ in how they operate their businesses. These differences materially affect Plaintiffs' alleged misclassification as independent contractors under the FLSA's individualized multifactored test. DPs' choices affect their fee earnings and how many hours they worked. Different blocks come with different Service Fees, and DPs choose which types of blocks to accept. Hammond Decl.¶6 (preferring Whole Foods Market ("WFM") grocery deliveries); Takacs Decl.¶5 (choosing WFM because it is more lucrative for him). Blocks each have unique delivery windows, delivery locations, and number of stops. Crandall Decl. ¶19. When DPs pick up from WFM, for instance, they must deliver the groceries within a two-hour window, but there are fewer destinations. *See* Hammond Decl.¶6; Boman Decl.¶9. "AMZL" brown-box blocks, by contrast, typically have estimated durations of 2-4 hours, but provide drivers substantial flexibility to make deliveries anytime during the day so long as it is before 9:00 p.m. Haubold Decl.¶14. "Global Specialty Fulfillment" (GSF), grocery, and Amazon Today, which are deliveries DPs did not have the option to perform at the beginning of the putative class period, and Prime Now and Restaurant



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

delivery, which are no longer options, have provided the opportunity to earn tips—unlike other types of blocks. Boman Decl.¶9; Jewett Decl.¶7 (switched from "brown-box deliveries" to "Whole Foods deliveries because … there are typically more slots available and I now have the option to earn tips"). DPs also can accept "instant offers" that they must deliver soon after accepting, unlike other types of deliveries that DPs can accept in advance. Takacs Decl.¶7; Ramirez Decl.¶9. Some blocks require driving farther and longer than others, Crandall Decl. ¶19, and some offer higher Service Fees due to "surge pricing" on account of weather or demand. Boman Decl.¶7.

As the Crandall report makes clear, many DPs take less time to make deliveries than the estimated delivery time, increasing their effective payment rate. For example, many DPs finish making deliveries in far less time than their assumed block time and are "paid the same amount." Takacs Decl.¶¶10-11; *see* Jewett Decl.¶12 ("generally finish" early and "still get paid the same"); Hammond Decl.¶11 (similar); Mainella Decl.¶6 (similar). Conversely, some have taken large, unexplained breaks in the middle of delivery blocks, Crandall Decl.¶¶24-37, and others have made deliveries for other gig companies during their Amazon Flex blocks, *Id*. ¶48 (Waithaka performed services for other gig companies during block). *See also* Oswalt Decl.¶11; Takacs Decl.¶¶10-11 ("faster than other drivers" and "paid the same amount"; paid more if block takes longer than estimated); Jewett Decl.¶12 ("generally finish" early and "still get paid the same"); Hammond Decl.¶11 (similar); Mainella Decl.¶6 (similar). Some DPs "would rather just get the work done," Boman Decl.¶10, while others take breaks whenever they want. Takacs Decl.¶9 ("take a break for a snack"); Waithaka Dep. 212:3-214:5 (stopped for food or gas during blocks).

DPs' investments in equipment or materials also vary widely. Each DP chooses their vehicle. *See* Zenewicz Decl., ¶3, Exs. 1-18 at ROG 7 (Plaintiffs' cars varying widely from Lincoln Navigator to Volkswagen Beetle to Ford Fusion Hybrid); Takacs Decl.¶12 (Prius); Jewett Decl.¶13 (Nissan Rogue); Mainella Decl.¶7 (Kia Optima). These different cars generate different mileage expenses. Crandall Decl.¶¶43. Some DPs (but not others) maintain mileage records that need to be scrutinized for accuracy. Oswalt Decl.¶9; Takacs Decl.¶8; Hammond Decl.¶12; Jewett



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Decl.¶13; Mainella Decl.¶7. And while each DP needs a smartphone, some did not incur additional expenses on account of Amazon. Waithaka Dep. 26:1-18 ("cellphone cost per month did not go up by virtue" of signing up for Flex).[3] Others invest in carts, bags, or other equipment. Huynh Decl., Dkt. 43, ¶15 (uses a laundry bag and cart to deliver multiple packages at once); Craft Decl.¶¶18-20 (uses a dolly and cell phone holder); Holstein Decl.¶13 (foldable cart); Prevette Decl.¶12 (navigation application). Plaintiffs have largely refused to identify their expenses, instead categorizing generally: "Unreimbursed vehicle expenses, such as gas, car maintenance, and car insurance … and cell phone data expense plans." Zenewicz Decl.¶3, Exs. 1-18 (ROG 9).

DPs also control what blocks to accept (and from which pick-up locations). Some prioritize pricing, location, timing, or other factors. *See* Oswalt Decl.¶¶11-12 (chose blocks based on pricing because some block's rate increases if "not immediately picked up earlier in the day" and those "close to my home"); Hammond Decl.¶7 (making deliveries "days and times when it is most lucrative"). Many DPs drive or deliver for other companies and apps. Tiemann Decl.¶12 (drives for Lyft); Craft Decl.¶9 (Uber); Prevette Decl.¶2 (UberEats and Favor); Huynh Decl., Dkt. 43, ¶4 (Uber, Lyft, and Doordash); *see* Oswalt Decl.¶¶2, 5; Takacs Decl.¶15; Jewett Decl.¶¶5, 13. Some work full-time jobs for other companies. *E.g.*, Jewett Decl.¶8. Their flexibility to choose when to accept Amazon Flex blocks, Takacs Decl.¶6 ("Nobody at Amazon tells me when to work."), and the "flexibility to cancel" some blocks up to 45 minutes before the scheduled start time, Jewett Decl.¶9; Boman Decl.¶7, allows them to operate their businesses as they see fit. Exercising this flexibility, most Opt-Ins never worked close to 40 hours and so cannot have an overtime claim. *See* Crandall Decl.¶10.

And some use the Amazon Flex app's navigation function to map out their deliveries, Boman Decl.¶11, but others do not. Oswalt Decl.¶9. *See also* Takacs Decl.¶6 ("I use Google Maps," not the Amazon app suggested route); Jewett Decl.¶11 ("I do not follow the Amazon Flex

---

[3] To date, nearly all named and opt-in Plaintiffs have failed to produce any mileage or cell phone records. Zenewicz Decl.¶4.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

navigation suggestions," instead using the "Waze app" to account for "traffic"); Mainella Decl. ¶ 6 (use "phone GPS," "faster than Amazon's suggested route").

Finally, Plaintiffs entirely ignore how the Amazon Flex program has changed over time—whether it is the types of places and third-party stores where DPs may pick up deliveries, different types of blocks including instant offers, or different locations where Amazon Flex has become available. Plaintiffs' circa 2016 declarations address none of this.

### C. All DPs Have Had The Opportunity To Pursue Their Claims, Including Through Arbitration, And Tens Of Thousands Are Doing So.

More than 32,000 putative collective members are currently arbitrating these claims against Amazon. Lynch Decl.¶4, 7. Moreover, almost all DPs have agreed to arbitration agreements, all of which since 2019 incorporate Delaware law that this Court soon will consider for the first time when Amazon files its renewed Motion to Compel Arbitration.

Multiple DPs who have opted into this case are among the 32,000-plus who have pursued arbitration. One such Opt-In was represented by different attorneys. Lynch Decl.¶3. And many other Opt-Ins are included in arbitration demand filings of other law firms. *Id.* ¶¶4, 7. Opt-Ins Noor Dahy, Falope Fatumise, La Quita Houston, Charles Apostolas, Joel Camerena, Jon Shehab, Daniel Dujardin, Jason Tyrone Jones, and Eric Ruff have threatened to file, or have filed, a claim in arbitration against Amazon. *Id.*¶¶5-6; Dkts. 331-25, 331-26, 331-27, 331-28.

