Hon. John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

BERNADEAN RITTMAN, et al.,

                       Plaintiffs,

    v.

AMAZON.COM INC. and AMAZON
LOGISTICS, INC.,

                       Defendants.

No. No. 2:16-cv-1554-JCC

DECLARATION OF JOEL B. YOUNG
IN SUPPORT OF MOTION TO
INTERVENE FOR LIMITED PURPOSE
OF FILING MOTION TO EXCLUDE
INTERVENORS FROM FLSA OPT-IN
NOTICE

I, Joel B. Young, declare as follows:

1.      I am a partner with The Tidrick Law Firm LLP. I am licensed to practice before all of the courts of the State of California, various federal courts in California, and the U.S. Court of Appeals for the Ninth Circuit. I am over the age of 21, have personal knowledge of the facts set forth herein and, if called as a witness, I could and would competently testify thereto.

2.      Attached hereto as **Exhibit A** is a true and correct copy of Intervenors' proposed Motion To Exclude Intervenors from FLSA Opt-In Notice.

3.      My law firm, The Tidrick Law Firm LLP, represents Raymond Cho (individually "Intervenor") and 2,584 other similarly situated Amazon Flex drivers (collectively "Intervenors").[1]

---

[1] Local counsel on this motion is co-counsel on a number of the arbitrations, as well.

DECLARATION OF JOEL B. YOUNG (No. 2:16-cv-1554-JCC) - 1

4.     Intervenors were all Amazon Flex drivers between 2017 and the present in the state of California.

5.     Intervenors' individual arbitrations are at varying procedural stages of arbitration, with some scheduled for summary judgment motions and some for arbitration hearings within the next month. Intervenors have all filed demands for arbitration. Attached hereto as **Exhibit B** is a true and correct copy of Intervenor Raymond Cho's Amended Arbitration Demand. This arbitration demand states, *inter alia*, "Plaintiff ***opts out*** of any and all past, present, and future arbitrations, class actions, representative actions, and collective actions against Defendant and/or its affiliates that contain any claims referenced in this Demand and/or settlements that purport to release any claims referenced in this Demand. Furthermore, ***Plaintiff requests that Defendant notify the court(s), the settlement administrator(s), and plaintiff's counsel of Plaintiff's desire to opt-out and not to participate in any and all such actions and settlements***." The arbitration demands for all Intervenors include this language.

6.     All of Intervenors' wage arbitration demands: (1) turn on the issue of whether Amazon Flex drivers were misclassified as independent contractors rather than employees; (2) share a common nucleus of operative facts; and (3) depending on the claim, share the "test" to determine employment status. Furthermore, the vast majority of Intervenors each have demanded damages for the FLSA and all have asserted California state and municipal wage-related violations. Amazon may assert that determinations made in the present FLSA action result in issue and/or claim preclusion in Intervenors' individual arbitrations.

7.     Attached hereto as **Exhibit C** is a true and correct highlighted copy of a filing in *Camp v. Maplebear, Inc.*, Los Angeles Superior Court Case No. BC652216, entitled Proposed-Intervenor Donna Busick's Objection to Class Settlement, filed April 14, 2017.

8.     Attached hereto as **Exhibit D** is a true and correct copy of Amazon Flex Independent Contractor Terms of Service dated September 30, 2016.

DATED this 28th day of October, 2024 in Oakland, California.

*Joel B. Young*

By: _____
     Joel B. Young

# EXHIBIT A

Hon. John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

BERNADEAN RITTMAN, et al.,

Plaintiffs,

v.

AMAZON.COM INC. and AMAZON
LOGISTICS, INC.,

Defendants.

No. 2:16-cv-1554-JCC

INTERVENOR'S MOTION TO
EXCLUDE INTERVENORS FROM
FLSA OPT-IN NOTICE

NOTING DATE

Intervenor Raymond Cho (individually, "Intervenor") and 2,584 other similarly-situated Amazon Flex drivers (collectively, "Intervenors") have brought wage-related claims under the Fair Labor Standards Act (FLSA) and California state and municipal laws in separately-filed, individual Amazon Flex arbitrations. Intervenor and Intervenors are represented by the same counsel, The Tidrick Law Firm LLP.

Intervenors take no position on the merits of Plaintiffs' Renewed Motion for Notice to Be Issued to Similarly Situated Employees Pursuant to 29 U.S.C. § 216(b) ("Renewed Opt-in Motion"), ECF No. 341. However, if the Renewed Opt-in Motion is granted, Intervenors respectfully request that the Court consider one or all of the following options, preferably the first of them: (1) revise the proposed FLSA collective definition in the Renewed Opt-in Motion to exclude Intervenors (e.g., "Anyone who has worked as an Amazon Flex driver in the United States

[after October 27, 2013] for minimum wage violations (receiving less than $7.25 per hour, taking into account mileage expenses that driver have had to bear for their vehicles) and unpaid overtime for hours worked beyond 40 per week, ***excluding any Amazon Flex driver who has filed a wage-related claim in arbitration against Amazon Logistics, Inc. and/or Amazon.***"); (2) provide the opt-in notice directly to Intervenors' counsel, in lieu of providing notice to Intervenors; or (3) modify the proposed opt-in notice (ECF No. 341-2) as provided in Exhibit 1 (Clean) and Exhibit 2 (Redline) and attached hereto.

## I.    BACKGROUND

Intervenors are all Amazon Flex drivers from approximately 2017 to the present in the State of California. *See* Declaration of Joel Young in Support of Motion to Intervene for the Limited Purpose of Filing Motion to Exclude Intervenors From FLSA Opt-In Notice ("Young Decl.") at ¶ 4. Intervenors are represented by the same counsel, The Tidrick Law Firm LLP. *Id.* at ¶ 3. Intervenors have all filed demands for arbitration. *Id.* at ¶ 5. Each arbitration demand states, *inter alia*:

> Plaintiff ***opts out*** of any and all past, present, and future arbitrations, class actions, representative actions, and collective actions against Defendant and/or its affiliates that contain any claims referenced in this Demand and/or settlements that purport to release any claims referenced in this Demand. Furthermore, ***Plaintiff requests that Defendant notify the court(s), the settlement administrator(s), and plaintiff's counsel of Plaintiff's desire to opt-out and not to participate in any and all such actions and settlements***.[1]

*Id.* at ¶ 5. Intervenors' individual arbitrations are at varying procedural stages of arbitration, with some scheduled for summary judgment motions and/or arbitration hearings within the next month. *Id.* at ¶ 5. All of Intervenors' wage arbitration demands: (1) turn on the issue of whether Amazon

---

[1] Despite the request that Defendants' counsel notify the Court of these pending claims in arbitration, it appears that Defendants omitted these matters in all of its Notice of Related Case filings. *See* Notice of Related Case ECF Nos. 114 and 272.

Flex drivers were misclassified as independent contractors rather than employees; (2) share a common nucleus of operative facts; and (3) depending on the claim, share the "test" to determine employment status. *Id.* at ¶ 5. Furthermore, the vast majority of Intervenors each have demanded damages for the FLSA and all have asserted California state and municipal wage-related violations. *Id*. at ¶ 6. Amazon may assert that determinations made in the present FLSA action result in issue and/or claim preclusion in Intervenors' individual arbitrations. *Id.* at ¶ 6.

On October 4, 2024, Plaintiffs in this action filed the Renewed Opt-in Motion, ECF No. 341, which is noted for consideration on November 1, 2024. Plaintiffs herein seek "opt-in" notice to be sent by the Court to:

> Anyone who has worked as an Amazon Flex driver in the United States [after October 27, 2013] for minimum wage violations (receiving less than $7.25 per hour, taking into account mileage expenses that driver have had to bear for their vehicles) and unpaid overtime for hours worked beyond 40 per week.

ECF No. 341-2. Intervenors fall within scope of this proposed notice.

## II.    ARGUMENT

**A.    The Court Should Amend the Proposed FLSA Class Definition in the Renewed Opt-in Motion to Exclude Intervenors.**

The Court should amend the proposed FLSA class definition in the Renewed Opt-in Motion to exclude Intervenors for the following reasons.

First, it is undisputed that Intervenors have a contractual right to individually arbitrate their disputes—a right they have already exercised. Defendant entered into contracts with Intervenors that expressly provide:

> THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM OR TO YOUR PERFORMANCE OF SERVICES.

*See* Young Decl. Exhibit D. Under both California and federal law, courts must give full effect to arbitration agreements and enforce them according to their terms. *See* Cal. Code Civ. Proc. § 1281 (stating that a written arbitration agreement "is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract"); 9 U.S.C. § 2 (same). Because the parties' agreement allows for disputes to be resolved in arbitration and because that agreement must be given effect as to Intervenors, this Court should not send the FLSA Notice to Intervenors. *See Sherman v. CLP Res., Inc.*, 2015 WL 13542759, at *2 (C.D. Cal. 2015) (FLSA order required members with enforceable arbitration agreements "excluded from the class").

Plaintiffs' counsel's firm, Lichten & Liss-Riordan, P.C., cannot reasonably disagree. Indeed, Lichten & Liss-Riordan, P.C. objected on similar grounds to the class action settlement in *Camp v. Maplebear, Inc.*, Los Angeles Superior Court Case No. BC652216. In that case, Lichten & Liss-Riordan, P.C. stated: "unlike the Camp Plaintiffs, [Objector] Ms. Busick has filed her claim in the proper forum, arbitration. Thus, this settlement seeks to deprive the Massachusetts workers of the forum that they have a contractual right to – arbitration – which Ms. Busick has used to their benefit in her case thus far. . . . [A]pproval of the settlement should be denied with respect to the Massachusetts workers. ***These workers should be permitted to proceed with the arbitration that Ms. Busick has brought on their behalf. If the Court were to grant preliminary approval with respect to the rest of the case, the Massachusetts subclass should simply be carved out of the settlement so as to allow Ms. Busick to proceed on this subclass' [sic] claims in the arbitration she has been pursuing***." *See* Young Decl. ¶ 7 & Ex. C (Proposed-Intervenor Donna Busick's Objection to Class Settlement, filed April 14, 2017) at 9:5-8, 11:8-11, and 15:12-16 (emphasis added).

<u>Second</u>, there are obvious factual and legal overlaps between the FLSA claims asserted in this case and Intervenors' arbitration matters, the vast majority of whom assert FLSA claims and all of whom California state law claims. All of Intervenors' wage arbitration demands turn on the issue of whether Amazon Flex drivers were misclassified as independent contractors rather than employees; share a common nucleus of operative facts, and depending on the claim, share the "test" to determine employment status. Young Decl. ¶ 6. This raises the obvious possibility that: (1) determinations made in this case may result in claim or issue preclusion in the arbitration proceedings, or vice versa; and/or (2) Amazon will assert choice of remedies issues. *See* Defendants' Opposition to Plaintiffs' Renewed Motion for Notice to Be issued to Similarly Situated Employees Pursuant to 29 U.S.C. § 216(b), ECF No. 352 at 35:4-7 ("They clearly are not similarly situated to those without pending claims, or those arguing they don't have enforceable arbitration agreements. And ***collateral estoppel***, ***claim-splitting***, and other individualize defenses will apply to them, not others.").

Third, Intervenors have already requested not to be involved in this matter. *See* Young Decl. ¶ 5 ("Plaintiff ***opts out*** of any and all past, present, and future arbitrations, class actions, representative actions, and collective actions against Defendant and/or its affiliates that contain any claims referenced in this Demand….").

**B. The Court Should Alternatively Provide the Opt-in Notice Directly to Counsel for Intervenors.**

In the event that the Court does not exclude Intervenors from the FLSA Class definition, the Court should provide opt-in notice directly to Intervenors' counsel, not Intervenors.

Intervenors have selected counsel to represent them in their wage and hour claims against Amazon. Sending an opt-in notice to Intervenors would interfere with the attorney-client relationship. Specifically, Plaintiffs' counsel is attempting to provide information directly to

Intervenors through a Court-sanctioned notice, information that should be conveyed to Intervenors by their own counsel. Indeed, if the Court approves Plaintiffs' request, Plaintiffs' counsel's actions could be seen as unlawful interference with the attorney-client relationship and a violation of Intervenors' Fifth Amendment due process rights. *Cf. Abrams & Fox, Inc. v. Briney*, 39 Cal. App. 3d 604, 607 (1974) ("It is well established that an action will lie for the intentional interference by a third person with a contractual relationship either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification for such interference . . . General principles regarding tortious interference with contractual relations are applicable to interference with attorney-client relations."); *Arthur v. United States*, 986 A.2d 398, 412 (D.C. 2009) ("Here, the trial court committed error by questioning and advising appellant after he had conferred with counsel and had unequivocally stated his intention to take the stand in his own defense."); *United States v. Stringer*, 535 F.3d 929, 941 (9th Cir. 2008) ("government interference with a defendant's relationship with his attorney may render counsel's assistance so ineffective as to violate . . . his Fifth Amendment right to due process of law.").

Moreover, sending opt-in notice directly to Intervenors, not their counsel, would cause a great deal of confusion among Intervenors. For example, (1) Intervenors may receive differing advice or interpretations from their own counsel versus the information in the opt-in notice, leading to uncertainty about their legal rights and options; (2) the opt-in notice may contain complex legal language that Intervenors do not fully understand, causing them to misinterpret their rights or the implications of opting in; (3) receiving the opt-in notice directly could create a sense of urgency or pressure to make a decision without consulting their own attorney, potentially resulting in hasty or uninformed choices; (4) Intervenors might question the intentions of both their counsel and the Plaintiff's counsel, leading to distrust and potential disruption of their ongoing legal relationship;

and (5) the opt-in notice might inadvertently affect the legal strategy that Intervenors' counsel developed, leading to confusion about how to proceed in their arbitrations.

**C.     At a Minimum, the Court Should Modify Plaintiffs' Proposed Opt-in Notice.**

If the Court is inclined to grant Plaintiffs' Renewed Opt-In Motion and provide the opt-in notice to Intervenors, then Intervenors request that the Court modify Plaintiff's proposed notice to address the unique issues associated with Intervenors' claims. A draft is attached hereto as Exhibit 1 (Clean) and Exhibit 2 (Redline).

### III.     CONCLUSION

If the Court grants Plaintiffs' Renewed Opt-in Motion, ECF No. 341, the Court should adopt one of Intervenors' requests above, preferably the first of them, to address the unique issues associated with Intervenors' claims.

DATED this 28th day of October, 2024.

KELLER ROHRBACK L.L.P.

By: _____
    Nathan Nanfelt, WSBA #45273
    Natida Sribhibhadh, WSBA #49695
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101-3268
    Telephone: (206) 623-1900
    Email: nnanfelt@kellerrohrback.com
    Email: natidas@kellerrohrback.com

THE TIDRICK LAW FIRM LLP

By: _____
    Joel B. Young, *Pro Hac Vice Forthcoming*
    Steven Tidrick, *Pro Hac Vice Forthcoming*
    1300 Clay Street, Suite 600
    Oakland, CA 94612
    Telephone: (510) 788-5100
    Email: jby@tidricklaw.com
    Email: steve@tidricklaw.com

# EXHIBIT 1

**[Draft Notice and Consent Form to Intervenors]**

## COURT-AUTHORIZED NOTICE OF YOUR RIGHT TO "OPT-IN" TO CLAIMS BROUGHT UNDER THE FLSA AGAINST AMAZON.COM, INC.

United States District Court for the Western District of Washington
Rittmann, et al. v. Amazon.com, Inc.
No. 2:16-CV-01554

[INSERT DATE]

Dear current or former Amazon Flex delivery driver:

Enclosed is a consent form allowing you to "opt-in" to participate in a case filed by Amazon Flex delivery drivers (for more information about the case, see below). ***You are already represented by an attorney in arbitration proceedings or otherwise, for claims arising out of your work as an Amazon Flex driver, so please contact your attorney about this notice before deciding whether to fill out and send in the enclosed consent form. Participating in this case could undermine your claims in arbitration and result in no recovery of money***.

