The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BERNADEAN RITTMANN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM INC. and AMAZON LOGISTICS, INC.,<br><br>Defendants. | Consolidated Action<br>Case No. C16-1554-JCC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS FROM NAMED PLAINTIFFS (Dkt. No. 348)**<br><br>**NOTE DATE: November 14, 2024** |

## I. INTRODUCTION

After stalling this case for eight years, Amazon engaged in a brazen attempt to evade this Court's order denying arbitration by suing Plaintiffs in 22 jurisdictions across the country. (*See* Dkt. Nos. 76, 77, 293, 338). When that strategy failed, Amazon turned to a new tactic: attempting to overburden Plaintiffs with harassing and overbroad discovery demands and burdening this Court with premature and unnecessary discovery motions. (*See* Dkt. Nos. 338, 339, 348). Despite filing its answer just one month ago, and despite Plaintiffs' agreement to engage in necessary discovery and produce relevant documents within their possession,

Amazon now seeks to compel overly broad, intrusive, and irrelevant discovery from the named Plaintiffs (*see* Dkt. Nos. 342, 348), while at the same time utterly ignoring its own discovery obligations.

Although discovery is still in its early stages, all Plaintiffs—except one—have already served objections and responses to Amazon's written requests.[1] Plaintiffs have also produced, and continue to produce, reasonably available, non-privileged documents. In fact, three Plaintiffs supplemented their productions earlier today.[2]

Despite Plaintiffs' good faith compliance with discovery, Amazon now moves to compel sweeping discovery, including discovery requests that largely relate to claims that this Court has already dismissed. Amazon demands, for example, a decade's worth of tax returns and cell phone records from every Plaintiff, including those with only common law claims for withheld tips. (*See* Dkt. Nos. 8–9, 12). By seeking discovery on obsolete issues, Amazon has revealed its true aim—to deter these low-wage workers from pursuing their remaining claims.

Amazon's motion to compel is also an attempt to deflect from its own discovery failures. After agreeing to a Rule 30(b)(6) deposition agreed to and scheduled for October 4, 2024, Amazon simply failed to appear. (*See* Dkt. No. 347 at ¶¶ 3–14). Moreover, Amazon has failed to produce any internal policies and procedures related to Amazon Flex drivers and has failed to produce any of its communications with the named Plaintiffs, despite Plaintiffs'

---

[1] Plaintiff Davarci is the only plaintiff who has not yet provided discovery responses; Plaintiffs intend to seek to substitute a new lead plaintiff from New York to replace him.

[2] These Plaintiffs are Debra Wilkins, Cinthia Yarleque, and Freddie Carroll.

repeated requests for this production. Nor has Amazon disclosed the full extent of the data it collects from Plaintiffs, also despite Plaintiffs' requests.

After stalling litigation for eight years, Amazon should not be rewarded with an order compelling overbroad, burdensome, and irrelevant discovery that is clearly designed simply to deter or prevent the Plaintiffs from pursuing their remaining claims. The Court should instead deny Amazon's motion to compel and order that discovery be tailored to the remaining claims and relevant periods in accordance with Rule 26(b)(1).

## II. ARGUMENT

### A. Amazon's discovery requests ignore the Court's dismissal order.

Amazon served its written discovery requests in 2023. (Dkt. No. 349 at ¶¶ 3–6). All Plaintiffs except Davarci served objections and responses in 2023. (*Id.* at ¶¶ 11–13). A year later, the Court granted, in part, Amazon's partial motion to dismiss. (Dkt. No. 338).

Although the Court's dismissal order narrowed the scope of this case considerably, Amazon has not amended its written discovery requests, nor has it tailored in any way what it is seeking from the Plaintiffs. For example, the Court dismissed all of Craig Adams' claims except for his unjust enrichment and tortious interference claims, each based on Amazon having withheld customer tips to drivers. (*See* Dkt. No. 338 at 17–18). Still, Amazon moves to compel "ALL" documents relating to any work that Craig Adams performed outside of Amazon over a nine-year period. (*See* Dkt. No. 349 at 9) (referring to Request No. 10 at Dkt. No. 349-20). Even if such documents were reasonably available and sufficiently particular, they have no bearing on whether Amazon withheld tips from him.

Similarly, the Court dismissed Shenia Brown's minimum wage and overtime claims, leaving only her claims for business expenses and withheld tips under Illinois law. (*See* Dkt.

No. 338). Yet Amazon moves to compel her "documents relating to any loan or credit applications," contending that such documents reflect how Brown held her "profession out to others" and thus "bear directly" on her independent contractor status and wage claims. (Dkt. No. 348 at 14). But again, Brown no longer has overtime or minimum wage claims. And she asserts her claims for business expenses under the Illinois Wage Payment Collection Act, which applies an ABC test (unlike the multi-factor test that would apply to overtime and minimum wage claims, for which some discovery of this type may be relevant). *See Bruger v. Olero, Inc.*, 434 F. Supp. 3d 647, 652 (N.D. Ill. 2020).

