THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BERNADEAN RITTMANN, *et al.*, <br><br>　　　　　　　　Plaintiffs, <br><br>　v. <br><br> AMAZON, INC., *et al.*, <br><br>　　　　　　　　Defendants. | CASE NO. C16-1554-JCC <br><br> ORDER |

This matter comes before the Court on Plaintiffs' renewed motion for conditional certification of a collective action under the Fair Labor Standards Act ("FLSA") (Dkt. No. 341). Having thoroughly considered the briefing and the record, the Court finds oral argument unnecessary and hereby GRANTS Plaintiffs' motion as described below and for the reasons explained herein.

I.   **BACKGROUND**

The Court discussed the facts of this case in previous orders, (*see, e.g.,* Dkt. No. 338 at 1–2), and will not repeat them all here. To summarize, Plaintiffs filed a putative class action on behalf of Amazon last-mile delivery drivers. (Dkt. No. 1 at 1.) They allege that Defendants misclassified them as independent contractors and owe them unpaid wages and expenses. (*See generally id.*) They originally moved for conditional certification in 2016, (Dkt. No. 20), but the case was stayed until this year pending appeals in other cases. (*See* Dkt. Nos. 77 at 6, 298 at 1.)

Now, pursuant to the collective action provision of the FLSA, Plaintiffs ask the Court to conditionally certify the following collective: "[A]ll individuals who worked as Amazon Flex drivers since October 27, 2013." (Dkt. No. 341 at 15.) Plaintiffs also request the Court equitably toll the statute of limitations from their first motion for conditional certification. (*Id.*) In order to facilitate notice to putative members of the collective, Plaintiffs ask the Court to (1) order Defendants to produce a list of delivery drivers and their contact information within 14 days of this Order; (2) direct that notice of this action be issued to the collective; and (3) establish a 180-day period for opting into the action with a reminder notice halfway through the period. (Dkt. No. 341 at 12–15.) Defendants dispute the method and duration of the proposed notice period if the collective is conditionally certified. (Dkt. No. 352 at 36–37.) Separately, Defendants object to Plaintiffs' request for equitable tolling. (*Id.* at 38–41.) The Court considers the parties submissions on conditional certification and the proposed notice in turn.

## II.   DISCUSSION

### A.   Legal Standard for Notice to Issue

The FLSA permits individuals to bring employment claims on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b). To facilitate a collective action, a plaintiff may seek "conditional certification" at a court's discretion. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100–01 (9th Cir. 2018). Unlike Rule 23 class certification, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). For this reason, an FLSA collective does not present the same due process concerns that absent and unrepresented class members do under Rule 23. 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 2:16 (21st ed. 2024). Thus, FLSA collectives of similarly situated employees are conditionally certified under a more lenient standard than Rule 23 classes. *See Campbell*, 903 F.3d at 1112–13.

According to the Ninth Circuit, employees "are similarly situated [under the FLSA] . . . to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. FLSA claims frequently meet this standard by alleging a violative practice or policy by a common employer, as Plaintiffs do here. *See, e.g., Fernandez v. Tox Corp.*, 677 F. Supp. 3d 1089, 1096 (C.D. Cal 2023) (collecting cases). The material issues of law or fact in these cases relate to the alleged policy. *See Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 949 (9th Cir. 2019). And dissimilarities between employees do not defeat conditional certification. *Campbell*, 903 F.3d at 1114. The standard is not the same as Rule 23 commonality or predominance, nor does it require a rigorous analysis of whether the plaintiffs are similarly situated. *See Roberts v. Sidwell Air Freight Inc.*, 2022 WL 16949565, slip op. at 4 (W.D. Wash. 2022) (rejecting the "rigorously scrutinize" standard laid out in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 434 (5th Cir. 2021)).

