THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9  | BERNADEAN RITTMANN *et al.*,

10 |                    Plaintiffs,

11 |        v.

12 | AMAZON.COM, INC. and AMAZON
   | LOGISTICS, INC.,

13 |

   |                    Defendants.

14

No. 2:16-cv-1554

**DEFENDANTS' MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY
APPEAL UNDER 28 U.S.C. § 1292(b)**

NOTE ON MOTION CALENDAR:
December 30, 2024

**ORAL ARGUMENT REQUESTED**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

III.    ARGUMENT..........................................................................................................3

    A.    The Court's conditional-certification order presents multiple legal questions as to which there are substantial grounds for difference of opinion ..............................3

        1.    Reasonable judges might differ with respect to whether claims of all members of a putative collective can be equitably tolled at conditional certification based on delays in the issuance of judicial notice and absent any showing or findings of diligence.......................................................4

        2.    Reasonable judges likewise could disagree about whether courts should order distribution of judicial notice to people who agreed to arbitrate. ......................................................................................7

    B.    The issues presented by this Court's order are controlling, and their resolution will materially advance the termination of the litigation. ...............................................9

IV.    CONCLUSION....................................................................................................11

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page ii

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adedapoidle-Tyehimba v. Crunch, LLC*,
  2013 WL 4082137 (N.D. Cal. Aug. 9, 2013) ...........................................................................4

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974)..................................................................................................................4

*Bah v. Enter. Rent-A-Car Co. of Bos., LLC*,
  699 F. Supp. 3d 133 (D. Mass. 2023) .......................................................................................6

*Bigger v. Facebook, Inc.*,
  947 F.3d 1043 (7th Cir. 2020) ......................................................................................7, 8, 9, 10

*Bigger v. Facebook, Inc.*,
  No. 1:17-cv-7753 (N.D. Ill. Apr. 17, 2019) ...........................................................................10

*Bills v. Clark*,
  628 F.3d 1092 (9th Cir. 2010) ...................................................................................................6

*Bruno v. Wells Fargo Bank N.A.*,
  2021 WL 1550076 (W.D. Pa. Apr. 20, 2021)..........................................................................10

*Campbell v. City of Los Angeles*,
  903 F.3d 1090 (9th Cir. 2018) ...................................................................................................9

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1981) .................................................................................................10

*Clark v. A&L Homecare & Training Ctr., LLC*,
  68 F.4th 1003 (6th Cir. 2023) .........................................................................................7, 9, 10

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010) .................................................................................................7, 8

*Cuevas v. ConAm Mgmt. Corp.*,
  2019 WL 5320544 (S.D. Cal. Oct. 21, 2019) ...........................................................................8

*Delara v. Diamond Resorts Int'l Mktg., Inc.*,
  2020 WL 2085957 (D. Nev. Apr. 30, 2020)..............................................................................8

*Droesch v. Wells Fargo Bank, N.A.*,
  2021 WL 2805604 (N.D. Cal. July 6, 2021)..............................................................................8

*In re Eli Lilly*,
  Nos. 24-8017 & -2574 (7th Cir.) .............................................................................................10

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page iii

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

**TABLE OF AUTHORITIES** (cont'd)

Page(s)

*Fichtner v. Am. Family Mut. Ins. Co.*,
    2004 WL 3106753 (D. Or. Mar. 1, 2004) ...................................................................6

*Fortyune v. City of Lomita*,
    766 F.3d 1098 (9th Cir. 2014) .................................................................................3

*Geiger v. Charter Commc'ns, Inc.*,
    2019 WL 8105374 (C.D. Cal. Sept. 9, 2019) ...........................................................8

*Harvey v. City of New Bern Police Dep't*,
    813 F.2d 652 (4th Cir. 1987) ...................................................................................4

*Herrera v. EOS IT Mgmt. Sols., Inc.*,
    2020 WL 7342709 (N.D. Cal. Dec. 14, 2020) ......................................................7, 8

*In re JPMorgan Chase & Co.*,
    916 F.3d 494 (5th Cir. 2019) ...............................................................................7, 8

*Kuehner v. Dickinson & Co.*,
    84 F.3d 316 (9th Cir. 1996) .....................................................................................9

*Lindsey v. Normet*,
    405 U.S. 56 (1972)................................................................................................7, 9

