The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BERNADEAN RITTMANN, *et al.*, on their own behalf and on behalf of others similarly situated,<br><br>    v.<br><br><br>AMAZON.COM INC. and AMAZON LOGISTICS, INC.,<br><br>        Defendants. | Consolidated Action<br>Case No. C16-1554-JCC<br><br>**PLAINTIFFS' MOTION TO REMEDY AND SANCTION DEFENDANTS' *EX PARTE* COMMUNICATIONS**<br><br>**NOTE DATE: April 25, 2025**<br><br>**ORAL ARGUMENT REQUESTED** |

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

# TABLE OF CONTENTS

I.   Introduction ................................................................................................. 1

II.  Procedural History ...................................................................................... 2

III. Factual Background ..................................................................................... 2

IV.  Argument .................................................................................................... 4

     A.   Courts maintain the authority to manage communications with collective
          action members. ................................................................................ 4

     B.   For notice to be fair, improper *ex parte* communications must be barred. ........... 6

     C.   Sanctions are proper to remedy *ex parte* communications. .................................. 8

     D.   Amazon's *ex parte* communications were improper. ........................................ 10

     E.   The requested relief is necessary to correct Amazon's misconduct. .................. 15

          1.   Corrective notice should be issued to the affected drivers. .................... 15

          2.   The declarations of all drivers contacted should be precluded. .............. 15

          3.   Amazon should be barred from further unauthorized contact with
               Flex drivers. .......................................................................... 16

V.   Conclusion ................................................................................................. 16

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

Case No. C16-01554-JCC

i

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

TABLE OF AUTHORITIES

<u>CASES</u>

*Babbitt v. Albertsons, Inc.*,
      No. C-92-1883, 1993 WL 128089 (N.D. Cal. Jan. 28, 1993)......................................8, 13

*Belt v. EmCare, Inc.*,
      299 F. Supp. 2d 664 (E.D. Tex. 2003). ...........................................................................14

*Camp v. Alexander*,
      300 F.R.D. 617 (N.D. Cal. 2014). .....................................................................................7

*Dominguez v. Better Mortg. Corp.*,
      88 F.4th 782 (9th Cir. 2023). .................................................................................5, 6, 16

Gulf Oil Co. v. Bernard,
      452 U.S. 89 (1981)...................................................................................................4, 7, 15

*Hoffman-La Roche Inc* .........................................................................................10, 11, 15

Hoffmann-La Roche Inc. v. Sperling,
       493 U.S. 165 (1989)...................................................................................................5, 6

*In re Shell Oil Refinery*,
      152 F.R.D. 526 (E.D. La. 1989)........................................................................................14

*In re Victor Techs. Sec. Litig.*,
      792 F.2d 862 (9th Cir. 1986). ............................................................................................7

*Kirby v. Kindred Healthcare Operating, LLC*,
      2020 WL 2504337 (C.D. Cal. May 15, 2020) ...........................................................8, 15

Kleiner v. First Nat'l Bank of Atlanta,
      751 F.2d 1193 (11th Cir. 1985). ...................................................................................5, 12

*Li v. A Perfect Day Franchise, Inc.*,
      270 F.R.D. 509 (N.D. Cal. 2010).............................................................................5, 6, 13

*Marino v. CACafe, Inc.*,
      No. 16-cv-6291, 2017 WL 1540717 (N.D. Cal. Apr. 28, 2017)..........................9, 14, 15

*O'Connor v. Uber Techs., Inc.*,
      2013 WL 6407583 (N.D. Cal. Dec. 6, 2013). ...................................................................7

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

Case No. C16-01554-JCC

ii

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

*Salazar v. Driver Provider Phoenix LLC*,
    532 F. Supp. 3d 832 (D. Ariz. 2021). ............................................................7, 11, 14, 15

*Wang v. Chinese Daily News, Inc.*,
    623 F.3d 743 (9th Cir. 2010). ............................................................................7

*Wright v. Adventures Rolling Cross Country, Inc.*,
    2012 WL 2239797 (N.D. Cal. June 15, 2012) ......................................9, 10, 14

**STATUTES**

29 U.S.C. § 216(b). ........................................................................................................7

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

## I.    INTRODUCTION

Attorneys representing Amazon—including 22 attorneys from Littler Mendelson P.C. who never entered an appearance in this case—recently contacted members of the certified FLSA collective action and putative classes about this litigation. Through these unauthorized, misleading, and coercive *ex parte* communications, Amazon procured 35 declarations that it will no doubt seek to use against the FLSA collective, putative classes, and very drivers who provided them.

