THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BERNADEAN RITTMANN et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON LOGISTICS, INC.,<br><br>Defendants. | No. 2:16-cv-1554-JCC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMEDY AND SANCTION DEFENDANTS' *EX PARTE* COMMUNICATIONS**<br><br>NOTE ON MOTION CALENDAR:<br>**April 25, 2025**<br><br>**ORAL ARGUMENT REQUESTED** |



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

## TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 1

ARGUMENT ..... 3

I. The Delivery Partners Amazon Interviewed Are Not Represented Parties. ..... 3

II. Amazon's Interviews Were Neither Coercive Nor Misleading. ..... 5

A. Courts Have Approved Similar Pre-Opt-In Interviews ..... 5

B. Plaintiffs' Remaining Arguments Are Meritless ..... 8

III. Plaintiffs' Requested Sanctions Are Overbroad And Premature. ..... 10

A. Any Order Enjoining Speech Must Be Narrowly Tailored ..... 10

B. Plaintiffs' Remaining Sanctions Are Unfounded And Speculative ..... 12

CONCLUSION ..... 13




GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Babbitt v. Albertson's, Inc.*,
1993 WL 128089 (N.D. Cal. Jan. 28, 1993) ........ 11, 12

*Beasley v. Custom Commc'ns, Inc.*,
2016 WL 6684206 (E.D.N.C. Nov. 14, 2016) ........ 11

*Camp v. Alexander*,
300 F.R.D. 617 (N.D. Cal. 2014) ........ 7

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) ........ 4

*Dominguez v. Better Mortgage Corp.*,
88 F.4th 782 (9th Cir. 2023) ........ 7

*Grewe v. Cobalt Mortg., Inc.*,
2016 WL 4547131 (W.D. Wash. Sept. 1, 2016) ........ 8

*Guifu Li v. A Perfect Day Franchise, Inc.*,
270 F.R.D. 509 (N.D. Cal. 2010) ........ 11

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981) ........ 1, 10, 11

*Kerce v. W. Telemarketing Corp.*,
575 F. Supp. 2d 1354 (S.D. Ga. 2008) ........ 5

*Kirby v. Kindred Healthcare Operating, LLC*,
2020 WL 4639493 (C.D. Cal. May 1, 2020) ........ 8

*Kleiner v. First National Bank of Atlanta*,
751 F.2d 1193 (11th Cir. 1985) ........ 11

*Lloyd v. Covanta Plymouth Renewable Energy, LLC*,
532 F. Supp. 3d 259 (E.D. Pa. 2021) ........ 10

*Marino v. CACafe, Inc.*,
2017 WL 1540717 (N.D. Cal. Apr. 28, 2017) ........ 8

*Neb. Press Ass'n v. Stuart*,
427 U.S. 539 (1976) ........ 10

*Nyachira v. New Prime, Inc.*,
2022 WL 19263990 (W.D. Mo. Nov. 1, 2022) ........ 10



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Org. for a Better Austin v. Keefe*,
402 U.S. 415 (1971) ....................10

*Parks v. Eastwood Ins. Servs., Inc.*,
235 F. Supp. 2d 1082 (C.D. Cal. 2002) ....................5, 6

*Pike v. County of San Bernadino*,
2018 WL 6521576 (C.D. Cal. Aug. 9, 2018) ....................6, 9

*Rangel v. PLS Check Cashers of Cal., Inc.*,
899 F.3d 1106 (9th Cir. 2018) ....................4

*Salazar v. Driver Provider Phoenix LLC*,
532 F. Supp. 3d 832 (D. Ariz. 2021) ....................11, 12

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011) ....................4

*Talamantes v. PPG Indus., Inc.*,
2014 WL 4145405 (N.D. Cal. Aug. 21, 2014) ....................4, 6

*Wang v. Chinese Daily News, Inc.*,
623 F.3d 743 (9th Cir. 2010) ....................7

*Ward v. Sutter Valley Hosps.*,
2022 WL 2805965 (E.D. Cal. July 18, 2022) ....................11

*Wright v. Adventures Rolling Cross Country, Inc.*,
2012 WL 2239797 (N.D. Cal. June 15, 2012) ....................7