## III. ARGUMENT

### A. The Applicable "Similarly Situated" Standard Is Not A Rubber Stamp.

To protect courts from "excessive and needless" representative litigation, 29 U.S.C. § 251(a), Congress amended 29 U.S.C. § 216(b) to end "representative actions" and allow additional plaintiffs to opt into FLSA cases only when they are "similarly situated." *Id.*; *see Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989). To avoid the abuse Congress forswore, courts may not rubber stamp conditional certification motions based on a "limited sample of" "boilerplate" declarations that do "not demonstrate that the members of the broad class



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

proposed are similarly situated," *Silverman v. SmithKline Beecham Corp.*, 2007 WL 6344674, at *2 (C.D. Cal. 2007), let alone on a meager six declarations that do not speak to the circumstances of anyone after 2016.

While Section 216(b) does not "establish a process for evaluating the propriety of a collective proceeding as litigation unfolds," *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018), many courts have evaluated the "similarly situated" requirement using a judge-made, two-step "certification" process—considering at the first step whether putative collective members are "similarly situated" so as to authorize notice of the suit, and at the second step, after discovery, whether to decertify the collective. *See Edmonds v. Amazon.com, Inc.*, 2020 WL 5993908, at *3 (W.D. Wash. 2020) (denying collective certification for third-party Amazon Delivery Associates for lack of evidence of common unlawful policy). But Section 216(b) makes no mention of "certification" or "decertification." *Campbell*, 903 F.3d at 1100; *id.* at 1117 ("nothing in section 216(b) expressly compels" the two-step process). Neither the Ninth Circuit, *id.*, nor the Supreme Court have interpreted the FLSA to require "conditional certification" of a collective action. *See Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 436 (5th Cir. 2021).

Courts are increasingly rejecting the historical two-step process. *See id.* at 440-42 (courts "must ***rigorously scrutinize*** the realm of 'similarly situated' workers" at the outset of the case—"not after a lenient, step-one 'conditional certification'") (emphasis added); *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023) (courts should not "facilitate notice upon merely a 'modest showing' or under a 'lenient standard' of similarity" but should apply a "strong likelihood" of success requirement akin to preliminary injunctions). Without rigorous analysis, courts risk "crossing line from using notice as a case-management tool to impermissibly using notice as a claims-solicitation tool." *Swales*, 985 F.3d at 442; *see also, e.g.*, *Laverenz v. Pioneer Metal Finishing, LLC*, 2024 WL 3887110 (E.D. Wis. 2024); *Mathews v. USA Today Sports Media Grp., LLC*, 2023 WL 3676795 (E.D. Va. 2023). Because "notice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees,"



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

"court-approved notice of the suit should be sent only to employees who are in fact similarly situated." *Clark*, 68 F.4th at 1010.

Ultimately, however, this Court need not decide whether the two-step certification process remains good law. Whatever test applies, Plaintiffs cannot meet it. Even under the outdated two-step process, a more "lenient" standard does not apply where, like here, some discovery has occurred. *CompareBolding v. Banner Bank*, 2017 WL 6406136, at *1 (W.D. Wash. 2017) (the first-step "standard is lenient" because "discovery has not yet occurred") with *Ide v. Neighborhood Rest. Partners, LLC*, 32 F. Supp. 3d 1285, 1291-92 (N.D. Ga. 2014) (applying a "heightened standard" to Plaintiff given eight months of discovery before motion for conditional certification), *aff'd*, 667 F. App'x 746 (11th Cir. 2016); *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 119 (E.D.N.Y. 2020) (applying "modest 'plus' standard" given discovery); *Sloane v. Gulf Interstate Field Servs., Inc.*, 2017 WL 1105236, at *6 (M.D. Pa. 2017) (similar).

Regardless, the step-one inquiry is no mere formality. "While the plaintiffs' burden at this stage is light, 'the district court cannot function as a rubber stamp for any and all claims that come its way under this statute.'" *Edmonds*, 2020 WL 5993908, at *3 (quoting *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 929-30 (D. Ariz. 2010)) (denying conditional certification); *Litty v. Merrill Lynch & Co.*, 2014 WL 5904907, at *8 (C.D. Cal. 2014) ("[C]onditional certification is by no means automatic[.]").

Notice should not be sent "[w]here a plaintiff fails to carry [their] burden or where a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial." *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008). When a court must adjudicate each worker's claims individually, it "would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the … class members are not similarly situated." *Laverenz*, 2024 WL 3887110, at *8 (citation omitted); *Trinh v. JP Morgan Chase & Co.*, 2008



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

WL 1860161, at *4 (S.D. Cal. 2008) (denying conditional certification where collective action would not advance the goal of "judicial economy").

**B. The Putative Collective Action Members Are Not Similarly Situated.**

Plaintiffs' Motion ignores the critical question of whether they can representatively prove an FLSA violation with respect to every putative opt-in. But courts examine at this stage whether the evidence establishes "a reasonable basis for [a] claim of classwide FLSA violations." *Colson*, 687 F. Supp. 2d at 928. Whether putative collective members are properly characterized as employees or contractors—which is the only certification issue Plaintiffs' Motion mentions—is of no moment. Courts deny certification even where common evidence can show "employer" status. *Cf. Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 470 (9th Cir. 2023) (holding in Rule 23 context that common showing of employee status cannot justify certification where individualized evidence is needed on liability).

***1. Plaintiffs Have Not Shown Any Common Unlawful Policy Or Practice.***

To prove they are similarly situated, Plaintiffs must show, at the very least, "that potential plaintiffs were victims of a common policy or plan that violated the law." *Douglas v. Xerox Bus. Servs. LLC*, 2014 WL 3396112, at *3 (W.D. Wash. 2014) (denying certification, where, despite a common policy, plaintiffs failed to show illegal off-the-clock work). Plaintiffs must provide "***detailed*** allegations supported by [affidavits] … [and] those affidavits must constitute admissible evidence" demonstrating that Plaintiffs are similarly situated. *Colson*, 687 F. Supp. 2d at 928 (citation omitted) (emphasis added). Courts consider: (1) evidence of a pertinent company-wide practice; (2) similarities among workers; and (3) the reliance on common evidence to show violation of the law. *See Trinh*, 2008 WL 1860161, at *3; *Edmonds*, 2020 WL 5993908, at *6 (declining certification where plaintiff had not plausibly alleged a common unlawful plan or policy).

This Court has held that "'naked assertions' that a plaintiff is owed wages or overtime are not sufficient," and Plaintiffs cannot pin their claims—let alone the claims of over one million



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

others—on "merely [a] claim that an employer has a violative system" or "general facts common to all plaintiffs." Dkt. 338 at 7-8; *see Bolding*, 2017 WL 6406136, at *3 (cited by Plaintiffs, Mot. 5) (refusing to certify overtime collective because "Plaintiffs' allegations are not substantial and their evidence is non-existent"; unadorned "belief" cannot suffice); *Trinh*, 2008 WL 1860161, at *4 (denying certification where plaintiffs provided "no real evidence, beyond their own speculative beliefs"); *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007) (similar). The declarations' lack of "specificity" (*Boutros v. JTC Painting & Decorating Corp.*, 2013 WL 3110943, at *3 (S.D.N.Y. 2013)), and "detail" (*Holmes v. Quest Diagnostics, Inc.*, 2012 WL 12876965, at *2-3 (S.D. Fla. 2012)) means they are "without probative value." *Id.* Put simply, boilerplate declarations are not enough to carry this burden. *See Silverman*, 2007 WL 6344674, at *2 n.5 (limited sample of" "boilerplate" declarations insufficient for "broad" collective). That is why this Court dismissed former Plaintiff Rittmann, who repeatedly failed to state an FLSA claim. Dkt. 338 at 8-9. This Court engaged in an individualized analysis of each named Plaintiff to see if they plausibly alleged any workweek where they suffered a minimum wage or overtime violation. *Id*. at 8-11. An even more individualized analysis would be needed to see if each putative opt-in can ***prove*** actual violations based on pay, hours worked, expenses, and other factors. *See* Crandall Decl.¶¶11-23. Plaintiffs offer no plan or proposal to filter out DPs who have no claim at all. Put simply, they offer no evidence of a universal ***unlawful*** policy justifying certification.