According to the company's records, you may be eligible to participate in this case because you have worked as an Amazon Flex delivery driver since October 27, 2013.  In order to participate in the case and obtain a portion of any judgment or settlement that may be entered in the plaintiffs' favor, you must complete and return the enclosed consent form to the address below by **no later than [INSERT DATE]**. However, ***you are already represented by an attorney, in arbitration proceedings or otherwise, for claims arising out of your work as an Amazon Flex driver, so please contact your attorney about this notice before you make any decision whether participate in this action***.

In this lawsuit, the plaintiffs allege that Amazon violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, because Amazon has classified its Flex delivery drivers as independent contractors rather than employees, and as a result, has failed to pay time-and-a-half for overtime compensation when drivers work more than 40 hours in a workweek and has failed to ensure that drivers receive at least minimum wage (including when accounting for the expenses that driver must bear to perform their work, such as for gas, car maintenance, or other transportation costs as well as uncompensated time spent working past their designated shift).

Amazon denies that it has violated the FLSA. It contends that its delivery drivers are properly classified as independent contractors rather than employees and need not be paid overtime compensation or be guaranteed minimum wage under the FLSA.

Although Amazon disputes the merits of this case, it recognizes its delivery drivers' right to pursue these claims in court. Amazon has given its assurance that you will not be subject to retaliation of any kind by choosing to participate in this case, and you will not be discharged or subject to discrimination in any manner if you choose to exercise your rights under the FLSA.

There has not been a decision by the court as to whether the plaintiffs' position or the company's position is the correct one. There has also not been any settlement reached.

The plaintiffs who initiated this case will work with us to make decisions regarding the progress of this litigation, and we welcome your input as well into those decisions. You may also be asked to be a witness or to provide evidence in the case, although not all employees who submit a consent form may be required to do so.

**<u>As noted above, you are already represented by an attorney in arbitration proceedings for these claims arising out of your work as an Amazon Flex driver,</u>** *<u>so please contact your attorney about this notice before you make any decision whether to fill out and send in the enclosed consent form</u>*. If you have any questions, do not hesitate to contact your attorney at the phone number or e-mails provided below:

[Insert contact information Intervenors' Counsel ]

This notice has been authorized by the United States District Court. Please do not contact the court; you may contact the counsel listed above with any question you have.

Yours truly,

[Insert Name of Intervenors' Counsel]

**OPT-IN CONSENT FORM TO PARTICIPATE IN FLSA CASE AGAINST AMAZON**

United States District Court for the Western District of Washington
Rittmann, et al. v. Amazon.com, Inc.
No. 2:16-CV-01554

Complete and return to: [Insert Name and address of Intervenors' Counsel]

Name: _____
Address: _____
City: _____ State: _____ Zip: _____
Telephone: _____ [home] _____ [cell]
E-Mail: _____

**CONSENT TO JOIN COLLECTIVE ACTION**
**Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)**

1. I consent and agree to pursue my federal wage claims arising out of the work performed as an Amazon Flex delivery driver.

2. I worked as an Amazon Flex delivery driver from approximately (list month & year) _____ until _____.

3. I have worked as an Amazon Flex delivery driver in the following state(s): _____.

4. During that time, I did not always receive minimum wage for all hours worked when accounting for my expenses and/or did not receive time-and-a-half my regular rate of pay for hours worked in excess of forty per week.

5. I understand that I will be joining a lawsuit to bring a claim under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* I hereby consent, agree, and "opt in" to become a plaintiff herein.

6. I hereby designate [Insert name of intervenors' Counsel] to represent me for all purposes in this action.

Signature: _____ Date: _____

# EXHIBIT 2

**[Draft Notice and Consent Form to Intervenors]**

## COURT-AUTHORIZED NOTICE OF YOUR RIGHT TO "OPT-IN" TO CLAIMS BROUGHT UNDER THE FLSA AGAINST AMAZON.COM, INC.

United States District Court for the Western District of Washington
<u>Rittmann, et al. v. Amazon.com, Inc</u>.
NO. 2:16-CV-01554

[INSERT DATE]

Dear current or former Amazon Flex delivery driver:

Enclosed is a consent form allowing you to "opt-in" to participate in a case ~~that has been~~ filed by Amazon Flex delivery drivers. ~~This~~ (for more information about the case ~~has been brought on behalf~~, see below). ***You are already represented by an attorney in arbitration proceedings or otherwise, for claims arising out of*** ~~anyone who has worked~~***your work as an Amazon Flex*** ~~delivery~~ ***driver*** ~~in the United States for minimum wage violations (receiving less than $7.25 per hour, taking into account mileage expenses that drivers have had~~***, so please contact your attorney about this notice before deciding whether to*** ~~bear for their vehicles)~~***fill out and*** ~~unpaid overtime for hours worked beyond 40 per week.~~ ~~This is a court-authorized notice.~~***send in the enclosed consent form. Participating in this case could undermine your claims in arbitration and result in no recovery of money.***

According to the company's records, you may be eligible to participate in this case because you have worked as an Amazon Flex delivery driver since October 27, 2013. In order to participate in the case and obtain a portion of any judgment or settlement that may be entered in the plaintiffs' favor, you must complete and return the ~~attached~~enclosed consent form to the address below by **no later than [INSERT DATE]**. However, ***you are already represented by an attorney, in arbitration proceedings or otherwise, for claims arising out of your work as an Amazon Flex driver, so please contact your attorney about this notice before you make any decision whether participate in this action***.

In this lawsuit, the plaintiffs allege that Amazon violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, because Amazon has classified its Flex delivery drivers as independent contractors rather than employees, and as a result, has failed to pay time-and-a-half for overtime compensation when drivers work more than 40 hours in a workweek and has failed to ensure that drivers receive at least minimum wage (including when accounting for the expenses that driver must bear to perform their work, such as for gas, car maintenance, or other transportation costs as well as uncompensated time spent working past their designated shift).

Amazon denies that it has violated the FLSA. It contends that its delivery drivers are properly classified as independent contractors rather than employees and need not be paid overtime compensation or be guaranteed minimum wage under the FLSA.

Although Amazon disputes the merits of this case, it recognizes its delivery drivers' right to pursue these claims in court. Amazon has given its assurance that you will not be subject to retaliation of any kind by choosing to participate in this case, and you will not be discharged or subject to discrimination in any manner if you choose to exercise your rights under the FLSA.

There has not been a decision by the court as to whether the plaintiffs' position or the company's position is the correct one. There has also not been any settlement reached. ~~If you do not return the enclosed consent form by **[INSERT DATE]**, you will not be considered part of this case and will be unable to receive a share of any settlement or judgment that the plaintiffs may obtain. If you do participate in the case, you will be bound by any ruling entered by the court or settlement reached by the parties and approved by the court.~~

The plaintiffs who initiated this case will work with us to make decisions regarding the progress of this litigation, and we welcome your input as well into those decisions. You may also be asked to be a witness or to provide evidence in the case, although not all employees who submit a consent form may be required to do so.

~~Again, to join this case~~**As noted above**, **you** ~~must return~~**are already represented by an attorney in arbitration proceedings for these claims arising out of your work as an Amazon Flex driver,** *so please contact your attorney about this notice before you make any decision whether to fill out and send in* **_the_** ~~attached "opt-in"~~*enclosed* **_consent form_** ~~to the address below by no later than [INSERT DATE]. You may also complete and return the "opt-in" consent form online at [INSERT URL]. In the meantime, if~~. If you have any questions, do not hesitate to contact ~~us~~your attorney at the phone number or e-mails provided below:

~~Shannon Liss-Riordan~~
~~Jeremy Abay~~
~~Lichten & Liss-Riordan, P.C.~~
~~729 Boylston Street, Suite 2000~~
~~Boston, MA 02116~~
~~(617) 994-5800~~
~~[INSERT EMAIL]~~
~~[INSERT URL]~~

~~*Attorneys for Plaintiffs*~~

[Insert contact information Intervenors' Counsel ]


　　　　This notice has been authorized by the United States District Court. Please do not contact the court; you may contact the counsel listed above with any question you have.

　　　　　　　　　　　　　　　　Yours truly,



　　　　　　　　　　　　　　　　~~Shannon Liss-Riordan~~



　　　　　　　　　　　　　　　　[Insert Name of Intervenors' Counsel]

**OPT-IN CONSENT FORM TO PARTICIPATE IN FLSA CASE AGAINST AMAZON**

United States District Court for the Western District of Washington
<u>Rittmann, et al. v. Amazon.com, Inc</u>.
No. 2:16-CV-01554

Complete and return to: ~~Shannon Liss-Riordan~~ [Insert Name and address of Intervenors' Counsel]

~~Jeremy Abay~~
~~LICHTEN & LISS-RIORDAN, P.C.~~
~~729 Boylston Street, Suite 2000~~
~~Boston, MA 02116~~
~~Tel: (617) 994-5800 | Fax: (617) 994-5801~~
~~[INSERT EMAIL ADDRESS]~~

~~**\*You may also complete and return this opt-in consent form at [INSERT URL].\***~~

Name: _____
Address: _____
City: _____ State: _____ Zip: _____
Telephone: _____ [home] _____ [cell]
E-Mail: _____

**CONSENT TO JOIN COLLECTIVE ACTION**
**Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)**

1. I consent and agree to pursue my federal wage claims arising out of the work performed as an Amazon Flex delivery driver.

2. I worked as an Amazon Flex delivery driver from approximately (list month & year) _____ until _____.

3. I have worked as an Amazon Flex delivery driver in the following state(s): _____.

4. During that time, I did not always receive minimum wage for all hours worked when accounting for my expenses and/or did not receive time-and-a-half my regular rate of pay for hours worked in excess of forty per week.

5. I understand that I will be joining a lawsuit to bring a claim under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* I hereby consent, agree, and "opt in" to become a plaintiff herein ~~and to be bound by any judgment by the court or any settlement of this action~~.

~~6.~~ I hereby designate ~~Lichten & Liss-Riordan, P.C., 729 Boylston Street, Suite 2000,~~
6. ~~Boston, MA 02116,~~ [Insert name of intervenors' Counsel] to represent me for all purposes in this action.

Signature: _____ Date: _____

# EXHIBIT B

ORIGINAL

SHANNON LISS-RIORDAN (State Bar No. 310719)
sliss@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

MATTHEW D. CARLSON (State Bar No. 273242)
mcarlson@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
466 Geary St., Suite 201
San Francisco, CA 94102
Telephone:     (415) 630-2651
Facsimile:     (617) 995-5801

Attorneys for Proposed Intervenor Donna Busick,
on behalf of herself and all others similarly situated



FILED
LOS ANGELES SUPERIOR COURT

APR 14 2017

SHERRI R. CARTER, EXECUTIVE OFFICER/CLERK
BY DENNIS CARROLL, DEPUTY



## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| CASEY CAMP et al, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>MAPLEBEAR, INC., dba INSTACART; AND DOES 1 THROUGH 100, inclusive,<br><br>        Defendants. | Case No. BC652216<br><br>**PROPOSED-INTERVENOR DONNA BUSICK'S OBJECTION TO CLASS SETTLEMENT**<br><br>Date:  April 19, 2017<br>Time:  11:00 a.m.<br>Department: 311<br><br>Assigned for all purposes to:<br>Hon. John Shepard Wiley<br><br>Complaint filed: February 28, 2017 |

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................... 1

II.     RELEVANT BACKGROUND ...................................................................................... 3

III.    LEGAL STANDARD..................................................................................................... 4

IV.     ARGUMENT.................................................................................................................. 4

    A.  The Settlement is Not Fair To The Massachusetts Sub-class And Is Not In Their
        Best Interests................................................................................................................ 4

        1.  The Parties Fatally Failed to Provide Sufficient Information With
            Which To Properly Evaluate The Monetary Recovery ......................................... 4

        2.  The Parties Overstate The Risks of Continued Litigation For the
            Massachusetts Sub-Class Whose Claims Are Relatively Stronger
            Than the Rest of the Settlement Class.................................................................. 8

    B.  Plaintiffs and Their Counsel Do Not Have Standing To Settle The
        Massachusetts Expense Reimbursement Claim And Are Not Adequate
        Representatives of the Massachusetts Class ................................................................ 12

    C.  Approval Of the Settlement Should Be Denied for the Additional Reason That
        The Circumstances of the Settlement Indicate A Reverse Auction................................. 13

V.      CONCLUSION............................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union, LLC,*
    (C.D. Cal. 2007) 243 F.R.D. 377 ........................................................................... 13

*Adams v. Benton County Sheriff Kelly Cradduck*
    (W.D. Ark., Aug. 1, 2014) 2014 WL 12639862 .................................................... 8

*Camara v. Att'y Gen.*
    (Mass. 2011) 458 Mass. 756 ................................................................................. 1

*Clark v. American Residential Services LLC*
    (2009) 175 Cal.App.4th 785 ................................................................................. 6

*Cordy v. USS-Posco Industries*
    (N.D. Cal. 2013) 2013 WL 4028627 .................................................................... 6

*Cruz v. Manlo Enterprises, Inc. d/b/a Mario's Showplace ("Mario's Showplace")*
    (Mass. Super. June 10, 2011) Worcester Civ. A. No. 2010-01931 ...................... 11

*Cullan and Cullan LLC v. M-Qube, Inc.*
    (D. Neb., Jan. 30, 2014) 2014 WL 347034 .......................................................... 12

*Custom Led, LLC v. eBay, Inc.,*
    (N.D. Cal. 2013) 2013 WL 4552789 .................................................................... 6

*Cutter v. HealthMarkets, Inc.,*
    (D. Mass. July 26, 2011) Civ. A. No. 1:10-cv-11488-JLT ................................... 11

*Dalton v. Lee Publications, Inc.*
    (S.D. Cal. 2010) 270 F.R.D. 555 ......................................................................... 7

*Driscoll v. Worcester Telegram & Gazette Corp.*
    (Super. Ct. Aug. 26, 2013) Worcester Civ. A. No. CV-2009-00043-E ................. 11

*Dunk v. Ford Motor Co.*
    (1996) 48 Cal.App.4th 1794 ............................................................................ 4, 14

*Fraser v. Asus Computer Intern.,*
    (N.D. Cal. 2012) 2012 WL 6680142 .................................................................... 6

*In re Auction Houses Antitrust Litigation*
    (S.D.N.Y. 2001) 138 F.Supp.2d 548 .................................................................... 12

*Koral v. Inflated Dough, Inc.*
    (D. Co. Sept. 9, 2014) 2014 WL 4904400 ............................................................ 7

*Kullar v. Foot Locker Retail, Inc.*
    (2008) 168 Cal.App.4th 116 ....................................................................... 1, 4, 6, 14

*Lewis v. Starbucks Corp.*
    (E.D. Cal. Sept. 11, 2008) 2008 WL 4196690 ...................................................... 7

*Luckey v. Superior Court*
   (2014) 228 Cal.App.4th 81 ................................................................ 4, 5, 15

*Martin v. Cargill, Inc.*
   (D. Minn. 2013) 295 F.R.D. 380 .......................................................... 6, 11

*Massachusetts Delivery Ass'n v. Healey*
   (D. Mass. July 8, 2015) 2015 WL 4111413 ............................................. 1

*Meier v. MasTec North America, Inc.*,
   (Mass. Super. Ct. Jan. 6, 2015) Hampden Civ. A. No. 13-448 ................... 11