By disregarding the Court's dismissal order and filing an omnibus motion to compel Plaintiffs to produce wide-ranging discovery covering topics not relevant to their claims, Amazon has violated Rule 26(b)(1)'s "fundamental principle" that lawyers must size and shape their discovery requests to the requisites of a case." *Utherverse Gaming LLC v. Epic Games Inc.*, 2023 WL 11943948, at *2 (W.D. Wash. July 10, 2023) (citing *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (quoting Chief Justice Roberts' 2015 Year-End Report, at 6)). Rather than compel discovery on obsolete issues, the Court should order Amazon to tailor its discovery requests to the remaining claims.

**B. Amazon's requests are overly broad.**

Most of the requests at issue in Amazon's motion to compel seek information from two years before the Plaintiffs worked for Amazon to the present—a period of at least ten years for every Plaintiff. (*See, e.g.*, Dkt. No. 349-35 at Request for Production Nos. 6, 10, 12). And all of Amazon's requests "seek production of broad, general categories of documents using the terms 'all,' 'any and all,' and 'relating to[.]'" *Shuckett v. Dialamerica Mktg., Inc.*, 2018 WL 4350123, at *8 (S.D. Cal. Sept. 10, 2018). The requests are, therefore, "overly broad on their

face as to time and scope." *Id.* This is especially true for Plaintiffs like Kimberlee Keller, who worked for Amazon for three months between December 2016 to February 2017. (Dkt. No. 262 at ¶ 22).

As the party seeking to compel discovery, Amazon must establish that its requests satisfy the relevancy and proportionality requirements of Rule 26(b)(1). *Brown v. Michaelis*, 2024 WL 2925062, at *2 (W.D. Wash. May 3, 2024) (internal citation omitted); *see also Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Contrary to its burden, Amazon has failed to show that its requests are reasonably tailored to each Plaintiff's claims and circumstances. The Court should deny Amazon's motion accordingly.

### C. Amazon has no need to reconstruct Plaintiffs' workdays with phone records, bank statements, diaries, app data, and other records.

Many of Amazon's requests seek documents and information related to "activities . . . that Plaintiffs engaged in on days they performed services as [Amazon] Delivery Partners." (Dkt. No. 348 at 12). "These documents include records like social media, credit card records, calendars, text messages, and phone records." (*Id.*). In the same vein, Amazon requests that Plaintiffs produce undefined data from "other gig companies" and employers. (*Id.* at 8–11). Setting aside that Amazon surveilled drivers through the Amazon Flex App, as confirmed by Amazon's "expert" (*see* Dkt. No. 355 at ¶ 6), Amazon has no need to reconstruct each Plaintiff's workdays.

Unlike independent contractor misclassification cases involving other "gig economy" companies (in which workers are permitted to work for multiple companies simultaneously), Plaintiffs have worked for Amazon on "blocks" (Amazon's term for "shifts"). (*Id.*). Amazon compensated Plaintiffs "on a per-block basis" "for all services rendered to deliver the packages

in that block." (*Id.* at ¶ 13). As the court in *Lawson v. Grubhub* recognized, what a driver does during a block is irrelevant to the alleged employer's control. 665 F. Supp. 3d 1108, 1130 (N.D. Cal. 2023) (collecting other precedent and holding, "That [Plaintiff] sometimes made deliveries for Grubhub's competitors while he was on-block and was not a particularly good delivery driver does not change that Grubhub exercised control over him during this time."); *see also Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal. 4th 833, 842, 340 P.3d 355, 361 (Cal. 2015) (holding that a guard's ability to engage in personal activities—such as sleeping, showering, eating, reading, watching television, and browsing the Internet—did not diminish the defendant's control nor render the time noncompensable).

Such reasoning is particularly apt here because Amazon's standardized contracts barred Plaintiffs from performing non-Amazon services while working for Amazon:

> You agree that while actively performing the Services, your Vehicle is under an exclusive lease . . ., which requires exclusive possession, control and use by Amazon of both the Services and your Vehicle during that time . . . . 'Actively performing the Services' means that you are actively delivering Deliverables, waiting to receive more Deliverables, or on your way back to the delivery station with undeliverable or damaged Deliverables.

(*See e.g.*, Dkt. No. 248-4 at ¶ 5). For these reasons, documents purporting to show what extracurricular activities Plaintiffs engaged in while rendering services for Amazon have no probative value. Even if an employee engages in personal activities during working time, an employer does not have the right not to pay them for that time. Amazon's overbroad attempt to obtain documentation regarding every minute of Plaintiffs' working time over a 10-year period has little if any relevance to the claims actually remaining in this case.