The "similarly situated" analysis proceeds in two stages. *Campbell*, 903 F.3d at 1109. At <u>stage one</u>, a court may conditionally certify the plaintiff's proposed collective. *Id.* At <u>stage two</u>, a defendant may move to decertify the collective (following notice and discovery). *Id.* The Court here considers Plaintiffs' stage one motion. A court assesses similarity at stage one without the benefit of additional opt-in plaintiffs or discovery. *Id.* Thus, the analysis is more "lenient" at stage one than two. *Id.*

As the *Campbell* court described, district courts "both within this circuit and without" have reached a "loose consensus"—the standard of proof at stage one is "akin to a plausibility standard," such that the "court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Id.* at 1108–09 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In other words, named plaintiffs must make sufficient factual allegations in their complaint and submissions to support a violation by a common employment policy. *Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1189 (D. Ariz. 2014) (abrogated on other grounds). The standard at stage one, compared to class certification

1 under Rule 23, "is fairly lenient and typically results in certification." *Rozeboom v. Dietz & Watson, Inc.*, 2018 WL 2266692, slip op. at 2 (W.D. Wash. 2018).

### B. Plaintiffs' Proposed FLSA Collective

Plaintiff delivery drivers claim that the members of their proposed collective are similarly situated because Defendants employed them all under a common policy. (Dkt. No. 341 at 10–12.) Plaintiffs' relationship with Defendants is governed by standard Terms of Service ("TOS"). (Dkt. No. 331-4 at 5–6.) While the TOS have changed somewhat over time, (*see generally* Dkt. Nos. 248-1 to 248-7, 352 at 14), it is undisputed that two key terms have not (in any material way): (1) the "Independent Contractor Relationship" that classifies Plaintiffs as contractors rather than employees, (*see, e.g.,* Dkt. No. 248-7 at 2–3), and (2) the "Service Fees" that govern pay (*see, e.g.,* Dkt. No. 248-7 at 3). (*See* Dkt. Nos. 352 at 13–14, 342 at 14–15). Plaintiffs allege the TOS constitute a common that improperly classified them as independent contractors, denied them minimum wage, and did not pay overtime. (Dkt. Nos. 341 at 10–12, 262 at 2) (citing 29 U.S.C. §§ 201 *et seq.*).

While Defendants do not dispute the two common terms, they point out that the TOS do vary over time with respect to arbitration. (*See* Dkt. No. 352 at 32–35.) Defendants therefore raise two issues bearing on conditional certification: first, whether Plaintiffs are similarly situated with respect to Defendant's policy; and second, whether differences in the policy with respect to arbitration preclude certain individuals from receiving notice. (Dkt. No. 352 at 20–32, 32–35.)

#### 1. Defendants' Common Policy and Plaintiffs' Individualized Experiences

In addition to the allegations in their operative complaint (*see generally* Dkt. No. 262), Plaintiffs submit several declarations in support of the instant motion. (Dkt. Nos. 341-3 to 341-8.) All declarants represent that they worked for Defendants under the Amazon Flex program. (*See, e.g.,* Dkt. No. 341-3 at 2.) All represent that Defendants classified them as independent contractors, not employees. (*See, e.g.,* Dkt. No. 341-5 at 3.) And all make various representations

1 as to liability (that they worked extra hours without extra pay, worked for less than minimum
2 wage, or both). (*See, e.g.,* Dkt. Nos. 341-7 at 3, 341-5 at 3.) Defendants do not dispute that they
3 contracted with the drivers, or that the drivers were subject to the Amazon Flex TOS, or that the
4 TOS do not account for minimum wage or overtime pay. (*See* Dkt. No. 342 at 14–15.) Instead,
5 Defendants argue Plaintiffs have such a range of experiences that they are not similarly situated.
6 (Dkt. No. 352 at 24–32.) Plaintiffs submit that these differences are immaterial at this stage.
7 (Dkt. No. 363 at 4–5.) As described below, the Court finds Plaintiffs' arguments more
8 persuasive, given the lenient standard for conditional FLSA certification.