*Linz v. Core Values Roadside Serv., LLC*,
    2020 WL 13561591 (E.D. Wash. July 29, 2020).....................................................5

*MacGregor v. Farmers Ins. Exch.*,
    2011 WL 2731227 (D.S.C. July 13, 2011) ..............................................................4

*Menominee Indian Tribe of Wis. v. United States*,
    577 U.S. 250 (2016)..............................................................................................5, 6

*Peterson v. Alaska Commc'ns Sys. Grp., Inc.*,
    2014 WL 12696527 (D. Alaska Dec. 17, 2014) ......................................................6

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ......................................................................3, 7, 9, 11

*Roberts v. Sidwell Air Freight Inc.*,
    2022 WL 16949565 (W.D. Wash. Nov. 15, 2022) ..................................................9

*Romero v. Clean Harbors Surface Rentals USA, Inc.*,
    404 F. Supp. 3d 529 (D. Mass. 2019) ......................................................................7

*Scholar v. Pac. Bell*,
    963 F.2d 264 (9th Cir. 1992) ...................................................................................4

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page iv

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

**TABLE OF AUTHORITIES** (cont'd)

Page(s)

*Stoll v. Runyon*,
    165 F.3d 1238 (9th Cir. 1999) ....................................................................................5

*Swales v. KLLM Transp. Servs., LLC*,
    985 F.3d 430 (5th Cir. 2021) ..................................................................................9, 10

*Williams v. Sims*,
    390 F.3d 958 (7th Cir. 2004) ...................................................................................10

*Zeman v. Twitter, Inc.*,
    — F. Supp. 3d —, 2024 WL 4032051 (N.D. Cal. Sept. 3, 2024)...........................8

**Statutes**

28 U.S.C. § 1292(b) ....................................................................1, 2, 3, 4, 7, 8, 9, 10, 11

29 U.S.C. § 216(b) ..........................................................................................................1

29 U.S.C. § 255(a) ..........................................................................................................4

29 U.S.C. § 256(b) ..........................................................................................................4

**Rules**

Fed. R. Civ. P. 23 .........................................................................................................1, 4

**Other Authorities**

S. Rep. No. 2434 (1958),
    *as reprinted in* 1958 U.S.C.C.A.N. 5256 ................................................................10

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page v

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

1

## I.    INTRODUCTION

2     Once a Fair Labor Standards Act claim is conditionally certified and notice is sent, the bell

3 cannot be unrung.  That's why countless courts, when faced with conditional-certification orders

4 that turn on debatable legal questions, have recognized the appropriateness of interlocutory review

5 under 28 U.S.C. § 1292(b).  As those courts have acknowledged, it is best to seek appellate guid-

6 ance on unresolved legal questions *before* issuing potentially confusing notices to thousands or

7 millions of people who may not be "similarly situated" at all, 29 U.S.C. § 216(b)—especially

8 where that guidance could streamline the case and avoid costly and unnecessary briefing and dis-

9 covery at decertification.  Courts should be wary of sending notice to people who may be unable

10 to litigate their claims at all, who have foreseeable barriers to establishing liability, or who slept

11 on their rights and are time barred.

12     This Court's conditional-certification order, which directs that notice be sent to more than

13 a million Delivery Partners who contracted with Amazon over a period stretching back a decade,

14 is a prime candidate for Section 1292(b) review.  The order presents two important, recurring, and

15 unresolved legal issues on which the Ninth Circuit has yet to provide definitive guidance, and

16 whose resolution could advance the termination of this litigation by dramatically reducing the col-

17 lective and clarifying the rules governing FLSA certification.

18     The first relates to equitable tolling of the claims of the million-plus members of the sweep-

19 ing proposed collective, which stretches well beyond the FLSA's two- to three-year statute of limi-

20 tations.  For FLSA purposes (unlike for Rule 23 class actions), tolling is not dispensed automatically

21 or in gross; would-be plaintiffs with untimely claims must show they pursued their rights diligently

22 but extraordinary circumstances beyond their control prevented them from filing a claim on time.