Amazon's *ex parte* communications failed to reference this case's title, number, and venue. They provided no information about Plaintiffs' counsel, the certified collective, or the putative classes. Nor did they contain a neutral description of this case, as the Court recently determined was appropriate. (*See* Dkt. No. 422). Most egregiously, Amazon's attorneys withheld the fact that an authorized notice informing drivers of their right to opt into the collective was forthcoming, which the Court has since approved. (*Id.*)

To remediate Amazon's sanctionable conduct, the Court should: (1) bar Amazon and its attorneys from further contacting drivers without leave of Court; (2) exclude from evidence all declarations and voluntary interview consent forms obtained by Amazon's counsel; (3) require Amazon to immediately provide Plaintiffs with the names and contact information of all drivers its attorneys contacted (whether or not they signed a declaration); (4) provide corrective notice to all drivers that Amazon's attorneys contacted, with Amazon bearing the cost; and (5) award Plaintiffs their reasonable costs and attorney's fees incurred in bringing this motion.

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

1

Case No. C16-01554-JCC

## II.    PROCEDURAL HISTORY

On December 2, 2024, the Court granted Plaintiffs' motion for conditional certification of a nationwide FLSA collective action. (*See* Dkt. Nos. 381, 407). The Court conditionally certified a collective consisting of all Flex delivery drivers who worked for Amazon on or after October 27, 2013, and are not already represented by counsel on misclassification and related wage and overtime claims. (*See* Dkt. No. 407, at 1.) The Court further directed the parties to meet and confer regarding the content of its FLSA notice. (*Id.*)

On January 31, 2025, the parties filed their competing proposed FLSA notices and opt-in consent forms. (*See* Dkt. No. 407, at 1–7.) The parties' submissions reflected disagreements regarding the content and language of the proposed notice, including the terminology used to describe drivers, the inclusion of arbitration disclosures, and the explanation of Plaintiffs' wage claims. (*See* Dkt. No. 407, at 3–7.)

On March 27, 2025, the Court issued its officially approved notice. (*See* Dkt. No. 422.) The approved notice neutrally describes Plaintiffs' claims, identifies their counsel with contact information, and—most significantly—explains the right of each driver to opt into the FLSA collective. (*Id.*) The Court reasoned that this information was appropriate and necessary to prevent confusion and to allow drivers to make an informed decision about whether to join this case. (*Id.*)

## III.    FACTUAL BACKGROUND

As Plaintiffs have only recently learned, beginning in December 2024, at least 22 attorneys from Littler Mendelson—none of whom are counsel of record in this case—initiated direct, *ex parte* communications with members of the conditionally certified FLSA collective

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

Case No. C16-01554-JCC

2

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

and putative classes. While the full scope of their outreach is unknown, Amazon's attorneys obtained declarations from 35 drivers.[1]

These communications occurred during a critical procedural window: after the Court's conditional certification on December 2, 2024, but before the Court approved its form of notice on March 27, 2025. (*Compare* Ex. A *with* Dkt. No. 422). In other words, Amazon's *ex parte* communications deliberately systematically bypassed the Court's established notice process and Plaintiffs' counsel, deliberately circumventing the supervised communication protocol.

Amazon's attorneys relied on their own unauthorized template for their interview consent forms and declarations (without waiting for this Court to address the parties' disagreements about how best to inform drivers about this case and how to describe their rights and the claims being pursued). Those forms—filed here as Exhibit A—do not identify Plaintiffs' counsel, the driver's right to opt into the collective, or this case's title, number, or venue, even though the Court has explicitly required this information to be included in the FLSA notice. (*See* Dkt. No. 422–1, at 1–2.)

Although the forms acknowledge the granting of conditional certification, they misleadingly state that drivers "may be a part of this collective." (*See* Ex. A.)  They do not describe the drivers' right to opt in to the case.  And they do not disclose the identity of Plaintiffs' counsel, which courts recognize as important to allowing collective action members to assess their rights.