**Statutes**

29 U.S.C. § 216(b) ....................4



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

## INTRODUCTION

Plaintiffs seek dramatic injunctive relief and sanctions against Amazon because Littler Mendelson attorneys working with Amazon conducted purported "ex parte" interviews of Delivery Partners. In Plaintiffs' own telling, the interviews somehow misled and coerced the Delivery Partners into providing declarations for later use in this case. But there was nothing misleading or coercive about the interviews. The Littler attorneys disclosed their representation of Amazon, informed the Delivery Partners that participation was voluntary, and cautioned that the information they provided could be used by Amazon in litigation. Another federal court approved a substantively identical disclosure. *See* Cooney Decl. Exs. 1, 2. Nevertheless, Plaintiffs ask this Court to enjoin Amazon from speaking with Delivery Partners, exclude the declarations from evidence, order a corrective notice, and require Amazon to turn over the names and contact information of all Delivery Partners contacted.

Plaintiffs' requests should be rejected. No authority prevents Amazon or its counsel from communicating with nonparties, and Amazon's outreach was reasonable and appropriate. The injunction on communications that Plaintiffs seek here would amount to a prior restraint that violates the Supreme Court's admonition against banning communications "in the absence of a clear record and specific findings of need." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101, 104 (1981). And the remaining sanctions are unnecessary: there are no misrepresentations to correct, any request to exclude declarations that Amazon has not sought to introduce is premature, and Plaintiffs have not shown a legitimate need for Delivery Partners' names and contact information. The Court should deny Plaintiffs' motion in full.

## BACKGROUND

Plaintiffs filed this putative class and collective action against Amazon on behalf of Delivery Partners who signed up to provide delivery services using the Amazon Flex app, alleging that Amazon misclassified them as independent contractors and violated the Fair Labor Standards Act ("FLSA") and state wage-and-hour laws. Dkt. 1. No class certification motion is pending. In



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

December 2024, the Court conditionally certified an FLSA collective action on behalf of all Delivery Partners who used the Flex app on or after October 27, 2013, and who are not already represented by counsel on misclassification and wage and overtime claims. Dkt. 381. The Court recently approved an FLSA notice, Dkt. 422, and notice is set to issue on April 29, 2025, Dkt. 421.

Meanwhile, the parties are engaging in discovery for a class-certification motion and a renewed motion to compel arbitration, both currently due on May 16. Dkt. 421. To help prepare Amazon's defenses, attorneys from the firm Littler Mendelson conducted voluntary interviews of Delivery Partners, 49 of whom signed declarations. Declaration of Sophia Collins ¶ 20. The interviews were conducted on a one-on-one basis, mostly by telephone, with no Amazon employees present. *Id.* ¶ 4. The Littler attorneys told Delivery Partners that the purpose of these declarations was for use in Amazon's defense. *Id.* ¶ 2.

Importantly, Amazon ensured that it did not speak with any named or opt-in Plaintiff in this case, or with any Delivery Partner represented by counsel in this case. Collins Decl. ¶ 14. Littler attorneys also made clear that participating in any interview was completely voluntary. *Id.* ¶ 6. If the Delivery Partner expressly confirmed that they wanted to speak, Littler attorneys read verbatim the disclosures contained in the "Voluntary Interview Consent Form" to the Delivery Partner. *Id.*

The form disclosed that the interviewing attorney represented Amazon in an FLSA lawsuit alleging misclassification. Collins Decl. Ex. A ¶ 1. It informed the Delivery Partners that "the Court conditionally certified … a collective action" and they "may be a part of this collective" or a future class. *Id.* ¶ 2. The form assured the Delivery Partners that their "decision regarding whether to participate in [the] interview is completely voluntary" and they would not "be subject to any discipline or negative treatment" if they declined to be interviewed. *Id.* ¶ 4(a)-(b). The form also advised Delivery Partners that "[a]ny information [they] share … may be shared with [Amazon] and used in the lawsuit in a way that could adversely affect any rights [they] may have." *Id.* ¶ 4(c). Interviewing counsel stated that they were "not allowed to speak with" Delivery

Partners who were already "represented by an attorney … regarding any matter involving" Amazon. *Id.* ¶ 4(e).

Each Delivery Partner choose whether to participate in the interview. Those who participated signed Witness Acknowledgements affirming that they had "read this Voluntary Interview Consent Form, and underst[ood] it," were not "currently speaking to, or represented by, a lawyer regarding any claim that [they] might have against [Amazon]", and "voluntarily decided to participate in [the] interview." Collins Decl. Ex. A at 2; Collins Decl. ¶ 15. And the Delivery Partners affirmed that they "fully underst[ood] that [their] answers may be used by [Amazon] in a way that may may adversely affect [their] rights in the lawsuit and any claim [they] might have against [Amazon]." Collins Decl. Ex. A at 2.