**a. Plaintiffs' handful of declarations do not come close to what is needed to carry their burden.**

Plaintiffs present no evidence from the "nearly 100 drivers" who have opted in and whom their attorneys represent. Mot. 12. That absence of evidence starkly reveals their inability to show all putative collective members suffered a common legal violation.

Instead, Plaintiffs rely solely on the same six conclusory declarations from 2016. Dkt. 341 Exs. 3-8. Three should be struck and given no weight. Two are signed by Opt-In Plaintiffs who refused to participate in discovery (Pearce and Kogan), despite this Court's order. *See* Dkt. 339, at



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

4-6; *Bertone v. HSBC USA, Inc.*, 2019 WL 13144576, at *4 (E.D.N.Y. 2019) (striking affidavit of opt-in plaintiff given "unavailability and refusal to participate in the prosecution of this action," including discovery); *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 301 (W.D.N.C. 2013) (declining to consider declarations of opt-in plaintiffs who failed to respond to discovery despite court order). Similarly, the dismissal with prejudice of Rittmann's FLSA claims confirms that her 8-year-old declaration, which fails to specify any week during which she was deprived of minimum or overtime wages (despite multiple opportunities to amend) cannot support certification. *See, e.g.*, *Cruz v. Ham N Eggery Inc.*, 2016 WL 4186967, at *4 (E.D.N.Y. 2016) (denying conditional certification where two named plaintiffs were paid above minimum wage and another did not clearly state otherwise; "[i]n order to bring a collective action, plaintiff must first show that she, herself, was subject to a FLSA violation"). That named Plaintiffs seeking to represent the interests of the collective failed to adequately allege an FLSA violation is proof positive that the putative collective cannot establish their claims using representative evidence. *See Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 510 (S.D.N.Y. 2010) (conditional certification denied because of "[t]he plaintiffs' failure to provide affidavits from any other employees who allege they were paid below the minimum wage, in combination with the fact that [two named plaintiffs] are paid in excess of the minimum wage.")

The three remaining boilerplate declarations cannot suffice to authorize the sprawling collective Plaintiffs seek—whatever standard applies. Beyond how the declarants made deliveries, the declarations simply express—with reference to no facts—that they "believe" they have been paid below the minimum wage. *See, e.g.*, Dkt. 341-3 to 8¶¶6, 10. No declarant identifies a single week that their pay fell below $7.25/hour. Mere "belief" is not evidence that it ***ever*** actually happened. And only one claims that they ever worked more than 40 hours/week to trigger overtime rights, but Carroll just claims, without more, that it happened in an unidentified number of "weeks." Dkt. 341-5¶11. Plaintiffs' "non-existent evidence," based on "unsupported assertions," *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480, 484 (S.D.N.Y. 2016), cannot support



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

granting their Motion. *See Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 800 (S.D.N.Y. 2012), *R&R adopted* (declarations from 5 managers from 10 stores was insufficient to show all managers at 820 stores were similarly situated); *Palacios v. Boehringer Ingelheim Pharms., Inc.*, 2011 WL 6794438, at *5 (S.D. Fla. 2011) ("three almost identical, cut-and-paste declarations" were "insufficient to [establish] that other [employees] have similar job requirements").

The declarants also do not (and cannot) claim personal knowledge of other DPs' experiences, especially when DPs pick up packages at many different locations, most of which the declarants had no contact with.[4] Scant assertions, devoid of any material information regarding other DPs, do not justify notice to more than one million others. *See Olukayode v. UnitedHealth Grp.*, 2019 WL 4898466, at *2 (D. Minn. 2019) (denying conditional certification where declarations did "not contain any specific information about" or claim "personal knowledge" of other potential plaintiffs); *Ortiz-Patino v. Kamcor, Inc.*, 2018 WL 2170324, at *1 (D. Mass. 2018) (denying nationwide certification where affidavit lacked information regarding other locations); *Thornton v. Mainline Commc'ns, LLC*, 2015 WL 3938652, at *2 (E.D. Mo. 2015) (denying conditional certification where plaintiffs' affidavits "generally allege[d] that they witnessed other technicians" subject to the same "policies and control and being classified as independent contractors").[5]

---

[4] Declarant Pearce, alone, claims that while she "generally" worked fewer than 40 hours a week herself, she is "aware of" other DPs who worked over 40 hours a week. Pearce Decl., Dkt. 341-6, ¶ 11. It is unclear who these individuals are or where they performed delivery services, let alone what foundation she offers for her alleged awareness. *Colson*, 687 F. Supp. 2d at 928 (denying conditional certification given three vague, hearsay declarations).

[5] Plaintiffs' cases do not support certification with such scant evidence. *See Zambrano*, 2022 WL 3369597, at *6 (declarations from Plaintiffs who worked in New Jersey and New York and attested to over fifty other drivers' experiences sufficient to certify collective of approximately 155 individuals); *Carter v. XPO Last Mile, Inc.*, 2016 WL 5680464 (N.D. Cal. 2016) (five declarations including attestations of "several other delivery drivers" sufficient to conditionally certify 200-person collective); *Bazzell*, 2016 WL 3655274, at *4-6 (five declarations sufficient in case where only 24 opted in, because they were "detailed" and the defendant failed "to contradict Plaintiffs' claims of similarity"); *Scovil v. FedEx Ground Package System, Inc.*, 811 F. Supp. 2d 516 (D. Me.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

And they certainly do not justify attempting to manage the cases of over a million DPs strewn across the country, given the "potential burdens" resulting from a "large and broadly defined collective." *Rudd v. T.L. Cannon Corp.*, 2011 WL 831446, at *6 (S.D.N.Y. 2011); *Davis III v. Westgate Planet Hhollywood Las Vegas, LLC*, 2009 WL 102735, at *6-8 (D. Nev. 2009) (denying nationwide notice because plaintiff offered only evidence from specific states and there were material differences among putative opt-ins making nationwide notice improper).

**b. <u>A review of the record proves DPs are not subject to the same unlawful policy.</u>**

Plaintiffs have not only failed to carry their burden of proving a common unlawful policy. This Court's orders and other evidence (ignored by Plaintiffs) show they never could.

The Crandall Report and declarations from putative collective members show that no common evidence can prove minimum wage or overtime violations collective-wide.

**i. <u>Hours Worked</u>:** Both FLSA claims (failure to pay minimum wage and overtime) require evidence of how many hours each DP spent delivering packages in any given workweek. While in the related *Waithaka* case Plaintiffs' counsel argued that they intend to rely on the time between DPs' picking up items for delivery and dropping off their last delivery ("first-scan to last-scan") to determine hours worked, *Waithaka v. Amazon.com, Inc.*, No. 2:19-cv-01320-JCC, Dkt. 172, at 11, they make no such argument here. In fact, in this case, they do not even attempt to proffer any potential proxy for determining hours worked – based on data or otherwise. The fact is putative collective members often take long breaks between deliveries. *See* Crandall Decl.¶¶19, 29-38 (discussing large and unexplained "gaps" between deliveries, and describing examples of Opt-Ins' unexplained gaps of 4 hours and 50 minutes, 3 hours and 23 minutes, and 2 hours and 16 minutes in single blocks). During that time, DPs may have delivered for other gig companies, taken lengthy breaks, or run personal errands. Crandall Decl.¶48 (Waithaka performed services for other gig

---

2011) (six declarants covered entire class period and collective was limited to one state in which they all worked).