*Negrete of North America v. Allianz Life Ins. Co.*
   (9th Cir.2008) 523 F.3d 1091 ................................................................ 3

*O'Connor v. Uber Techs., Inc.*
   (N.D. Cal. 2015) 311 F.R.D. 547........................................................... 7

*Odon USA Meats, Inc. v. Ford Motor Credit Corp.*
   (N.D. Ill., Sept. 27, 1994) 1994 WL 529339 .................................... 11, 15

*Raposa v. Mardi Gras Entertainment, Inc.*,
   (Mass. Super. Dec. 11, 2013) Hampden Civ. A. No. 2010-00034 ............... 11

*Rosnov v. Molloy*
   (2011) 460 Mass. 474 .......................................................................... 2

*Sagar v. Fiorenza, et al.*
   (Mass. Super. Ct. Jan. 18, 2014) Middlesex Civ. A. No. 12-cv-4081-F ........ 11

*Simmons v. Kilnapp Enterprises, Inc.*
   (Mass. Super. Ct. June 13, 2014) Essex Civ. A. No. 13-551...................... 11

*Sobel v. Hertz Corp.*,
   (D. Nev. 2011) 2011 WL 2559565 ......................................................... 6

*Vargas v. Spirit Delivery* (D. Mass. Mar. 24, 2017)
   2017 WL 1115163 .............................................................................. 11

*Vasquez v. Ye Olde Lamplighter II, Inc. ("Lamplighter")*
   (Mass. Super. Nov. 13, 2013) Worcester Civ. A. No. 2011-1610-D ............ 11

*Weber v. Coast to Coast Medical, Inc.*
   (Mass. App. Ct. 2013) 83 Mass. App. Ct. 478 ........................................ 2

*Zellagui v. MCD Pizza, Inc.*
   (E.D. Pa. 2014) 59 F. Supp. 3d 712........................................................ 7

**Statutes**

Mass. Gen. L. c. 149 § 148B(a)(2) ........................................................... 10, 13

**Other Authorities**

Newberg on Class Actions § 13:57 (5th ed.) .................................................. 15

PROPOSED INTERVENOR DONNA BUSICK'S OBJECTION TO SETTLEMENT

## I.    INTRODUCTION

This case, which was filed just over a month ago, appears to have been filed simply for settlement purposes and seeks to settle *all claims* against Defendant Instacart relating to misclassification and related wage violations.  Thus, it appears that the valuable claims of the Massachusetts drivers have been sacrificed in order to achieve this nationwide settlement and have been compromised for far less than their value without justification.  In determining whether to approve the settlement, the Court must consider the proposed amount of the settlement compared to the potential value of the claims.  *See Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 120. Here, the Massachusetts claims are far more valuable than those of Instacart delivery drivers anywhere else in the country because: (1) Ms. Busick is far closer to obtaining relief on behalf of a class than the Plaintiffs in this litigation ever have been; (2) the Massachusetts Independent Contractor law is far more strict and protective than the laws in any other state (meaning that, if Ms. Busick's case proceeds in arbitration, the Massachusetts sub-class is extremely likely to win class certification and summary judgment as a matter of law on the question of whether they have been misclassified)[1]; (3) courts have interpreted Massachusetts law to allow for expense reimbursement, unlike the law anywhere else in the country other than California[2]; and (4) Massachusetts law provides for *mandatory* treble damages for wage violations (as well as statutory interest at the rate of 12% per annum).[3] Indeed,

---

[1]    Indeed, in applying Mass. Gen. L. c. 149 §148B, courts have been nearly unanimous in determining as a legal matter (on summary judgment) whether workers are employees or independent contractors under the Commonwealth's strict conjunctive test. *See* cases cited at p. 12, n. 7 of Ms. Busick's Motion to Intervene.

[2]    *See Awuah v. Coverall North America Inc.* (2011) 460 Mass. 484, 494 (Massachusetts Supreme Judicial Court held that misclassified cleaning workers could recover damages under the state's wage statute, § 148, for money they had to pay in order to work); *Camara v. Att'y Gen.* (Mass. 2011) 458 Mass. 756, 762 n. 11 (a policy that "shifts to the ... employees some of what appear to be the ordinary costs of doing business" violates the Massachusetts Wage Act); *Martins v. 3PD, Inc.* 2014 WL 1271761, *7-10 (D. Mass. Mar. 27, 2014) (holding that "the charging of these fees to Plaintiffs was simply another example of the many ways in which 3PD shifted the ordinary cost of doing business to its employees."); *Massachusetts Delivery Ass'n v. Healey* (D. Mass. July 8, 2015) 2015 WL 4111413, *6  (noting that liability under § 148B would require courier company "to supply company vehicles to its drivers who currently use their own vehicles for deliveries, . . . [or] [a]lternatively, ...[to] forego investment in delivery vehicles and instead reimburse courier-employees for the miles they drive...").

PROPOSED INTERVENOR DONNA BUSICK'S OBJECTION TO SETTLEMENT

1  *Camp* counsel only recently named a lead plaintiff from Massachusetts[4] and admit that they

2  failed to file a complaint with the Massachusetts Attorney General's office, which is a statutory

3  requirement in order to pursue the most valuable claim here, expense reimbursement, *see* Plf's

4  Resp. to Mot. to Intervene at p. 8, n. 8. This admission further underscores that the *Camp* counsel

5  have attempted to settle these claims without adequate knowledge of Massachusetts law. Indeed,

6  in the complaint, the *Camp* counsel did not even cite the Massachusetts Independent Contractor

7  Law, Mass. Gen. L. c. 149 §148B.[5]

8        Thus, the proposed $4.625 million settlement is unfair to the Massachusetts sub-class

9  because it will provide Massachusetts drivers with a meager recovery compared to the relative

10  value of their claims and sells short the Massachusetts sub-class at the expense of other drivers in

11  the nationwide class. However, critically, neither this Court nor Objector's counsel can gauge the

12  true extent of these deficiencies because the plaintiffs have provided ***no data*** to substantiate how

13  they calculated the damages exposure for the class. *See* Erickson Decl. at ¶¶ 15-18. Indeed, the

14  parties have not even shared rudimentary information regarding what the expected shares of

15  class members would be under the settlement, instead making reference to an abstract "points-

16  based" formula. Even if the parties cannot predict precisely how many claimants there will be

17  and from which states (which may affect the ultimate shares), they should at least be able to

18  provide the Court with class members' expected shares assuming a 100% claim rate, including

---

21  [3]    *See Rosnov v. Molloy* (2011) 460 Mass. 474, 476 n.4; *Weber v. Coast to Coast Medical, Inc.* (Mass. App. Ct. 2013) 83 Mass. App. Ct. 478, 483 n. 7.

22  [4]    The *Camp* Plaintiffs previously filed the *Husting* case in federal court in December 2016, just four months ago.  In that case, they named a Massachusetts class representative and pled Massachusetts claims for the first time despite the fact that Ms. Busick had been pursuing those same claims for eighteen months. *See* Ex. 1 to Liss-Riordan Decl. in Support of Mot. to Intervene; Mot. for Prelim. App. at 2.

25  [5]    Ms. Busick does not deny that counsel for the *Camp* Plaintiffs has pursued various litigation against Instacart over the past two years, including a number of arbitrations against Instacart, *see* Mot. for Prelim. App. at pp. 1-2, 4-5. However, only one of the arbitrations appears to have been pursued on behalf of a Massachusetts worker, and this arbitration did not advance beyond the point of simply being filed, such that no discovery or briefing conducted to date pertains to the Massachusetts sub-class or to the particularities of Massachusetts law. *See* Mot. for Prelim. App. at p. 5.

PROPOSED INTERVENOR DONNA BUSICK'S OBJECTION TO SETTLEMENT

what the relative recovery would be for the Massachusetts class members, again assuming a 100% claim rate. Here, they have omitted even this basic information, and in fact, have *refused to share* such data with Objector's counsel so that she could better assess the fairness of the Massachusetts recovery. Liss-Riordan Decl. in Support of Mot. to Intervene at ¶ 9. This dearth of information categorically prevents the court from making a determination regarding the adequacy of the settlement, and this fact alone warrants denying approval.

Moreover, as set forth in Objector Busick's pending Motion to Intervene, Ms. Busick mediated with Instacart roughly six months ago on behalf of Massachusetts Instacart drivers, but the mediation was not successful, and the parties continued the arbitration of that case (leading to Ms. Busick obtaining a favorable ruling that she can pursue her case in arbitration as a class action). *See* Mot. to Intervene at pp. 2-8. Now, following that unsuccessful mediation, and following Ms. Busick's success to date in her putative class case, Instacart is attempting to obtain approval for a nationwide settlement of drivers, which would extinguish the Massachusetts class' claims, for an amount that Ms. Busick believes is significantly less than what she found appropriate when she mediated last year. Thus, here, the proposed settlement is particularly concerning insofar as Instacart appears to have engaged in a "reverse auction." *Negrete of North America v. Allianz Life Ins. Co.* (9th Cir.2008) 523 F.3d 1091, 1099.

For these reasons, discussed in further detail below, the Court should deny preliminary approval of the settlement.

## II.    RELEVANT BACKGROUND

Objector Busick hereby incorporates by reference the Background Section of her pending Motion to Intervene. As described there, Ms. Busick is not certain whether the arbitrator in her case, Judge Butler, will be able to rule on her expedited motion for class certification prior to the preliminary approval hearing in this case.  However, regardless of whether Judge Butler is able to rule on the motion by then, it should be evident that, given Ms. Busick's dedicated pursuit of claims on behalf of the Massachusetts drivers these past two years, which to date has been successful, Ms. Busick has understandable concerns about the adequacy of this settlement for the

1    Massachusetts class members.

### III.    LEGAL STANDARD

3        "California Rules of Court, rule 3.769 sets forth the procedure to be followed when a

4    class action is provisionally settled *prior* to class certification." *Luckey v. Superior Court* (2014)

5    228 Cal.App.4th 81, 93 (emphasis in original). "The well-recognized factors that the trial court

6    should consider in evaluating the reasonableness of a class action settlement agreement include

7    'the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further

8    litigation, the risk of maintaining class action status through trial, the amount offered in

9    settlement, the extent of discovery completed and stage of the proceedings, the experience and

10   views of counsel, the presence of a governmental participant, and the reaction of the class

11   members to the proposed settlement.'" *Kullar*, 168 Cal.App.4th 116, 128 (quoting *Dunk v. Ford*

12   *Motor Co.* (1996) 48 Cal.App.4th 1794, 1801). Moreover, "class action *settlements* should be

13   scrutinized more carefully if there has been no adversary certification" in order to ensure that the

14   rights of absent class members are "adequately protected against fraud and collusion." *Luckey*,

15   228 Cal.App.4th at 94 (emphasis in original).[6]

### IV.    ARGUMENT

17   **A. The Settlement is Not Fair To The Massachusetts Sub-class And Is Not In Their**
     **Best Interests**

18

19        **1. The Parties Fatally Failed to Provide Sufficient Information With Which To**
          **Properly Evaluate The Monetary Recovery**

20        First, and most critically, the parties here have provided the Court with virtually no

21   meaningful information with which to determine the fairness and adequacy of this settlement

22   with respect to the Massachusetts drivers. "[A] trial court's approval of a class action settlement

23

24   _____

     [6]    The court must "independently satisfy[] itself that the consideration being received for
25   the release of the class members' claims is reasonable in light of the strengths and weaknesses of
     the claims and the risks of the particular litigation." *Id.* at 129. Thus, "the court should not give
26   rubber-stamp approval" and instead must "independently and objectively analyze the evidence
     and circumstances before it in order to determine whether the settlement is in the best interests of
27   those whose claims will be extinguished." *Id.* at 130.

28

4
PROPOSED INTERVENOR DONNA BUSICK'S OBJECTION TO SETTLEMENT

will be vacated if the court 'is not provided with basic information about the nature and magnitude of the claims in question and the basis for concluding that the consideration being paid for the release of those claims represents a reasonable compromise." *Luckey*, 228 Cal.App.4th at 95 n. 13. Here, the Plaintiffs have not even attempted to provide the Court with information regarding class members' settlement share amounts; they provide no information regarding what settlement share amounts will look like (even assuming a 100% claim rate), such as how many dollars workers would receive per mile driven, hour worked, delivery completed, etc. Instead, the abstract formula the parties provide does not even attempt to translate "point" values into dollars or to ground the formula in a meaningful number. Abstract references to "points", divorced from any further explanation simply will not suffice, and this dearth of information alone is sufficient reason to deny approval of the settlement. There is no way to assess the actual amount that the Massachusetts class would receive in this settlement so as to compare it with their potential recovery, were Ms. Busick's case ultimately successful in obtaining class relief.

The *Camp* Plaintiffs will no doubt counter that they have accounted for the relative strength of the Massachusetts claims in their allocation formula, by doubling the point value for hours worked by Massachusetts drivers. *See* Mot. for Prelim. App. at pp. 10-11. However, merely doubling the recovery for Massachusetts workers does not begin to account for the many strengths of these workers' claims relative to the rest of the class, both legally (i.e. the relative strength of the Massachusetts Independent Contractor law, the fact that courts have interpreted Massachusetts law to allow for expense reimbursement, and the *mandatory* treble damages), and procedurally in that the Massachusetts workers are have an opportunity to obtain class-wide relief – unlike the workers in any other states in the proposed settlement class – because of the success Ms. Busick has met with in her arbitration to date. *Camp* counsel have no incentive to advocate for these class members any more strongly than any other class members (thus, creating a conflict for the *Camp* counsel, vis-à-vis the Massachusetts subclass, which is separately represented).

Courts have denied preliminary approval of class settlements where the parties failed to provide adequate information about class members' recovery or what class members would actually receive under the settlement.[7] As in these other cases, the Court should deny approval of the settlement with respect to the Massachusetts class because the parties have not provided the Court with anything resembling adequate information with which to evaluate the fairness of the settlement to the Massachusetts class.

In addition to failing to provide information about class members' actual expected recovery, Plaintiffs have not provided adequate information about how they valued and calculated the total exposure on the Massachusetts claims. The Declaration of Julie Erickson merely sets for the "total maximum theoretical recovery to the class" for various claims such as minimum wage, overtime, and expense reimbursement. *See* Erickson Decl. at ¶¶ 15-18. The declaration does not break out these values by state or even explain how exactly it calculated them. Most importantly, for expense reimbursement – by far the most valuable claim for the Massachusetts sub-class – the Erickson Declaration vaguely states that "we calculated the

---

[7]    *See, e.g., Kullar*, 168 Cal.App.4th at 130-32 (reversing preliminary approval where no information was presented to allow the court to "review class counsel's evaluation of the sufficiency of the settlement" such as damages data or payroll records); *Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785, 798-802 (reversing approval of class settlement where trial court failed to consider objectors' arguments regarding the strength of the overtime claim; "the simple fact is that '[t]he proposed settlement cannot be judged without reference to the strength of plaintiffs' claims', and the strength of a claim cannot be judged without reference to the legal terrain in which it operates") (*quoting Kullar*, 168 Cal.App.4th at 132-33); *Custom Led, LLC v. eBay, Inc.*, (N.D. Cal. 2013) 2013 WL 4552789, *9 (denying preliminary approval because, inter alia, the parties "provided the Court with no information as to the class members' potential ranges of recovery"); *Cordy v. USS-Posco Industries* (N.D. Cal. 2013) 2013 WL 4028627, *4 (denying preliminary approval where plaintiff provided "no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims"); *Fraser v. Asus Computer Intern.*, (N.D. Cal. 2012) 2012 WL 6680142, *5 ("The current record is insufficient to determine whether the benefit under the proposed settlement to class members who submit a valid and timely claim form is fair and reasonable to those class members."); *Sobel v. Hertz Corp.*, (D. Nev. 2011) 2011 WL 2559565, *10 (finding the court could not "even begin th[e] inquiry" where "the parties ha[d] failed to provide … evidence of … the total amount of … fees that were charged to the class members, let alone potential ranges of recovery and the chances of obtaining it"); *Martin v. Cargill, Inc.* (D. Minn. 2013) 295 F.R.D. 380, 384 (denying approval and holding that "[t]he primary problem with the parties' submissions is that they provide almost no information enabling the Court to gauge the value of the proposed class's claims and, hence, the fairness and adequacy of the settlement").