**D. A Schedule C should be sufficient to show Plaintiffs' business expenses.**

Plaintiffs have agreed to produce Schedule Cs (Form 1040) for Plaintiffs who have claims for unreimbursed business expenses. Plaintiffs do not oppose producing Schedule C Forms for years that they worked for Amazon.[3] In fact, most Plaintiffs have produced these forms, while others are still searching for these documents from the past eight years.

Amazon would have this Court order low-wage workers to produce all other records relating to their business expenses after an eight-year stay. (*See* Dkt. No. 4–6). But doing so would violate Rule 26(b)(1)'s proportionality considerations. *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 602 (D. Nev. 2016) ("Federal judges were urged to evaluate the nature of the case, the limitations on a financially weak litigant to bear the burden of expensive discovery, and the need to prevent discovery from becoming a war of attrition or as a device to coerce a party, whether financially weak or affluent."). The Court should thus deny Amazon's motion.

**E. Plaintiffs need not identify every minimum wage violation at this early juncture.**

Amazon seeks to have every Plaintiff "identify dates they contend their pay for services as a Delivery Partner was less than the legally required state or federal minimum wage, and for each date, to state the number of hours each Plaintiff performed services and the fees Amazon

[3] In any event, these records are unlikely to be used to measure business expense damages. Courts regularly permit parties to rely on the IRS reimbursement rate for vehicle expenses. *See, e.g.*, *O'Connor v. Uber Technologies, Inc.*, 311 F.R.D. 547, 566 (certifying expense claim for mileage driven for Uber; approving use of IRS reimbursement rate); *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 569 (2007) (IRS reimbursement rate is considered a generally permissible measure of vehicle expenses); *Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555, 564 (S.D. Cal. 2010); *Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 721 (E.D. Pa. 2014); *Koral v. Inflated Dough, Inc.*, 2014 WL 4904400, *3 (D. Co. Sept. 9, 2014); *Darrow v. WKRP Mgmt., LLC*, 2011 WL 2174496, *4 (D. Colo. June 3, 2011).

paid for those services." (Dkt. No. 348 at 13). Amazon also seeks to compel all "documents relating to instances of days or weeks in which Plaintiffs allege Amazon failed to pay the minimum wage and/or overtime wages." (*Id.*).

Amazon has it backwards. It is the company, not the drivers, who will have the data allowing Plaintiffs to determine the details of the minimum wage violations (for those few Plaintiffs who still have such claims remaining). While Amazon has only barely begun to produce discovery, it is insisting that Plaintiffs – one month after Amazon has served its answer – provide full damage calculations on their minimum wage claims (and has moved to compel these responses). Moreover, Amazon seeks this information from all Plaintiffs, even though only 5 of the 19 named Plaintiffs still have minimum wage or overtime violations. This fact alone should disqualify Amazon from any relief. *See Roberts*, 312 F.R.D. at 603; *Brown*, 2024 WL 2925062, at *2. That aside, Amazon's requests amount to contention interrogatories that should be denied for two reasons.

First, "courts tend to deny contention interrogatories filed before substantial discovery has taken place," as here. *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 491 (N.D. Cal. 2012) (internal citation omitted). Second, discovery has only just begun in earnest, and Plaintiffs do not yet have the information they would need to identify every minimum wage and overtime violation. In sum, such an exercise, if required, would be far more feasible at the end of discovery, rather than at this early juncture.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Amazon's motion to compel further discovery from the named Plaintiffs. The discovery process has only just begun in earnest. Plaintiffs have produced relevant documents in their possession and are in the process of

coordinating with Amazon to schedule depositions for those Plaintiffs who will be offered as class representatives. Amazon's broad-brushed motion to compel should be denied, and the parties should be ordered to confer in good faith to identify discovery that is reasonably in the parties' possession or control for which there is a legitimate need for it to be produced for the parties to present their claims and defenses in this case (and keeping in mind the principle of proportionality). The Court should not countenance Amazon's attempt to bully the remaining Plaintiffs out of their claims by harassing them with overbroad discovery demands intended to deter them from pursuing their rights in this case.

Dated: November 8, 2024

*I certify that this brief complies with the word limits set forth in the Local Civil Rules.*

By: *s/ Shannon Liss-Riordan*
Shannon Liss-Riordan (*pro hac vice*)
Jeremy Abay (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com
jabay@llrlaw.com

Michael C. Subit, WSBA No. 29189
FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, WA 98104
(206) 682-6711
msubit@frankfreed.com

*Attorneys for Plaintiffs*