In *Senne*, employer baseball teams made a similar argument against certification: that employee players arrived at ballparks at a range of times and performed varying activities. 934 F.3d at 926. Using the standard announced in *Campbell*, the Ninth Circuit rejected that argument because the alleged *policy*—no overtime—was similar as to all employees, and defendants did not dispute it. *Id.* at 947–49. The fact that plaintiffs may have been dissimilar in other ways did not defeat certification. *See id.* at 950; *compare Douglas v. Xerox Bus. Servs.*, 2014 WL 3396112, slip op. at 4 (W.D. Wash. 2014) (denying certification to a conditional class because "[t]he proposed class spans different employers, different clients, different computer systems, [and] different supervisors"), *with Douglas v. Xerox Bus. Servs., LLC*, 2014 WL 11320703, slip op. at 1–2 (W.D. Wash 2014) (certifying a class of employees who were subject to a single policy). Courts do not merely "rubber stamp" the collective when employees fail to demonstrate they are similar in material ways. *Colson v. Avnett, Inc.*, 687 F. Supp. 2d 914, 929–30 (D. Ariz. 2010).

In instances where plaintiffs failed to secure certification of their proposed collective, plaintiffs often faced issues with multiple job sites, *see Kesley v. Ent. U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1068 (D. Ariz. 2014), multiple supervisors, *see Campbell*, 903 F.3d at 1120, or multiple employers, *see Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 670 (E.D. Pa. 2010), *Pfaahler v. Consultants for Architects, Inc.*, 2000 WL 198888, slip op. at 1 (N.D. Ill. 2000). But

ORDER
C16-1554-JCC
PAGE - 5

there is no suggestion here that there are multiple employers or supervisors. There are only the Amazon Defendants. *Cf. Emonds v. Amazon.com, Inc.*, 2020 WL 5993908, slip op. at 4–5 (W.D. Wash 2020) (finding employees dissimilar because they were not directly employed or paid by Amazon).

Defendants here have not shown that the policy at issue (the TOS) varies by job duty, location, time, or in any other material way with respect to the wage and overtime claims. *Campbell* affirmed decertification at stage two because the alleged practice had to be implemented by many supervisors with wide discretion and despite a contrary written policy; those plaintiffs were dissimilar not because of any unique employment experiences but because the defendants there established that the supervisors who implemented the alleged practice were distinct. 903 F.3d at 1120–21. Defendants here do not make the same showing. Instead, they point to individual decisions Plaintiffs made, like what to deliver, where to drive, which vehicle to use, and how to pack their deliveries. (Dkt. No. 352 at 28–31.) Plaintiffs may not be similar in these ways, but all they need to show is that they are similar as to the alleged policy: the Amazon Flex TOS. *See Fernandez*, 677 F. Supp. 3d at 1096; *see also Carter v. XPO Last Mile, Inc.*, 2016 WL 5680464, slip op. at 5 (N.D. Cal. 2016) (observing that if variance in employer control could defeat certification it would be very difficult to certify any FLSA collective). And Defendants have not shown that the TOS vary in any way material to the claims.

Defendants also argue that Plaintiffs' evidence is insufficient to support certification. (Dkt. No. 352 at 21–23.) But all Plaintiffs must show at stage one is that it is *plausible* they were subject to the alleged policy. *See Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 423 (N.D. Cal. 2015) (finding sufficient evidence from "agreements that classified [plaintiffs] as independent contractors . . . and did not include overtime or minimum wage protections"); *see also Fernandez*, 677 F. Supp. 3d at 1097–98 (finding no legal requirement for a minimum number of declarations).

Defendants stretch *Campbell* too far, (*see* Dkt. No. 352 at 24), because Plaintiffs need not

ORDER
C16-1554-JCC
PAGE - 6

establish that the policy violates the FLSA stage one. *Douglas*, 2014 WL 3396112, slip op. at 3; *see also Robinson v. Maricopa Cnty. Special Health Care Dist.*, 696 F. Supp. 3d 769, 780–84 (D. Ariz. 2023) (explaining the meaning of "FLSA-violating policy"). Again, all they must show is that they are subject to a common policy. Declarations that fail, for example, to identify who plaintiffs worked for are insufficient. *Silverman v. SmithKline Beecham Corp.*, 2007 WL 6344674, slip op. at 2 (C.D. Cal. 2007). While Plaintiffs' declarations here may be threadbare, they do plausibly allege that Amazon Flex delivery drivers are all subject to the common TOS. And in this circuit, the standard remains lenient before the close of discovery. *See Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 628–29 (E.D. Cal. 2009) (rejecting an "intermediate scrutiny" test).