23 Plaintiffs here haven't shown anything like that; they instead advanced an across-the-board theory

24 that tolling is appropriate because judicial notice was delayed when this case was stayed for other

25 reasons.  But judicial notice isn't the trigger that starts an opt-in plaintiff's statute-of-limitations

26 clock—which is why courts have rejected equitable tolling under similar theories.  This Court

27 disagreed, but that disagreement only points to the need for Section 1292(b) review:  reasonable

28 jurists are reaching different decisions, and the Ninth Circuit has never addressed the theory of

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 1

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

1  tolling Plaintiffs here advanced, under which the claims of members of a proposed collective

2  would be deemed timely even in the absence of any showing of reasonable diligence or impossi-

3  bility and before the defendant has an opportunity to test the litigants' entitlement to tolling.

4      The second issue relates to the order directing notice to people who agreed to arbitrate their

5  claims and who thus cannot take part in any judicial collective.  This Court concluded that arbitra-

6  tion agreements have no bearing on the FLSA's similarly-situated requirement.  Some district

7  courts in this Circuit have agreed.  But others have disagreed—and so too have several other cir-

8  cuits, holding that judicial notice must *not* be ordered where the would-be recipients of the notice

9  are bound to arbitrate.  The Ninth Circuit hasn't addressed that question, and just as with its sister

10  circuits, it should be given the opportunity via Section 1292(b).

11     The Court should grant this motion and allow the Ninth Circuit to consider these critical

12  issues before notice is sent to more than a million Delivery Partners who may be unable to partic-

13  ipate in this case.

## II.     BACKGROUND

15     **1.** Amazon sells goods online, via app, and in physical stores.  It contracts with USPS,

16  FedEx, UPS, and other third-party delivery companies to deliver customer orders, including pack-

17  ages and groceries, to their final destination.  Dkt. 353-20 ¶¶ 5-7.  Most orders are delivered to

18  customers by national, local, or regional delivery companies.  *Id.* ¶ 7.  But others are delivered by

19  individual couriers, or Delivery Partners, who contract to provide supplemental local delivery ser-

20  vices.  *Id.* ¶¶ 5-10.

21     Every Delivery Partner, in contracting with Amazon, agrees to accept independent-con-

22  tractor terms of service.  Dkt. 353-20 ¶ 16.  Those terms all provide that, "[a]s an independent

23  contractor," each Delivery Partner is responsible for "decid[ing] the means and manner in which

24  to provide the Services" and is "free to map out [her] own routes, sequence [her] deliveries and in

25  every other way control the means and manner" of the work.  *E.g.*, *id.* Ex. A (p. 17 of 64).  But the

26  terms differ in other ways, including as to their incorporation of different policies, involvement (or

27  not) of delivery from restaurants, and the state law that governs the contract's interpretation.  *See*

28  Dkt. 352 at 4; *e.g.*, Dkts. 248-1 to -7.

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 2

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

**2.** Plaintiffs sued under the FLSA, claiming that Amazon misclassified the Delivery Partners as independent contractors and owed them unpaid wages and expenses. Dkt. 381 at 1. They initially moved for conditional certification in October 2016, but the case was then stayed to await appellate decisions regarding arbitration. *Id.* at 1-2.

The stay did not prevent Delivery Partners from pressing FLSA claims against Amazon. In fact, over 32,000 Delivery Partners have invoked the arbitration provisions to which they agreed and are arbitrating those claims against Amazon. Lynch Decl. ¶¶ 4, 7. And over 80 people filed opt-in forms to participate in this litigation—some even while this case was stayed. *See* Dkt. 341 at 12.

**3.** Plaintiffs renewed their motion in October 2024, asking the Court to conditionally certify a collective of all people "who worked as Amazon Flex drivers since October 27, 2013." Dkt. 341 at 12. Their sole argument for diligence was that they had "diligently" moved for notice eight years earlier. *Id.* at 11.

This Court granted conditional certification, reasoning that Plaintiffs had satisfied their burden under a particularly "lenient" standard of showing that the members of the proposed collective were similarly situated. Dkt. 381 at 5-9, 12. The Court reasoned that the still-unresolved questions relating to Delivery Partners who agreed to arbitrate as a matter of Delaware law were generally irrelevant for purposes of conditional certification. *Id.* at 8-9. It also ordered the claims of the members of the putative collective equitably tolled from the date of the initial conditional-certification motion through the date that notice is issued. *Id.* at 9-10. The Court did not address Plaintiffs' burden of showing diligence throughout the tolling period.