---

[1]    A full list of the drivers for whom Amazon has produced declarations, along with the attorneys who contacted each driver, is included as Exhibit B.

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

Case No. C16-01554-JCC

3

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

In sum, Amazon's consent forms omit the following critical information:

1) The identity and contact information of Plaintiffs' counsel;

2) The name of this case, its number, and the Court's information;

3) The Court did not authorize the outreach;

4) Drivers have the right to opt into this case;

5) Drivers need to sign an opt-in consent form to participate in this case;

6) The Court is about to authorize formal notice of the certified collective;

7) None of the attorneys who conducted the outreach is counsel of record;

8) That Amazon can use the declarations against the drivers, including for impeachment purposes and as a means of decertifying the collective;

9) That Amazon can use the declarations to impeach the declarants and to disqualify them from participating in this case; and

10) That Amazon cannot retaliate against drivers who refuse to be interviewed or participate in this case.

Much of this information is included in the Court's approved notice, confirming its critical nature. (*See* Dkt. No. 422–1.)

IV. **ARGUMENT**

A. **Courts maintain the authority to manage communications with collective action members.**

The Supreme Court has long recognized that district courts' duty and broad authority to exercise control over class and collective actions and to issue appropriate orders governing the conduct of counsel and parties. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100–01 (1981).

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

Case No. C16-01554-JCC

4

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

Limitations on communications with potential class members are appropriate where necessary to prevent serious abuses, including misleading or coercive communications that threaten the fairness of the litigation. *Id.* at 101.

In *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), the Court first emphasized a district court's responsibility to oversee the notice process in collective actions under the Fair Labor Standards Act ("FLSA") to counter misinformation and misuse. *Id.* at 171–72, 174. As the Ninth Circuit recently put it, district courts have the "duty and power to oversee communications from both defendants and class counsel with potential class members and FLSA collective action participants." *Dominguez v. Better Mortg. Corp.*, 88 F.4th 782, 791 (9th Cir. 2023). The need for oversight is particularly acute, where, as here, the court grants certification and oversees notice.

For instance, the Eleventh Circuit has warned about the dangers posed by unsupervised, unilateral communications with potential class members, finding that such conduct deprives absent parties of informed decision-making. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) (finding that "unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal"). Notably, *Kleiner* involved post-certification communications, where the court found such conduct particularly problematic given the established representative relationship. Similarly, in *Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509 (N.D. Cal. 2010), *ex parte* communications by the defendant

soliciting opt-outs were deemed inherently coercive and thus invalidated. *Id.* at 517–18, 520–21.[2]

Where parties engage in misleading, coercive, or otherwise improper *ex parte* communications with potential class members, courts may invoke their inherent power to impose sanctions, invalidate improperly obtained declarations or releases, and issue corrective notices to prevent prejudice.

### B.    For notice to be fair, improper *ex parte* communications must be barred.

Communications with potential class and collective action members must be neutral, accurate, and free from coercion or misleading content. These concerns are particularly acute where, as here, *ex parte* communications occur after conditional certification but before court-approved notice has been issued. Such conduct risks creating confusion, impairing informed decision-making, and undermining the Court's exclusive control over the notice process. *See Hoffmann-La Roche*, 493 U.S. at 170–72.

To address these concerns, courts often rely on the authority granted by both Federal Rule of Civil Procedure 23(d) and Section 216(b) of the FLSA to regulate communications with class and collective members. *See Dominguez*, 88 F.4th at 791 (noting powers are the same). These provisions empower courts to protect absent parties' rights and ensure the fair administration of justice. *See* Fed. R. Civ. P. 23(d); 29 U.S.C. § 216(b). "The key is whether there is 'potential interference' with the rights of the parties in a class action." *O'Connor v.*

---

[2]    Although *Li* addressed pre-certification communications, the court's reasoning applies with even greater force to post-certification communications like those at issue here.

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

Case No. C16-01554-JCC

6

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

*Uber Techs., Inc.*, 2013 WL 6407583, at *5 (N.D. Cal. Dec. 6, 2013) (quoting *Gulf Oil Co.*, 452 U.S. at 100).