Amazon produced a total of 49 declarations in discovery. Cooney Decl. ¶¶ 3-4. On April 4, Plaintiffs filed the instant motion for sanctions. Following the motion, Amazon produced fifteen more declarations. *Id.* While Amazon believes that Plaintiffs' motion is meritless, out of respect for the judicial process, Amazon has not made contact with new Delivery Partners since the motion was filed.

## ARGUMENT

Plaintiffs' motion should be denied. The Delivery Partners Amazon identified are not, and may never become, parties to this litigation. The interviews were eminently reasonable and lack any indicia of coercion or confusion that courts have identified in other cases. And the relief Plaintiffs seek is overbroad and unwarranted.

### I. The Delivery Partners Amazon Interviewed Are Not Represented Parties.

Many of Plaintiffs' arguments and authorities insinuate that putative collective and class members are "absent parties," Mot. 5, "absent class members," *id.* at 7, or somehow "represented by counsel," *id.* at 14. Not at all. The Delivery Partners with whom Littler attorneys spoke are not parties to the litigation, are not represented by Plaintiffs' counsel, and acknowledged that they



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

are not represented by *any* counsel. Collins Decl. ¶¶ 14, 16. Plaintiffs are wrong about both the procedural status of this case and the fundamental differences between class and collective actions.

Plaintiffs devote much of their motion to the FLSA claims. In an FLSA action, "[n]o employee shall be a party plaintiff … unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). In other words, for collective-action purposes, "[w]orkers cannot become plaintiffs … unless they first file a written consent with the court expressly joining the litigation." *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1109-10 (9th Cir. 2018). "Preliminary certification in the FLSA context does not produce a class with an independent legal status or join additional parties to the action." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018) (cleaned up). Party status for FLSA purposes comes only from an affirmative opt-in, and none of the interviewed Delivery Partners were parties under that framework.

The interviewed Delivery Partners have not opted into the conditionally certified collective and therefore are not parties. They might eventually choose to do so (or not). Unless and until they do, they are merely "potential plaintiffs" and "do not have an implicit attorney-client relationship with the plaintiffs' counsel that limits unauthorized defense communication with them." *Talamantes v. PPG Indus., Inc.*, 2014 WL 4145405, at *6 (N.D. Cal. Aug. 21, 2014). And the Delivery Partners each expressly acknowledged that they are not "speaking to, or represented by, a lawyer regarding any claim that [they] might have against Amazon." Collins Decl. Ex. A at 2.

Plaintiffs' motion also makes scattered references to the putative class action claims. Plaintiffs thus recognize that any class here remains "putative," Mot. 1, meaning not yet certified. And the Supreme Court has rejected as "surely erroneous" the notion "that a nonnamed class member is a party to the class-action litigation *before the class is certified*." *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (citation omitted). It is only *after* certification under Rule 23 that "absent class members are considered represented by class counsel unless they choose to 'opt out.'" *Parks*



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

*v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002); *see* Mot. 14. No class has been certified here, so again, the Delivery Partners with whom Littler attorneys spoke are not parties represented by class counsel—as they all confirmed.

The mere possibility that a class might *later* be certified does not mean that putative class members enjoy an attorney-client relationship *now*. *Parks*, 235 F. Supp. at 1083. Indeed, accepting Plaintiffs' position, which is contrary to established Supreme Court precedent, would mean the attorneys who solicited more than 30,000 arbitration claimants from among the putative class (including a named Plaintiff) and intervened to ask this Court to exclude those individuals from the FLSA notice also engaged in communications with represented parties. *See* Dkt. 356, 361. Yet, Plaintiffs never objected to those mass communications. *See* Dkt. 378 at 1-2.

At bottom, Plaintiffs' argument conflates conditional certification (which has happened here, but which does not itself create represented parties) and class certification (which has not happened). And insinuations aside, Plaintiffs say merely that the Delivery Partners have "interests represented by Plaintiffs' counsel." Mot. 14. But attorneys represent clients, not abstract interests, and cannot create protected attorney-client relationships merely by declaring them.