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

companies during block); Takacs Decl.¶9 ("take a break for a snack"); Boman Decl.¶10 (can take breaks); Waithaka Dep. 212:3-214:5 (stopped for food or gas during blocks). As a result, discovering DPs' hours worked in any workweek—crucial to determining the wage paid[6] ***and*** whether the DP worked more than 40 hours—cannot be accomplished with "common" evidence. *See* Crandall Decl.¶¶24-39. Every DP would need to be examined under oath to determine actual hours worked—and Plaintiffs suggest no alternative common method.

**ii. <u>Overtime Claims</u>:** Crandall's analysis of the sample data also reveals that 1.19% of DPs ever worked above 40 hours per week—even accounting for "gap" time and using block times or "first-scan to last-scan" times, which are overinclusive of actual hours worked. *See* Crandall Decl.¶¶7-10. Very few in the putative collective ever approached the FLSA overtime threshold of 40 hours per week, and Plaintiffs have identified no one who did. Yet Plaintiffs would have this Court send notice to more than one million former and current DPs about potential overtime claims even though virtually none would have even a potential claim, no matter how time worked is measured. Doing so would be an abuse of the notice process. *See Clay v. Huntington Ingalls Inc.*, 2011 WL 13205917, at *9 (E.D. La. 2011) (denying conditional certification because "the occurrence of any violations [was] too sporadic and irregular to support certification").

Putting aside that few putative class members have first-scan to last-scan data exceeding 40 hours in any week, individualized evidence would still be needed to calculate actual hours for any given workweek for the overtime claim just like the minimum wage claim. *See* Crandall Decl.¶24-37. For every DP, the factfinder would have to review every gap in time that any DP had

---

[6] DPs receive the same fees no matter how long a block takes. Many took advantage of this fact to deliver quicker than expected and make a substantially greater effective hourly rate. =Waithaka Dep. 127:11-128:13; Oswalt Decl.¶11; Takacs Decl.¶¶10-11. Some of Plaintiffs' declarants claim they sometimes drove "upwards of six hours" for a four-hour block, Dkt. 341-4 ¶8, but don't allege (let alone provide evidence of) any facts by which to establish their pay fell below federal minimum wage. *See* Dkt. 341-3 ¶7 (estimating that 10% of two-hour blocks take longer than two hours to complete but Amazon only paid for additional hours once). That some DPs worked longer than expected and some worked shorter in any given block only shows the individualized issues that doom this collective.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

between deliveries by making findings whether that time was delivering Amazon customer packages, or engaging in personal or other activities like driving for Uber or Lyft. *See* Crandall Decl.¶¶19, 29-38 (several examples of long opt-in gap times). These would be intensely individualized analyses.

**iii. <u>Expenses Necessary for Minimum Wage</u>:** The operative complaint alleges many class members have minimum wage claims, and each declaration claims such a belief, but only ***after accounting for unreimbursed expenses***. Dkt. 262 ¶123. This theory requires individualized examination of mileage, phone, and other expenses. *See* Crandall Decl.¶¶43-44 (discussing widely varying mileage expenses depending on choice of car); Indeed, many blocks paid the equivalent of ***many times*** federal minimum wage of $7.25/hour based on expected block length. *See* Hammond Decl.¶10 (earns "from $60 to $90" for "every two-hour block I complete"); Mainella Decl.¶5 (usually takes blocks that will make $30 an hour); Oswalt Decl.¶11 (has "earned $96 for a designated 3-hour block but" despite completing "deliveries in about 1 hour"). So, each Plaintiff would need to prove expenses so large that their take-home pay fell below $7.25/hour, an individualized issue. *See* Crandall Decl.¶13. No Plaintiff has even attempted to do so—and certainly not Plaintiffs' few declarants. For example, declarant Rittmann says she blew out her tire, but doesn't argue her take-home pay went below minimum wage as a result,. *Id.*¶15. And Carroll claims he drove 200 miles during a block, but he would have had to drive ***134 miles-per-hour*** with no stops the entire block to do that. *Id.*¶16.

The Court expressly recognized "Defendants' need for some discovery prior to conditional certification." Dkt. 326 at 1-2. Instead, Plaintiffs filed this motion while Amazon was attempting to meet and confer with them about outstanding discovery responses and only one day after Amazon moved to enforce this Court's July 30, 2024 Order compelling discovery from certain Opt-In Plaintiffs. Plaintiffs' refusal to comply with this Court's discovery order along with their scant evidentiary submission in support of this motion speaks volumes.

Regardless, the record now is crystal clear that the Court should deny this Motion. Plaintiffs



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

have not remotely carried their burden of showing that all recipients of the proposed notice are subject to a common unlawful policy or practice. To the contrary, Amazon's evidence confirms that Plaintiffs do not come close to speaking on behalf of the nationwide, diverse population more than one million DPs. *See, e.g.*, *Haider v. Uber Techs, Inc.*, No. 16-04098, Dkt. 98 (S.D.N.Y. 2018) (denying conditional certification of independent contractor collective where the "circumstances of the putative class members vary too greatly"); *Scott v. NOW Courier, Inc.*, 2012 WL 1072751, at *7-9 (S.D. Ind. 2012) (same, where inconsistencies in plaintiffs' statements and competing evidence rebutted assertions about being similarly situated). Sending notice more than one million DPs while many have no claims does not promote judicial economy.

#### 2. *Plaintiffs Also Are Not "Similarly Situated" To Absent DPs With Respect To Issues Material To Plaintiffs' Misclassification Claims.*

Even if Amazon paid DPs below the FLSA's low $7.25/hour minimum wage threshold (Amazon did not), Plaintiffs still must present representative evidence that all DPs are "employees" covered under the FLSA. Plaintiffs never even mention the governing test for alleged misclassification under the FLSA: the economic realities test. Plaintiffs ignore their burden to show that "the proof to demonstrate that the workers are 'employees' or 'independent contractors' can be applied to the class as a whole." *Bamgbose v. Delta-T Grp., Inc.*, 684 F. Supp. 2d 660, 668-69 (E.D. Pa. 2010); *see Pfaahler v. Consultants for Architects, Inc.*, 2000 WL 198888, at *2 (N.D. Ill. 2000) (no conditional certification; "individual determination as to the nature of each potential claimant's employment relationship with [defendant]" was required); *Christianson v. NewPark Drilling Fluids, LLC*, 2015 WL 1268259, at *3-5 (S.D. Tex. 2015) (no conditional certification, as economic realities test required individualized analysis).[7]

[7] Plaintiffs' cases do not suggest otherwise. *See, e.g.*, *Scovil*, 811 F. Supp. 2d at 516 (granting conditional certification only because plaintiffs submitted detailed statements of drivers attesting to facts material to contractor classification test).