6

PROPOSED INTERVENOR DONNA BUSICK'S OBJECTION TO SETTLEMENT

approximate value per trip for all expenses, including travel expenses...cell phone use, medical

insurance costs, and actual medical costs paid as a result of the Class being uncovered by

workers' compensation insurance." *Id.* at ¶ 16. The Court and Objector's counsel are left to

wonder what exactly this statement means. For example, did the *Camp* Plaintiffs utilize mileage

data driven by class members and multiply the mileage by the applicable IRS reimbursement rate

to calculate vehicle-related expenses? If not, why did they elect not to follow this approach?

Other courts have allowed the use of the IRS mileage reimbursement rate to calculate expenses

that should be reimbursed for vehicle use.[8] Likewise, it is not clear how Plaintiffs' counsel

derived the "per trip" expenses they refer to here. Without further detailed explanation, there is

simply no way to determine the adequacy of the recovery.[9]

Objector Busick's own previous damages estimates for the Massachusetts class lead her

to understand that the parties here have grossly underestimated the Massachusetts claims in their

calculations of total exposure. Although she cannot disclose these calculations here because she

obtained these data confidentially under the mediation privilege[10], the sequence of events, in

which Instacart failed to obtain a settlement with her and then proceeded to attempt to settle out

the Massachusetts workers' claims through this global national settlement, makes it evident that

---

[8]    *See, e.g., O'Connor v. Uber Technologies, Inc.* (N.D. Cal. 2015) 311 F.R.D. 547, 566-68 (certifying class action for claim expense reimbursement claim and holding that drivers could use IRS mileage rate to calculate expense reimbursement.); *Dalton v. Lee Publications, Inc.* (S.D. Cal. 2010) 270 F.R.D. 555, 564 (court endorsed use of IRS standard mileage allowance to calculate damages for newspaper delivery drivers); *Zellagui v. MCD Pizza, Inc.* (E.D. Pa. 2014) 59 F. Supp. 3d 712, 721 (class of pizza delivery drivers awarded damages for their vehicle expenses at the IRS reimbursement rate); *Koral v. Inflated Dough, Inc.* (D. Co. Sept. 9, 2014) 2014 WL 4904400, *3 (pizza delivery driver's use of the IRS and AAA reimbursement rates to demonstrate that he was being undercompensated by his employer was reasonable); *Lewis v. Starbucks Corp.* (E.D. Cal. Sept. 11, 2008) 2008 WL 4196690, *6 (utilizing IRS reimbursement rate to gauge reasonableness of settlement award of class claims for expense reimbursement).

[9]    Moreover, the exposure estimate does not appear to include mandatory treble damages under Massachusetts law, or statutory interest, at 12% per annum. *See* Mass. Gen. L. c. 149 §150; Mass. Gen. Laws c. 231 § 6B. The "doubling" of points awarded to the Massachusetts class simply does not address that damages are subject to mandatory *tripling* under Massachusetts law.

[10]    She would be happy to provide these calculations if the Court wants to see them and deems it appropriate.

PROPOSED INTERVENOR DONNA BUSICK'S OBJECTION TO SETTLEMENT

the settlement is for less than she believed appropriate during Instacart's unsuccessful mediation in the *Busick* case.

Likewise, the *Camp* Plaintiffs discount the valuable expense reimbursement claim but provide no reasoned account of how they arrived at this particular discount for the Massachusetts subclass except to offer a generic explanation that "[i]n view of the risks of litigation, including but not limited to risks associated with arbitration provisions, class certification, the merits of Plaintiffs' misclassification claim, and evidentiary burdens in proving liability and damages, the likely theoretical recovery for this claim is $1,050,856." *Id.* at ¶ 16. This rote recitation of "risks of litigation" is wholly insufficient because it fails to take into account the many strengths of the Massachusetts class' position relative to the rest of the nationwide class (set forth further *infra*, Part IV.A.2).[11] The parties' obfuscation of even the most basic facts regarding the amount of settlement shares and how claims were valued for the Massachusetts class, even when directly asked by Ms. Busick's counsel to supply this straightforward information, is telling and warrants denial of approval.

### 2. The Parties Overstate The Risks of Continued Litigation For the Massachusetts Sub-Class Whose Claims Are Relatively Stronger Than the Rest of the Settlement Class

The *Camp* plaintiffs justify their roughly $2.849 million net recovery for the class by taking a steep discount on the value of their claims due to the many "risks and uncertainties" of litigation. *See* Mot. of Prelim. App. at pp. 13-16. However, many of the "risks" identified by Plaintiffs' counsel are simply not the same for the Massachusetts sub-class and thus cannot justify such deep concessions regarding the value of their claims.

First, the *Camp* Plaintiffs' Motion for Preliminary approval justifies their proposed settlement by emphasizing the "repeated enforcement of Instacart's arbitration agreement" as a reason that "the merits of these cases would never be litigated in a class proceeding." Mot. of

---

[11]    *See Adams v. Benton County Sheriff Kelly Cradduck* (W.D. Ark., Aug. 1, 2014) 2014 WL 12639862, *3 (noting that "[t]he parties have provided only vague generalities about the relative strengths and weaknesses of the asserted claims and defenses" and finding that "Plaintiffs' concerns [about the risks of further litigation] are true in every class action case" such that "[w]ithout more, the Court is unable to determine the fairness of the proposed settlement").

Prelim. App. at 14. However, Ms. Busick has succeeded in obtaining a clause construction award *allowing her to pursue class claims* in arbitration, and she currently has a class certification motion pending before an arbitrator. Thus, Ms. Busick, unlike the *Camp* plaintiffs, has not suffered repeated losses in attempting to bring her claims forward on a classwide basis. Also, unlike the *Camp* Plaintiffs, Ms. Busick has filed her claim in the proper forum, arbitration. Thus, this settlement seeks to deprive the Massachusetts workers of the forum that they have a contractual right to – arbitration – which Ms. Busick has used to their benefit in her case thus far. Unlike the *Camp* Plaintiffs' counsel, Ms. Busick's counsel has not received an order compelling individual arbitration, and unlike the *Camp* Plaintiffs, Ms. Busick has not attempted to waive the rights of Massachusetts class members to pursue arbitration.

Next, the *Camp* Plaintiffs argue that "the finder of fact-whether a judge, jury, or arbitrator-may conclude that Plaintiffs were properly classified as independent contractors," pointing to a recent decision finding Uber drivers to be properly classified as independent contractors under California law. *See* Mot. of Prelim. App. at 14-15. Not only is this decision the non-binding decision of just one arbitrator addressing the claims of workers for a different company with different facts from this case, the decision is entirely irrelevant to the likelihood of success of the Massachusetts Instacart drivers. The *Camp* Plaintiffs overlook, and do not even appear to recognize, that under Massachusetts law Ms. Busick and other Massachusetts delivery drivers are virtually certain to be found to be employees rather than independent contractors. Unlike the FLSA or even California state law, the Commonwealth of Massachusetts utilizes a strict conjunctive test for employment status that places the burden on the would-be employer (Instacart) to prove all three prongs of the statute, including:

1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; *and*
2) the service is performed outside the usual course of the business of the employer; *and*
3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

*See* Mass. Gen. Laws c. 149 § 148B (emphasis added). Here, Instacart is an on-demand grocery delivery service, that has described itself to the public as "a grocery delivery service that delivers

1   in as little as an hour," *see* Ex. 6 to Liss-Riordan Decl. in Support of Mot. to Intervene, and has

2   proudly declared "Instacart: Groceries delivered in 1 hour." *See* Ex. 7 to Liss-Riordan Decl. in

3   Support of Mot. to Intervene. Thus, Instacart clearly holds itself out to the public as a grocery

4   delivery service and offers grocery delivery services to the public as part of its "usual course of

5   business." Thus, there can be little doubt that Instacart drivers will be held to be employees

6   under prong 2 of §148B because there is simply no way that Instacart will be able to establish

7   that the drivers' services are outside its "usual course of business". Similarly, Instacart drivers

8   depend on Instacart as the source of their grocery delivery work and are not engaged in an

9   independent business to deliver groceries to customers; they clearly wear the "hat" of Instacart

10  when they are making their deliveries, not the "hat" of their own personal business.[12] Further,

11  Instacart will not be able to prove the services they perform are outside Instacart's control.[13]

12  Thus, Ms. Busick finds it highly unlikely that Instacart will be able to satisfy a single prong of

13  Massachusetts particularly stringent three-part test, much less all three. In other words, the

14  *Camp* Plaintiffs' justification for this settlement that the drivers may not be held to be employees

15  simply does not grapple with, or acknowledge, this very strict Massachusetts law.

16

17          Likewise, Plaintiffs cite concerns about their ability to win class certification given that

18  there are "18 different classes" with "varying tests of employment," *see* Mot. for Prelim. App. at

19  16. However, it was the *Camp* Plaintiffs' own choice to bring all of these claims in one case,

20  whereas Ms. Busick filed a carefully tailored case in arbitration that does not face similar hurdles

21  in winning class certification.[14] The Massachusetts sub-class should not suffer or have their

---

22  [12]    *See Coverall North America, Inc. v. Com'r of Div. of Unemployment Assistance* (2006)

23  447 Mass. 852, 858 (cleaning worker was misclassified as independent contractor under identical
    prong 3 of Massachusetts unemployment statute, where she "wore the hat" of the company while

24  performing cleaning services).

    [13]    In opposing Ms. Busick's motion to intervene, the parties have argued that she has

25  overlooked the fact that prong 2 of § 148B has been held to be preempted by the FAAAA. As
    explained in her Reply in support of her Motion to Intervene at p. 5, Ms. Busick denies that such

26  preemption would occur because the FAAAA would not apply to drivers making local deliveries
    of groceries in Massachusetts; moreover, even if prong 2 were preempted for the Massachusetts

27  drivers, as set forth above, Instacart will not be able to establish prongs 1 or 3 of the statute either.
    *See* discussion in Busick's reply, at pp. 4-5.

28  [14]    In fact, courts in Massachusetts have routinely granted class certification to workers
    (*cont'd*)

1    claims severely compromised because the national class as a whole might have suffered these

2    risks and because workers from other states with far less protective laws faced even greater

3    challenges.

4         Together, the facts outlined above show that the *Camp* Plaintiffs are not adequate

5    representatives of the Massachusetts Instacart drivers because they either do not understand

6    Massachusetts law, or they have elected to gloss over its important protections for Massachusetts

7    workers (which are considerably stronger than comparable laws in most, if not all, other states)

8    in favor of pursuing a national settlement. In either case, approval of the settlement should be

9    denied with respect to the Massachusetts workers. These workers should be permitted to proceed

10   with the arbitration that Ms. Busick has brought on their behalf. Other courts have not hesitated

11   to deny preliminary approval of a proposed settlement where overlapping actions in other cases

12   would better protect class members' interests.[15]

13

14   alleging misclassification under § 148B. *See, e.g.*, *Vargas v. Spirit Delivery* (D. Mass. Mar. 24,
     2017) 2017 WL 1115163 (certifying class of delivery drivers under prongs 1 and 3); *Meier v.*
15   *MasTec North America, Inc.*, (Mass. Super. Ct. Jan. 6, 2015) Hampden Civ. A. No. 13-448
     (certifying a class of cable installers' wage misclassification claims under section 148B);
16   *Simmons v. Kilnapp Enterprises, Inc.* (Mass. Super. Ct. June 13, 2014) Essex Civ. A. No. 13-551
     (same, for a class of car detailers); *Martins v. 3PD Inc.* (D. Mass. Mar. 28, 2013) 2013 WL
17   1320454, *5-9 (certifying delivery drivers' independent contractor misclassification claims under
     section 148B); *Sagar v. Fiorenza, et al.* (Mass. Super. Ct. Jan. 18, 2014) Middlesex Civ. A. No.
18   12-cv-4081-F; *Driscoll v. Worcester Telegram & Gazette Corp.* (Super. Ct. Aug. 26, 2013)
19   Worcester Civ. A. No. CV-2009-00043-E; *Raposa v. Mardi Gras Entertainment, Inc.*, (Mass.
     Super. Dec. 11, 2013) Hampden Civ. A. No. 2010-00034 (exotic dancers); *Vasquez v. Ye Olde*
20   *Lamplighter II, Inc.* ("*Lamplighter*") (Mass. Super. Nov. 13, 2013) Worcester Civ. A. No. 2011-
     1610-D (same); *Sandoval, et al. v. M.J.F. Bowery Corp. d/b/a/ Ten's Show Club* (Essex Super.
21   July 22, 2011) 29 Mass. L. Rptr. 11 (Kirpalani, J.) (same); *Cutter v. HealthMarkets, Inc.*, (D.
     Mass. July 26, 2011) Civ. A. No. 1:10-cv-11488-JLT (Doc. # 57) (insurance salespeople);
22   *DeGiovanni v. Jani-King Intl Inc.* (D. Mass. 2009) 262 F.R.D. 71, 84-86 (cleaning workers);
     *Cruz v. Manlo Enterprises, Inc. d/b/a Mario's Showplace* (Mass. Super. June 10, 2011)
23   Worcester Civ. A. No. 2010-01931 (exotic dancers); *Awuah v. Coverall* (D. Mass. Sept. 22,
     2011) Civ. A. No. 1:07-cv-10287-WGY (cleaning workers); *Chaves v. King Arthur's Lounge,*
24   *Inc.* (Mass. Super. July 31, 2009) Suffolk C.A. No. 2007-2505 (exotic dancers).
     [15]     *See Odon USA Meats, Inc. v. Ford Motor Credit Corp.* (N.D. Ill., Sept. 27, 1994) 1994
25   WL 529339, *9 (denying settlement approval; "[g]iven the potentially divergent interests of
     various subgroups of the national class, the Court concludes that Plaintiffs' counsel cannot
26   adequately represent potential class members in Ohio, Missouri, Florida, and Arizona"); *Martin*,
     295 F.R.D. at 387–88 (denying settlement approval where court found it "troubling that [the
27   plaintiff in overlapping class action was] kept in the dark once a settlement was reached" noted
     its "firm impression that the lack of communication was undertaken for strategic purposes and
28   should not be rewarded"); *Cullan and Cullan LLC v. M-Qube, Inc.* (D. Neb., Jan. 30, 2014) 2014
     (*cont'd*)

**B. Plaintiffs and Their Counsel Do Not Have Standing To Settle The Massachusetts Expense Reimbursement Claim And Are Not Adequate Representatives of the Massachusetts Class**

As set forth above, the *Camp* Plaintiffs have demonstrated a lack of familiarity with Massachusetts law based on their failure to properly account for the strength of the Massachusetts Independent Contractor law, Mass. Gen. L. c. 149 § 148B (or even cite it), the mandatory treble damages available under Massachusetts law, and reimbursement of business expenses, both in crafting their allocation formula and in determining what is an acceptable sum to settle these claims.