Not only do Defendants ask too much—they argue the merits without Plaintiffs having the benefit of many potential opt-in members or complete discovery.[1] An FLSA collective action pools potential claimants before establishing liability, which Plaintiffs might support with evidence not yet offered, for example, against Defendants' expert. *Cf. Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455–57 (2016). At this point, the Court cannot say the delivery drivers are dissimilar with sufficient certainty to deprive them of their "right to bring the collective litigation and the right to join it." *Campbell*, 903 F.3d at 1100.

While the evidence does not conclusively establish that everyone within Plaintiffs' collective definition is similarly situated, the Court finds that Plaintiffs have made the modest factual showing of a common policy at stage one. *See Campbell*, 903 F.3d at 1102 ("credible allegations" of a common policy "should suffice to make [employees] similarly situated"). Defendants may renew their arguments at stage two, where there will have been additional discovery and argument which will aid a more robust analysis.

---

[1] If the present quantity of opt-in Plaintiffs is any indication of the interest in litigating collectively, many more will opt into this action if the number of delivery drivers to be noticed is indeed over one million. (*See* Dkt. No. 352 at 11).

### 2. Uncommon Arbitration Terms under the Policy

Defendants also submit that at least some Plaintiffs may be precluded from bringing their claims based on an arbitration provision included in the TOS. (Dkt. No. 352 at 32–35; *see also* Dkt. Nos. 356-1 at 1–2, 362 at 2). While the Court has ruled that prior versions of the arbitration clause are unenforceable under the Federal Arbitration Act ("FAA"), *Rittman v. Amazon.com, Inc.*, 383 F. Supp. 3d 1196 (W.D. Wash. 2019), *aff'd*, 971 F.3d 904 (9th Cir. 2020), Defendants altered the TOS in 2019 to apply Delaware law as a backstop to the FAA. (*Compare* Dkt. Nos. 248-5 at 8, *with* 248-6 at 8–9.) Plaintiffs' proposed FLSA collective includes Amazon Flex drivers from 2013 onward, which necessarily includes some members who signed the more recent TOS. Defendants argue this should preclude certification because the delivery drivers are not similarly situated. (Dkt. No. 352 at 35.)

The Court has yet to receive Defendants' renewed motion to compel arbitration, and it does not need to reach this issue on the instant motion. These differences between versions of the TOS may be material to an arbitration defense, but they are not material to Plaintiffs' claims about the policy. The arbitration provision only controls how disputes between Defendants and their drivers proceed. *See Carter*, 2016 WL 5680464, slip op. at 6. The focus here is on the "common policy or plan that connects the *claims*." *Herrera v. EOS IT Mgmt. Sols., Inc.*, 2020 WL 7342709, slip op. at 9 (N.D. Cal. 2020) (emphasis added).

In this circuit, FLSA collectives have been certified despite the presence of arbitration clauses, *Saravia*, 310 F.R.D. at 424–25, especially since the Court first considered arbitration in this matter in 2016 and the Ninth Circuit decided *Campbell* in 2018. *See Zeman v. Twitter, Inc.*, 2024 WL 4032051, slip op. at 5 (N.D. Cal. 2024) (collecting cases), *Herrera*, 2020 WL 7342708, slip op. at 10 (rejecting out of circuit precedent); *but see Geiger v. Charter Commc'ns, Inc.*, 2019 WL 8105374, slip op. at 4–5 (C.D. Cal 2019) (undisputed arbitration agreements and fee-shifting agreement contributed to "this case's uncommon nature").

Defendants observe that the consequence of certification is no mere notice: More than a

million delivery drivers will be notified of a dispute they may be compelled to arbitrate (although the Court has previously ruled to the contrary). (Dkt. No. 352 at 12.) As such, they ask the Court to hold off on conditional certification. (Dkt. No. 352 at 35.) But Defendants have not yet renewed their motion to compel arbitration. (*See* Dkt. No. 359 at 2.) Such a motion may be resolved later. *See Saravia*, 310 F.R.D. at 425. Given the expected timeline of this case, the Court sees no reason to buck the circuit trend. If facts discovered demonstrate that individual drivers are not similarly situated, the Defendants may move to decertify. This is a necessary consequence of the FLSA's remedial language. *See Hoffman-La Roche*, 493 U.S. at 173.