## III.    ARGUMENT

**A.    The Court's conditional-certification order presents multiple legal questions as to which there are substantial grounds for difference of opinion.**

This Court's order readily satisfies Section 1292(b) because it presents two "'issue[s] over which reasonable judges might differ.'" *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *accord Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 n.2 (9th Cir. 2014). The first is whether courts can equitably toll the claims of every member of a massive putative collective all at once, even absent any showing or finding of reasonable diligence and despite evidence that

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 3

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

1    tens of thousands of members of the collective were perfectly able to pursue their claims during

2    the tolled period.  And the second is whether courts can order that judicial notice be sent to people

3    who agreed to arbitrate their claims and who thus cannot participate in any collective.  The Ninth

4    Circuit has not addressed either question, and Section 1292(b) is the right vehicle to give the court

5    of appeals that chance.

6          **1.**      **Reasonable judges might differ with respect to whether claims of all**

7                 **members of a putative collective can be equitably tolled at conditional certification based on delays in the issuance of judicial notice and absent any**

8                 **showing or findings of diligence.**

9          The FLSA features a short statute of limitations:  two years for most violations, three years

10    for "willful" violations.  29 U.S.C. § 255(a).  That limitations period continues to run until a plain-

11    tiff files either a written opt-in form or her own lawsuit.  *Id.* § 256(b).  Yet here, Plaintiffs sought

12    a collective of opt-in plaintiffs whose claims stretch back more than a decade—to October 2013,

13    Dkt. 341 at 10—and asked this Court to use equitable tolling to help them leap over that time bar.

14          In designing the FLSA's reticulated scheme, Congress was hardly blind to the conse-

15    quences that would result from untimely opt-ins.  To the contrary, "it was aware that 'time would

16    lapse between the filing of the collective action complaint by the named plaintiff and the filing of

17    written consents by the opt-in plaintiffs.'"  *Adedapoidle-Tyehimba v. Crunch, LLC*, 2013 WL

18    4082137, at *7 (N.D. Cal. Aug. 9, 2013).  Congress could have adopted a tolling rule if it wanted

19    to avoid those timeliness issues, for instance "by patterning the statute of limitations for the FLSA

20    after that of Rule 23 for class actions."  *MacGregor v. Farmers Ins. Exch.*, 2011 WL 2731227, at

21    *1 (D.S.C. July 13, 2011); *see Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974).  But

22    Congress chose not to adopt any such rule.

23          Nor can equitable tolling supply across-the-board relief from untimely opt-ins.  Equitable

24    tolling is to be used "sparingly" and "unforgiving[ly]," and only "in extreme cases."  *Scholar v.*

25    *Pac. Bell*, 963 F.2d 264, 267-68 (9th Cir. 1992).  It necessarily depends on "case-by-case analysis,"

26    *id.* at 267, requiring courts to "conduct a thorough examination of the facts" to determine whether

27    a plaintiff's untimely claims should nonetheless be permitted to proceed, *Harvey v. City of New*

28    *Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987).  Specifically, any litigant seeking the benefit

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 4

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

1   of equitable tolling must prove "'that he has been pursuing his rights diligently'" and "'that some

2   extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian*

3   *Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016).

4          By tolling FLSA claims between October 2016 and the date notice is sent, Dkt. 381 at 10,

5   this Court adopted a view of equitable tolling that neither the Supreme Court nor the Ninth Circuit

6   has embraced, and with which reasonable judges might disagree.  None of the well-established

7   requirements for equitable tolling was demonstrated here.  To begin, Plaintiffs made no showing

8   and the Court made no findings that, during the eight-plus years for which they are seeking tolling,

9   every single member of the proposed collective was diligent in advancing his rights.  *Menominee*

10  *Indian Tribe*, 577 U.S. at 255.  Nor did Plaintiffs show or this Court find any "wrongful conduct

11  on the part of the defendant" or "extraordinary circumstances" that "made it *impossible* [for would-

12  be opt-in plaintiffs] to file a claim on time."  *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999)

13  (emphasis added).  The Court's order thus leaves entirely unaddressed the foundational require-

14  ments for equitable tolling.  Nor does the order address the fact that makes Plaintiffs' request for

15  an across-the-board ruling on equitable tolling untenable:  that *thousands* of people have begun

16  prosecuting their claims against Amazon during the same period for which Plaintiffs seek tolling.