Courts in the Ninth Circuit, including this Court, have recognized that coercive or misleading communications justify judicial intervention to prevent potential interference. *See Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *cert. granted, judgment vacated on other grounds,* 565 U.S. 801 (2011) ("[D]istrict courts [have] the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation."); *see also In re Victor Techs. Sec. Litig.*, 792 F.2d 862, 864 (9th Cir. 1986). A court addressed improper pre-certification communications from a defendant employer in *Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014), where the employer's *ex parte* letter was coercive and misleading, and that its solicitation of opt-outs undermined the class action process. *See id.* at 624–26. The court ordered curative notice to protect absent class members. *See id.*

Similarly, in *Salazar v. Driver Provider Phoenix LLC*, 532 F. Supp. 3d 832 (D. Ariz. 2021), the Court addressed improper communications in an FLSA collective action that had been conditionally certified, as here. The court recognized that post-certification communications with collective action members carry an "inherent risk of prejudice and opportunities for impropriety" and found judicial intervention necessary to protect the integrity of the proceedings. *Id.* at 836, 839–40. Plaintiffs' motion to limit further communications was granted and a curative notice to prevent ongoing prejudice was authorized. *Id.* at 839–40.

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

Even with pre-certification communications, courts typically issue a protective order restricting defendants' communications with putative class members upon a finding that the communications posed a serious risk of confusion and coercion, undermining the fairness of the class action process. *See, e.g.*, *Babbitt v. Albertsons, Inc.*, No. C-92-1883, 1993 WL 128089, at *2–3 (N.D. Cal. Jan. 28, 1993). These cases reflect a consistent principle recognized in this Circuit: courts must scrutinize and restrict *ex parte* communications with putative class and collective members to prevent coercion, misinformation, and interference with the court's management of the litigation.

## C.    Sanctions are proper to remedy *ex parte* communications.

Courts regularly impose corrective measures and sanctions—necessary to protect absent members from coercion, restore fairness, and deter future misconduct—where parties engage in improper communications with class or collective action members. Remedies include invalidating improperly obtained agreements, issuing corrective notices, and restricting further communications without court approval.

For example, in *Kirby v. Kindred Healthcare Operating, LLC*, 2020 WL 2504337 (C.D. Cal. May 15, 2020), the court found the defendant-obtained settlement agreements and declarations misleading and coercive, concluding that they undermined the fairness and integrity of the class notice and opt-out process. *See id.*, at *2–3, 6. As a result, the court: (1) invalidated the settlements and declarations obtained through improper communications; (2) ordered the issuance of a court-approved corrective notice to all putative class members; and (3) prohibited defendants from engaging in further *ex parte* communications with putative class members without prior court approval. *See id.*, at *6–7.

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

Case No. C16-01554-JCC

8

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

Similarly, in *Marino v. CACafe, Inc.*, 2017 WL 1540717 (N.D. Cal. Apr. 28, 2017), The defendants failed to disclose the existence of the pending class action litigation and omitted material facts about the nature of the claims at issue when obtaining releases and settlement agreements. *See id.*, at *1–2. The court: (1) invalidated all releases and settlement agreements obtained through these improper communications; (2) ordered the issuance of a court-approved corrective notice to inform class members of their rights and the status of the litigation; and (3) prohibited defendants from making further communications to potential class members regarding the case without prior court approval. *See id.*, at *4. The court stressed that such remedial measures were necessary to protect class members from confusion and misinformation. *See id.*

The declarations obtained by Amazon could potentially be used to disqualify drivers from joining the collective action, or impeach the drivers if they do choose to opt in, despite the drivers having not yet received the Court-approved notice. The Court-authorized notice is designed to inform putative members of the claims and their options in a way that is not "too abstract and may well leave class members more confused by what is not said." (*See* Dkt. No. 422, at 2.) Like the Court in *Marino*, this Court should invalidate and preclude any use of the declarations that could be used against the rights the driver-declarants were not informed of. *See Marino*, 2017 WL 1540717, at *4.