## II. Amazon's Interviews Were Neither Coercive Nor Misleading.

Because the Delivery Partners with whom Amazon communicated are nonparties, Plaintiffs have a heavy burden to demonstrate that the Littler attorneys' communications were inappropriate. "[T]here is no prohibition against pre-'opt-in' communication with a § 216(b) potential plaintiff," so a pre-notice communication is appropriate "unless the communication undermines or contradicts the Court's notice," *Parks*, 235 F. Supp. 2d at 1085, or is "coercive or misleading," *Kerce v. W. Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1366 (S.D. Ga. 2008). Amazon's voluntary interviews of Delivery Partners implicate none of these concerns.

### A. Courts Have Approved Similar Pre-Opt-In Interviews

Courts regularly allow FLSA defendants to communicate with prospective opt-in plaintiffs, even after conditional certification and approval of notice. In *Parks*, "[b]efore the Court's notice



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

was sent," the defendant sent "employees an internal memorandum about the case." 235 F. Supp. 2d at 1083. The memo explained the subject of the lawsuit, disagreed with the allegations, and directed employees to contact the employer's General Counsel with any questions. Cooney Decl. Ex. 3 at 7. Plaintiff moved to stop the defendant "from communicating with prospective plaintiffs" and for corrective notice. 235 F. Supp. 2d at 1083. The court denied the motion because the communications were not "misleading or improper." *Id.* at 1084. Similarly, in *Talamantes*, after the court "conditionally certified a collective action and approved notice procedures," the defendant "sent an email to potential plaintiffs discussing the litigation and the forthcoming notice that the potential plaintiffs would receive." 2014 WL 4145405, at *1. The court denied a motion for sanctions because the "communication at issue here did not mischaracterize the action, threaten retaliation, or otherwise undermine the Court-approved notice." *Id.* at *5. And in *Pike v. County of San Bernadino*, the defendants met with potential collective-action participants to gather facts after the parties stipulated to conditionally certify the case as an FLSA collective action. 2018 WL 6521576, at *1 (C.D. Cal. Aug. 9, 2018). The court denied the plaintiff's sanctions motion because there was no "coercion, intimidation, or otherwise improper contact." *Id.* at *2. Defense counsel simply "identified herself as an attorney … and explained the issues in the lawsuit." *Id.*

The noncoercive communications in those cases mirror the interviews here. Amazon's Voluntary Interview Consent Form informed potential interviewees in multiple ways that agreeing to an interview was voluntary and that they would not "be subject to any discipline or negative treatment" if they declined to be interviewed. Collins Decl. Ex. A ¶ 4(b). As in *Pike*, Amazon's attorneys identified themselves and their relationship to Amazon and cautioned Delivery Partners that any information they shared may be "used in the lawsuit in a way that could adversely affect any rights [they] may have." *Id.* ¶ 4(c). Amazon also advised Delivery Partners that this Court had conditionally certified a collective action, which they could be a part of. *Id.* ¶ 2. And contrary to Plaintiffs' assertion, Mot. 1, Amazon did provide a "neutral" description of this litigation. Collins Decl. Ex. A ¶ 1.



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

At least one court has approved a substantively identical consent form authored by Littler Mendelson as a permissible communication to potential collective members in an FLSA case. *See* Cooney Decl. Ex. 1 (motion requesting that court "enter an order … providing that defense counsel may continue to interview potential class members who sign the Voluntary Interview Consent Form"); *see also id.*, Ex. 2 (Dkt. 39) (order granting motion). Plaintiffs cite no decision holding that similar forms or communications were coercive, misleading, or sanctionable.

The Court should view Plaintiffs' slanted account of Amazon's interviews with skepticism in light of the parallel *Waithaka* litigation, No. 2:19-cv-01320, which is prosecuted by the same lead counsel. There, Amazon submitted several declarations from Delivery Partners when opposing class certification. *Waithaka*, Dkt. 178 at 14-16 (describing declarations). Plaintiff's counsel never objected, and this Court relied on the declarations in denying class certification. *See, e.g.*, *Waithaka*, Dkt. 186 at 2 (discussing Oswalt declaration); *id.* (citing Boman declaration); *id.* at 3 n.2 (citing Takacs declaration).