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Yet Plaintiffs make no showing that the fact-specific "economic realities" test can be resolved in one shot for all DPs nationwide. *Brant v. Schneider Nat'l Inc.*, 2023 WL 4042016, at *3 (E.D. Wis. 2023) ("the fact-intensive and case-specific nature of [the economic realities test] makes it ill-suited for collective treatment"). This multi-factored inquiry considers: (1) degree of control over how work is performed; (2) opportunity for profit or loss; (3) investment in equipment or materials; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. *Moba v. Total Transp. Servs. Inc.*, 16 F. Supp. 3d 1257, 1263-64 (W.D. Wash. 2014) (drivers being "free to make their own schedule[,] work for other companies," "decline delivery requests," "decide how to make the delivery," and "own their own trucks" favor contractor status). These factors assist the Court in asking whether "'as a matter of economic reality,' the individual is dependent on the business." *Id.* at 1264. Where, as here, the relevant factors vary "in material respects throughout the proposed class," that defeats any finding of similarly situated at conditional certification. *Curtis v. Scholarship Storage Inc.*, 2015 WL 1241365, at *2 n.2 (D. Me. 2015); *Brant*, 2023 WL 4042016, at *3-4 (denying conditional certification given lack of "evidence to establish that the putative class members are similarly situated such that the economic realities test can be applied to the class as a whole"). Plaintiffs are not "similarly situated" when material differences exist as to these factors. *See, e.g.*, *Andel v. Patterson-UTI Drilling Co.*, 280 F.R.D. 287, 290 (S.D. Tex. 2012) (no certification, emphasizing that "the number of days and hours worked," "pattern of days on and days off" and "length of time each Plaintiff worked for Defendant," and "each Plaintiff's relative investments and ability to control his opportunities for profit and loss … varied significantly"); *Bouthner v. Cleveland Constr., Inc.*, 2012 WL 738578 (D. Md. 2012) (denying certification of FLSA collective action of contractors).

Plaintiffs offer no representative proof that control in fact can be resolved for the whole collective. It cannot, given myriad differences—including choosing when to work, whether to



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

follow suggested routes, what types of routes they chose, the length of time they provided services, their investment and expense-related decisions, and other evidence. Named Plaintiffs contend Amazon controlled their work, but other DPs attest that they completely control how many and which blocks they accept. Some choose blocks because they are more profitable, affecting their profits and losses. Prevette Decl.¶¶4-6 (describing differences between Prime Now and other Amazon deliveries, including sometimes completing two-hour blocks in one hour); Takacs Decl.¶5 (chooses WFM deliveries because more lucrative); Jewett Decl.¶7 (switched from "brown-box deliveries" to "Whole Foods deliveries because … there are typically more slots available and I now have the option to earn tips"); Hammond Decl.¶7 (making deliveries "when it is most lucrative"). Others choose blocks based on location or schedule preferences. *See* Oswalt Decl.¶12; Ovando Decl.¶12; Johnson Decl.¶9. One DP has a farming business and prefers to drive at night after "family time and other life obligations" (Ovando Decl.¶¶6, 8), another wakes up at 6:30 a.m. to "look for available blocks to pick up" and "will try to pick up blocks throughout the day," Huynh Decl.¶13, and still others schedule around their other jobs or family obligations. Meade Decl.¶¶5-6 (fits Amazon Flex deliveries around full-time job and family obligations); Tiemann Decl.¶¶4-5 (schedules 4-5 blocks per week around dropping off and picking up child from school); Jewett Decl.¶8 (works other full-time job); Waithaka Dep. 199:13-201:8 (choosing to deliver in the morning to spend afternoon with kids). And many DPs drive for other gig companies, including Uber, Lyft, Postmates, DoorDash, Grubhub, Instacart, and others. Zenewicz Decl.¶3, Exs. 1-18 (ROG 10). They exercise complete control over whether and when to accept Amazon Flex blocks. Oswalt Decl.¶¶2, 5; Takacs Decl.¶¶6, 15; Jewett Decl.¶¶5, 13. As the delivery data shows, many DPs also have unexplained large gaps of time between deliveries, Crandall Decl.¶24-37, which further demonstrates lack of control by Amazon.

Plaintiffs claim that all DPs signed the same TOS, which supposedly evinces control. Mot. 3-5. While that is wrong—putative collective members have accepted several different TOS over the years, *supra* Section II.A—it is irrelevant. The economic realities test looks to the alleged



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

"employer's actual control, not its right to control." *Spellman v. Am. Eagle Exp., Inc.*, 2013 WL 1010444, at *4 (E.D. Pa. 2013); *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1371 (9th Cir. 1981) (test not what party "could do" but what the party "does do"). And to the extent the contract was relevant, it shows a ***lack*** of control, undermining certification. *See, e.g.*, Haubold Decl. ¶¶14-17, TOS ¶III.B (DPs "free to map out [their] own routes, sequence [their] deliveries and in every other way control the means and manner in which [they] deliver").

Plaintiffs claim that they must drive their "assigned route," Dkt. 341-3 to 8 ¶6, but this is not supported by representative evidence. DPs testified that they do not follow Amazon's suggestions and take any route they wish to increase profitability. Waithaka Dep. 111:7-112:6; Prevette Decl. ¶¶ 8-11 ("I am always trying to find ways to complete my deliveries faster and better. I chart my own routes after picking up blocks [and] use a variety of mapping apps to improve my efficiency" to increase tips.); Meade Decl.¶¶8-9 ("Once I'm out on the street and actively doing deliveries, everything is up to me."); Takacs Decl.¶6 ("I use Google Maps"); Jewett Decl.¶11 ("I do not follow the Amazon Flex navigation suggestions," instead using the "Waze app" to account for "traffic"); Mainella Decl. ¶ 6 (use "phone GPS," "faster than Amazon's suggested route"). And, as explained above, DPs finish early (or late) based on their own decisions of what routes to take or whether to take breaks or deliver for other gig companies.

As potentially relevant to control or whether Plaintiffs form an integral part of Amazon's business, DPs have different levels of contact with Amazon. Before her claims were dismissed, Plaintiff Rittmann claimed Amazon "frequently follows up with me about deliveries" in light of customer complaints, Dkt. 341-4¶11, but other DPs rarely have interaction with anyone from Amazon. Craft Decl.¶¶12-13 (explaining "interactions with Amazon employees at the warehouse are limited," and describing first day delivering as "sink or swim"); Holstein Decl.¶16 ("When making deliveries, I do not have any contact with the warehouse."); Meade Decl.¶ 9 ("I have very little interaction with Amazon employees at the site. I'm really not instructed or directed by



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Amazon employees."); Prevette Decl.¶10 ("I have never been called, emailed or texted by Amazon employees at the warehouse while on the road making deliveries.").

The next factor is opportunity for profit or loss, and DPs make many choices (including the above) affecting their profitability. DPs can choose larger vehicles that carry more parcels, or more fuel-efficient cars to save on expenses. For example, Declarant Holstein has used an SUV and a pick-up truck, but prefers the former because of better gas mileage. Holstein Decl.¶12; *see supra* Section II.B (different cars used); Crandall Decl.¶¶44-46 (showing different expenses as a result of vehicle choice). This fact also shows that DPs invest in their own vehicles and equipment—supporting independent contractor status.

Another differentiator among DPs is the degree to which they apply varying skill and experience in running a successful delivery business. Many successful DPs master the logistics of packing their vehicle efficiently to maximize the speed with which they can retrieve parcels for delivery. Ovando Decl.¶10 (organizes by number of packages per stop); Tiemann Decl.¶8 (organizes by neighborhood and addresses therein); Gilliard Decl.¶8 ("I load my car in the way that makes sense to me, and I can deliver in whatever order I want."); Meade Decl.¶10 (organizes "based on what best meets my needs"). Similarly, they establish for themselves what they believe to be the best route to complete deliveries as quickly and efficiently as possible. *See supra*. Others invest in carts, bags, or other equipment to help expedite deliveries. Huynh Decl., Dkt. 43¶15 (uses a laundry bag and cart to deliver multiple packages); Craft Decl.¶¶18-20 (uses a dolly and cell phone holder); Holstein Decl.¶13 (foldable cart). Unsurprisingly, many DPs attest that they run their own businesses. Oswalt Decl.¶¶4, 13 (enjoys "being in business for myself"; is an "Uber and Lyft driver, a DP, and mak[es] deliveries for private clients"); Ramirez Decl.¶14 ("often open up Uber/Lyft as I am completing a Flex delivery"; tells people "I am self-employed"); Huynh Decl., Dkt.43¶¶ 9, 14, 15 ("I am my own business when I drive and deliver for Amazon Flex."); Ovando Decl.¶7 ("I control my own business, and I make more money because I work for myself.").