Additionally, the *Camp* Plaintiffs have admitted that they filed no Wage Complaint with the Massachusetts Attorney General, which is a requirement for bringing certain wage claims, including the reimbursement claim. *See* Plf's Resp. to Mot. to Intervene at p. 8, n. 8; Mass. Gen. L. c. 149 § 150; *Depianti v. Jan-Pro Franchising Int'l, Inc.*, (2013) 465 Mass. 607, 614. As the *Camp* Plaintiffs never filed a complaint with the Attorney General (either prior to filing the case or at *any time* prior to the settlement), these plaintiffs do not even have standing to settle the Massachusetts expense reimbursement claim. In contrast, Ms. Busick filed her complaint, pursuant to the statute, prior to initiating her claim against Instacart and received a right-to-sue letter. *See* Liss-Riordan Decl. at ¶ 3; Ex. A. Thus, Ms. Busick, and not the *Camp* plaintiffs, are authorized to pursue the expense reimbursement claim under Massachusetts law.[16]

---

WL 347034, *10 (granting motion to intervene of plaintiffs in overlapping class action and denying settlement approval); *see also In re Auction Houses Antitrust Litigation* (S.D.N.Y. 2001) 138 F.Supp.2d 548, 550 ("there is no reason why some class members should be forced to give up something of value to enable other class members to benefit from a settlement made richer at their expense.").

[16] This omission is critical not only because it deprives this Court of jurisdiction over the most valuable claim of the Massachusetts sub-class, but also because it demonstrates the haphazard way in which the Massachusetts claims appear to have been thrown into this overbroad complaint at the eleventh hour purely for settlement purposes and without any real consideration of the merits of these claims (nor sufficient knowledge by the *Camp* Plaintiffs' attorneys regarding Massachusetts law), while Ms. Busick has been steadfastly attempting to vindicate the rights of the Massachusetts workers these past two years.

**C. Approval Of the Settlement Should Be Denied for the Additional Reason That The Circumstances of the Settlement Indicate A Reverse Auction**

In addition to concerns about the value of the settlement of the Massachusetts workers' claims (particularly relative to the risks) as well as concerns about the relative ability of Plaintiffs' counsel to represent their interests, there are also some troubling red flags regarding how this settlement was negotiated that should give the Court pause in considering whether to approve this settlement.

First, the circumstances in which Instacart failed to obtain a settlement with Objector Busick, but then turned around and settled with the *Camp* Plaintiffs, raises questions. Ms. Busick mediated with Instacart last year on behalf of Massachusetts Instacart drivers, but the mediation was not successful, and the parties continued the arbitration of that case. *See* Liss-Riordan Decl. in Support of Mot. to Intervene at ¶¶ 5-6. Following that unsuccessful mediation, Instacart sought to settle the same claims with different counsel for what Ms. Busick believes is significantly less than the value of their claims and is less than she believed was an appropriate and adequate recovery for the Massachusetts drivers when she mediated last year. *Id.* at ¶¶ 8-9. Following the unsuccessful mediation, Ms. Busick's counsel simply pressed ahead with the arbitration and succeeded in obtaining a clause construction award construing the parties' agreement to allow for class arbitration. She heard nothing about the fact that this competing case was being mediated until *after* the settlement was publicly announced. After learning of the settlement, Instacart and the *Camp* Plaintiffs' counsel refused to share any information regarding the Massachusetts class members' recovery. *Id.*

A reverse auction occurs when "'the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.'" *Acosta v. Trans Union, LLC*, (C.D. Cal. 2007) 243 F.R.D. 377, 399.[17] Here, it appears evident that

---

[17]    While "the mere existence of multiple potential classes [is] [in]sufficient to prove collusion," courts have suggested that "evidence suggesting that a bidding war between the various potential class counsel [] occurred" would support such a finding. *Gallucci v. Gonzales* (9th Cir. 2015) 603 Fed. Appx. 533, 535. Here, Objector's counsel discussed settlement amounts *(cont'd)*

13
PROPOSED INTERVENOR DONNA BUSICK'S OBJECTION TO SETTLEMENT

1  Instacart, having failed to persuade Ms. Busick's counsel to settle the Massachusetts workers'

2  claims, deliberately excluded her counsel from continued discussions in which Instacart has now

3  obtained an agreement that would clearly be less beneficial to the Massachusetts workers than if

4  they were separately represented in the settlement discussions. Ms. Busick's counsel are experts

5  in Massachusetts law and clearly the more competent attorneys with respect to Massachusetts

6  law. Instacart reached this proposed settlement with a lawyer from California who has no special

7  knowledge of Massachusetts law and whose litigation strategy against Instacart was facing

8  "numerous setbacks." Plf's Resp. to Mot. to Intervene at 7. Ms. Busick's litigation strategy

9  (filing claims in arbitration in the first instance and seeking a ruling that she can proceed on a

10  class-wide basis in arbitration) has met with far more success than the *Camp* Plaintiffs' failed

11  attempts to defeat the arbitration agreement in court. The fact that this same firm began to file a

12  number of arbitrations (only one of which was for a Massachusetts worker and which had yet to

13  make any progress) is not a justification for why the Massachusetts class – which is succeeding

14  so far in Ms. Busick's case – should have to step aside and accept a steep and unwarranted

15  discount in their claims that the attorney who is advocating for a national settlement claims says

16  is justified based on the setbacks he was experiencing.[18]

17

18       Moreover, the proposed settlements here was apparently reached within a month of the

19  filing of this Complaint. While counsel for plaintiffs had previously litigated another case in

20  federal court against Instacart for some time (*Cobarruviaz*), that case never included a

---

for the Massachusetts class in September 2016, only to find that she has now been "under-bid" six months later in settling these very same claims. *See* Liss-Riordan Decl. in Support of Mot. to Intervene at ¶¶ 5, 9-10. Objector Busick respectfully suggests that this is the very type of evidence that may give rise to the troubling inference that a "reverse auction" has taken place.

[18]    Objector's counsel's qualifications, and experience with Massachusetts law relative to that of the *Camp* Plaintiffs' counsel is a factor for this Court to weigh in considering "the experience and views of counsel" under *Kullar* and *Dunk*. Whereas the *Camp* Plaintiffs' counsel does not appear to have *any* familiarity with Massachusetts law, Objector's counsel has been at the forefront of developing wage and hour law in Massachusetts (particularly regarding independent contractor misclassification) for fifteen years, as well as being at the forefront of developing the law more generally around the country (including California) in the area of independent contractor misclassification in the "on-demand economy." *See* Liss-Riordan Decl. in Support of Reply in Support of Motion to Intervene, ¶¶ 2-8.

PROPOSED INTERVENOR DONNA BUSICK'S OBJECTION TO SETTLEMENT

Massachusetts representative, claims under Massachusetts law, or a separate Massachusetts sub-class.[19] Because the *Camp* case was settled less than a month after it was filed and because no Massachusetts claims or representatives were included in the litigation prior to a few months ago, it seems clear that the Massachusetts claims were settled (by lawyers unfamiliar with Massachusetts law) without any discovery or any fleshing out of the merits of the legal arguments under Massachusetts law. These circumstances should invite greater scrutiny.[20]

## V.    CONCLUSION

The parties should not be permitted to sacrifice the more valuable claims of the Massachusetts sub-class for an amount well below the value of their claims simply in the interests of achieving a national settlement and without regard for the fact that these same claims have been pursued (and have to date met with greater success) in a parallel case. The Court should deny preliminary approval of the settlement with respect to the Massachusetts drivers. If the Court were to grant preliminary approval with respect to the rest of the case, the Massachusetts subclass should simply be carved out of the settlement so as to allow Ms. Busick to proceed on this subclass' claims in the arbitration she has been pursuing.

---

[19]    Likewise, it does not appear that any of the arbitrations that involved briefing and discovery, which Plaintiffs' counsel describes in their Motion, included any briefing or discovery of Massachusetts claims. Instead, the *Husting* Complaint – filed by the same counsel four months ago, in December 2016 (eighteen months after *Busick* was filed) – appears to be the *first time* Massachusetts claims are being pled by counsel for the *Camp* Plaintiffs. No discovery or merits briefing of the Massachusetts claims took place in *Husting*, and now, the claims of the Massachusetts class have been re-filed in this case (it would appear purely for settlement purposes).

[20]    *See Luckey*, 228 Cal.App.4th 81, 94 ("[C]lass action *settlements* should be scrutinized more carefully if there has been no adversary certification" because of "concerns that the absent class members, whose rights may not have been considered by the negotiating parties, be adequately protected against fraud and collusion."); *Odon USA Meats, Inc.*, 1994 WL 529339 at *6 ("[T]he settlement proposed here must be subjected to greater than normal scrutiny. Proponents hope to settle the matter as a class action (and a national class action at that). That fact alone requires the Court's greater diligence. Beyond that, however, greater scrutiny is required because class certification was deferred pending negotiation of the proposed settlement").

PROPOSED INTERVENOR DONNA BUSICK'S OBJECTION TO SETTLEMENT

1    Dated: April 14, 2017                    LICHTEN & LISS-RIORDAN, P.C.

2

3                                            By: _Shannon Liss-Ri_

4                                               Shannon Liss-Riordan

5                                            Attorney for Donna Busick, on behalf of
                                             herself and others similarly situated
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED INTERVENOR DONNA BUSICK'S OBJECTION TO SETTLEMENT

# EXHIBIT C



THE TIDRICK LAW FIRM

January 28, 2020

**BY EMAIL TO COUNSEL**

Amazon Logistics, Inc.
c/o Corporation Service Company
300 Deschutes Way SW, Suite 304
Tumwater, WA 98051

  **RE: AMENDED DEMAND FOR ARBITRATION AND OPT-OUT NOTICE**

To whom it may concern:

   This law firm represents Raymond Cho ("Claimant"), who makes this amended demand for arbitration ("Demand") against Amazon Logistics, Inc. ("Respondent") relating to Claimant's work for Respondent as a "Flex" service provider.

### Statement of Factual Bases for the Claims

   Although Respondent has classified Claimant an "independent contractor," Claimant is actually an employee. Claimant is not free from the control and direction of Respondent in the performance of Claimant's work. Rather, Respondent controls and directs Claimant's work. Moreover, Claimant performs work that is within the usual course of the Respondent's business. Finally, Claimant is not customarily engaged in an independently established trade, occupation, or business. Claimant incurs no opportunity for "profit" or "loss"; rather, Respondent manages the business operation, attracts investors and customers, advertises, and obtains customers. Claimant's investment is minor when compared to Respondent's investments. Claimant has made no capital investment in Respondent's facilities, advertising, maintenance, staffing, or electronic systems. Respondent provides investment and risk capital. Claimant does not. But for Respondent's investments, Claimant would earn little or nothing from Claimant's relatively minor expenditures. Claimant does not exercise the skills and initiative of persons in business for themselves. Claimant does not exercise business sills and initiative necessary to elevate Claimant's status to that of independent contractor. Claimant owns no enterprise. Claimant exercises no business management skills. Claimant maintains no separate business structures or facilities. Claimant does not hire or subcontract other individuals to provide additional services to customers and increase Claimant's revenues, as independent contractors in business for themselves would. Respondent's violations specified herein have constituted, or resulted from, policies and procedures of Respondent, and have been part of a pattern and practice of Respondent. In addition, Respondent has willfully misclassified Claimant as an "independent contractor," violated sick day requirements, failed to secure workers' compensation, failed to pay minimum wages, failed to pay for all hours worked, failed to pay overtime, failed to reimburse expenses, failed to furnish timely, accurate, itemized wage statements, failed to pay compensation that was due and owing upon resignation or discharge, and failed to pay all wages owed every pay period.

   Respondent maintains of a policy and practice of failing to provide its delivery drivers, including Claimant, with all tips that have been provided by Respondent's customers.

### Willful Misclassification

   California Labor Code § 226.8(a) provides:  "It is unlawful for any person or employer to engage in any of the following activities:  (1) Willful misclassification of an individual as an independent contractor. (2) Charging an individual who has been willfully misclassified as an independent contractor a fee, or making any deductions from compensation, for any purpose, including for goods, materials, space rental, services, government licenses, repairs, equipment maintenance, or fines arising from the individual's employment where any of the acts described in this paragraph would have violated the law if the individual had not been misclassified." In light of changes in common law and state law, prior claims and lawsuits against Respondents and other industry players, the decision of the Labor Commissioner of the State of California in *Berwick v. Uber Technologies* (June 3, 2015), the California Unemployment Insurance Appeals Board ruling (No.: 5371509 – June, 1, 2015) that an Uber driver is an employee eligible to obtain unemployment benefits, and the California Supreme Court's decision in *Dynamex Operations West, Inc. v. Superior Court*, No. S222732, 2018 WL 1999120 (April 30, 2018), it is clear that Respondent should have classified Claimant as an employee rather than as an independent contractor. Accordingly, Respondent's misclassification of Claimant as an independent contractor was willful. Therefore, Claimant seeks recovery of the penalties specified in California Labor Code

Page 2 of 4

§ 226.8.

### Violations of Paid Sick Day Requirements, Labor Code §§ 245-249

Respondent violated Labor Code § 246 by not having policies and procedures for Claimant to accrue and take paid sick days. Because of Respondent's violations of the paid sick day requirements, Respondent is liable for civil penalties under California Labor Code § 248.5.

### Municipal Paid Sick Leave Ordinances

Respondent has failed to: (1) provide paid sick leave; (2) include required information about paid sick leave in wage notices and/or wage statements, including without limitation information on the amount of paid sick leave hours accrued; (3) provide required information about paid sick leave to employees, including without limitation at the time of hire; (4) at the time of hire, provide employees with written notice of the employer's name, address, and telephone number; (5) provide required information about paid sick leave in English, Spanish, Chinese, and in all languages spoken by 5% or more of the employees; (6) post required sick leave notices; (7) maintain payroll records; and/or (8) provide wage statements, and therefore Respondent has violated one or more municipal sick leave ordinances, including without limitation the sick leave ordinances of Berkeley, Emeryville, Long Beach, Los Angeles, Oakland, San Diego, San Francisco, and Santa Monica. Claimant seeks all relief available under such ordinances, including without limitation the full amount of back wages owed, including interest thereon, plus penalties as well as reasonable attorneys' fees and costs. Claimant expressly reserves the right to amend and/or correct this list of ordinances and violations based on Claimant's counsel's continuing investigation.

### Failure to Secure Compensation in Violation of Labor Code § 3700 *et seq.*

Respondent did not secure workers' compensation for Claimant, in violation of California Labor Code §§ 3700, 3700.5, 3712, and 3715. Respondent is therefore subject to the penalties and fines per California Labor Code § 3700.5.

### Failure to Pay Minimum Wages as Required by State Law

At all relevant times, Respondent has been required to pay Claimant minimum wages under California law, including without limitation pursuant to the Industrial Welfare Commission ("IWC") Wage Orders (including without limitation Wage Order Nos. 1, 2, 5, 9, 15, and 17) (hereinafter the "Wage Orders"), but has not done so. Respondent has willfully failed to pay Claimant and class members any wages whatsoever. By failing to compensate them for all hours worked (including without limitation for time spent waiting for orders in between orders), Respondent has violated the Industrial Welfare Commission Wage Orders and/or California Labor Code §§ 1182.12, 1194, 1194.2, 1194.5, 1197, 1197.1, and 1198. Therefore, Claimant seeks unpaid wages at the required legal rate, liquidated damages, interest, attorneys' fees and costs, and all other costs and penalties allowed by law. Claimant further seeks injunctive relief to compel Respondent to recognize Claimant's employee status, to provide all payment guaranteed by law, and for the arbitrator's continuing jurisdiction to enforce compliance.