The Court heeds Defendants' caution and will ensure that the judicially approved notice is sufficiently neutral and conditional to avoid undue confusion among the collective. *See id.* at 174. Plaintiffs, for their part, stipulate that putative collective members already represented in arbitration should not be sent notice (which Intervenors explain is practicable). (Dkt. Nos. 363 at 12, 374 at 2, 376 at 2.)[2] The Court finds this a manageable limitation. The same spirit should permeate the parties' cooperation on the form of notice addressed below.

3. Equitable Tolling

Finally, Plaintiffs ask the Court to toll the statute of limitations for opt-in members to the date they originally moved for conditional certification: October 27, 2016. (*See* Dkt. Nos. 341 at 15, 20 at 12.) Willful violations of the FLSA like those alleged here, (*see* Dkt. No. 262 at 30), have a three-year limitations period for each individual. 29 U.S.C. §§ 255(a), 256(b). Plaintiffs submit that any Amazon Flex driver who worked in the three years before their first motion should be permitted to participate in the collective action. (Dkt. No. 341 at 15.) The original 2016 motion for conditional certification was stayed at Defendants' request and not lifted until

---

[2] Prospective intervenors move to intervene pursuant to Federal Rule of Civil Procedure 24 for the limited purpose of excluding represented individuals from the proposed notice, (Dkt. Nos. 356, 361), which neither party opposes. (Dkt. Nos. 363 at 12, 369 at 8–9.) Because represented individuals will be excluded from the collective notice, the Court DENIES the prospective intervenors' motions (Dkt. Nos. 356, 361) as moot.

1  this year. (*See* Dkt. Nos. 77 at 6, 298 at 1.) The Court then gave Plaintiffs leave to refile their
2  conditional certification motion after a decision on Defendants' motion to dismiss. (Dkt. No. 298
3  at 2.) Plaintiffs did so in a timely manner. (*See* Dkt. Nos. 338, 341.)

4        Equitable tolling is appropriate where the plaintiff is prevented from asserting a claim
5  due to extraordinary circumstances beyond their control. *See Stoll v. Runyon*, 165 F.3d 1238,
6  1242 (9th Cir. 1999), *Seattle Audubon Soc. v. Robertson*, 931 F.2d 590, 596 (9th Cir. 1991). Like
7  the authority to permit collective notice, equitably tolling an FLSA claim is squarely within the
8  Court's discretion. *Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757, 761 (9th Cir.
9  1981). In the Ninth Circuit, extraordinary "litigation circumstances" have justified tolling
10 collective FLSA claims. *Linz v. Core Values Roadside Serv., LLC*, 2020 WL 13561591, slip op.
11 at 2 (E.D. Wash. 2020). This includes court-ordered stays for other cases on appeal, like the stays
12 here. *See Ray v. Cal. Dep't of Soc. Servs.*, 2019 WL 6888050, slip op. at 8 (C.D. Cal. 2019). A
13 stay, regardless of any fault on the part of a defendant, prevents notice from all those similarly
14 situated individuals who have a right to litigate collectively. *Coppernoll v. Hamcor, Inc.*, 2017
15 WL 1508853, slip op. at 2–4 (N.D. Cal. 2017). Indeed, the Court previously suggested equitable
16 tolling might be appropriate in light of the stays in this case. (Dkt. No. 77 at 5.) The Court finds
17 that the ends of justice favor tolling the statute of limitations, to account for time awaiting
18 various courts' decisions, up until the date that notice is sent.

19     C.    **Plan for Providing Notice to the Collective**[3]

20       The parties contest three general issues regarding the process for sending notice to the
21 collective: (1) the method of notice, (2) the timing of notice, and (3) whether Defendants should
22 be required to produce certain personal information about notice recipients.

---

[3] The parties agree to meet and confer on the content of the notice. (Dkt. Nos. 352 at 35, 363 at 14.) The Court leaves them to do so with the reminder that the notice should be "timely, accurate, and informative," as well as sufficiently neutral under the imprimatur of the Court. *Hoffman-La Roche*, 493 U.S. at 172–74.