17  Those include not just the 80-plus people who opted in here, but also the more than 32,000 people

18  who have initiated arbitrations against Amazon.  *See* Dkt. 352 at 29-30.  When many thousands of

19  people have done something, it's not "impossible" in any sense, *Stoll*, 165 F.3d at 1242, and it

20  calls into doubt both the diligence of members of the putative collective who have not similarly

21  taken steps to advance their rights and the notion that the stays would have prevented other people

22  from opting in or pursuing arbitrations.

23          This Court decided that equitable tolling was appropriate on the ground that conditional

24  certification had been stayed to await appellate decisions.  Dkt. 381 at 10.  In doing so, it relied on

25  decisions of other district courts concluding that tolling is appropriate where there is a delay in

26  "send[ing] notice to the putative collective members," *e.g.*, *Linz v. Core Values Roadside Serv.,*

27  *LLC*, 2020 WL 13561591, at *1 (E.D. Wash. July 29, 2020), on the theory that plaintiffs should

28  be forgiven for untimely filings when they have not yet been advised of their "right to litigate

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 5

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

1    collectively," Dkt. 381 at 10.  But the Court did not address other district court decisions, including

2    ones within the Ninth Circuit, reaching the opposite conclusion and ruling that tolling is inappro-

3    priate where "potential plaintiffs did not know of th[e] action" but were not "prevented" by the

4    defendant "from knowing about [the asserted] FLSA violation." *Fichtner v. Am. Family Mut. Ins.*

5    *Co.*, 2004 WL 3106753, at *10 (D. Or. Mar. 1, 2004); *see* Dkt. 352 at 30.

6            Ultimately, the Ninth Circuit has never squarely endorsed anything like the view of equi-

7    table tolling adopted in this Court's order—i.e., in which claims of every member of a collective

8    can be tolled absent proof of reasonable diligence and despite evidence that some would-be col-

9    lective members were able to press their claims during the period for which tolling is sought.  And

10   there are many reasons why reasonable judges would come to a different conclusion.  Reasonable

11   diligence is always required for equitable tolling and cannot be disregarded as a matter of a court's

12   general "discretion."  Dkt. 381 at 10.  Moreover, delays in the issuance of judicial notice are com-

13   monplace, and hardly the sort of "extraordinary circumstances" required to justify tolling.  *Me-*

14   *nominee Indian Tribe*, 577 U.S. at 251.  The view this Court adopted would produce indefensible

15   results, tolling claims even of people who were fully aware both of the supposed FLSA violations

16   and of their right to opt in or initiate arbitration, but who nonetheless chose to sleep on their rights.

17           The Ninth Circuit should have an opportunity to address the timeliness questions here for

18   an additional reason.  "Equitable tolling determinations are highly fact-dependent and are to be

19   decided on a case-by-case basis."  *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (cleaned

20   up).  For that reason, district courts considering the timeliness of opt-in FLSA plaintiffs' claims

21   have concluded that "equitable tolling is more appropriately evaluated after potential plaintiffs

22   have opted in."  *Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 2014 WL 12696527, at *8 (D.

23   Alaska Dec. 17, 2014); *see also Bah v. Enter. Rent-A-Car Co. of Bos., LLC*, 699 F. Supp. 3d 133,

24   142 (D. Mass. 2023) (declining to adopt a "categorical, non-individualized approach to equitable

25   tolling"), *appeal pending*, No. 24-1126 (1st Cir.).  Amazon argued as much, Dkt. 352 at 31, but

26   the conditional-certification order purports to resolve the timeliness issue across the entire collec-

27   tive, before opt-in plaintiffs with untimely claims are even before the Court and before Amazon

28

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 6

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

1  has had an opportunity to amass evidence challenging individual plaintiffs' entitlement to equita-

2  ble tolling. "'Due process requires that there be an opportunity to present every available de-

3  fense,'" *Lindsey v. Normet*, 405 U.S. 56, 66 (1972), and deciding equitable tolling in gross at con-

4  ditional certification threatens to deprive Amazon of that vital right.

5          Because the Circuit has not "spoken on the point," *Couch v. Telescope Inc.*, 611 F.3d 629,

6  633 (9th Cir. 2010), and "reasonable jurists might disagree on [its] resolution," *Reese*, 643 F.3d at

7  688, the equitable-tolling question is appropriate for Section 1292(b) certification.

8          **2.          Reasonable judges likewise could disagree about whether courts should
              order distribution of judicial notice to people who agreed to arbitrate.**

9

10         Another legal issue in the conditional-certification order warrants Section 1292(b) review.

11  For years, "[d]istrict courts around the country have generated conflicting answers to the question

12  of whether workers who signed arbitration agreements can receive notice of an FLSA collective

13  action." *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 404 F. Supp. 3d 529, 532 (D. Mass.

14  2019). Recently, a growing appellate consensus has developed suggesting that they cannot—i.e.,

15  that courts may not order judicial notice under the FLSA without first considering whether would-

16  be recipients agreed to arbitrate their claims. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500-04

17  (5th Cir. 2019); *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011-12 (6th Cir.

18  2023); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1048-51 (7th Cir. 2020). This Court reached the

19  opposite conclusion, reasoning that there was no problem with sending judicial notice to people

20  who agreed to arbitrate and who thus might be prevented from participating in any judicial collec-

21  tive. Dkt. 381 at 8-9.

22         That square conflict makes this an easy case for Section 1292(b). Interlocutory review is

23  appropriate even for "novel issue[s]" for which no "contradictory precedent" has yet developed,

24  so long as "reasonable jurists might disagree." *Reese*, 643 F.3d at 688. But it is all the more

25  imperative where other circuits "are in dispute on the question" and courts have in fact parted

26  company. *Couch*, 611 F.3d at 633. This Court has recognized that its approach to judicial notice

27  to people who may be bound to arbitrate "reject[s] out of circuit precedent." Dkt. 381 at 8 (citing

28  *Herrera v. EOS IT Mgmt. Sols., Inc.*, 2020 WL 7342709, at *9-10 (N.D. Cal. Dec. 14, 2020)).

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 7

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

1    Other courts have recognized that the Ninth Circuit "has not had the opportunity to consider

2    whether FLSA notice should be provided to individuals who signed arbitration agreements."

3    *Droesch v. Wells Fargo Bank, N.A.*, 2021 WL 2805604, at \*2 (N.D. Cal. July 6, 2021); *accord,*

4    *e.g.*, *Zeman v. Twitter, Inc.*, — F. Supp. 3d —, 2024 WL 4032051, at \*4 (N.D. Cal. Sept. 3, 2024);

5    *Herrera*, 2020 WL 7342709, at \*10.  And while some district courts, like this Court, have deter-

6    mined that arbitration agreements have no bearing on conditional certification, *Herrera*, 2020 WL

7    7342709, at \*10; *Delara v. Diamond Resorts Int'l Mktg., Inc.*, 2020 WL 2085957, at \*5-6 (D. Nev.

8    Apr. 30, 2020); *Cuevas v. ConAm Mgmt. Corp.*, 2019 WL 5320544, at \*4-5 (S.D. Cal. Oct. 21,

9    2019), others have followed the analytical path of the Fifth, Sixth, and Seventh Circuits and have

10   declined to issue notice to employees who agreed to arbitrate, *e.g.*, *Droesch*, 2021 WL 2805604,

11   at \*3; *Geiger v. Charter Commc'ns, Inc.*, 2019 WL 8105374, at \*4-6 (C.D. Cal. Sept. 9, 2019).

12   This array " 'of conflicting and contradictory opinions . . . provide[s] substantial ground for disa-

13   greement' " under Section 1292(b).  *Couch*, 611 F.3d at 633-34.

14        Two additional features of these FLSA issues make Section 1292(b) certification appropri-

15   ate here.  First, the point of Section 1292(b) is to facilitate the appellate court's "discretion" to

16   permit appeals of important issues embedded in otherwise unappealable orders.  28 U.S.C.

17   § 1292(b).  The circuits that have elected to address whether judicial notice can be sent to employ-

18   ees who committed to arbitration have stressed not just the suitability of, but also the urgent need

19   for, detailed appellate guidance on that question.  In *JPMorgan*, for instance, the Fifth Circuit

20   invoked its "supervisory authority" to " 'settle new and important problems,' " particularly given

21   "the challenging practicalities of collective actions," and laid out detailed instructions about how

22   courts should approach arbitration issues for purposes of FLSA certification.  916 F.3d at 499-504

23   & nn.4, 12.  Likewise, in *Bigger*, the Seventh Circuit's grant of permission to appeal under Section

24   1292(b) permitted an explanation of "specific steps" district courts must follow when "proposed

25   notice recipients entered mutual arbitration agreements."  947 F.3d at 1050-51.  As the Seventh

26   Circuit noted, without the benefit of that detailed "analytical framework," "the parties could not"

27   be expected to "navigate its demands," and the district court "could not . . . apply the correct stand-

28   ard."  *Id.* at 1051.  The Ninth Circuit should be given a similar opportunity.

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 8

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

1    Second, the specific conflict about arbitration and judicial notice is taking place amid a

2  broader debate about conditional certification under the FLSA.  Central to this Court's order is the

3  notion that conditional certification operates under an especially "lenient" standard, Dkt. 381 at 5,

4  7, with most of the work on the similarly-situated requirement deferred until decertification.  But

5  while the Ninth Circuit generally adopted the two-step approach in *Campbell v. City of Los Ange-*

6  *les*, 903 F.3d 1090 (9th Cir. 2018), in that case "preliminary certification [wa]s not challenged,"

7  which is why the Court "address[ed] only the standard the district court should apply to post-

8  discovery decertification," *id.* at 1117; *see Roberts v. Sidwell Air Freight Inc.*, 2022 WL 16949565,

9  at *2 (W.D. Wash. Nov. 15, 2022) (recognizing that the Ninth Circuit "expressly declined to opine

10  on the appropriate standard for preliminary certification").  And although *Campbell* described in

11  passing (and in dicta) what at the time was a "loose consensus as to the proper procedure," *id.* at

12  1108-09, since then multiple courts of appeals have rejected the lenient standard for conditional

13  certification that this court applied, *see Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 439-

14  41 (5th Cir. 2021); *Clark*, 68 F.4th at 1009-11.

15    The lack of "binding guidance on the issue of conditional certification," *Roberts*, 2022 WL

16  16949565, at *4, cries out for Section 1292(b) review.  Giving the Ninth Circuit that opportunity

17  is especially important given the stakes here—not just the immense pressures that conditional cer-

18  tification carries, *Bigger*, 947 F.3d at 1050, but also the due-process imperative that defendants

19  not be deprived of the right to "present every available defense," *Lindsey*, 405 U.S. at 66.

20  **B.    The issues presented by this Court's order are controlling, and their resolution will
       materially advance the termination of the litigation.**
21

22    Certification is also warranted because the Court's conditional-certification order involves

23  "controlling question[s] of law" whose resolution "may materially advance the ultimate termina-

24  tion of the litigation."  28 U.S.C. § 1292(b).  For a question to be "controlling," its answer need

25  not have "a final, dispositive effect on the litigation," *Reese*, 643 F.3d at 688, or dictate "who will

26  win on the merits," *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996).  Instead, a legal

27

28

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 9

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

1    issue is controlling under Section 1292(b) merely if its resolution "could materially affect the out-

2    come of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th

3    Cir. 1981).

4         Countless decisions recognize that Section 1292(b) review is appropriate to address im-

5    portant questions of timeliness and tolling that could affect the claims of all or many of the parties.

6    *E.g.*, *Williams v. Sims*, 390 F.3d 958, 959 (7th Cir. 2004) (Section 1292(b) review of equitable-

7    tolling ruling); *see also, e.g.*, S. Rep. No. 2434, at 3 (1958), *as reprinted in* 1958 U.S.C.C.A.N.

8    5256 (giving adverse statute-of-limitations ruling as illustration of appropriate use of Sec-

9    tion 1292(b)).  And courts around the country have recognized that issues bearing on conditional

10   certification likewise satisfy Section 1292(b)'s requirements.  For instance, the Third, Sixth, and

11   Seventh Circuits all agreed to accept interlocutory appeals presenting questions about the permis-

12   sibility of sending judicial notice to people who agreed to arbitrate.  *Bigger*, 947 F.3d at 1048;

13   *Clark*, 68 F.4th at 1008; *Bruno v. Wells Fargo Bank N.A.*, 2021 WL 1550076, at *5-6 (W.D. Pa.

14   Apr. 20, 2021), *petition for permission to appeal granted*, No. 21-8023 (3d Cir. Sept. 3, 2021),

15   *appeal dismissed following settlement*, No. 21-2734 (3d Cir. Dec. 19, 2023).  Courts have also

16   accepted interlocutory appeals presenting broader issues about the FLSA's similarly-situated re-

17   quirement and the process and standards courts should use in assessing it.  *E.g.*, *Clark*, 68 F.4th at

18   1008; *Swales*, 985 F.3d at 439; *In re Eli Lilly*, Nos. 24-8017 & -2574 (7th Cir.) (appeal pending

19   on Section 1292(b) review).  Those decisions recognize that, however "conditional," orders direct-

20   ing judicial notice to members of a putative collective have a dramatic effect on FLSA litigation

21   that warrants prompt appellate intervention.

22        Ninth Circuit guidance on the timeliness and arbitration issues here "will materially ad-

23   vance the litigation" because, if the Circuit agrees with Amazon's arguments, "the scope of the

24   issues . . . to [be] determine[d] at the decertification stage will be significantly narrowed, and the

25   number of plaintiffs will likely be dramatically decreased."  *Bigger v. Facebook, Inc.*, No. 1:17-

26   cv-7753 (N.D. Ill. Apr. 17, 2019), Dkt. 81 at 1-2.  If anything, this case presents an especially

27   strong case for Section 1292(b) review.  The over a million Delivery Partners who stand to receive

28   notice all agreed to terms requiring arbitration, and since 2019 all those agreements independently

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 10

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

require arbitration as a matter of Delaware law, *see* Dkt. 352 at 7—agreements whose enforcea-bility this Court has not yet addressed, Dkt. 381 at 8.  Untold numbers of Delivery Partners would be unable to show that, during the eight-plus years for which Plaintiffs have sought equitable toll-ing, they diligently pursued their legal rights but were prevented from timely advancing claims against Amazon.  On both ends of the sweeping collective Plaintiffs have proposed, therefore, are people who simply have no right to be in this Court—but who are shortly to receive notice sug-gesting exactly the opposite.  Requiring Amazon to press ahead with notice to so many people who can't take part in the proposed collective would only *generate* wasteful litigation down the line.  Even if some fraction of the putative collective would remain following the interlocutory appeal, that is no bar to review because Section 1292(b) has never required that the reviewing court's answer have a "final, dispositive effect on the litigation."  *Reese*, 643 F.3d at 688.

## IV.    CONCLUSION

The Court should certify its order (Dkt. 381) for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated:  December 9, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  s/ *Jason C. Schwartz*

Jason C. Schwartz, *Admitted Pro Hac Vice*
Lucas C. Townsend, *Admitted Pro Hac Vice*
Dhananjay S. Manthripragada, *Admitted Pro Hac Vice*
1700 M Street, N.W.
Washington, D.C. 20036-4504
+1 202.955.8500
jschwartz@gibsondunn.com
ltownsend@gibsondunn.com
dmanthripragada@gibsondunn.com

Megan Cooney, *Admitted Pro Hac Vice*
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
mcooney@gibsondunn.com

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 11

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS & BOCKIUS LLP


By:  s/ *Andrew DeCarlow*
_____
 Andrew DeCarlow, WSBA No. 54471
 1301 Second Avenue, Suite 3000
 Seattle, WA 98101
 +1 206.274-0154
 andrew.decarlow@morganlewis.com

 Richard G. Rosenblatt, *Admitted Pro Hac Vice*
 James P. Walsh, Jr., *Admitted Pro Hac Vice*
 502 Carnegie Center
 Princeton, NJ 08540
 richard.rosenblatt@morganlewis.com
 james.walsh@morganlewis.com

 Brian D. Berry, *Admitted Pro Hac Vice*
 Sarah Zenewicz, *Admitted Pro Hac Vice*
 One Market Spear Street Tower
 San Francisco, CA 94105
 brian.berry@morganlewis.com
 sarah.zenewicz@morganlewis.com


*Attorneys for Defendants*
*Amazon.com, Inc. and Amazon Logistics, Inc.*

I certify that this memorandum contains 4,118 words, in compliance with the Local Civil Rules.

DEFENDANTS' MOTION TO CERTIFY ORDER
UNDER 28 U.S.C. § 1292(b)
No. 2:16-cv-1554 — Page 12

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500