Further, in *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 WL 2239797 (N.D. Cal. June 15, 2012), the court found that unsupervised, unilateral communications discouraging participation and misstating the potential claims risked coercion and undermined the fairness of

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

Case No. C16-01554-JCC

9

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

the class action process. *See id.*, at *2–3. As a remedial measure, the *Wright* court (1) prohibited defendants from initiating any further *ex parte* communications with putative class members without prior court approval, and (2) authorized plaintiffs to issue a court-approved corrective notice to clarify the nature of the litigation and the rights of potential class members. *See id.*, at *5. Here, the Court has clearly noted the importance of correctly stating the claims of the Plaintiffs. (Dkt. No. 422, at 2.) The outreach by Amazon's counsel informs the drivers of neither their rights nor the specific claims of the Plaintiffs.

These cases reflect a consistent principle recognized by courts: where parties engage in improper communications with putative class and collective action members, as here, courts may impose corrective measures and sanctions to remedy prejudice, deter future misconduct, and preserve the integrity of judicial proceedings.

### D. Amazon's *ex parte* communications were improper.

Amazon's *ex parte* communications directly contravene the Supreme Court's mandate in *Hoffmann-La Roche Inc.* that communications or notice be "timely, accurate, and informative" as sufficiently neutral as this Court warrants. *Id.* at 172–74. Courts have the duty and broad authority to protect against misleading communications to ensure fair and orderly conduct within the litigation. *See id.*, at 170–72 (noting that because of "potential for abuse" district courts have "both duty and broad authority to exercise control . . . and to enter appropriate orders governing the conduct of counsel and the parties"). By orchestrating systematic communications with drivers who were already members of the certified collective—particularly during the critical period when the Court was actively supervising the notice process—Amazon fundamentally undermined the Court's authority in precisely the

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

Case No. C16-01554-JCC

10

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

manner that the Supreme Court cautioned against in *Hoffman-La Roche Inc.* and *Gulf Oil Co.* As the *Salazar* court emphasized, "*ex parte* communication with putative FLSA collective action members about the case has an inherent risk of prejudice and opportunities for impropriety."[3] *See Salazar*, 532 F. Supp. 3d at 836.

Here, Amazon deliberately initiated contacts *after* the Court conditionally certified the FLSA collective—i.e., when the Court's exclusive control over communications was triggered—making its conduct particularly egregious. Worse yet, Amazon relied on misleading forms that omitted (what the Court has now recognized to be) critical information, including the identity of this case and Plaintiffs' counsel. Amazon's conduct has directly undermined the Court's ability to issue "'timely, accurate, and informative' as well as sufficiently neutral." (Dkt. No. 422, at 2 (quoting *Hoffman-La Roche Inc.*, 493 U.S. at 172–74).)

Amazon might argue that the drivers it contacted are unrepresented until they affirmatively opt into this litigation. Even if that were true, Amazon's communications with these drivers were still improper for five reasons.

First, Amazon's standardized declaration and consent forms misrepresented the drivers' legal status and concealed essential information. Rather than informing drivers of their right to opt into the certified collective, the forms misleadingly stated that drivers "may be a part of this collective." (*See* Ex. 1, at 7–8.) The forms also failed to mention whether the drivers fall within the putative classes. Critically, Amazon omitted the identity of Plaintiffs' counsel and this

---

[3]    The *Salazar* Court notes the "inherent risk of prejudice" of pre-certification *ex parte* communication. 532 F. Supp. 3d at 826. Thus, *Salazar* is particularly instructive because this Court has already granted conditional certification.

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

case's name, docket number, or venue and did not include the neutral description of the claims in this case, which the Court ultimately adopted in the approved notice. (*Id.*)

This Court need not look further than the Court-approved notice to the FLSA collective to identify what critical information must have been included in Amazon's outreach. In the order issuing the form of notice, this Court notes the necessity "to inform potential members about the basis of the claims here" and for the potential members to be fully informed of the identification of Plaintiffs' counsel and their rights in—particularly the right to opt into—the ongoing matter. (*See* Dkt. No. 422 at 2–3; Dkt. No. 422–1, at 1–2.)

By contrast, Amazon's *ex parte* communications mirror the "one-sided presentation of facts without opportunity for rebuttal" that the court in *Kleiner* found to "sabotage the goal of informed consent." *See Kleiner*, 751 F.2d at 1203. By deliberately concealing the identity of Plaintiffs' counsel and this case, Amazon deprived drivers of information necessary to make an informed decision about whether to provide sworn testimony to an adverse party. This kind of calculated manipulation of the judicial process—carried out behind the Court's back—demands sanctions. *See id.*, at 1209–10.

Second, the timing of Amazon's *ex parte* communications is especially troubling. Amazon's attorneys began contacting drivers in December 2024, right after the Court conditionally certified the collective action. They continued contacting drivers through March 2025, even as the Court was actively considering what language to include in its official notice.

As reflected by the interview dates, Amazon's outreach spanned several months, with interviews occurring as late as March 12, 2025—mere weeks before the Court issued its

approved notice. But Amazon never informed the Court or Plaintiffs of its outreach to drivers (much less requested consent to do so). The timing and secrecy of these *ex parte* communications support only one conclusion: Amazon sought to prejudice Plaintiffs by undermining this Court's control over the notice process. Such premeditated misconduct warrants sanctions. *See Li*, 270 F.R.D. at 517–18.

Third, the involvement of 22 Littler Mendelson attorneys who have not entered appearances in this case adds another significant layer of impropriety. Perhaps worried about being disqualified from this case, Amazon's counsel of record turned to attorneys who have not even entered appearances in this case. These attorneys conducted interviews and obtained declarations from collective action members without any notice to Plaintiffs' counsel or authorization from the Court. This lack of transparency heightened the risk of confusion, thus requiring remedial action. *See Babbitt*, 1993 WL 128089, at *2–3.

Fourth, Amazon exploited a profound imbalance of power. During ongoing litigation, attorneys acting on behalf of Amazon, directly approach Amazon Flex drivers (many of whom are dependent on Amazon for their livelihood, or at least some of their income) without providing them with the identity of this case or Plaintiffs' counsel. The strategic timing and opaque presentation intensified drivers' vulnerability, amplifying the coercive impact recognized and condemned by courts in similar contexts.

Amazon's attorneys deliberately exploited this vulnerability by targeting drivers during the critical window between certification and court-approved notice—precisely when drivers were most vulnerable to misinformation and least likely to understand their rights as collective

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

Case No. C16-01554-JCC

13

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

members. Considering the inherently misleading and coercive nature of these omissions,

consistent with judicial actions in *Marino* and *Salazar*, this Court should exclude the

improperly obtained declarations and consent forms from evidence, issue corrective notices,

and require immediate disclosure of all affected collective members. *See Salazar*, 532 F. Supp.

3d at 840; *Marino*, 2017 WL 1540717, at *4.

Fifth, Washington Rule of Professional Conduct 4.2 bars attorneys from communicating

about the subject of a representation with persons known to be represented by counsel. Courts

routinely apply Rule 4.2, or its ABA Model Rule equivalent, in collective action contexts,

holding that, following certification, the defendant and defense counsel must treat class

members as represented by counsel.[4] *See In re Shell Oil Refinery*, 152 F.R.D. 526, 528–29

(E.D. La. 1989) (holding that Rule 4.2 applied to prohibit *ex parte* contact with class members

following certification); *see also Belt v. EmCare, Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex.

2003). Amazon's attorneys knew that these drivers were putative members of the conditionally

certified collective and thus have interests represented by Plaintiffs' counsel. Their willful

circumvention of this ethical obligation is even more concerning, given that multiple Littler

Mendelson attorneys initiated these contacts without entering their appearances.

As in *Wright*, decisive remedial action is needed here. 2012 WL 2239797, at *3, 5

(holding that unsupervised and misleading contacts undermined the fairness of the class action

---

[4]     Even if this Court determines that these drivers are unrepresented, Washington Rule of Professional Conduct 4.3 requires lawyers to "explain that the client has interests opposed to those of the unrepresented person." Simply stating that one's "rights may be affected," as Amazon's attorneys did, is insufficient.

PLS.' MOT. TO REMEDY AND                          14                **LICHTEN & LISS-RIORDAN, P.C.**
SANCTION DEFENDANTS' *EX PARTE*                                    729 Boylston Street, Suite 2000
COMMUNICATIONS                                                         Boston, MA 02116

Case No. C16-01554-JCC

and warranted curative measures). The Court should order corrective notice to all drivers that Amazon contacted, exclude the declarations and voluntary interview consent from evidence, bar Amazon from contacting drivers about this litigation, and award Plaintiffs their reasonable attorney's fees and costs for bringing this motion.

**E.    The requested relief is necessary to correct Amazon's misconduct.**

**1.    Corrective notice should be issued to the affected drivers.**

Corrective notice is essential to remedy the confusion created by Amazon's counsel's improper communications with drivers. Courts consistently authorize such notices when improper *ex parte* communications threaten to undermine participation in collective actions. In *Salazar*, the Court recognized that post-certification communications carrying an "inherent risk of prejudice and opportunities for impropriety" warranted a corrective notice to ensure potential collective members received accurate information. *See Salazar*, 532 F. Supp. 3d at 836, 839–40. Plaintiffs will submit proposed language if the Court agrees that corrective notice is warranted.

**2.    The declarations of all drivers contacted should be precluded.**

The Court should exclude Amazon's driver declarations and voluntary interview consent forms from evidence. As explained above, these declarations lack critical disclosures and were obtained by attorneys who are not Amazon's counsel of record through secret outreach that undermined the Court's supervisory authority. Courts routinely exclude statements obtained by defendants through such improper communications, and this Court should do the same. *See Gulf Oil Co.*, 452 U.S. at 100; *Hoffman-La Roche Inc.*, 493 U.S. at 170–72; *Kirby*, 2020 WL 4639493, at *6; *Marino*, 2017 WL 1540717, at *3. The integrity of

the judicial process requires that parties like Amazon not benefit from circumventing judicial

oversight, especially when misleading communications are involved.

### 3. *Amazon should be barred from further unauthorized contact with Flex drivers.*

In *Dominguez*, Defendant Better Mortgage reached out to employees to "obtain factual

information to defend itself" in the ongoing litigation. 88 F.4th at 792. That is exactly what

Amazon did here. Within the voluntary consent forms, the Littler Mendelson attorneys state

they intend to "interview [the driver] about the facts alleged in the lawsuit so that [we] can

prepare the Company's defense." As the Ninth Circuit found in *Dominguez*, future

communications should be barred where, as here, past communications were misleading,

coercive, and intended to prejudice the opposing party. *See id.*, at 791–93. Such a tailored and

reasonable remedy is warranted.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order:

(1) barring Amazon and its attorneys from further contacting drivers without leave of Court; (2)

excluding from evidence all declarations and voluntary interview consent forms obtained by

Amazon's counsel; (3) providing corrective notice to all drivers that Amazon's attorneys

contacted, with Amazon bearing the expense of such corrective notice; (4) requiring Amazon to

immediately produce to Plaintiffs the names and contact information of all drivers its attorneys

PLS.' MOT. TO REMEDY AND
SANCTION DEFENDANTS' *EX PARTE*
COMMUNICATIONS

Case No. C16-01554-JCC

16

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116

contacted (whether or not they signed a declaration)[5]; and (5) awarding Plaintiffs their reasonable costs and attorney's fees for bringing this motion.

Dated:   April 4, 2025                         Respectfully submitted,

                                               BERNADEAN RITTMANN, *et al.*,
                                               on their own behalf and on behalf of others
                                               similarly situated,

                                               By their attorneys,

                                               *I certify that this brief does not exceed 4,200*
                                               *words in compliance with the Local Civil Rules.*

                                   By:         *s/ Shannon Liss-Riordan*
                                               Shannon Liss-Riordan (*pro hac vice*)
                                               Jeremy Abay (*pro hac vice*)
                                               LICHTEN & LISS-RIORDAN, P.C.
                                               729 Boylston Street, Suite 2000
                                               Boston, MA 02116
                                               (617) 994-5800
                                               sliss@llrlaw.com
                                               jabay@llrlaw.com

                                               Michael C. Subit, WSBA No. 29189
                                               FRANK FREED SUBIT & THOMAS LLP
                                               705 Second Avenue, Suite 1200
                                               Seattle, WA 98104
                                               (206) 682-6711
                                               msubit@frankfreed.com

                                               *Attorneys for Plaintiffs*

---

[5]     Amazon should not be permitted to use any information it obtained through these unauthorized contacts.  It should be required to destroy any communications, notes, and other information it obtained regarding the drivers it contacted.

**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116