Plaintiffs rely on distinguishable cases imposing sanctions when defendants tried to threaten, mislead, or coerce potential plaintiffs. Mot. 7, 16. For example, in *Dominguez v. Better Mortgage Corp.*, the defendant pressured employees to sign new employment agreements as a condition of continued employment and also presented a release agreement that misrepresented the two agreements' combined effect on the employees' FLSA claims. 88 F.4th 782, 792 (9th Cir. 2023). In *Wang v. Chinese Daily News, Inc.*, the defendant's "coercive conduct" included "threats to employees' jobs [and] termination of an employee supporting the litigation." 623 F.3d 743, 749 (9th Cir. 2010) (citation omitted). In *Camp v. Alexander*, the defendant sent employees a letter predicting that "employees would lose their jobs" if the class action succeeded. 300 F.R.D. 617, 619, 624 (N.D. Cal. 2014). In *Wright v. Adventures Rolling Cross Country, Inc.*, the defendant told putative class members that they would be "risking [their] reputations and finances" by joining the class. 2012 WL 2239797, at *2 (N.D. Cal. June 15, 2012). Amazon engaged in no similar conduct.



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

Plaintiffs' reliance on cases where defendants coerced settlements from putative class members is similarly inapt. In *Kirby v. Kindred Healthcare Operating, LLC*, the defendant extracted settlements from members of a putative class only after sending a "slanted characterization" of the case that "all but encourage[d] putative class members not to join the class." 2020 WL 4639493, at *4 (C.D. Cal. May 1, 2020). And the defendant in *Marino v. CACafe, Inc.* offered putative class members $500 in exchange for "a general release of all claims," without mentioning "that a lawsuit had been filed." 2017 WL 1540717, at *1 (N.D. Cal. Apr. 28, 2017). Plaintiffs allege no similar conduct here.

This Court's ruling in *Grewe* provides an instructive contrast to Amazon's communications here. In *Grewe*, the employer's communication to potential FLSA plaintiffs suggested that the employer's counsel "represents the person receiving the letter." *Grewe v. Cobalt Mortg., Inc.*, 2016 WL 4547131, at *1 (W.D. Wash. Sept. 1, 2016). It mischaracterized the Court's orders, failed to disclose that the Court had approved the settlement as fair and reasonable, and urged recipients not to opt into the collective settlement, but to contact the employer's counsel to "receive further information." *Id.*. Here, in contrast, Littler attorneys disclosed that they represented only Amazon, that the Court "conditionally certified the federal overtime and minimum wage claims so that they may proceed on a collective action basis," that the plaintiffs also sought to certify a state-law class action, and that Delivery Partners "may be a part" of the collective and class. Collins Decl. Ex. A ¶ 2. The attorneys expressly cautioned that interviews were "completely voluntary" and information provided could be used in ways that "could adversely affect any rights you may have in the lawsuit." *Id.* ¶ 4(a), (c). Amazon's disclosure was accurate and noncoercive.

**B. Plaintiffs' Remaining Arguments Are Meritless**

Absent any hint of coercion, Plaintiffs point to five circumstances why they believe "Amazon's communications … were still improper." Mot. 11. Each of their points fails.

*First*, Plaintiffs fault Amazon for not "informing drivers of their right to opt in[]" and providing "the identity of Plaintiffs' counsel and this case." Mot. 11-12. That argument is a red



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

herring because Amazon was engaging in protected speech, not delivering an FLSA opt-in notice. Plaintiffs do not explain why Delivery Partners would have acted differently had they known the case number or names of Plaintiffs' counsel. Ultimately, the assertion that Amazon "deprived drivers of information necessary to make an informed decision about whether to provide sworn testimony to an adverse party," Mot. 12, is just bluster, as well as wrong: the Delivery Partners here are not "parties" who are "adverse" to Amazon, and Amazon cautioned them that their testimony could later undermine their legal interests. Collins Decl. Ex. A ¶ 4(c).

*Second*, Plaintiffs complain about the "timing" of Amazon's interviews between conditional certification and FLSA notice. Mot. 12. Yet courts often allow defendants to communicate with potential plaintiffs during this time, including by conducting fact-gathering interviews, so long as they neither coerce nor mislead the interviewees. *See, e.g.*, *Pike*, 2018 WL 6521576, at *2.

*Third*, Plaintiffs object to "the involvement of 22 Littler Mendelson attorneys" as "add[ing] another significant layer of impropriety." Mot. 13. Plaintiffs cite no requirement that all attorneys assisting a defendant must appear in the case and never explain why any Delivery Partner would be "confus[ed]" by whether an attorney had formally "entered appearances." *Id.* What matters is that the Delivery Partners knew that the attorneys represented Amazon in conjunction with misclassification litigation—and that information was disclosed. Collins Decl. Ex. A ¶ 4(d).

*Fourth*, Plaintiffs accuse Amazon of "exploit[ing] a profound imbalance of power" because many Delivery Partners "are dependent on Amazon for their livelihood." Mot. 13. This is Plaintiffs' theory of their misclassification case, and it remains to be proved. In fact, the Delivery Partners' declarations that Plaintiffs submitted tell another story. *See* Mot., Ex. A at 1-2, 12 (Delivery Partners explaining they had full-time jobs and used Flex and other app-based companies to supplement their income). Regardless, Plaintiffs' argument fails because it would bar communications with employees in wage-hour collective actions or pre-certification class actions, even though courts repeatedly allow such communications. *Supra* at 5-7.



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

*Fifth*, Plaintiffs invoke a Washington professional-conduct rule that "bars attorneys from communicating about the subject of a representation with persons known to be represented by counsel." Mot. 14. But the Delivery Partners are *not* represented by counsel, *supra* at 3-5, and this case is *not* certified as a class action. Even if a state rule did operate as Plaintiffs suggest, Rule 23 and the FLSA govern this federal case. The state rule would have "no bearing" here. *Lloyd v. Covanta Plymouth Renewable Energy, LLC*, 532 F. Supp. 3d 259, 261 (E.D. Pa. 2021).

***

Before courts can enjoin or sanction protected communications with unrepresented putative class members, Plaintiffs must show specific evidence of misleading, coercive, or threatening conduct. Plaintiffs did not and cannot show anything of the sort.

## III. Plaintiffs' Requested Sanctions Are Overbroad And Premature.

Even if some relief were warranted—and on this record it is not—the sweeping sanctions that Plaintiffs seek are overbroad and premature.

### A. Any Order Enjoining Speech Must Be Narrowly Tailored

"[P]rior restraints on speech"—such as Plaintiffs' proposed order, which aims to enjoin Amazon's future communications—"are the most serious and least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Plaintiffs therefore have a "heavy burden" to justify such restraints. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). Orders limiting communications between parties and potential class members must be supported by "a clear record" showing "particular abuses" and must be tailored to award "'the narrowest possible relief which would protect the respective parties.'" *Gulf Oil*, 452 U.S. at 101-02 (citation omitted).

Plaintiffs fail to justify their requested relief. They rely on an "inherent risk of prejudice," Mot. 7, 11, 15, but many courts have correctly rejected arguments that the "inherent coerciveness of communications" between those in a business relationship can alone justify restrictions on speech. *E.g.*, *Nyachira v. New Prime, Inc.*, 2022 WL 19263990, at *4 (W.D. Mo. Nov. 1, 2022);



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

*Babbitt v. Albertson's, Inc.*, 1993 WL 128089, at *7-8 (N.D. Cal. Jan. 28, 1993); *Beasley v. Custom Commc'ns, Inc.*, 2016 WL 6684206, at *4 (E.D.N.C. Nov. 14, 2016); *Ward v. Sutter Valley Hosps.*, 2022 WL 2805965, at *5 (E.D. Cal. July 18, 2022). Plaintiffs also speculate about how the declarations "could potentially be used," Mot. 9, but these are just "stereotyped and conclusory statements" describing hypothetical harms, unsupported by evidence, that fail to meet the standard. *Gulf Oil*, 452 U.S. at 102 n.16. Accepting Plaintiffs' arguments would negate a defendant's First Amendment right to speak to putative class members any time a plaintiff files a class-action complaint, or to potential FLSA collective members who have not consented to be party plaintiffs. The law demands more before courts can restrict constitutionally protected speech.

Plaintiffs' own cases (Mot. 5-8) confirm the limits of their argument. In *Kleiner v. First National Bank of Atlanta*, the defendants launched a solicitation campaign to convince members of a *certified class*—parties in the case—to opt out even after the court "explicitly reiterated" that they could not do so. 751 F.2d 1193, 1196-99 (11th Cir. 1985). Of course, once a class is certified (or FLSA plaintiffs opt in), the members are represented parties—but *that has not happened here*. In *Guifu Li v. A Perfect Day Franchise, Inc.*, the defendants arranged meetings with employees who were putative class members and asked them on the spot to sign opt-out forms, without allowing the employees to take the forms home or providing translations of the forms in the employees' primary language. 270 F.R.D. 509, 518 (N.D. Cal. 2010). The court held that "*these* meetings were inherently coercive," *id.* (emphasis added)—not that all communications with potential parties are, *contra* Mot. 5. And in *Salazar v. Driver Provider Phoenix LLC*, the court "decline[d] to limit communications between Defendants and potential class members" because defendants had not "threaten[ed] the fairness of [the] litigation." 532 F. Supp. 3d 832, 840 (D. Ariz. 2021). Plaintiffs' heavy reliance on cases involving inapposite situations shows the weakness of their position. Amazon assured unrepresented Delivery Partners that the interviews were completely voluntary and did not attempt to convince the Delivery Partners to relinquish their potential claims. Rather, Amazon's conduct is similar to that of the employer in *Babbitt*, where



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

the court declined to prohibit an employer from interviewing unrepresented potential class members unless class counsel is present. 1993 WL 128089, at *1, *7-8.

**B. Plaintiffs' Other Sanctions Are Unfounded And Speculative**

The remaining relief Plaintiffs request—issuing a corrective notice, excluding declarations from evidence, and ordering Amazon to "produce the names and contact information of all drivers its attorneys contacted," Mot. 16-17—is equally groundless.

*First*, there is no basis for a corrective notice because there is nothing to correct. Amazon's communications were not misleading or coercive. *Supra* at 5-8; *see also Salazar*, 532 F. Supp. 3d at 839 (corrective notice appropriate only because defendants' communications were "coercive and misleading"). "Corrective" notice could create confusion where none exists.

*Second*, it is premature to exclude declarations because Amazon has not determined whether it would use them or for what purpose. Rather than rule based on how declarations "could potentially be used," Mot. 9, the Court should consider exclusion (if at all) only in light of how they are *actually* used.

*Third*, Plaintiffs provide no adequate reason for Amazon to give Plaintiffs a list of the Delivery Partners its attorneys contacted. Amazon's communications were not coercive or misleading, so no remedy is warranted. Even if the Court were to disagree in an abundance of caution, however, corrective notice would be more than sufficient to remedy any supposed "prejudice" to these Delivery Partners' rights without further meddling from Plaintiffs' counsel. And Plaintiffs already have a full list of Delivery Partners for the FLSA notice, making the requested list unnecessary in any event.

*Finally*, Plaintiffs should not be awarded attorney fees for filing their baseless sanctions motion. Even if some limitation on communications were warranted here (none is), Amazon was within its rights to communicate with its Delivery Partners, and its use of a robust and court-approved disclosure and consent form demonstrated its good faith. There was no sanctionable conduct.



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

## CONCLUSION

Amazon's voluntary interviews of nonparty Delivery Partners caused no harm or confusion and warrant no relief—and certainly not the overbroad or premature injunctions and sanctions Plaintiffs have demanded. Plaintiffs' motion should be denied.



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

Dated: April 18, 2025

I certify that this motion contains fewer than 4,200 words, in compliance with the Local Civil Rules.

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: s/ *Jason C. Schwartz*

Jason C. Schwartz (*Pro Hac Vice*)
Lucas C. Townsend (*Pro Hac Vice)*
Dhananjay S. Manthripragada (*Pro Hac Vice*)
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
jschwartz@gibsondunn.com
ltownsend@gibsondunn.com
dmanthripragada@gibsondunn.com

Megan Cooney (*Pro Hac Vice*)
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
(949) 451-3800
mcooney@gibsondunn.com

MORGAN, LEWIS & BOCKIUS LLP

By: s/ *Andrew DeCarlow*

Andrew DeCarlow, WSBA #54471
1301 Second Ave., Suite 3000
Seattle, WA 98101
(206) 274-0154
andrew.decarlow@morganlewis.com

Richard G. Rosenblatt (*Pro Hac Vice*)
James P. Walsh, Jr. (*Pro Hac Vice*)
502 Carnegie Center, Second Floor
Princeton, NJ 08540-6241
(609) 919-6600
richard.rosenblatt@morganlewis.com
james.walsh@morganlewis.com

Sarah Zenewicz (*Pro Hac Vice*)
One Market, Spear Street Tower
San Francisco, CA 94105-1596
(415) 442-1790
sara.zenewicz@morganlewis.com

*Attorneys for Defendants Amazon.com, Inc. and Amazon Logistics, Inc.*



GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on April 18, 2025, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice List.

s/ *Jason C. Schwartz*