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

The "permanence" factor varies, as well. The frequency and duration during which DPs deliver Amazon customer packages varies widely. Large numbers of DPs barely ever delivered Amazon packages. Over 12% of DPs in the sample Crandall evaluated delivered on "only a single day" and over 50% in the sample delivered on 15 days or less ***total***. Crandall Decl. ¶24. And only 1% of DPs who have opted into this case average 20 or more hours per workweek—not even accounting for gap time. *Id.*¶28. These have no possible overtime claims or "permanent relationship" with Amazon under the economic realities test. *See id.* Where so many DPs work so few hours, Plaintiffs cannot prove "economic dependence" on Amazon and thus cannot show employee status for the collective. *See Arredondo v. Delano Farms Co.*, 922 F. Supp. 2d 1071, 1076 (E.D. Cal. 2013) (analysis evaluates "evidence of economic dependence"). And unlike an employment relationship, DPs took long hiatuses or vacations without permission or repercussion—ceasing to accept blocks and make deliveries whenever they wished. Waithaka Dep. 148:25-149:18; Jewett Decl.¶9; Hammond Decl.¶8.

In sum, individualized factors that bear on alleged misclassification abound. Inquiries into each DPs' experiences are needed as they relate to each element of the economic realities test, rendering this case improper for conditional certification. *See Bamgbose*, 684 F. Supp. 2d at 668-69 (denying conditional certification given economic-realities differences); *see Pfaahler*, 2000 WL 198888, at *2 (same).

### 3. ***Plaintiffs Are Not Similarly Situated To The Vast Majority Of Delivery Partners Who Must Arbitrate—Or Are Arbitrating—Their Claims.***

Even if their Motion did not already fail for the reasons above, the Court should not certify a collective of DPs, the vast majority of whom agreed to resolve disputes through arbitration on an individual basis, and tens of thousands of whom are arbitrating now.

The touchstone of Section 216(b) is efficiency. *See Hoffman-La Roche*, 493 U.S. at 170. "Neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts which generally suggest that a collective action is improper."



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

*West v. Border Foods, Inc.*, 2006 WL 1892527, at *7 (D. Minn. 2006). And it "would be a disservice to judicial efficiency to certify" a collective including those "with arbitration agreements [who] are subject to additional, prolonging motion practice which will likely disqualify them from the case." *Morangelli v. Chemed Corp.*, 2010 WL 11622886, at *3 (E.D.N.Y. 2010).

Plaintiffs' argument that the Court should first conditionally certify a collective only to litigate arbitration later (*see* Mot. 12) would waste judicial resources and confuse the DPs who receive notice. Notice should not be sent to individuals who are subject to arbitration agreement. "[A] court may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020); *In re JP Morgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019). "And the court must give the defendant an opportunity to make that showing." *Bigger*, 947 F.3d at 1050. Certification of a collective including DPs with enforceable arbitration agreements—including tens of thousands currently arbitrating against Amazon—is inappropriate. *Woods v. Vector Mktng. Corp.*, 2015 WL 1198593, at *3 (N.D. Cal. 2015) (individuals subject to arbitration excluded); *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 81 (D.N.J. 2014) (excluding individuals "who signed mandatory arbitration and/or class action waiver agreements"); *Daughtery v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1137, 1130, 1133 (D. Colo. 2011) (same).

Moreover, "the question of an arbitration provision's impact on … FLSA certification fits naturally into the … conditional certification analys[is]." *Geiger v. Charter Commc'ns, Inc.*, 2019 WL 8105374, at *2 (C.D. Cal. 2019). Those who "signed mandatory arbitration and/or class action waiver agreements … are not similarly situated" to others who had "not signed any such agreement." *Fischer v. Kmart Corp.*, 2014 WL 3817368, at *7 (D.N.J. 2014) (quotation omitted); *Sherman v. CLP Res., Inc.*, 2015 WL 13542759, at *2 (C.D. Cal. 2015) (FLSA order required members with enforceable arbitration agreements "excluded from the class"); *Delano v. Mastec, Inc.*, 2011 WL 2173864, at *6 (M.D. Fla. 2011) (potential opt-ins subject to arbitration not similarly situated to Plaintiffs); *cf. Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579, 579



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

(9th Cir. 2015) (abuse of discretion to certify class that includes "employees who signed class action waivers" given individualized defenses). This Court previously recognized this rule when it noted in 2017 that "if the arbitration agreement is enforceable" with respect to putative collective members, "no notice should [] issue[]." Dkt. 77 at 5.

Here, there are several arbitration-related issues rendering DPs dissimilar. *See* Dkt. 338 at 2 ("named and opt-in Plaintiffs vary as to their periods of service, which TOS they agreed to," and "whether they affirmatively opted out of arbitration"). To start, versions of the TOS beginning in 2019 incorporate Delaware law, *supra* Section II.A, which applies a "strong presumption [] in favor of arbitration." *Channel PES Acquisition Co. v. Heritage-Crystal Clean, Inc.*, 2024 WL 3252166, at *6 (Del. Super. Ct. 2024). Such "state law questions of arbitrability should be resolved first," before FAA exemption issues. *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 295-96 (3d Cir. 2021); *Harper v. Amazon.com Servs. Inc.*, 2022 WL 17751465, at *10 (D.N.J. 2022) (on remand, referring New Jersey Flex driver's claims to arbitration under New Jersey and Washington law); *Melikyan v. Amazon.com, Inc.*, 2023 WL 4505065, at *3 (C.D. Cal. 2023) (enforcing Amazon Flex arbitration agreement under Delaware law without deciding whether the FAA governs).

Further, more than 32,000 DPs are ***currently arbitrating*** against Amazon. Lynch Decl.¶¶4, 7. Multiple DPs who have opted into this case have also pursued arbitration. Opt-Ins Noor Dahy, Falope Fatumise, La Quita Houston, Charles Apostolas, Joel Camerena, Jon Shehab, Daniel Dujardin, Jason Tyrone Jones, and Eric Ruff have waived any objection to arbitrating and are equitably estopped from contesting arbitration by threatening to file a claim in arbitration against Amazon based on the TOS. Dkts. 331-25, 331-26, 331-27, 331-28. Opt-In Kenya Gattison filed a demand for arbitration on January 28, 2020 with the American Arbitration Association. Dkt. 331-26. In her demand, she expressly opted out of any class or collective action related to her allegations of misclassification as an independent contractor. *Id.* Under basic contractual and equitable principles, threatening an arbitration demand on these same claims is enough to conclude



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

that their claims should be in arbitration and not joined to a collective in this action. *Rhoades v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 217, 1992 WL 84188, at *1 (9th Cir. 1992) ("[A] party who submits to arbitration and later purports to withdraw waives the right to challenge legitimacy of arbitration and is bound by its result."). They clearly are not similarly situated to those without pending claims, or those arguing they don't have enforceable arbitration agreements. And collateral estoppel, claim-splitting, and other individualize defenses will apply to them, not others. *See, e.g.*, *Gonzalez v. Diamond Resorts Int'l Marketing, Inc.*, 2021 WL 6123538, at *3 (D. Nev. 2021) (opt-in plaintiffs cannot join collective if they have already resolved claims); *Clark*, 68 F.4th at 1010 (individualized defenses can affect "whether particular employees are similarly situated for purposes of sending notice"); *Nghiem v. NEC Elec., Inc.,* 25 F.3d 1437, 1440 (9th Cir. 1994) (party who initiates arbitration has "submit[ted] to the authority of the arbitrator" and "cannot suddenly change his mind and assert lack of authority.") (citation omitted). Moreover, DPs who have diligently pursued their individual claims are not similarly situated to others who have done nothing and now rely on the hope of equitable tolling. *See infra* Section III.D.

Given diverging experiences with arbitration agreements and arbitration itself, all DPs are not similarly situated, and this Court should deny conditional certification. At the very least, the Court should resolve Amazon's renewed motion to compel arbitration before this Motion.

### C. Even If The Court Allows Some Notice, The Court Should Deny Plaintiffs' Requested Notice And Order The Parties To Meet And Confer.

Notice should not issue. In the event the Court disagrees, however, Plaintiffs should be directed to confer with Amazon to develop an appropriate notice. *See, e.g.*, *Duckett v. Rentokil N. Am., Inc.*, 2019 WL 13201977, at *6 (E.D. Wash. 2019) (ordering parties to confer regarding language and form of the notice). There are several problems with Plaintiffs' proposed notice.

**Content:** Any notice should contain a prominent statement on the first page that the Court takes no position on the merits of Plaintiffs' claims, that sending of the notice does not mean DPs



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

have a right to relief, and that one possible outcome is the Court may decertify the action. The notice also should not state (bolded or otherwise) that it is "court-authorized," Dkt. 341-2 at 2, which implies judicial endorsement. *Hoffmann-La Roche*, 493 U.S. at 174 ("courts must take care to avoid even the appearance of judicial endorsement of the merits of [an] action"); *Bazzell*, 2016 WL 3655274, at *8 (approving removal of language that the "court authorized the notice").[8]

Amazon also has other objections to the content of the proposed notice, including:

- It should not give the impression that Plaintiffs are entitled to any damages even if misclassified or even if they worked longer than a scheduled block-time but were still paid more than the federal minimum wage, $7.25/hour.
- It should note that Opt-Ins "may choose to retain different legal counsel," *Lopez v. PT Noodles Holdings Inc.*, 2021 WL 2576912, at *6-7 (D. Ariz. 2021), as thousands of DPs and some of the Opt-Ins pursuing arbitration have already done.
- And it should more clearly identify Amazon's denials and defenses. *See Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1121 (W.D. Wash. 2011) (rejecting one-sided notice).
- The notice should also advise Opt-Ins regarding potential "attorney's fees" and costs. *See, e.g.*, *Schiller v. Rite of Passage, Inc.*, 2014 WL 644565, at *6 (D. Ariz. 2014).

**<u>Means of Distribution</u>:**

1. The 180-day proposed notice period is unnecessarily long. In their prior motion for conditional certification, Plaintiffs asked for 90 days—half what they ask now, and itself overlong. At most, any opt-in period should not exceed sixty days from the date of notice. *See, e.g.*, *Morden v. T-Mobile USA, Inc.*, 2006 WL 2620320, at *4 (W.D. Wash. 2006) (approving 60-day notice period); *Salazar v. Driver Provider Phoenix LLC*, 2021 WL 1394115, at *2 (D. Ariz. 2021)

[8] Relatedly, the Court should not authorize a "reminder" notice, because "they are redundant and could be interpreted as encouragement by the Court to join the lawsuit." *Smith v. Cable Wiring Specialist, Inc.*, 2014 WL 4795160, at *3 (M.D. Fla. 2014).



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

(reducing proposed 90-day notice period to 60 days). Plaintiffs cite no case—and Amazon has identified none—where 180 days was permitted. Potential collective size and purported "high turnover" among delivery drivers do not justify tripling the typical notice period.

2. The Court should not authorize posting notice at Amazon Fulfillment Centers. This idea makes no sense because DPs do not pick up packages or goods from fulfillment centers, let alone go inside them. Further, notice would confuse employees who actually work for Amazon in Fulfillment Centers (and who aren't putative collective members), leading to some responding to Plaintiffs' counsel. And, generally, posting notice is inefficient, as it "will do nothing to notify those" putative collective members who no longer make Flex deliveries. *Russell v. Wells Fargo & Co.*, 2008 WL 4104212, at *5 (N.D. Cal. 2008).

3. The Court should not authorize posting within the Flex Driver app. Plaintiffs offer no argument about why this additional notice is necessary, which is itself reason to deny. Regardless, posting in the app would not provide notice to any putative collective members who no longer make Flex deliveries, likely most putative collective members. In-app notice also is duplicative to notice provided by mail. *See id.*

4. Plaintiffs should not be permitted to send notice by email or text. "[M]ost people do not expect to receive unsolicited business communications via text message," and this"form of notice is unnecessary and overly intrusive." *Slaughter v. Caidan Mgmt. Co.*, 317 F. Supp. 3d 981, 994 (N.D. Ill. 2018).Sending notice by email or text would also require production of putative collective members' cell numbers and email addresses, an unwarranted invasion of their privacy. *Chetwood*, 2020 WL 1689730, at *5 (rejecting production of telephone numbers and notice by text given privacy concerns); *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, 2009 WL 3241790, at *7 (D. Ariz. 2009) (similar). Notice should be limited to mailers. *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 276 (N.D. Cal. 2015) ("names and mailing addresses" are best; "no requirement" for e-mail addresses); *id.* (The Court also finds that providing notice by first class mail will be sufficient to assure that potential collective action members receive actual notice of this case."))..



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

5. A third-party administrator should administer any notice to protect putative collective members' privacy rights and ensure their contact information is not used for solicitations. *See, e.g.*, *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (denying plaintiff's request for contact information and appointing a claims administrator to send notice); *Russell*, 2008 WL 4104212, at *5 (same); *Robinson v. Empire Equity Grp.*, 2009 WL 4018560, at *5 (D. Md. 2009) (requiring notice be mailed by a third-party administrator to "safeguard[] the privacy of potential class members"). These administrators also have the tools and experience to find putative collective members and manage a massive notice process, like here with potentially over one million PDs. Plaintiffs' counsel offers no explanation as to how they could administer a nationwide collective action, let alone one of this magnitude, or how they would protect personal identifying information.

### D. Plaintiffs Do Not Satisfy Their High Burden To Extend The FLSA's Limitation Period To More Than A Decade Based On Equitable Tolling.

The limitations period under the FLSA is two years, with a possible extension to three years for "willful" violations. 29 U.S.C. § 255(a). The FLSA limitation period continues to run with respect to potential opt-ins' claims until that plaintiff files a written consent form (or their own suit). *Id.* § 256(b). Enacting the FLSA, Congress "was aware that 'time would lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for tolling of the limitations period.'" *Adedapoidle-Tyehimba v. Crunch, LLC*, 2013 WL 4082137, at *7 (N.D. Cal. 2013) (citation omitted). Courts should not lightly apply an equitable doctrine to upend that statutory intent.

Here, Plaintiffs demand tolling back more than eight years and until some undefined future date. Mot. 10-12. Equitable tolling is to be applied "sparingly" and only in "extreme" scenarios. *Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir. 1992). Courts generally will equitably toll the FLSA limitations period only "when the plaintiff is prevented from asserting a claim ***by wrongful conduct on the part of the defendant***, or when ***extraordinary circumstances*** beyond the plaintiff's



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

control made it ***impossible*** to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (emphases added). The analysis focuses on potential opt-ins, not the named plaintiff. *See McColley v. Casey's Gen. Stores, Inc.*, 627 F. Supp. 3d 972, 979 (N.D. Ind. 2022) (courts focus on opt-ins', not named plaintiff's, diligence in "pursuing their rights").

### 1. *Amazon Did Not Engage In Wrongful Conduct And No Extraordinary Circumstances Made It Impossible For Opt-Ins To Timely File.*

Plaintiffs do not contend that Amazon engaged in any wrongful conduct. Nor do they argue "extraordinary circumstances" prevented anyone from pursuing claims. Rather, Plaintiffs' only stated basis to deviate from the default limitations period is "lengthy delays in this case that were not caused by Plaintiffs." Mot. 10. Plaintiffs make no effort to discuss the ***potential Opt-Ins'*** diligence, or lack thereof, in pursuing their claims. *Id*.

The mere existence of two court-ordered stays did not make Opt-Ins unaware of the facts underlying their claims. Delays in litigation alone are insufficient "extraordinary circumstances" to warrant equitable tolling where the individual was not otherwise prevented from pursuing claims. *See, e.g.*, *Cranney v. Carriage Servs., Inc.*, 559 F. Supp. 2d 1106, 1108 (D. Nev. 2008) (denying tolling in FLSA case because "plaintiffs [] failed to show that defendants engaged in wrongful conduct" preventing "plaintiffs from asserting their claims" earlier); *Sandoz v. Cingular Wireless, LLC*, 700 F. App'x 317, 320 (5th Cir. 2017) ("extraordinary circumstances" must "derive[] from some 'external obstacle to timely filing ... beyond [the plaintiff's] control,' not from self-inflicted delay."). Opt-Ins were aware about: their TOS classifying them as independent contractors, how many hours they made Flex deliveries, and the service fees they received. "Nothing prevented the Opt-In Plaintiffs from discovering their claims and initiating a suit." *Id*. Indeed, it is public knowledge that other attorneys "have been collecting claims [for arbitration] for years." Zenewicz Decl., Ex. 19 (CNN Article).

Any of the "potential opt-in members" could have brought individual actions in arbitration within the FLSA limitations period, and many did. Indeed, over 32,000 individuals are currently



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

pursuing individual claims against Amazon in arbitration. Clearly, the stays of this litigation did not prevent them from moving on their claims. As this Court noted when granting a stay, "if they seek immediate redress, Plaintiffs have another way to do so: arbitration." Dkt. 133 at 2. Without a showing that individual "potential opt-in members" were prevented from asserting their rights, tolling is inappropriate. *See Fichtner v. Am. Fam. Mut. Ins. Co.*, 2004 WL 3106753, at *10 (D. Or. 2004) (denying tolling in collective action where "[a]t best, plaintiff presents evidence that potential plaintiffs did not know of this action, not that defendant prevented potential plaintiffs from knowing about an FLSA violation"); *Veliz v. Cintas Corp.*, 2007 WL 841776, at *5 (N.D. Cal. 2007) (denying tolling where no "extraordinary circumstances chronicled showing the plaintiffs could not have filed their claims on time"); *Bobbitt v. Broadband Interactive, Inc.*, 2012 WL 2872846, at *3 (M.D. Fla. 2012) (denying tolling where any putative member of the collective "could have chosen to file suit against [defendant]" during delay in litigation).

Moreover, absent "potential opt-in members" have never been precluded from filing opt-in consent forms, either before, during, or after the stays, which would have tolled theie statute of limitations for them. Even while this case was stayed, nearly ***one hundred*** individuals opted into this case without any objection from Amazon. Mot. 12. Where, as here, the potential opt-ins "were free to continue to seek out additional plaintiffs and encourage them to give their written consent to become a party plaintiff in the case, thus tolling the statute of limitations for their claims," equitable tolling is not justified. *LaFleur v. Dollar Tree Stores, Inc.*, 2012 WL 4739534, at *6-7 (E.D. Va. 2012); *see Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1140 (D. Nev. 1999) (denying tolling where, "the ability to file consent forms was solely within Plaintiffs' control," and they were not "prevented [] from so filing"); *Sylvester v. Wintrust Fin. Corp.*, 2014 WL 10416989, at *3 (N.D. Ill. 2014) (denying tolling because "nothing prevented any former employee of the defendants from either filing their own law suit or filing an opt-in notice for this lawsuit").



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

### 2. *Equitable Tolling Is Premature At This Stage.*

In any event, tolling for the "potential opt-in members" now would be premature. The issue of equitable tolling, including the timing, scope, and whether to order tolling at all, is entirely within the Court's discretion based on the facts of the case. *See Phillips v. Cty. of Riverside*, 2022 WL 2162822, at *1 (C.D. Cal. 2022) ("The doctrine of equitable tolling serves to postpone the running of the statute of limitations, on a case-by-case basis."). Even if the Court believes there ***may*** be a basis for tolling for some future opt-in plaintiffs, the Court need not, and should not, rule on the issue at this stage. If notice is allowed, the Court should wait for actual opt-ins to individually offer evidence (which will vary for each) to meet their individual burden for tolling. *See Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) ("Equitable tolling determinations are 'highly fact-dependent,' and are to be decided on a case-by-case basis.") (citation omitted); *Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 2014 WL 12696527, at *8 (D. Alaska 2014) (finding "equitable tolling is more appropriately evaluated after potential plaintiffs have opted in (or decided to not opt in) and it is clear whether tolling is relevant to the parties present before the Court.").[9] But the individualized inquiries needed on equitable tolling for each DP is another reason to deny certification—those inquiries, like the economic realities factors and FLSA liability determinations, would devolve into mini-trials for each opt-in.

## IV. CONCLUSION

This Court should deny Plaintiffs' motion and decline to issue nationwide notice to DPs.

*I certify that this memorandum does not exceed 11,400 Words, as set forth in the Court's October 17, 2024 Order for Defendants' over-length brief (Dkt. 345).*

[9] *Zeman v. Twitter, Inc.*, 2024 WL 4032051, at *5 (N.D. Cal. 2024), cited at Mot. 12, did not address equitable tolling of the statute of limitations and has no bearing on this argument.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Dated: October 25, 2024

Respectfully submitted,

By: *s/ Andrew DeCarlow*

Andrew DeCarlow, WSBA #54471
MORGAN, LEWIS & BOCKIUS LLP
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Telephone: (206) 274-0154
Facsimile: (206) 274-6401
andrew.decarlow@morganlewis.com

Richard G. Rosenblatt (*pro hac vice*)
James P. Walsh, Jr. (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540-6241
Telephone: (609) 916-6600
Facsimile: (609) 916-6601
richard.rosenblatt@morganlewis.com
james.walsh@morganlewis.com

Brian D. Berry (*pro hac vice*)
Sarah Zenewicz (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Fax: (415) 442-1001
brian.berry@morganlewis.com
sarah.zenewicz@morganlewis.com

John S. Battenfeld (*pro hac vice*)
Max C. Fischer (*pro hac vice*)
Brian D. Fahy (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
300 S. Grand Ave., Suite 2200
Los Angeles, CA 90071
Telephone: (213) 612-2500
Fax: (213) 612-2501
jbattenfeld@morganlewis.com
max.fischer@morganlewis.com
brian.fahy@morganlewis.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2024, I caused to be electronically filed the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR NOTICE TO BE ISSUED TO SIMILARLY SITUATED EMPLOYEES PURSUANT TO 29 U.S.C. § 216(b)** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the registered attorneys of record.

By: *s/ Andrew DeCarlow*
Andrew DeCarlow
MORGAN, LEWIS & BOCKIUS LLP
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Telephone: (206) 274-0154
Facsimile: (206) 274-6401
andrew.decarlow@morganlewis.com