### Unlawful Failure to Pay Overtime

At all times relevant times, the IWC Wage Orders require the payment of an overtime premium for hours worked in excess of 8 hours in a workday, 40 hours in a workweek, or on the seventh day worked in a single workweek. During the relevant time period, Claimant was employed by Respondent within California but as not paid overtime wages for overtime hours worked. Respondent's failure to pay overtime wages violates, inter alia, California Labor Code §§ 510, 558, 1194, and 1198, and the above-referenced Wage Orders. Therefore, Claimant seeks unpaid overtime wages at the required legal rate, liquidated damages, interest, attorneys' fees and costs, and all other costs and penalties allowed by law. Claimant further seeks injunctive relief to compel Respondent to recognize Claimant's employee status, to provide all payment guaranteed by law, and for the arbitrator's continuing jurisdiction to enforce compliance.

### Unlawful Failure to Reimburse Expenses

Respondent has required the workers to bear many of the expenses of employment, including without limitation expenses for vehicles, gas, parking, phone usage, vehicle wear and tear, taxes, tolls, fines, vehicle insurance, and expenses resulting from collisions, accidents, and/or legal claims. Respondent has failed to indemnify the workers for all necessary expenditures or losses incurred by Claimant, in violation of California Labor Code § 2802 and the Wage Orders, which require the employer to indemnify employees for all necessary expenditures or losses incurred by employees in direct discharge of their duties, and accordingly, Respondent is liable for reimbursement for all unreimbursed expenses.

### Unlawful Failure to Furnish Timely, Accurate, Itemized Wage Statements

Respondent has failed, and continues to fail, to provide timely, accurate itemized wage statements to Claimant in accordance with California Labor Code § 226 and the Wage Orders. The statements that Respondent has provided do not accurately reflect the actual hours worked and/or wages earned. Respondent's failure to provide timely, accurate, itemized wage statements to Claimant in accordance with the California Labor Code and the Wage Orders has been knowing and intentional. Accordingly, Respondent is liable for damages, penalties, and attorneys' fees and costs under the Wage Orders and Labor Code §§ 226(a)-(e), 226.3, and 558.   3

### Waiting Time Penalties

Page 3 of 4

Respondent has not paid full compensation, including overtime, for all hours worked, as alleged above, and has not paid that compensation that was due and owing upon a worker's discharge and/or within seventy-two (72) hours of the worker's termination of employment by resignation. Thus, Respondent has failed and refused, and continues to willfully fail and refuse, to timely pay compensation and wages and compensation in violation of California Labor Code §§ 201, 202, and 203. Workers who have been discharged and/or have resigned are entitled to unpaid compensation for all hours worked in the form of unpaid overtime for which to date they have not received compensation. Thus, Respondent is liable for up to thirty (30) days of waiting time penalties pursuant to California Labor Code §§ 203 and/or 256 after each discharge or resignation.

### Penalties for Failure To Pay All Wages Owed Every Pay Period

Pursuant to Labor Code § 204, Claimant was entitled to receive on regular paydays all wages earned for the pay period corresponding to the payday. Respondent failed to pay Claimant all wages earned each pay period. Claimant is informed, believes, and thereon alleges, that at all times relevant during the liability period, Respondent maintained a policy or practice of not paying Claimant overtime wages owed for all overtime hours worked. That violates California Labor Code § 204. As a result of Respondent's unlawful conduct, Claimant has suffered damages in an amount, subject to proof, to the extent that Claimant was not paid all wages each pay period. The precise amount of unpaid wages is not presently known to Claimant but can be determined directly from Respondent's records or indirectly based on information from Respondent's records. Because of Respondent's violations of Labor Code § 204, Respondent is liable for civil penalties under Labor Code § 2699(f)(1)-(2) for each pay period, and under Labor Code § 210 for each pay period.

### Fair Labor Standards Act

At all material times, Respondent has failed and refused to compensate Claimant for all hours worked, including straight time and overtime. At all material times, the time at issue has been necessarily and directly related to the principal activities of Claimant's job duties, and thus constitutes compensable time under the FLSA and is subject to the FLSA's overtime requirements. At all material times, Respondent has violated the FLSA by failing to pay for all work time, plus applicable overtime. As a result, Claimant is entitled to damages equal to the mandated straight time pay and overtime premium pay within the three (3) years preceding the filing of this Demand (plus periods of equitable tolling), because Respondent acted willfully and knew or showed reckless disregard of whether the conduct was prohibited by the FLSA, together with an amount equal as liquidated damages, plus attorneys' fees. 29 U.S.C. § 216(b).

### Local Minimum Wage Ordinances

By failing to compensate for all hours worked, Respondent has violated one or more minimum wage ordinances, including without limitation the minimum wage ordinances of San Francisco, Belmont, Berkeley, Cupertino, El Cerrito, Emeryville, Los Altos, Los Angeles, Los Angeles County, Malibu, Milpitas, Mountain View, Oakland, Palo Alto, Pasadena, Redwood City, Richmond, San Diego, San Jose, San Leandro, San Mateo, Santa Clara, Santa Monica, and Sunnyvale. Claimant seeks all relief available under such ordinances, including without limitation the full amount of wages owed, including interest thereon, plus penalties as well as reasonable attorneys' fees and costs. Claimant expressly reserves the right to amend and/or correct this list of ordinances based on Claimant's counsel's continuing investigation.

### Violation of Labor Code § 351

California Labor Code § 351 prohibits employers and their agents from sharing in or keeping any portion of a gratuity left for or given to one or more employees by a patron. Respondent maintains of a policy and practice of failing to provide its delivery drivers, including claimant, with all tips that have been provided by Respondent's customers. As a result, Respondent has violated California Labor Code § 351.

### Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq.

Claimant brings claims against Respondent for its unlawful and unfair business acts and/or practices pursuant to the California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq. ("UCL"). Respondent's failure to pay minimum wages for all hours worked, failure to pay for all hours worked, failure to pay overtime, failure to pay all wages when they were due and upon termination, failure to provide accurate itemized wage statements, and failure to reimburse for all expenses, as alleged above, individually and collectively constitute unlawful and/or unfair business acts and/or practices within the meaning of the UCL. In addition, the conduct offends established legislatively declared public policy and has been immoral, unethical, oppressive, and unscrupulous. Claimant has been injured by Respondent's illegal activities, which have deprived Claimant's rights as an employee. Claimant is entitled to restitution of monies due, disgorgement of the ill-gotten gains of Respondent, declaratory relief, a preliminary and permanent injunction enjoining Respondent from continuing the unlawful and unfair acts and practices described herein, and such other equitable relief as is appropriate under the UCL, including the fees, costs, and expenses incurred in vindicating her rights and the public interest generally, pursuant to the UCL, California Code of Civil Procedure §§1021.1 and 1033.5, and any other applicable law.

### PAGA Claims, California Labor Code § 2698 et seq.

Claimant also prosecutes this case under California Labor Code § 2698 et seq. ("PAGA") as a private attorney general. Claimant seeks recovery from Respondent of any and all civil penalties and other monies capable of being collected under PAGA by the Labor Commission and/or the Department of Labor Standards Enforcement (DLSE) for Respondent's violations of the California Labor Code referenced in this Demand, including but not

Page 4 of 4

limited to California Labor Code §§ 201, 202, 203, 204, 226 (a)-(f), 226.3, 226.8, 246, 248.5, 256, 510, 558, 1182.12, 1194, 1194.2, 1194.5, 1197, 1197.1, 1198, 2802, 3700, 3700.5, 3712, and 3715. In addition, pursuant to PAGA, Claimant seeks an order for attorneys' fees and costs, injunctive relief to compel Respondent to recognize Claimant's employee status, and for the arbitrator's continuing jurisdiction to enforce compliance.

### Specification of the Remedy Sought / Prayer for Relief

WHEREFORE, Claimant requests the relief as specified herein, including without limitation:

a) For an order awarding Claimant compensatory damages and statutory damages, including unpaid wages, overtime compensation, liquidated damages, and all other sums of money owed, together with interest on these amounts;

b) For preliminary, permanent, and mandatory injunctive relief prohibiting Respondent and its officers and agents from committing the violations of law herein alleged in the future;

c) For a declaratory judgment that Respondent has violated the law and public policy as alleged herein;

d) For an order imposing all statutory and/or civil penalties provided by law, including without limitation penalties under the California Labor Code and PAGA;

e) For exemplary and punitive damages, as appropriate and available under each cause of action, pursuant to California Civil Code § 3294;

f) Disgorgement of profits;

g) For an order awarding restitution of the unpaid regular, overtime, premium wages due to Claimant, and/or all unreimbursed expenses;

h) For pre- and post-judgment interest;

i) For an award of reasonable attorneys' fees and costs as provided by California Labor Code §§ 218.5, 226(e), 1194, 2802, 2810, California Code of Civil Procedure §§ 1021.5 and 1033.5, the FLSA, PAGA, and/or other applicable law;

j) For all costs of suit; and

k) For such other and further relief as the Arbitrator deems just and proper.

### Opt-Out of Classwide Actions and Settlements

Claimant opts out of any and all past, present, and future arbitrations, class actions, representative actions, and collective actions against Respondent and/or its affiliates that contain any claims referenced in this Demand and/or settlements that purport to release any claims referenced in this Demand. Furthermore, Claimant requests that Respondent notify the court(s), the settlement administrator(s), and Claimant's counsel of Claimant's desire to opt-out and not to participate in any and all such actions and settlements. Moreover, in the event that Respondent enters into any settlement agreement that purports to settle any of the claims referenced in this Demand, Claimant requests that Respondent provide Claimant's counsel with a copy of such settlement agreement and any related settlement notice and/or claim form within ten (10) days of execution of the settlement agreement.

### Ongoing Investigation and Reservation of Rights

Claimant has not yet completed Claimant's discovery and/or investigation relating to this Demand. Furthermore, Claimant's investigation of the facts is continuing and will continue throughout this action. Thus, Claimant's Demand is made without prejudice to Claimant's right to supplement Claimant's Demand and to amend and/or correct the content of this Demand and/or introduce new facts and claims in this action.

### Conclusion

Claimant is willing to engage in negotiation and/or mediation before arbitration commences. Please respond to the undersigned and advise of your requests and/or preferences with respect to negotiation, mediation, and/or arbitration. Thank you for your time and consideration in this matter.

Very truly yours,

THE TIDRICK LAW FIRM

Steven G. Tidrick, Esq.

### PROOF OF SERVICE

I emailed these documents to Respondent's Counsel on the same date that this letter is dated. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Joel B. Young, Esq.

# EXHIBIT D

**AMAZON FLEX**

**INDEPENDENT CONTRACTOR TERMS OF SERVICE**

Welcome to the Amazon Flex program (the "**Program**"). These Terms of Service (this "**Agreement**"), including the Program Policies, attached as an Exhibit A, will govern the transportation and delivery services contemplated by this Agreement (the "**Services**") and constitute a legally binding agreement between Amazon Logistics, Inc. ("**Amazon**") and you. Any reference to this Agreement includes the Program Policies. This Agreement takes effect on the date on which you click through this Agreement when creating your account for the Program (your "**Program Account**") or, if earlier, when you begin to perform the Services (the "**Effective Date**"). If there is a conflict between the Program Policies and any other section of this Agreement, the Program Policies will prevail.

YOU AND AMAZON AGREE TO RESOLVE DISPUTES BETWEEN YOU AND AMAZON ON AN INDIVIDUAL BASIS THROUGH **FINAL AND BINDING ARBITRATION**, UNLESS YOU OPT OUT OF ARBITRATION WITHIN 14 CALENDAR DAYS OF THE EFFECTIVE DATE OF THIS AGREEMENT, AS DESCRIBED BELOW IN SECTION 11. If you do not agree with these terms, do not use the Amazon Flex app or participate in the Program or provide any Services.

**1. The Services.**

a) You agree to provide the Services in a safe and competent manner in accordance with the level of professional care that would be observed by a prudent person rendering similar services and subject to the Service Standards described in the Program Policies. Failure to comply with the Service Standards will constitute a breach of this Agreement.

b) This Agreement requires no minimum amount or frequency of Services. You agree, however, that if you accept an offer to provide Services during a particular confirmed block and you do not cancel your acceptance as permitted under the Program Policies, you will deliver the parcels, packages, totes, bags or other deliverables tendered to you by Amazon or its designees ("Deliverables") during such period ("Delivery Block"). The Delivery Block starts when you receive Deliverables and ends at the time the last Deliverable is delivered or, if undeliverable, is returned as specified by Amazon.

**2. Independent Contractor Relationship.**

This Agreement creates an independent contractor relationship, not an employment relationship. As an independent contractor of Amazon, nothing in this Agreement will create any partnership, joint venture, agency, franchise, or employment relationship between you and Amazon. As an independent contractor, you will not be considered as having the status of an employee of Amazon for any purpose, including federal, state, and local tax purposes, and you will not be required or entitled to participate in any employee benefit or other plans or arrangements in which employees of Amazon and its affiliates may participate. You are solely responsible for all taxes applicable to you, including, but not limited to, income and social security taxes. You are not covered by unemployment insurance or workers' compensation provided by Amazon or any of its affiliates, and you have no right to nor will you seek benefits or any form of payment from or through Amazon or any of its affiliates under state unemployment coverage or workers' compensation. You have no authority to bind Amazon, and you will not make any representation identifying yourself as an employee of Amazon or make any representations to any person or entity that you have any authority to bind Amazon as an employee,

partner, or otherwise. This Agreement applies to each Delivery Block but there will be no relationship between the parties after the end of one Delivery Block and before the start of any subsequent Delivery Block.

**3. Service Fees.**

In consideration of providing Services in accordance with this Agreement and for providing your Vehicle, Amazon will pay you fees in the amounts indicated in the Amazon Flex app at the time of acceptance, or as otherwise agreed between you and Amazon from time to time ("Service Fees"). The Service Fees, unless otherwise expressly provided in this Agreement, will be your only fee for performing the Services. The Service Fees include all amounts due to you for providing your Vehicle and the Services under this Agreement, including any expenses you may incur (such as costs of fuel, taxes, registration fees, permits of all types, and any other assessment, citation, fine, or fee imposed or assed against your Vehicle or you by any applicable governmental authority or otherwise related to your equipment and its use). You understand that Amazon would offer lower Service Fees if Amazon had to pay for your expenses. Amazon will pay Service Fees to you no later than 15 days after completion of the Services. Depending on the location in which the Services are provided and the product or business to which the Services relate, Amazon's customers may be able to provide a tip in connection with the fulfillment of their orders and Amazon will pass through any tips payable to you.

**4. Representations, Warranties, and Covenants.**

You represent and warrant to Amazon that you have all legal capacity and authority to enter into, and perform your obligations under, this Agreement. You agree, at all times, to: (a) comply with all laws, rules, and regulations pertaining to the Services, including all laws, rules, and regulations applicable to (i) transportation, safety and insurance related to the performance of Services, (ii) health and safety of customers and the Deliverables and (iii) anti-bribery and anti-corruption; (b) hold and maintain, throughout your participation in the Program, all licenses, permits, and other authorizations necessary for you to perform the Services (including, if applicable, driver's license, vehicle registration, and automobile insurance), which you will provide to Amazon upon request; (c) notify Amazon immediately after becoming aware that any license, permit, or authorization required for you to perform the Services has expired, been lost or suspended; (d) provide complete and accurate responses to all questions related to the background screening, including questions on prior convictions; (e) notify Amazon immediately if you need to change or update your answers to any questions posed during the background screening process, including if you have any new convictions; (f) notify Amazon immediately of any event or circumstance that impairs the safety of or delays delivery of Deliverables; (g) comply with Amazon's Supplier Code of Conduct posted at **http://www.amazon.com/gp/help/customer/display.html?ie=UTF8&nodeId=200885140** and Amazon's safety policies related to Amazon's premises and Deliverables (collectively, "Amazon Safety Requirements"), and permit, as requested by Amazon from time to time, Amazon's designee to audit your compliance with any Amazon Safety Requirements; (h) not violate or infringe any third party's rights in proprietary or confidential information in performing the Services; and (i) not create any lien on Amazon property or assets, including any Deliverables, and waive all rights to any lien. Throughout the term of this Agreement, you will provide Amazon with any forms, documents, or certifications as may be required for Amazon to verify representations and warranties you made in this Agreement or your compliance with any provision of this Agreement.

**5. Equipment Used to Perform the Services.**

a) You agree that, as part of managing your own business, you will provide and maintain a mobile device compatible with the Amazon Flex app, any vehicle identified by you within the Amazon Flex app ("Vehicle"), any bicycle or other non-motorized mode of transportation used to provide the Services, and any other equipment that you choose to use or that you need in order to provide the Services. Your identification of any Vehicle within the Amazon Flex app will be considered an acknowledgement of and receipt for equipment, as required by applicable law.

b) You agree that while actively performing the Services during a Delivery Block, your Vehicle is under an exclusive lease as defined under Federal Motor Carrier Safety Administration ("FMCSA") section 49 C.F.R. Part 376, which requires exclusive possession, control and use by Amazon of both the Services and your Vehicle during that time. Your obligations under the lease will terminate each time you are done with a Delivery Block and will restart each time a new Delivery Block begins. "Actively performing the Services" means that you are actively delivering Deliverables, waiting to receive more Deliverables, or on your way back to the delivery station with undeliverable or damaged Deliverables. For clarity, exclusive possession, control and use of your Vehicle by Amazon does not mean that you cede physical control or ownership of your Vehicle.

## 6. Term and Deactivation.

a) This Agreement is effective as of the Effective Date and will continue to be in effect until you or Amazon terminates this Agreement.

b) You may terminate this Agreement at any time and for any reason by giving Amazon a notice of termination in accordance with Section 14 below. You will not be eligible to participate in the Program for 12 months following the date of the termination notice.

c) Amazon may terminate this Agreement at any time and for the following reasons by giving you a notice of termination in accordance with Section 14 below: (i) for failure to meet Service Standards, (ii) for failing a background check any time before or after the Effective Date (iii) material violation of the Program Policies, (iv) material breach of this Agreement, (v) if your Amazon.com account is deactivated; or (vi) for other commercially reasonable cause.

d) If you have been inactive for more than 180 days, Amazon may deactivate your account. If your account is deactivated for inactivity, you may apply to re-enroll in the Program.

e) If you opt out of receiving electronic communication (as defined in Section 14 below), your account will be deactivated. Subject to other provisions of this Agreement, you will be able to re-activate your account by notifying Amazon that you agree to receive electronic communication from Amazon.

f) Amazon may cease providing any Licensed Materials (as defined in Section 10 below) and terminate this Agreement if you violate any of the terms related to the Licensed Materials in which case any licenses granted to you by Amazon will terminate immediately, without any notice.

g) If either you or Amazon terminate this Agreement, you must uninstall the Amazon Flex application on your device.

## 7. Availability of the Services.

Amazon makes no promises or representations in this Agreement as to the amount of business that you can expect at any time. You can accept or reject any opportunity offered by Amazon. Nothing in

this Agreement will prohibit you from providing Services or using your Vehicle on behalf of any other person or entity, including competitors of Amazon, except during any Delivery Block. Amazon may also engage the services of other companies and individuals that may perform the same or similar services as those provided by you under this Agreement.

## 8. Limitation of Liability.

Amazon will not be liable for damages of any kind, including direct damages, loss of goodwill, lost opportunities or profits, anticipated amount of business, expenditures, investments, leases, or commitments made by you in connection with the Program or otherwise. Except for your indemnity obligations under Section 9 below and any liability arising out of your breach of the section of the Program Policies entitled "Confidentiality and Personal Information", and except as indicated below, NEITHER PARTY WILL BE LIABLE UNDER ANY CIRCUMSTANCES FOR DIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, INCIDENTAL, OR INDIRECT DAMAGES OF ANY KIND, HOWEVER CAUSED AND UNDER ANY THEORY OF LIABILITY, WHETHER RELATED TO THIS AGREEMENT, LICENSED MATERIALS, THE PROGRAM OR THE SERVICES, AND WHETHER IN CONTRACT, STRICT LIABILITY OR TORT (INCLUDING NEGLIGENCE OR OTHERWISE) EVEN IF AMAZON HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. Nothing in this Agreement will limit or exclude either party's liability for any matter or individual remedy that may not be limited or excluded by applicable laws, rules, or regulations.

## 9. Indemnification.

a) You will defend, indemnify, and hold harmless Amazon and its affiliates and successors, and each of their respective directors, officers, and employees (each an "Indemnified Party" and, collectively, the "Indemnified Parties") from any third-party allegation or claim based on, or any loss, damage, settlement, cost, expense, and any other liability (including reasonable attorneys' fees and expenses) arising out of or in connection with, (a) your negligence, strict liability, or misconduct, (b) a breach of this Agreement by you, (c) any action or inaction by you (including any and all loss or damage to personal property or bodily harm (including death) relating to or arising out of any such action or inaction), or (d) any allegation or claim that you failed to comply with applicable laws, rules, or regulations.

b) Your duty to defend is independent of your duty to indemnify. You will use counsel reasonably satisfactory to the Indemnified Parties to defend each indemnified claim, and the Indemnified Parties will cooperate (at your expense) with you in the defense. If at any time the Indemnified Parties determine that they may be adversely affected by any indemnified claim, the Indemnified Parties may assume control of the defense of the claim. You will not consent to the entry of any judgment or enter into any settlement relating to an indemnified claim without the Indemnified Parties' prior written consent.

## 10. Licensed Materials.

As used in this Agreement, "Licensed Materials" means any software, application, website, content, or other information made available to you (whether standalone, for use on devices owned by you or Amazon, or otherwise) by Amazon or its affiliates in connection with the Program, together with any related manuals and other documentation. Amazon grants to you, during the term of this Agreement, a limited, non-exclusive, non-transferable, non-sublicensable, revocable license to use the Licensed Materials solely for the purpose of performing the Services and participating in the Program and as

permitted under this Agreement. For additional rights and obligations regarding the Licensed Materials see the Program Policies.

**11. Dispute Resolution, Submission to Arbitration.**

a) SUBJECT TO YOUR RIGHT TO OPT OUT OF ARBITRATION, THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM OR TO YOUR PERFORMANCE OF SERVICES. TO THE EXTENT PERMITTED BY LAW, THE PRECEDING SENTENCE APPLIES TO ANY DISPUTE OR CLAIM THAT COULD OTHERWISE BE ASSERTED BEFORE A GOVERNMENT ADMINISTRATIVE AGENCY.

b) TO THE EXTENT PERMITTED BY LAW, THE PARTIES AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS OR COLLECTIVE BASIS.

c) TO THE EXTENT PERMITTED BY LAW, THE PARTIES FURTHER AGREE THAT NO DISPUTE RESOLUTION PROCEEDING WILL BE CONDUCTED ON A REPRESENTATIVE BASIS.

d) TO THE EXTENT PERMITTED BY LAW, THE PARTIES WAIVE ANY RIGHT TO PARTICIPATE IN OR RECEIVE ANY RELIEF FROM ANY NON-INDIVIDUAL PROCEEDING REFERENCED ABOVE.

e) THIS AGREEMENT DOES NOT PROVIDE FOR, AND THE PARTIES DO NOT CONSENT TO, ARBITRATION ON A CLASS, COLLECTIVE OR REPRESENTATIVE BASIS.

f) NO ARBITRATOR SELECTED TO ARBITRATE ANY DISPUTE BETWEEN THE PARTIES IS AUTHORIZED TO ARBITRATE ANY DISPUTE ON A CLASS, COLLLECTIVE OR REPRESENTATIVE BASIS.

g) THIS AGREEMENT SHALL NOT BE INTERPRETED AS REQUIRING EITHER PARTY TO ARBITRATE DISPUTES ON A CLASS, COLLECTIVE OR REPRESENTATIVE BASIS, EVEN IF A COURT OR ARBITRATOR INVALIDATES OR MODIFIES OR DECLINES TO ENFORCE THIS AGREEMENT IN WHOLE OR IN PART.

h) You and Amazon agree that, at least 30 days before commencing any legal action relating in any way to this Agreement or to the Services, the aggrieved party will provide the other party a notice of the aggrieved party's claims and at least 30 days in which to cure an alleged breach of this Agreement or other alleged act or omission, if the same is reasonably capable of being cured. Notice shall be provided as set forth in Section 15 of this Agreement. The applicable statute of limitations shall be tolled for 30 days following the provision of such notice.

i) Demand for arbitration under this Agreement must be made in writing, must describe the demanding party's claim, and must be delivered to the other party by hand or by first-class mail within the applicable statute of limitations. Any demand for arbitration made to Amazon must be directed to Amazon's registered agent, Corporation Service Company, at 300 Deschutes Way SW, Suite 304, Tumwater, WA 98051. The arbitration will be conducted by the American Arbitration Association

(the "AAA") under its Commercial Arbitration Rules and Mediation Procedures in effect at the time of filing a Demand for arbitration. The AAA's rules are available at www.adr.org. If the AAA's rules are inconsistent with this Agreement, this Agreement will govern. Payment of all filing, administration, and arbitrator fees will be governed by the AAA's rules, except that if you initiate the arbitration, you will pay for only the first US $200 of the total AAA filing fee. For example, if the AAA filing fee is US $180 you will be responsible for paying the entire AAA filing fee in that instance. But, if the AAA filing fee is US $570 you will be responsible for paying US $200 and Amazon will pay the difference (US $370 in this instance). Amazon will also pay all other costs and expenses unique to arbitration, including the arbitrator's fees. The arbitration will take place at a mutually-convenient location within 45 miles from the last location in which you provided Services.

j) The parties agree that the Federal Arbitration Act and applicable federal law will govern any dispute that may arise between the parties. The parties further agree that, notwithstanding any provision in the AAA rules, any disputes regarding the arbitrability of a claim or the validity, interpretation, or enforcement of any provision (including a waiver) relating to class, collective or representative claims shall be decided by a court of competent jurisdiction, and not by an arbitrator.

k) WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION.  If you wish to opt out of this arbitration agreement—meaning, among other things, that you and Amazon would be free to bring claims against each other in a court of law—you can opt out by sending an e-mail to amazonflex-support@amazon.com before the end of the Opt-Out Period (defined below). The e-mail must include your name and a statement indicating that you are intentionally and knowingly opting out of the arbitration provisions of the Amazon Flex Independent Contractor Terms of Service. You will not be subject to retaliation for asserting claims or opting out of this agreement to arbitrate.

a. If Amazon e-mailed you this Agreement as an update to the Amazon Flex Independent Contractor Terms of Service to which you previously agreed, the Opt-Out Period ends 14 calendar days from the date of Amazon's e-mail to you.

b. If you have not agreed to any previous version of the Amazon Flex Independent Contractor Terms of Service, the Opt-Out Period ends 14 calendar days from the date on which you click "I AGREE AND ACCEPT" to accept this Agreement in the Amazon Flex App.

**12. Governing Law.**

The interpretation of this Agreement is governed by the law of the state of Washington without regard to its conflict of laws principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law.

**13. Modifications.**

Amazon may modify this Agreement, including the Program Policies, at any time by providing notice to you through the Amazon Flex app or otherwise providing notice to you. You are responsible for reviewing this Agreement regularly to stay informed of any modifications. If you continue to perform the Services or access Licensed Materials (including accessing the Amazon Flex app) after the effective date of any modification to this Agreement, you agree to be bound by such modifications. However, (i) any modification to Service Fees will be provided to you in writing or through the Amazon Flex app before you accept and complete any Delivery Blocks to which such modifications

apply; (ii) any modifications to Section 11 will not apply to claims that accrued or to disputes that arose prior to such modification.

## 14. Notice; Electronic/Mobile Communications.

Amazon will communicate with you via phone, text message, email, or push notifications sent via the Amazon Flex app (each such communication, "electronic communication") in connection with your participation in the Program. By downloading the Amazon Flex app, providing us with your mobile number, and agreeing to this Agreement, you are providing us with written consent to receive push notifications and automated text messages from Amazon in connection with the Program. To stop receiving push notifications, you may adjust the settings on your phone or delete the Amazon Flex app. You will not be able to participate in the Program if you adjust the settings or delete the Amazon Flex app. To stop receiving text messages from Amazon, reply STOP to any message. You consent to Amazon communicating with you concerning the Program via any or all of these means and you are responsible for printing, storing, and maintaining your own records of any such agreements, notices, disclosures or other communications. Standard messaging and data rates may apply. It is your responsibility to keep your email address and phone number current by updating the information you provided to Amazon. Terminating this Agreement will stop all electronic communication. If you want to terminate this Agreement, you can provide a notice of termination to Amazon by sending a message to the following email address: amazonflex-support@amazon.com. If you want to provide notice under this Agreement, other than the notice of termination, you can provide such notice by sending a message to the following email address: amazonflex-support@amazon.com.

## 15. Documents.

You may obtain an e-mailed copy of this Agreement by e-mailing a request to amazonflex-support@amazon.com. This Agreement will be accessible to you at any time in the Amazon Flex app.

## 16. Entire Agreement and Severability; Survival.

a) This Agreement constitutes the complete and final agreement of the parties pertaining to the Services and supersede and replace the parties' prior agreements, understandings, representations, and discussions (whether written or oral) relating to the Services. If any provision of this Agreement is determined to be unenforceable, the parties intend that this Agreement be enforced as if the unenforceable provisions were not present and that any partially valid and enforceable provisions be enforced to the fullest extent permissible under applicable law.

b) The following sections of this Agreement, along with any other provisions that by their nature should survive termination of this Agreement, will survive any termination or expiration of this Agreement: Term and Termination; Indemnification; Limitation of Liability; Dispute Resolution, Submission to Arbitration, Governing Law and the following sections of the Program Policies: Confidentiality and Personal Information; Taxes; and Miscellaneous.

**Exhibit A**

**Amazon Flex Program Policies**

9/30/2016

## I. Welcome To Amazon Flex.

Welcome to Amazon Flex, an innovative new service offering you the opportunity to deliver Amazon packages through the Amazon Flex app. Amazon is excited to welcome you to the Amazon Flex program and hope that you enjoy being your own boss and running your own business by using the Amazon Flex app.

## II. Program Requirements.

A. In order to participate in the Program, you must:

1. Pass a background check and, if applicable, a motor vehicle record check in accordance with Amazon's standards;
2. Be at least 21 years of age;
3. Be legally qualified to work in each jurisdiction in which you provide Services;
4. Have the ability to effectively operate the Amazon Flex app and communicate with customers; and
5. Install the Amazon Flex app on your smartphone.

B. In performing Services, you may only use:

1. Non-motorized transportation (e.g., walking, cycling);
2. Following Vehicles:
   ◦ a private passenger vehicle,
   ◦ a cargo van (not to exceed 10,000 lbs. in gross vehicle weight rating),
   ◦ a light truck (not to exceed 10,000 lbs. in gross vehicle weight rating); or
3. Public Transportation.

If you are required to advise Amazon of the mode of transportation that you intend to use to transport specified Deliverables, you agree to use only that mode of transportation to transport those Deliverables.

C. If you operate any Vehicle in connection with your performance of Services, you must:

1. Have a current valid driver's license,
2. If applicable, maintain current Vehicle registration,
3. Maintain current automobile insurance coverage required by applicable laws, rules, and regulations to operate such Vehicle; and
4. Be legally authorized and fit to operate such Vehicle.
5. Upon request, you will provide Amazon with proof that these requirements have been satisfied.
6. All Vehicles must be registered and must have passed all applicable local, state and federal standards for safety and environmental compliance.
7. You are not permitted to carry weapons while performing Services, except to the extent local applicable law places restrictions on this policy.
8. You will not provide Services if you are currently an Amazon employee and you will cease providing Services if you become an Amazon employee.

## III. Service Standards.

A. As an independent contractor, you agree to provide results—the timely and effective delivery of undamaged parcels, bags, totes or other items to the customers' and Amazon's satisfaction-- subject to the following standards ("Service Standards"):

1) Safety
i. Failure to comply with health, safety, & other applicable laws. Amazon requires you to comply with all traffic (including observing speed limit laws and distracted driving laws), health, safety, and other laws applicable to Deliverables or Services. Violation of traffic, health, safety, and other laws applicable to Deliverables or Services will make you ineligible to participate in the Program.

2) Reliability
i. Arriving on time for or timely forfeiting Delivery Blocks. Amazon requires that you a) arrive on time and be ready to provide Services for any confirmed Delivery Block or b) forfeit a Delivery Block at least 45 minutes before the start of such Delivery Block. Please note that if you select a Delivery Block close to its start time (i.e. 20 minutes before the start of the Delivery Block), you will still be required to arrive on time for that Delivery Block. If you repeatedly arrive late or forfeit Delivery Blocks late, you will no longer be eligible to participate in the Program.

3) Delivery Quality
i. Late Deliveries. Amazon requires that you deliver the packages to the customers on time. The app will specify the delivery window during which the customer expects the package to be delivered. If you repeatedly deliver packages late, you will no longer be eligible to participate in the Program.

ii. Packages marked as delivered that the customer does not receive. If you deliver a package, Amazon expects that the customer will be able to find it. If customers repeatedly report that they cannot find packages you marked as delivered, you will no longer be eligible to participate in the Program.

iii. Delivery not attempted or undeliverable packages not returned to Amazon timely. Amazon expects that you will deliver all the packages you picked up as part of your Delivery Block. In an instance where delivery is not possible, you are required to return all packages to the Amazon delivery station, unless otherwise directed by Amazon. If you repeatedly do not attempt to deliver all the packages you picked up during a Delivery Block or you do not return the undeliverable packages to a location specified by Amazon, you will no longer be eligible to participate in the Program.

4) Customer Service
i. Rude or inappropriate behavior. Amazon requires you to behave respectfully and professionally when interacting with customers, station operators, merchants and other delivery partners while providing the Services. If customers, station operators, merchants or other delivery partners repeatedly report disrespectful, rude, inappropriate, unprofessional, dangerous or threatening conduct, you will no longer be eligible to participate in the Program. Additionally, a single violation, depending on the seriousness of the infraction, can make you ineligible to participate in the Program.

ii. Failure to follow instructions. Amazon requires you to follow the delivery instructions in the app or from a customer as long as the customer instructions are reasonable and do not conflict with health, safety and other applicable laws. Amazon expects you to use an insulated bag when delivering restaurant orders, not leave chilled/frozen items unattended, always check recipient IDs when delivering alcohol, and collect a signature when instructed to do so in the app. If you repeatedly disregard the instructions, you will no longer be eligible to participate in the Program.

B. As an independent contractor, subject only to this Agreement, it is for you to decide the means and manner in which to provide the Services and achieve the results that you have agreed to provide. Therefore, in performing Services, you are free to map out your own routes, sequence your deliveries and in every other way control the means and manner in which you deliver Deliverables.

## IV. Program Account.

A. Amazon will use information provided by you to create or maintain your Program Account. You will provide accurate, current, and complete information as part of your contracting process and to update your information as necessary so that it remains accurate, current, and complete at all times.

B. You will not permit any other person to access your Program Account or the Licensed Materials, including the Amazon Flex App, or to perform any Services using your identity or log-in credentials. You will not use any other person's access to Program Account or Licensed Materials, including the Amazon Flex App, or perform any Services using any other person's identity or log-in credentials. You will keep secure and confidential any password required to access your Program Account or Amazon Flex App or any identification that Amazon provides to you in connection with the Program or Amazon Flex App and you agree to accept responsibility for all activities that occur under your Program Account and associated password.

## V. Insurance.

A. If you operate any motor vehicle(s) in connection with your performance of the Services, you will maintain, at your expense, personal automobile insurance coverage required by applicable laws, rules, and regulations to operate such vehicle(s). You will provide proof of such insurance coverage to Amazon, upon request. You will notify Amazon if your insurance coverage is cancelled. Your personal automobile insurance policy may not cover commercial activity. As an independent contractor, it is your responsibility to understand the terms of your personal insurance coverage and to contact your personal insurance company if you have any questions.

B. Where allowed by state and federal regulations, Amazon maintains, pursuant to FMCSA regulations, a commercial automobile insurance policy ("Amazon Insurance Coverage") that is intended to provide third-party bodily injury and property damage coverage, uninsured/under-insured motorist coverage, and comprehensive/collision coverage contingent on your personal insurance policy coverage, while actively performing the Services during the Delivery Block, in each case subject to Amazon Insurance Coverage deductibles and coverage limitations. If you maintain commercial automobile insurance coverage applicable to your operation of a Vehicle, your provider will provide primary coverage for you at all times, including during the Delivery Block and Amazon Insurance Coverage will be, only in those geographies where state and federal regulations allow, excess over your commercial automobile insurance. The above description of Amazon Insurance Coverage is a summary only, and if there is a conflict between the above description and the actual terms of the Amazon Insurance Policy, the actual terms of the Amazon Insurance Policy will dictate coverage. You will notify Amazon immediately of any accident or other on-road incident that occurs while you are providing Services during the Delivery Block and you will cooperate with Amazon and the applicable insurance company in the investigation of such accident or on-road incident. Amazon Insurance Coverage will in no way affect your indemnity obligations to Amazon as provided for in the Agreement. Amazon Insurance Coverage limits are available upon request.

## VI. Privacy.

A. Amazon receives and stores any information you enter on our website and mobile applications, while providing Services or participating in the Program, and through other interactions and communications you have with us, our mobile application or our website. Any of the Licensed Materials may provide Amazon with data about your use of such Licensed Materials, your geo-location and related tracking data, including your location, movements, speed at which you are traveling, and other personally identifiable information. Amazon may use any such information and share such information with third parties in connection with the Program or other products or services, including Services, offered by Amazon or its affiliates. By submitting information to Amazon during the contracting process or while providing Services and using any Licensed Materials, you expressly (i) consent to Amazon collecting, using and sharing the above described data and information and (ii) waive and release Amazon from any and all claims, causes of action, liability or damages arising out of or in any way related to Amazon's use of such data and information.

B. Amazon may obtain information about you, including your motor vehicle record and results of your background check. You authorize Amazon and its applicable service provider(s) to, from time to time, (i) perform a background check on you and (ii) obtain your motor vehicle record. Based on a review by Amazon or its service provider of the results of your background check and motor vehicle record, Amazon may immediately terminate this Agreement.

C. Subject to applicable laws, Amazon may release any collected data and information, including personally identifiable information, when Amazon believes such release is appropriate or necessary to (i) comply with the law; (ii) enforce or apply this Agreement, including Program Policies; (iii) protect the rights, property, security or safety of Amazon, its affiliates, Amazon's customers, or others; (iv) detect, prevent or otherwise address fraud, security or technical issues; or (v) prevent or stop activity which Amazon considers to be, or to pose a risk of becoming, illegal, unethical, or legally actionable. Amazon may also receive information you shared with third parties, provided that such party has obtained necessary permissions to share the information with Amazon.

D. When you download or use apps created by Amazon or its affiliates, Amazon will receive information about your location, and your mobile device, including a unique identifier for your device. Most mobile devices provide you with information about these permissions. You have the right to choose whether or not to allow Amazon to receive this information. However, our ability to receive this information is an important part of the performance of Services, so if you choose to deny Amazon access to this information, this could affect the availability and functionality of the Amazon Flex App and your participation in the Program.

### VII. Licensed Materials; Devices.

A. You may not (i) incorporate any portion of the Licensed Materials into your own works or compile any portion of it in combination with your own works, transfer it, in whole or in part, for use with another service, or sell, rent, distribute, copy, modify, adapt, translate, reverse engineer, decompile, or disassemble, or make derivative works based on, or manipulate the Licensed Materials or any part of the Licensed Materials or otherwise sublicense or assign any rights to the Licensed Materials in whole or in part, (ii) cause or launch any programs or scripts for the purpose of surveying, manipulating or data mining any portion of the Licensed Materials or impairing or unduly affecting the operation or functionality of any aspect of the Licensed Materials; or (iii) attempt to gain unauthorized access to any portion of the Licensed Materials, including through scripts or third party applications.

B. Additional third party terms contained within or distributed with certain Licensed Materials may apply to the Licensed Materials (or software incorporated with the Licensed Materials) and will

govern the use of such software in the event of a conflict with this Agreement ("Third Party Software"). Such Third Party Software license terms will apply to the corresponding Third Party Software in lieu of this Agreement. For more information on Third Party Software, refer to the Additional Terms in the Amazon Flex app, which can be accessed via Home > Account > View Legal Information > Additional Terms..

C. All rights not expressly granted to you in this Agreement are reserved and retained by Amazon or other content providers. You may not frame or utilize framing techniques to enclose any trademark, logo, or other proprietary information (including images, text, page layout, or form) of Amazon without express written consent. You may not use any meta tags or any other "hidden text" utilizing Amazon's name or trademarks without the express written consent of Amazon. You may use the Licensed Materials only as permitted by law.

D. You will not attempt to participate or participate in the Program, or provide any Services, for the purpose of gathering information regarding the Program (including any Licensed Materials) or Amazon's processes, building or operating a competitive service or a service that uses similar ideas, features, or functions as the Program (including any Licensed Materials), or copying any idea, feature, or function of the Program (including any Licensed Materials).

E. When you use the Licensed Materials, you may also be using the services of one or more third parties, such as a wireless carrier or a mobile platform provider. Your use of these third party services may be subject to the separate policies, terms of use, and fees of these third parties.

F. Amazon may offer automatic or manual updates to the Licensed Materials at any time and without notice to you.

G. You must comply with all export and re-export restrictions and regulations of the Department of Commerce and other United States agencies and authorities that may apply to the Licensed Materials and agree not to transfer, or encourage, assist, or authorize the transfer of Licensed Materials to a prohibited country or otherwise in violation of any applicable restrictions or regulations.

H. You will notify Amazon immediately after becoming aware that any device on which any Licensed Materials are installed has been lost, stolen, or misplaced. If Amazon provides you with any device or other equipment in connection with the Program and such device or other equipment (or any part of it) is lost, stolen, unreturned, damaged, sold, transferred, or encumbered without the express prior written consent of Amazon, you will promptly pay Amazon the full replacement cost of such device or other equipment, together with any incidental costs that are incurred by Amazon to replace the same.

I. AMAZON LICENSES THE LICENSED MATERIALS TO YOU "AS IS" AND MAKES NO WARRANTIES OF ANY KIND REGARDING THE LICENSED MATERIALS. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, AMAZON EXPRESSLY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY, NONINFRINGEMENT, TITLE, OR FITNESS FOR A PARTICULAR PURPOSE. AMAZON DOES NOT WARRANT THAT THE LICENSED MATERIALS WILL MEET YOUR REQUIREMENTS OR WILL OPERATE UNINTERRUPTED, ERROR FREE, OR PROVIDE ACCURATE, COMPLETE, OR UP-TO-DATE INFORMATION. AMAZON WILL NOT BE RESPONSIBLE FOR ANY LOSS, DAMAGE, OR CLAIM CAUSED BY OR ATTRIBUTABLE TO ANY DEFECT OR DEFICIENCY IN ANY LICENSED MATERIALS.

J. If you provide any suggestions, comments, ideas, improvements, or other feedback relating to the Program, Program Policies or the Licensed Materials to Amazon, you assign to Amazon all right, title and interest in and to the same and will provide any assistance Amazon may require to document, perfect, and maintain these rights, and Amazon will be free to use, disclose, reproduce, modify, license, transfer, and otherwise distribute and exploit any of the foregoing.

K. All content included in or made available through Licensed Materials or the Program such as text, graphics, logos, button icons, images, audio clips, digital downloads, data compilations, and software is the property of Amazon or its content suppliers and protected by United States and international copyright laws. The compilation of all content included in or made available through any Licensed Materials or the Program is the exclusive property of Amazon and protected by U.S. and international copyright laws.

L. Graphics, logos, page headers, button icons, scripts, and service names included in or made available through any Licensed Materials or the Program are trademarks or trade dress of Amazon in the U.S. and other countries. All other trademarks not owned by Amazon that appear in the Licensed Materials or the Program are the property of their respective owners, who may or may not be affiliated with, connected to, or sponsored by Amazon.

## VIII. Confidentiality and Personal Information.

A. You will use all personally identifiable information (i) concerning Amazon's customers, including names and addresses and (ii) provided to you or learned by you during performance of Services (collectively, "Personal Information"), solely for the purpose of providing Services using the Amazon Flex app and will not contact Amazon's customers using Personal Information for any reason unless directly related to providing Services. You will comply with all instructions Amazon provides in respect of the processing of Personal Information, and you will maintain appropriate security measures to prevent unauthorized use or disclosure of Personal Information and will keep confidential and not share Personal Information with any third party unless expressly permitted under this Agreement. You will return all Personal Information to Amazon promptly following a request from Amazon. As between you and Amazon, all Personal Information is and will remain the exclusive property of Amazon, and you will not disclose, share, transfer, rent, barter, trade, or sell Personal Information and will not develop lists of or aggregate Personal Information. For the avoidance of doubt, the contents of Deliverables tendered by Amazon to you are Personal Information.

B. If you are required by any governmental authority to disclose the contents of any Deliverable, you will promptly notify Amazon of such requirement. Amazon will not provide any Personal Information in connection with any disputes or claims between you and Amazon's customers, nor will any Amazon customers be contacted or called to testify, by either you or Amazon, in connection with any dispute or claim between you and Amazon.

C. Without the prior written authorization by a Vice President of Amazon, you will not use any trade name, trademark, service mark, trade dress, logo or commercial symbol, or any other proprietary rights of Amazon or any of its affiliates in any manner (including use in any client list, press release, advertisement, or other promotional material).

## IX. Taxes.

Each party will be responsible, as required under applicable law, for identifying and paying all taxes and other governmental fees and charges (and any penalties, interest, and other additions thereto) that

are imposed on that party upon or with respect to the transactions and payments under this Agreement. Amazon may deduct or withhold any taxes that Amazon may be legally obligated to deduct or withhold from any amounts payable to you under this Agreement, and payment to you as reduced by such deductions or withholdings will constitute full payment and settlement to you of amounts payable under this Agreement. Throughout the term of this Agreement, you will provide Amazon with any forms, documents, or certifications as may be required for Amazon to satisfy any information reporting or withholding tax obligations with respect to any payments under this Agreement.

## X. Additional Terms.

A. A party does not waive any right under any provision of this Agreement, including Program Policies, by failing to insist on compliance with, or by failing to exercise any right under, the applicable provision. Any waivers granted under this Agreement are effective only if recorded in a writing signed by the party granting such waiver. The section headings of this Agreement, including Program Policies, are for convenience only and have no interpretive value.

B. You will not assign, subcontract, or delegate any of your rights or obligations under this Agreement, or your Program Account, without Amazon's prior written consent. Any attempt by you to assign, subcontract, or delegate in violation of this Agreement will be null and void.