1. Notice Method

Plaintiffs request that notice be sent by postal mail, e-mail, and text message. (Dkt. No. 341 at 13.) They also want Defendants to post notice online and at fulfillment centers where Amazon Flex drivers pick up deliveries. (*Id.*) The Court is concerned, however, that using all five methods will unjustifiably intrude on the putative collective members' privacy and confuse other individuals who work at Defendants' facilities. There is no suggestion that mail and e-mail together will be ineffective, *cf. Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, slip op. at 12 (C.D. Cal. 2012), and the cases Plaintiffs cite only authorized certain methods in the absence of others, not all five. (Dkt. No. 363 at 15) (citing *Ying Yang v. Vill. Super Mkt., Inc.*, 2019 WL 1275059, slip op. at 4 (D.N.J. 2019) (authorizing mailings and workplace postings)). Therefore, the Court FINDS that notice by traditional mail and e-mail is sufficient. Consistent with the parties' stipulation, (Dkt. Nos. 352 at 38, 363 at 17), a third-party may administer this notice.

2. Opt-in Period

Plaintiffs seek a 180-day opt in period with a reminder notice sent halfway through the period. (Dkt. No. 341 at 14.) Defendants rightly point out this is far longer than the norm, (Dkt. No. 352 at 36), and Plaintiffs only cite two cases in support of such a lengthy period, both of which feature classes of international migrant workers. (Dkt. No. 363 at 15) (citing *Carrillo*, 2012 WL 556309 at 12–15, *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 241 (N.D.N.Y. 2002)). While delivery drivers may be itinerant, Plaintiffs do not suggest that they travel regularly for work outside the United States. Therefore, the Court FINDS that a 90-day opt-in period is justified. *See Senne v. Kan. City Royals Baseball Corp.*, 2015 WL 6152476, slip op. at 19 (N.D. Cal. 2015). A reminder notice is also authorized halfway through the period to help ensure that any opt-in plaintiffs who wish to participate are able to do so before the deadline.

        3. <u>Information to be Produced</u>

Plaintiffs request that Defendants provide a list of Amazon Flex drivers' names, mailing addresses, phone numbers, e-mail addresses, work locations, and the dates they worked for Defendants. (Dkt. No. 341 at 12.) Defendants object to producing the information to Plaintiffs rather than a third-party administrator. (Dkt. No. 352 at 38.) The Court agrees as to phone numbers: Plaintiffs (and an administrator, for that matter) do not need phone numbers for individuals that will be contacted by post and e-mail. But names, work locations, and dates of employment serve to establish who is eligible to join the proposed collective. *See Deatrick v. Securitas Sec. Servs. USA, Inc.*, 2014 WL 5358723, slip op. at 5 (citing *Hoffman-La Roche*, 493 U.S. at 170). Therefore, Defendants shall provide Plaintiffs and the administrator with delivery drivers' names, mailing addresses, e-mail addresses, work locations, and dates of employment.

To the extent that there are any lingering issues regarding the notice and process not addressed by this order, the parties shall meet and confer prior to filing any additional motions.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification (Dkt. No. 341) is GRANTED as to all individuals who worked as Amazon Flex delivery drivers on or after October 27, 2013, who are not already represented by counsel on misclassification and related wage and overtime claims. The statute of limitations for claims by individuals within the conditional collective is tolled from October 27, 2013, through the date that notice is sent by the third-party administrator.

Additionally, the Court ORDERS that:

(1) The parties shall meet and confer as to the content of the notice and submit to the Court within 60 days of this Order proposed forms of (a) notice by mail, (b) notice by e-mail, (c) a reminder, and (d) opt-in consent;

(2) Defendants shall produce to Plaintiffs within 14 days of this order the information identified in Part II.C.3 of this Order for all members of the collective that fit the definition

1  provided by the Court;

2      (3)    The opt-in period shall be 90 days and a reminder shall be sent after 45 days; and

3      (4)    A third party is authorized to administer the notice by mail and e-mail. The parties shall meet and confer on their selection of an administrator within 60 days of this Order.

DATED this 2nd day of December 2024.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE